ACCEPTED
15-25-00022-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/26/2025 3:39 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00022-CV**

In the Court of Appeals
For the Fifteenth Judicial District
Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/26/2025 3:39:21 PM
CHRISTOPHER A. PRINE
Clerk

CITY OF COPPELL, TEXAS; CITY OF HUMBLE, TEXAS; CITY OF DESOTO, TEXAS; CITY OF CARROLLTON, TEXAS; CITY OF FARMER'S BRANCH, TEXAS; CITY OF ROUND ROCK, TEXAS,
*Appellants/Cross-Appellees,*

v.

KELLY HANCOCK, ACTING COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS,
*Appellee/Cross-Appellant.*

On Appeal from the 201st Judicial District Court, Travis County, Texas
Cause No. D-1-GN-21-003198; consolidated with D-1-GN-21-003203

## APPELLEE/CROSS-APPELLANT'S RESPONSE BRIEF

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

STEVEN ROBINSON
Division Chief, Tax Litigation Division

KYLE PIERCE COUNCE
Deputy Division Chief
State Bar No. 24082862
Kyle.Counce@oag.texas.gov
Office of the Attorney General
Tax Litigation Division
P. O. Box 12548
Austin, Texas 78711-2548
T: (512) 463-3112
F: (512) 478-4013

Counsel for Appellee/Cross-Appellant

Oral Argument Requested

# IDENTITY OF PARTIES AND COUNSEL

**Appellants/Cross-Appellees:**
City of Coppell, Texas
City of Humble, Texas
City of DeSoto, Texas
City of Carrollton, Texas
City of Farmer's Branch, Texas

**Appellate and Trial Counsel for Appellants/Cross-Appellees:**
James B. Harris, jim.harris@hklaw.com
Stephen F. Fink, stephen.fink@hklaw.com
Reed C. Randel, reed.randel@hklaw.com
Richard B. Phillips, Jr., rich.phillips@hklaw.com
HOLLAND & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 964-9500

Brandon L. King, brandon.king@hklaw.com
HOLLAND & KNIGHT LLP
98 San Jacinto Boulevard, Suite 1900
Austin, Texas 78701

**Appellees:**
City of Round Rock, Texas

**Appellate and Trial Counsel for Appellees:**
Cindy Olson Bourland, bourland@bourlandlaw.com
BOURLAND LAW FIRM, PC
P.O. Box 546
Round Rock, Texas 78680

Bryan Dotson, bryan.dotson@chamberlainlaw.com
CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS, & AUGHTRY, P.C.
112 East Pecan Street, Suite 1450
San Antonio, Texas 78205
(210) 278-5844

**Appellee/Cross-Appellant:**

Kelly Hancock, Acting Comptroller of Public Accounts of the State of Texas

**Appellate and Trial Counsel for Appellee/Cross-Appellant:**

Ken Paxton
Brent Webster
Ralph Molina
Austin Kinghorn
Steven Robinson
Kyle Pierce Counce (lead counsel)
Kyle.Counce@oag.texas.gov
Peter Berquist
Peter.Berquist@oag.texas.gov
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-3112

**Former Counsel no longer with Office of the Attorney General:**

Grant Dorfman (currently employed by the Texas Business Court, Eleventh Division)
James Lloyd (currently employed by the Office of the Vice President of the United States)
Shawn Cowles (currently employed by Dhillon Law Group, Inc.)
Alison Andrews (currently employed by Jackson Walker LLP)
Brittney Johnston (currently employed by McLane Company, Inc.)
Deborah Rao (currently employed by the State Office of Risk Management)
Matthew T. Kennedy (currently employed by Covenant Clearinghouse, LLC)
Ray Langenberg (Specially Deputized trial counsel, currently employed by the Office of the Comptroller of Public Accounts of Texas)

**Former Counsel no longer with Tax Litigation Division:**

Amanda Romenesko (currently employed by the Opinion Committee, Office of the Attorney General of Texas)

# TABLE OF CONTENTS

Identity of Parties and Counsel ...................................................................i

Index of Authorities ................................................................................vi

Record References ....................................................................................ix

Statement Regarding Oral Argument ......................................................ix

Summary of the Argument.......................................................................1

Argument..................................................................................................5

I.   Response to Coppell's Statement of Facts .......................................5

    A.   Additional context on local sales tax and statutory background of Tax Code sections 321.002(a)(3)(A) and 321.203 (Response to Coppell's Statement of Facts 1.) ......................................5

    B.   Historical Comptroller interpretation of local sales tax statutes and Rule 3.334 (Response to Coppell's Statement of Facts 2.)............6

    C.   Internet sales, fulfillment centers, and the changes to Rule 3.334 (Response to Coppell's Statement of Facts 3.)...................................9

    D.   Coppell and local sales tax (Response to Coppell's Statement of Facts 4.) ........................................................................................10

II.  Response to Coppell's Argument 2: Rule 3.334 does not contravene the plain meaning of "to receive" or "order" as those words are used in the Tax Code ....................................................................................... 11

    A.   Rule 3.334 uses the plain meanings of the words "to receive" and "order" (Response to Coppell's Argument 2. A.) ........................... 11

    B.   The Comptroller's interpretation of "place of business of the retailer" is proper, especially when read within the context and function of the entire local sales tax statute (Response to Coppell's Argument 2. B.).................................................................12

    C.   Coppell's use of statutory history provides no guidance to the meaning of today's statute and is just a vehicle to pass off legislative history as authoritative interpretation (Response to Coppell's Argument 2. C.).................................................................15

iii

1. Coppell's statutory history argument is really just legislative history and speculation (Response to Coppell's Argument 2. C. 1.) ................................................ 16

2. Coppell's reasoning would mean the Legislature intended an unworkable consummation statute where sales occurred at multiple locations (Response to Coppell's Argument 2. C. 2.) ................................................ 17

D. The Comptroller has not previously accepted Coppell's current interpretation of sales tax consummation (Response to Coppell's Argument 2. D.) ................................................ 19

III. Response to Coppell's Argument 3: Rule 3.334's regulatory provisions neither contravene the statute nor displace origin-sourcing ........................ 21

IV. Response to Coppell's Argument 4: The Comptroller's interpretation of the statute and implementation of Rule 3.334 are consistent with the plain meaning of the challenged terms ........................ 23

A. Coppell's argument that the Comptroller redefined "receive" and "order" fails because the Comptroller did not define those terms (Response to Coppell's Argument 4. A.) ................................ 23

B. Statutes must be read as a whole, yet Coppell would ignore crucial language to reach its own preferred outcome (Response to Coppell's Argument 4. B.) ........................................ 25

C. Coppell would ignore helpful model language (Response to Coppell's Argument 4. C.) ........................................ 26

D. Coppell's remaining three arguments fail (Response to Coppell's Argument 4. D.) ........................................ 27

1. The Comptroller did not invoke the absurdity safety valve ........................................ 27

2. Section 321.203(d) does not prohibit Rule 3.334 ..................... 28

3. Coppell's "paper segregation" has no support ....................... 29

V.      Response to Coppell's Argument 5: Rule 3.334 faithfully implements the statutory text in light of technological advancements ............................ 31

      A.      New rules were needed to encompass purely virtual locations.................................................................................32

      B.      The Rule promotes technological innovation by simplifying compliance and aligning the sales tax with economic benefit....................................................................33

Conclusion and Prayer ....................................................................33

Certificate of Compliance ...............................................................35

Certificate of Service.......................................................................35

Index of Appendices .......................................................................36

# INDEX OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*Bullock v. Dunigan Tool & Supply Co.*,
    588 S.W.2d 633 (Tex. App.—Austin 1979, writ ref'd n.r.e.)..............29, 30, 31

*Castleman v. Internet Money Limited*,
    546 S.W.3d 684 (Tex. 2018)...................................................................28

*City of Richardson v. Oncor Elec. Delivery Co. LLC*,
    539 S.W.3d 252 (Tex. 2018) ...........................................................16, 17

*Combs v. City of Webster*,
    311 S.W.3d 85 (Tex. App.—Austin 2009, pet denied)............................ 17, 18

*Combs v. Health Care Serv. Corp.*,
    401 S.W.3d 623 (Tex. 2013) ........................................................... 27, 28

*Entergy Gulf States, Inc. v. Summers*,
    282 S.W.3d 433 (Tex. 2009) ........................................................... 20, 21

*Helena Chem. Co. v. Wilkins*,
    47 S.W.3d 486 (Tex. 2001) .................................................................. 13

*In re Swift Transp. Co., Inc.*,
    311 S.W.3d 484 (Tex. App.—El Paso 2009, no pet.) .....................................26

*In re Tex. Educ. Agency*,
    619 S.W.3d 679 (Tex. 2021) (orig. proceeding) .........................................32

*Jaster v. Comet II Const., Inc.*,
    438 S.W.3d 556 (Tex. 2014) ................................................................27

*Lippincott v. Whisenhunt*,
    462 S.W.3d 507 (Tex. 2015) ................................................................ 16

*Paxton v. City of Dallas*,
    509 S.W.3d 247 (Tex. 2017) ................................................................ 16

*South Dakota v. Wayfair, Inc.*,
    138 S. Ct. 2080 (2018)...........................................................................8

*Tarrant Appraisal Dist. v. Moore*,
    845 S.W.2d 820 (Tex. 1993)...................................................................22

*Tex. Dep't. of Protective and Regulatory Services v. Mega Child Care, Inc.*,

    145 S.W.3d 170 (Tex. 2004) .................................................................. 19, 20

*Tex. Employment Comm'n v. Holberg*,

    440 S.W.2d 38 (Tex. 1969) ............................................................................ 21

*Tex. Lottery Comm'n v. First State Bank of DeQueen*,

    325 S.W.3d 628 (Tex. 2010) ..................................................................... 23, 24

*Tex. State Bd. of Examiners of Marriage and Family Therapists v. Tex. Med. Ass'n*,

    511 S.W.3d 28 (Tex. 2017) ........................................................................... 11

*TGS-NOPEC Geophysical Co v. Combs*,

    340 S.W.3d 432 (Tex. 2011) ..................................................................... 25, 33

**Statutes and Rules:**                                                      **Page(s)**

34 Tex. Admin Code:

    § 3.334.............................................................................................*passim*

    § 3.334(a)(9).................................................................................. 1, 10, 21

    § 3.334(a)(18) ........................................................................... 1, 10, 21, 25

    § 3.334(b)(1)(A)..............................................................................*passim*

    § 3.334(b)(5)....................................................................................*passim*

    § 3.334(c)(7)....................................................................................*passim*

Tex. Gov't Code:

    § 311.011(a)............................................................................................ 25

    § 311.011(b)............................................................................................ 23

Tex. Tax Code:

    § 111.002(a)............................................................................................. 5

    § 321.002(a)(3)...................................................................................... 5, 6

    § 321.002(a)(3)(A).........................................................................*passim*

    § 321.203.........................................................................................*passim*

    § 321.203(a)............................................................................................ 31

    § 321.203(a)–(b) ...................................................................................... 5

    § 321.203(c) (West 2009) ........................................................................ 18

§ 321.203(d) ..................................................................... 27, 28, 29

§ 321.306 ...............................................................................5, 13, 22

**Other Authorities:**                                                 **Page(s)**

4 Tex. Reg. 3618-29 (1979) ...................................................... 6, 33

39 Tex. Reg. 9597-611 (2014) ................................................... 6, 33

41 Tex. Reg. 260-69 (2016) ................................................. 6, 20, 33

45 Tex. Reg. 3499-3518 (2020) ............................................. 8, 9, 32

48 Tex. Reg. 6340–50 (2023) ..................................................... 6, 26

49 Tex. Reg. 2440–57 (2024) .................................................... *passim*

49 Tex. Reg. 4797–808 (2024) ................................................. *passim*

Acts 1967, 60th Leg., R.S., ch. 36 ....................................................5

Acts 1979, 66th Leg., R.S., ch. 624, § 6(B)(1) ............................... 5, 6

H.B. 1525, 86th Leg., R.S. (2019) ....................................................8

S.B. 582, 66th Leg., R.S. (1979) (enrolled version, pp. 1401–02) ..................... 30, 31

Comptroller's Decision No. 15,654 (1985) .........................................6

Comptroller Letter Ruling (Star Accession No.) 200510723L (2005) ....................20

## RECORD REFERENCES

"CR" refers to the clerk's record. "RR" refers to the court report's record, with the volume before RR and the page number after RR.

## STATEMENT REGARDING ORAL ARGUMENT

The Comptroller requests oral argument. This appeal presents issues of statutory interpretation and administrative law that are significant to the development of Texas jurisprudence, and will otherwise determine where a sale or use is "consummated" for purposes of sourcing local sales and use taxes. Oral argument will aid the Court in addressing the interplay between the consummation statutes and the agency's rulemaking authority to implement such statutes.

## SUMMARY OF THE ARGUMENT

Almost all sales in Texas are subject to state and local sales tax. The local sales tax covers taxes imposed by counties and cities. Typically, a seller will collect both sales taxes from a purchaser and remit them to the Comptroller. The Comptroller then distributes the local sales tax portion to the county and city where the sale was consummated. In most in-person transactions, there is no question where the sale was consummated—at the brick-and-mortar location where the purchaser bought the item. But in our era of e-commerce, where buyers increasingly make purchases online without any human contact, it becomes harder to determine where the sale was consummated. The Legislature created a consummation hierarchy in Chapter 321 of the Tax Code. To fill in the gaps and provide additional clarity and criteria, the Comptroller amended Rule 3.334 (App. E). Coppell takes issue with certain provisions in Rule 3.334.

Coppell's appeal is odd. Ostensibly, Coppell prevailed in the trial court on the Rule subsections it now challenges on appeal. According to its brief, Coppell wants the same result, but with an opinion attached to foreclose future arguments. At trial, Coppell challenged Rule 3.334 subsections (a)(9), (a)(18), (b)(1)(A), (b)(5), and (c)(7), and the trial court invalidated all but subsection (b)(1)(A). On appeal, Coppell reasserts the same validity challenges Coppell is asking this Court to "render judgment that the identified portions of [Rule] 3.334 are invalid." Coppell's Br. 51. The relief Coppell seeks here is pointless because Coppell won the relief it requested below. While it would seem Coppell also seeks to invalidate Rule 3.334(b)(1)(A), it makes no arguments specific to (b)(1)(A) in its entire brief. Meanwhile, the

1

Comptroller, by its cross-appeal, seeks to have the judgment reversed as to the invalidity rulings, except for (b)(1)(A).

Importantly, Coppell does not appeal its declaratory judgment loss in the trial court. Coppell requested that fulfillment centers be prospectively declared places of business for purposes of the Tax Code. CR 2798. The trial court declined that request. CR 2798. Additionally, the trial court denied all other relief not specifically granted in its final judgment. CR 2798. Having neither briefed nor requested relief on those issues, Coppell has waived them. Thus, the only issue for this Court to decide by either Coppell or the Comptroller's cross-appeal is whether the Comptroller properly promulgated Rule 3.334 and whether that rule contravenes the Tax Code.

Appellant, first Cross-Appellee, and first plaintiffs below are the Cities of Coppell, Humble, DeSoto, Carrollton, and Farmers Branch, Texas (collectively, "Coppell"). Cross-Appellant, Appellee, and defendant below is Glenn Hegar, in his Official Capacity as Comptroller of Public Accounts of the State of Texas (the "Comptroller"). Comptroller Hegar resigned on June 30, 2025. Kelly Hancock is the Acting Texas Comptroller of Public Accounts and was automatically substituted into this appeal on July 29, 2025. The City of Round Rock was a plaintiff below and is second Cross-Appellee as to the Comptroller's cross-appeal only.

For readability, the Comptroller has mirrored Coppell's brief in this response, and addresses each of Coppell's arguments in order.

First, Coppell made several claims in its statement of facts that required additional context. Taxable sales have been consummated at a "place of business of

2

the retailer" for decades, and that place of business has often been the physical store location. But determining what exactly is a place of business requires more nuance, and the Legislature has defined the term to bring some clarity to the task. Likewise, the Comptroller has been empowered by the Legislature to further implement the sales tax consummation statutes. The Comptroller has traditionally exercised that power in a consistent way. But e-commerce has created a situation where it is unclear what the "place of business" is for sales tax purposes. More specifically, cities like Coppell have lured fulfillment centers to their municipalities with tax incentives like economic development agreements. These warehouse-like facilities have orders forwarded to them from corporate entities for shipping and delivery. Coppell's main complaint is that under the Comptroller's Rule 3.334, these fulfillment centers may not automatically qualify as "places of business" for sales tax consummation purposes, causing the local tax to be remitted to another municipality where the retailer's actual place of business is located.

Second, Rule 3.334 accords with the language of the Tax Code. The plain meaning of undefined terms should control, unless reading the statute as a whole compels a different reading. The Legislature defined "place of business of the retailer." The Comptroller took that definition and provided clarity to how it interprets terms used in the definition, which is a core function of administrative rulemaking. To support its own a-textual definition, Coppell offers legislative history and speculation as to the motivations of the Legislature. Coppell's definition finds no support in the statute, or in its novel regulatory acceptance theory. Instead, Coppell's definition would result in a nightmare for taxpaying entities, where they

would have to guess at which of multiple potential "places of business" received an order to try and divine where consummation took place. The Comptroller's hierarchy provides clarity and permits only one location to be the recipient of any individual order.

Third, The Comptroller did not usurp the state's traditional origin sourcing scheme. Destination sourcing is only used when authorized by the Tax Code, especially in section 321.203(e). But many online sales will remain consummated at a place of business, not at the shipping destination. The arguments for the proper promulgation of the Rule are more thoroughly laid out in the Comptroller's Cross-Appellant brief.

Fourth, the Comptroller did not ignore the plain meaning of the terms "order" or "receive." The Comptroller interpreted them within their statutory context, giving deference to the legislative definitions present in the Tax Code. And the Comptroller's use of model statutory language does not render Rule 3.334 void, as the model language is consistent with the actual statute. Nor did the Comptroller invoke the absurdity doctrine as alleged by Coppell, which permits a court to ignore the language of a statute when strictly applying it would result in an absurd situation. And this Court should reject Coppell's attempt to impose "paper segregation" as a consummation standard, as that theory finds no support in Texas tax statutes or jurisprudence.

Fifth, Rule 3.334 and its enabling statutes are entirely consistent with advancing technologies and reflects the Comptroller's attempt to modernize local sales tax sourcing while accommodating e-commerce.

## I.  Response to Coppell's Statement of Facts

In its opening brief, Coppell made several statements in its Statement of Facts that the Comptroller wishes to clarify or correct.

### A.  Additional context on local sales tax and statutory background of Tax Code sections 321.002(a)(3)(A) and 321.203 (Response to Coppell's Statement of Facts 1.).

Texas has used an origin-based sourcing system for municipal sales and use taxes since their adoption in 1967. A taxable sale is consummated at the seller's "place of business" in Texas either (i) where the seller receives the customer's order or (ii) from which the seller ships or delivers the item if the order was not received at a Texas place of business. Tex. Tax Code § 321.203(a)–(b); *See* Acts 1967, 60th Leg., R.S., ch. 36. (App. K). A "place of business" is defined, in relevant part, as an established outlet or location operated by a seller, its employee, or its agent from which three or more taxable orders are received during a calendar year. Tex. Tax Code § 321.002(a)(3). The Legislature has never defined the terms "receives," "order," "employee," or "agent" in the statutory scheme. It has, however, repeatedly and expressly granted the Comptroller broad authority to adopt rules for the proper administration, enforcement, and sourcing of local sales and use taxes. Tex. Tax Code §§ 111.002(a), 321.306. This statutory framework has remained materially unchanged for more than fifty-five years. The Legislature's preference for origin sourcing reflects a deliberate policy decision, but one that has always been subject to the Comptroller's interpretive authority to ensure uniform statewide application and to prevent manipulation in light of changing business practices. *See*

Acts 1979, 66th Leg., R.S., ch. 624, § 6(B)(1) (introducing the "place of business" definition and order-receipt prong) (App. L).

> **B.** **Historical comptroller interpretation of local sales tax statutes and Rule 3.334 (Response to Coppell's Statement of Facts 2.).**

The Comptroller has administered the "place of business" definition for decades under Rule 3.334 and its predecessors. *See* 4 Tex. Reg. 3618, 3621 (1979) (App. F); 39 Tex. Reg. 9597, 9604 (2014) (App. G); 41 Tex. Reg. 260, 262 (2016) (App. H). From the outset, the Comptroller has interpreted "receives three or more orders" to require actual receipt of customer orders at the location in the regular course of business. Tex. Tax Code § 321.002(a)(3). Automated servers, third-party warehouses, drop boxes, and similar passive facilities have never been treated as "receiving orders" when the issue was presented in audits or ruling requests. *See* 48 Tex. Reg. 6341.

For example, the Comptroller's rulemaking makes clear that its "current interpretation goes as far back as [1985]," where the Comptroller stated that "the Legislature did not want warehousing and storage facilities ... to be the places where sales were consummated for local sales tax purposes unless orders were actually received there by personnel working there, but wanted the office location out of which the salesman operated to be the place where the sales were consummated." Comptroller's Decision No. 15,654 (1985) (App. P).

The Comptroller has issued rules about what is a place of business and where consummation occurs prior to 2020. *See* 4 Tex. Reg. 3618, 3621; 39 Tex. Reg. 9597, 9604; 41 Tex. Reg. 260, 262. The pre-2020 rules were consistent with the statutory

6

requirements in the Tax Code: they required that orders be received by the seller at the location in the regular course of business, without allowing automated systems or third-party facilities to qualify as "receiving" orders in a manner that would artificially establish a place of business. *See id.*

That all remained consistent post-2020. The current version of Rule 3.334[1] resulted from a multi-year rulemaking (2020–2024) that clarified, but did not substantively change, this long-standing interpretation in light of modern e-commerce practices. The Rule now expressly states that a location is not a "place of business" if orders are only processed by internet-connected computers or automated software. 49 Tex. Reg. 2451 (outlining § 3.334(b)(5)). Nor does forwarding a previously received order to a facility for fulfillment automatically make that location a place of business for tax purposes. *See* 49 Tex. Reg. 2450 (outlining § 3.334(b)(1)(A)).

Those clarifying conditions codified the Comptroller's long-standing interpretation of the words "receives" and "order" in Tax Code section 321.002(a)(3)(A), and thus, where consummation occurs as specified in Tax Code section 321.203. The changes ensure that only locations where the seller initially receives orders in the regular course qualify, preventing artificial sourcing through automated or third-party facilities. In other words, the amendments clarify the

---

[1] The version of Rule 3.334 that went to trial and is on appeal in this case was initially published on April 19, 2024 (the "April 2024 Notice") and was adopted on June 28, 2024 (the "June 2024 Order"). 49 Tex. Reg. 2440–57; 49 Tex. Reg. 4797–808. In this brief, the Comptroller will cite to the Texas Register for the April 2024 Notice and the June 2024 Order for readability, however, both are available in the Clerk Record at CR 2532–50 (April 2024 Notice) and CR 2551–62 (June 2024 Order), respectively, and are included in the appendix at App. C and App. D.

statutory definition of place of business to align with its original intent and modern realities.

The demonstrative attached to Coppell's Opening Brief as Appendix Tab J is misleading and improper: it strikes through statutory language and inserts new text as though the Comptroller rewrote the statute. The Comptroller did no such thing. The Rule simply interprets the undefined terms "receives" and "order"—terms the agency has always construed to require involvement by the seller's personnel in receiving such orders. Agencies are entitled to reexamine and clarify their interpretations when business practices evolve, provided they follow the APA and give a reasoned explanation, which the Comptroller did repeatedly in the published preambles. *See* 45 Tex. Reg. 3499 (2020) (App. I); 49 Tex. Reg. 2440–42; 49 Tex. Reg. 4797–808.

The amendments to Rule 3.334 were promulgated for the following reasons, each of which was stated in the Rule preambles published in the Texas Register:

- To reflect the expansion of local tax collection obligations on remote sellers following *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018), and the enactment of Texas Tax Code section 151.0595 (single local use tax rate for remote sellers);

- To implement marketplace-provider legislation (H.B. 1525, 86th Leg., R.S. (2019) (App. M));

- To provide greater clarity to taxpayers regarding the long-standing consummation standards under which a physical location in Texas qualifies as a "place of business" for local-sales-tax-sourcing purposes;

- To reduce audit controversy and compliance burdens by explaining precisely how the Comptroller applies the statutory consummation rules in an era of e-commerce, automated order processing, and massive third-party fulfillment centers;

- To ensure consistent application of the "place of business" definition across all sellers (in-state and remote) and to prevent large out-of-state retailers from sourcing billions of dollars of Texas-bound sales to high-tax municipalities simply because a third-party warehouse or automated server happened to be located there; and

- To simplify local-tax compliance for small and micro-businesses by adding a presumption that a single location out of which a small or micro-business conducts all of its activities is a "place of business" of the seller.

See 45 Tex. Reg. 3499; 49 Tex. Reg. 2440–42. 49 Tex. Reg. 4797-808.

## C. Internet sales, fulfillment centers, and the changes to Rule 3.334 (Response to Coppell's Statement of Facts 3.).

The Comptroller's changes to Rule 3.334 were made in part in response to the rise of e-commerce. By going to a website, a purchaser is not virtually visiting an established physical location operated by a seller, but rather interacting with remote servers often located outside Texas or controlled by third parties, distinguishable in function from a seller's brick-and-mortar store with a very large inventory on display. 7 RR 180–81; 187–96; 11 RR 570–72. Once the purchaser identifies an item from the inventory accessed through the website and decides to purchase it, the purchaser enters a credit-card number, but the actual "receipt" of an order requires receipt of such order by the seller's agents at a place of business, not mere automated routing. 6 RR 73–74; 7 RR 196–97; 49 Tex. Reg. 2441. So, the purchaser's request is not

"received" in the statutory sense at the fulfillment center if it is merely routed there automatically; instead, it must be accessed and acknowledged by the seller's employees or agents in the regular course of business. 7 RR 180–81; 187–96; 11 RR 570–72.

Fulfillment centers are not, in other words, the 21st century's version of brick-and-mortar stores. They are often third-party warehouses or automated facilities where the seller has no direct control or personnel receiving orders, and the changes to the Rule beginning in 2020 often result in such centers not qualifying as places of business where they do not have "sales personnel." *See* 49 Tex. Reg. 2440–57 (outlining sections 3.334(a)(9); (a)(18); (b)(1)(A); (b)(5); (c)(7)).

### D. Coppell and local sales tax (Response to Coppell's Statement of Facts 4.).

Coppell claims it has promoted and supported fulfillment centers in its cities. However, the fulfillment centers rely exclusively on orders placed on websites linked by order-management software to computers at the center, but without genuine receipt of orders by the seller at those locations. 11 RR 570–72. They engage only in internet sales.

The loss of local sales tax will be modest in aggregate and offset by gains elsewhere, as explained in the Rule's fiscal note. 49 Tex. Reg. 2440–41. Coppell's losses will largely represent a gain to the other 1,700 local taxing entities. 49 Tex. Reg. 2441 (noting that "[m]ost, but not all, reductions in taxable transactions sourced to some jurisdictions would be increases in taxable transactions sourced to other jurisdictions" and that there are roughly "1,759 local sales taxing jurisdictions").

Internet sales have resulted in shifts in the pattern of local-sales-tax collections compared with the period before the advent of internet sales, and the Rule clarifies sourcing for the reasons stated *infra* section I. B.

The Coppell cities are sophisticated municipalities that have long benefited from interpreting the sourcing rules as allocating tax revenue based on the presence of fulfillment centers rather than on order receipt by the seller. The clarified Rule does not "take" any vested right; it simply requires that local sales tax be sourced in the manner the Comptroller has always interpreted the statute to require.

## II. Response to Coppell's Argument 2: Rule 3.334 does not contravene the plain meaning of "to receive" or "order" as those words are used in the Tax Code.

Coppell argues that how "orders" are "received" contravenes the statutory language of the Tax Code. The Comptroller has not redefined those terms and has merely provided context and clarity for taxpayers on how it will interpret and apply Rule 3.334.

### A. Rule 3.334 uses the plain meanings of the words "to receive" and "order" (Response to Coppell's Argument 2. A.).

The Comptroller agrees with Coppell that the plain meanings of the terms "receives" and "order" should control, unless reading the statute as a whole indicates that a more specific meaning is apparent. *See Tex. State Bd. of Examiners of Marriage and Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34 (Tex. 2017). That is of course precisely the situation in this case, and Coppell's devotion to ignoring the entire statute results in an incomplete interpretation.

**B.** **The Comptroller's interpretation of "place of business of the retailer" is proper, especially when read within the context and function of the entire local sales tax statute (Response to Coppell's Argument 2. B.).**

The Legislature has defined "place of business of the retailer" in the local tax statutes as:

> an established outlet, office, or location operated by the retailer or the retailer's agent or employee for the purpose of **receiving orders** for taxable items and includes any location at which three or more **orders** are **received** by the retailer during a calendar year. A warehouse, storage yard, or manufacturing plant is not a "place of business of the retailer" unless at least three **orders** are **received** by the retailer during the calendar year at the warehouse, storage yard, or manufacturing plant.

Tex. Tax Code § 321.002(a)(3)(A) (emphasis added). The key terms are the verb "receive" and the noun "order."

The Comptroller has not explicitly defined the words "receive" or "order" in its April 2024 Notice. *See* 49 Tex. Reg. 2440-57. Instead, in an attempt to provide context, clarity, and guidance to taxpayers and local taxing jurisdictions, the Comptroller has provided criteria for where and when order is deemed received. The adopted Rule 3.334(c)(7) states:

> The location where the order is received by or on behalf of the seller means the physical location of a seller or third party such as an established outlet, office location, or automated order receipt system operated by or on behalf of the seller where an order is initially received by or on behalf of the seller and not where the order may be subsequently accepted, completed or fulfilled. An order is received when all of the information from the purchaser necessary to the determination whether the order can be accepted has been received by or on behalf of the seller. The location from which a product is shipped shall not be used in determining the location where the order is received by the seller.

49 Tex. Reg. 2452. This standard does not contravene the dictionary definitions of "receive" or "order," as inaccurately suggested by Coppell. Coppell's Br. 19.

What Coppell suggests, instead, is that statutory interpretation must ignore the statute as a whole. Words are to be read in isolation, with slavish devotion to their strict dictionary meaning, with no room for larger context. This is of course absurd and contrary to standards of statutory interpretation. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) ("[W]e must always consider the statute as a whole rather than its isolated provisions."). Moreover, Coppell's standard would render all administrative rules null if they did not solely regurgitate what is in the statute. An administrative rule may not contravene the underlying statute, but it may elaborate, clarify, or otherwise implement the enabling legislation. Tex. Tax Code § 321.306 (allowing Comptroller to adopt rules for administration, collection, reporting, and enforcement of Tax Code).

In Rule 3.334(c)(7), the Comptroller has clarified when it will interpret that an "order is received." 49 Tex. Reg. 2452. Which is "when all of the information from the purchaser necessary to the determination of whether the order can be accepted has been received by or on behalf of the seller." 49 Tex. Reg. 2452. This is important because it is the fundamental task of an agency charged with implementing rules to state its interpretation of what the rule means. And this comports with Coppell's own suggested definition that "to receive" means "to get, accept, take, or acquire something." There must be some singular point in time and space when an "order is received" for purpose of sale consummation. Otherwise, local tax allocation would be an impossibility. The Comptroller has provided objective criteria that make it clear

when the Comptroller and taxpaying entities should consider the order received for tax reporting purposes.

Importantly, Coppell offers its own definition of "place of business" as "an established location operated by the retailer that has the purpose of getting requests from a purchaser to be supplied or delivered a taxable item or that gets at least three requests from a purchaser to be supplied a taxable item in a calendar year." Coppell's Br. 20-21. The actual statute requires the location to be "operated by the retailer or the retailer's agent or employee for the purpose of receiving orders for taxable items" and expressly declares that a "warehouse, storage yard, or manufacturing plant is not a 'place of business of the retailer' unless at least three orders are received by the retailer during the calendar year at the [warehouse, storage yard, or manufacturing plant]." Tex. Tax Code § 321.002(a)(3)(A). Coppell's version silently deletes the "agent or employee" clause, the "for the purpose of receiving orders" clause, and the entire warehouse exclusion—three separate legislative guardrails designed to prevent exactly the result Coppell seeks: treating automated fulfillment centers as places where orders are "received." By omitting these provisions, Coppell's definition gives no credence whatever to the remainder of the statute and instead substitutes its own policy preference for the Legislature's text.

Coppell also paraphrases the operative statutory language as requiring only that a location "get[] requests from a purchaser to be supplied or delivered a taxable item", thereby replacing the verb "receives" with the far more passive "gets" and swapping the term "order" that the Legislature actually used with the amorphous "request ... to be supplied or delivered." Coppell's Br. 20–21. These substitutions

14

are not innocent. "Gets" eliminates any connotation of active acceptance or processing by the seller's agent, while "request ... to be supplied or delivered" would encompass everything from a casual inquiry to automated data packets that bear no resemblance to a retail "order."

In supplying this definition, Coppell is attempting to usurp the Legislature and Comptroller's role in interpreting and implementing tax statutes, while simultaneously redefining a legislatively defined phrase. Whereas the Comptroller adds clarity to what the undefined words "receive" and "order" mean in the context of the Tax Code, Coppell seeks to change the actual words already supplied by the Legislature. After all, the Legislature has defined "place of business of the retailer" in Chapter 321, there is no reason for Coppell to offer its own definition. Tex. Tax Code § 321.002(a)(3)(A).

C. **Coppell's use of statutory history provides no guidance to the meaning of today's statute and is just a vehicle to pass off legislative history as authoritative interpretation (Response to Coppell's Argument 2. C.).**

Coppell argues that statutory history can guide the Court (but instead provides the Court with legislative history and conjuncture) to reach a conclusion that the Legislature intended for sales to be consummated at multiple locations (but then provided no way to determine where the local tax should be sent). This Court should reject the speculative arguments Coppell makes that would result in a dysfunctional sales tax consummation scheme.

### 1. Coppell's statutory history argument is really just legislative history and (Response to Coppell's Argument 2. C. 1.).

Coppell argues that statutory history can help guide a court's interpretation of a statute, thus the history of the definition of "place of business" can help understand how it should be understood today. However, Coppell immediately deviates from that principle to engage in speculation about why laws changed, instead of how they changed. Coppell's Br. 24.

Instead of statutory history, Coppell spends pages referring to legislative bill analysis, appellate decisions, Comptroller administrative decisions from 1967 and 1975, and old positions of the Comptroller in court cases. Coppell's Br. 21-24. In determining legislative intent, Coppell does everything except rely on the plain language of the statute. Instead, it invents a narrative about why the Legislature supposedly acted. This should be disregarded by this Court as it would disregard any other speculation or legislative history. *City of Richardson v. Oncor Elec. Delivery Co. LLC*, 539 S.W.3d 252, 261 (Tex. 2018) ("When a statute is clear and unambiguous ... we do not resort to extrinsic interpretive aids, such as legislative history, because the statute's plain language is the surest guide to the Legislature's intent.") (citation modified) (quoting *Paxton v. City of Dallas*, 509 S.W.3d 247, 257 (Tex. 2017)). The words in the statute can and should control. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam) (noting that where "language is unambiguous, [courts] interpret the statute according to its plain meaning.").

Coppell goes further and illustrates the central problem the Comptroller seeks to avoid. Coppell argues that the Legislature "confirmed its understanding,

consistent with the plain meaning of 'receives' and 'order,' that the same order could be received at different locations." Coppell's Br. 27. But for administration of the sales tax statutes, an order must be "received" at only one location, so that the sale can be consummated at that location, and accordingly local sales tax rates applied and distributed to the taxing entities. By providing clarity to the consummation hierarchy as found in Texas Tax Code section 321.203, Comptroller's Rule 3.334 ensures that sales will be consummated at one location. 49 Tex. Reg. 2446.

## 2. Coppell's reasoning would mean the Legislature intended an unworkable consummation statute where sales occurred at multiple locations (Response to Coppell's Argument 2. C. 2).

Coppell posits that it can confirm that the Legislature intended for it to be possible that "more than one established location operated by a retailer" can receive an order. Coppell's Br. 28. Its evidence for this is not the plain language of the statute. Instead, Coppell believes that the Legislature made changes to the sales tax consummation statute in response to *Combs v. City of Webster*. Coppell's Br. 29. Coppell purports to have this knowledge due to a bill sponsor's Statement of Intent. Coppell's Br. 30. This is textbook legislative history and should be disregarded. *City of Richardson*, 539 S.W.3d at 261.

Coppell's reliance on *Combs v. City of Webster* is misplaced because the Austin Court of Appeals explicitly found "no evidence showing that a sufficient number of orders were received at the warehouses." 311 S.W.3d 85, 98 (Tex. App.—Austin 2009, pet. denied). This holding implies that orders forwarded to warehouses for mere fulfillment do not constitute "receipt" at those locations under the statute.

Thus, *Webster* supports the Comptroller's interpretation that automated or passive routing to a fulfillment center does not qualify as receiving an order.

Coppell's analysis depends on the 2009 amendments to section 321.203(c), which adds that a sale is consummated at a retailer's place of business "in this state where the retailer first receives the order, **provided that the order is placed in person by the purchaser.**" Tex. Tax Code § 321.203(c) (West 2009) (App. O) (added by Acts 2009, 81st Leg., ch. 1360, § 5, eff. June 19, 2009) (emphasis added). While the 2009 legislation prioritized in-person sales over delivered sales for sourcing purposes, it left the statutory definition of "place of business" untouched. The amendments did not expand that definition to automatically include every fulfillment warehouse as a place of business. Accordingly, the Comptroller's rule clarification aligns with the unchanged legislative framework by requiring genuine order receipt by the seller.

Contrary to Coppell's assertions, this does not show Legislative intent that an order can be received at multiple locations. It shows Legislative intent that an order placed in person is only received at the location where the in-person purchase takes place. It does not ratify consummation at multiple locations—which is the problem to be avoided—but ensures that consummation will be at the place most associated with the sale. This interpretation is entirely consistent with the Comptroller's rulemaking.

The local sales tax consummation statute functions effectively only if an order is deemed "received" just once, at a single qualifying place of business. *See, e.g.*, 49 Tex. Reg. 2441. It is reasonable for the Comptroller to interpret the statute as

excluding multiple "receipts" by the same vendor merely because an order passes through various hands or systems en route to delivery. The consummation hierarchy accounts for businesses having multiple places of business at which orders may be received, but does not permit an order to be received more than once. *See* Tex. Tax Code § 321.203. This approach prevents sourcing manipulation and ensures fair tax allocation.

**D.     The Comptroller has not previously accepted Coppell's current interpretation of sales tax consummation (Response to Coppell's Argument 2. D.).**

Coppell argues that the Comptroller has engaged in some type of regulatory acceptance through its prior interpretations of the Tax Code. Coppell's Br. 33. Coppell's position is that if a statute has been "given a longstanding construction by a proper administrative officer" and is "re-enacted without substantial change, the Legislature is presumed to have been familiar with that interpretation and to have adopted it." *Tex. Dep't. of Protective and Regulatory Services v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex. 2004). It is of course prudent to presume that the Legislature is familiar with court cases and Comptroller rules. *Id.* But Coppell has specifically pointed out that "until 2020, the Comptroller had never in a rule placed any conditions" on sale order receptions. Coppell's Br. 33. The Comptroller amended Rule 3.334 by incorporating prior, reasonable applications of the statute to assist taxpayers and auditors in interpreting both defined and undefined terms like "receives" and "order." These clarifications codify long-standing agency practices without altering the underlying law. As a result, the Rule promotes uniformity and reduces audit disputes. The preamble to the June 2024 Order identifies several pre-

2020 instances where the Comptroller determined that the shipping location was not necessarily where the order was "received." 49 Tex. Reg. 4800-01. The pre-2020 instances include older Comptroller rules and Comptroller private letter rulings. *See, e.g.,* 41 Tex. Reg. 260, 265 (2016); Comptroller Letter Ruling (Star Accession No.) 200510723L (2005) (App. Q). These examples demonstrate the agency's consistent view that fulfillment alone does not establish order receipt. This history underscores that the 2020–2024 amendments merely clarified, rather than changed, existing policy.

Coppell cannot point to a "longstanding construction by a proper administrative officer" to invoke the *Mega Child Care* holding, because the absence of a rule is not the same as an actual rule or interpretation. 145 S.W.3d at 176. And this must be the case because, otherwise, no new rules covering previously untouched territory could ever be enacted. This Court should disregard Coppell's regulatory acceptance argument. Coppell's argument is essentially that if the Comptroller has not previously issued a rule, then that is a longstanding agency interpretation, and therefore accepted by the Legislature and is henceforth binding. But the Legislature did not impose time restrictions on when the Comptroller may enact rules regarding the administration of Chapter 321.

Coppell further argues in a footnote that the Comptroller has "supported bills that would have amended Chapter 321 to make it consistent" with Rule 3.334. Coppell's Br. 34, n.33. Bills that have not become law—regardless of an agency's position on them—should not guide this Court's interpretation of the actually enacted statutes. *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex.

2009) (noting that courts "attach no controlling significance to the Legislature's failure to enact [legislation]") (quoting *Tex. Employment Comm'n v. Holberg*, 440 S.W.2d 38, 42 (Tex. 1969)).

## III. Response to Coppell's Argument 3: Rule 3.334's regulatory provisions neither contravene the statute nor displace origin-sourcing.

Beginning in 2020, and concluding in 2024, the Comptroller amended Rule 3.334 to provide clarity for taxpayers and local taxing jurisdictions about where sales tax should be sourced. This is especially true for sales made online by businesses with more than one place of business in the state of Texas. The trial court invalidated some of the amended portions of Rule 3.334. CR 2797-99. The Comptroller has given reasons for the amendments and detailed why the trial court incorrectly ruled against the Comptroller in its opening brief. The Comptroller reiterates those arguments as follows:

- Rule 3.334(a)(9) on "fulfill;"

- Rule 3.334(a)(18) on what is a "place of business of the seller;"

- Rule 3.334(b)(5) on what is not a "place of business of the seller;" and

- Rule 3.334(c), applying to "all sellers."

Comptroller's Br. 12–24.

However, the trial court correctly held that it could not "prospectively declare Fulfillment Centers as places of business." CR 2798. Coppell did not ask for relief on this issue.

In its conclusions of law, the trial court also found that Rule 3.334(b)(1)(A) is a "descriptive statement within the meaning of Texas Tax Code section 321.002(a)(3)(A)." CR 2847. Coppell appears to take issue with those rulings in its briefing. *See* Coppell's Br. 34-37. But Coppell offers no reasons as to why the trial court's judgment is incorrect or why this Court should find that section invalid.

Coppell complains that "[n]ot one of the limiting conditions on what is a place of business imposed by the Comptroller in [Rule] 3.334 is found in the statutory definition of that term." Coppell's Br. 37. But of course, if the definitions were included in the statute, there would be no need for administrative rulemaking. Coppell's actual complaint about the language in Rule 3.334 is that the Comptroller has allegedly added words to the statute. Coppell's Br. 37. But this is not correct. The Comptroller has merely interpreted the statute within the scope of its legislative mandate. *See, e.g.*, Comptroller's Br. 42-44.

Interpreting and implementing the statute is within the Comptroller's authority issued from the Texas Legislature. *See Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993) ("Construction of a statute by an administrative agency charged with its enforcement is entitled to serious consideration."). The Legislature spoke clearly: "The comptroller may adopt reasonable rules and prescribe forms that are consistent with this chapter for the administration, collection, reporting, and enforcement of this chapter." Tex. Tax Code § 321.306. Coppell's problem is not that the Comptroller's rule contravene the statute, but that the Comptroller adopted rules at all.

**IV.** **Response to Coppell's Argument 4: The Comptroller's interpretation of the statute and implementation of Rule 3.334 are consistent with the plain meaning of the challenged terms.**

Coppell argues that the Comptroller "argued that term of art, context, and avoiding absurdity required rejection of the plain meanings of 'receives' and 'order.'" Coppell's Br. 37. Coppell has misunderstood the Comptroller's trial court arguments, which are stated more completely in the Comptroller's Cross-Appellant's brief.

**A.** **Coppell's argument that the Comptroller redefined "receive" and "order" fails because the Comptroller did not define those terms (Response to Coppell's Argument 4. A.).**

Coppell asserts that the legislatively defined phrase "place of business of the retailer" is not a term of art. Coppell's Br. 38. This argument does not matter. The Legislature requires that "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Tex. Gov't Code § 311.011(b). Whether or not "place of business of the retailer" is a term of art, it is undeniably legislatively defined. Tex. Tax Code § 321.002(a)(3)(A). That legislative definition controls.

It is true that the Comptroller stated in its June 2024 Order that "place of business" is a "term of art." 49 Tex. Reg. 4798. But this has no bearing on the Comptroller's interpretation, because the Comptroller correctly recognized that "the term is more limited than its plain and ordinary meaning," which is appropriate whether a particular phrase is a term of art or is legislatively defined. *Id.* The plain meaning of a phrase does not control when the Legislature has defined the phrase. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010)

("We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition[.]"). Additionally, the Comptroller's interpretation of the phrase "place of business" in Rule 3.334 is consistent with the Legislative definition. *See* Comptroller's Br. 14-19. Besides, if we were to apply the plain meaning of the phrase "place of business of the retailer," it is doubtful anyone would conjure to mind images of robotic fulfillment centers or server farms.

Coppell spends a great deal of ink opining that the Comptroller could not define the terms "receive" or "order." *See* Coppell's Br. 38-39. The problem with this argument is that the Comptroller did not define the terms "receive" or "order." *See generally* 49 Tex. Reg. 2440–57; 49 Tex. Reg. 4797–808. The Comptroller has instead given a "clear articulation of the comptroller's interpretation of the term 'received'" and when an order is deemed to be received. 49 Tex. Reg. 4801. Interpretation and provision of criteria is different than redefining a statute. The Comptroller's interpretation is found in Rule 3.334(c)(7) and reads:

> The location where the order is received by or on behalf of the seller means the physical location of a seller or third party such as an established outlet, office location, or automated order receipt system operated by or on behalf of the seller where an order is initially received by or on behalf of the seller and not where the order may be subsequently accepted, completed or fulfilled. An order is received when all of the information from the purchaser necessary to the determination whether the order can be accepted has been received by or on behalf of the seller. The location from which a product is shipped shall not be used in determining the location where the order is received by the seller.

49 Tex. Reg. 2452. This cannot plausibly be read to be a defining of "receive." It is instead a clarification of when the Comptroller will interpret a sale as being received. The interpretation is entirely consistent with the legislative language.

**B.    Statutes must be read as a whole, yet Coppell would ignore crucial language to reach its own preferred outcome (Response to Coppell's Argument 4.B.).**

Coppell argues that the language "for the purpose of receiving orders," as used by the Legislature in the Tax Code, does not provide context for interpreting the Tax Code. Coppell's Br. 39-41. This argument defies the requirement that statutes be read as a whole and in context. *See, e.g.*, *TGS-NOPEC Geophysical Co v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("[I]f a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning[.]"); Tex. Gov't Code § 311.011(a) ("[W]ords and phrases shall be read in context[.]").

Cutting to the heart of the matter: Coppell wants fulfillment centers to be the place where sales are consummated for purposes of local sales tax allocation. *See* Coppell's Br. 36. But a fulfillment center does not typically have anything to do with "receiving" the "order" of a sale of a good, except perhaps shipping it to the purchaser. Rule 3.334 clarifies that fulfillment centers are not automatically places of business unless they meet certain objective criteria—which is true of every place of business. 49 Tex. Reg. 2449-51 (outlining § 3.334(a)(18); (b)(1)(A)). A fulfillment center can become a place of business for sales tax purposes, but it is not automatically one. *Id.* at 2443 ("A fulfillment center that is not a 'place of business'

under the [] rule could easily become one by directly receiving three or more orders.")

### C. Coppell would ignore helpful model language (Response to Coppell's Argument 4. C.).

Coppell argues that the Comptroller has relied on the Streamlined Sales and Use Tax Agreement in adopting the language in Rule 3.334(c)(7). Coppell's Br. 41-42. It is true that the Comptroller adopted language which is also used in the Streamlined Agreement. *See* 48 Tex. Reg. 6340–41 (2023) (App. J). And the State of Texas did not adopt the Streamlined Agreement. But nothing prevents the Comptroller or Legislature from taking parts of the Streamlined Agreement, while ignoring other parts—and other state interpretations of that agreement. *In re Swift Transp. Co., Inc.*, 311 S.W.3d 484, 490 n.2 (Tex. App.—El Paso 2009, no pet.) ("The decisions of other courts, by contrast, may be persuasive but are not binding on us."). This Court should consider any language in the statute and in Rule 3.334 on its own—without relying on other states' interpretations. *Id.* To the extent the Comptroller cites to the Streamlined Agreement and the approval of the language by twenty-four other states, the Comptroller was giving context for its reasoning in adopting that particular language, but it never suggested that such context was controlling on this Court or any other court.

The Comptroller's interpretation of the language in Rule 3.334(c)(7) is consistent with the statutory scheme. Surely providing context for where language comes from can only aid interested parties when an agency is adopting an administrative rule. And equally surely, had the Comptroller merely adopted this

26

tried and tested language without stating its source, Coppell would be making the opposite complaint—that the Comptroller is not revealing all information it has.

**D.     Coppell's remaining three arguments fail (Response to Coppell's Argument 4. D.).**

Coppell argues: (1) that the Comptroller is attempting to ignore the plain language of the statute under the absurdity doctrine; (2) that section 321.203(d) prohibits Rule 3.334; and (3) that a "paper segregation" doctrine should control. All three fail.

**1.     The Comptroller did not invoke the absurdity safety valve.**

Coppell argues that the Comptroller wants to defeat plain meaning of the statute by invoking an asserted absurdity. Coppell's Br. 42-47. This is not true. Coppell's argument hinges entirely on the Comptroller using the word "absurdity" in its trial court briefing. CR 2707.

There are two absurdity rules when it comes to interpreting statutes. The more drastic states that if using the plain meaning of a word in a statute would create an absurd result, then the plain meaning may be ignored. *See Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 569 (Tex. 2014) ("Courts should not enforce the plain meaning of a statute's text if doing so leads to absurd or nonsensical results") (citation modified). At no point in the rulemaking process, or in any of the trial court proceedings did the Comptroller suggest that one must avoid the plain meaning of the statute's text, as required for the absurdity safety valve. *See Combs v. Health Care Serv. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) ("[The] bar for reworking the words our Legislature passed into law is high, and should be. The absurdity safety valve is

reserved for truly exception cases, and mere oddity does not equal absurdity."). Nor does the Comptroller do so now. The Comptroller did use the word "absurd" in its briefing. But this is not akin to invoking the absurdity doctrine.

Instead, the Comptroller argued that statutes must be interpreted to avoid absurd results. *Castleman v. Internet Money Limited*, 546 S.W.3d 684, 688 (Tex. 2018) ("[W]e must make logical inferences when necessary to effect clear legislative intent or avoid an absurd or nonsensical result that the Legislature could not have intended.") (citation modified). This is an important distinction. The Comptroller wants to avoid absurd results, whereas Coppell thinks the Comptroller is attempting to avoid the language of the statute. Coppell is constructing a strawman and it should be rejected. The Comptroller is simply interpreting the statute and implementing a rule that clarifies the singular point that an order will be deemed received for purposes of tax consummation.

### 2. Section 321.203(d) does not prohibit Rule 3.334.

Coppell argues that section 321.203(d) of the Texas Tax Code proscribes the Comptroller's Rule. *See* Coppell's Br. 43-46. That section reads:

> (d) If the retailer has more than one place of business in this state, and Subsections (c) and (c-1) do not apply, the sale is consummated at:
>
> > (1) the place of business of the retailer in this state where the order is received; or
> >
> > (2) if the order is not received at a place of business of the retailer, the place of business from which the retailer's agent or employee who took the order operates.

Tex. Tax Code § 321.203(d). Put simply, the Tax Code provides that if a buyer places an order, the order is not made in person, and the seller has more than one place of business in Texas, then the sale will be consummated at place where the order is received ((d)(1)) or the place where the seller's employee operates ((d)(2)). Tex. Tax Code § 321.203(d).

Coppell's interpretation is that the fulfillment center would be the place of business for consummation purposes. Coppell's Br. 19-21. The Comptroller's Rule clarifies that the "location where the order is received … means the physical location of a seller … where an order is initially received … and not where the order may be subsequently accepted, completed, or fulfilled." 49 Tex. Reg. 2452 (outlining Rule 3.334(c)(7)). Although Coppell makes much about the Comptroller attempting a transition from "origin sourcing" or "destination sourcing," the Comptroller's Rules actually clarifies that most sales will still be consummated at the place where the order is received—and not the location of the buyer. Coppell's Br. 12–13; 49 Tex. Reg. 2446. But subsection (d) is not a final catchall which prohibits further interpretation by the Comptroller, as subsection (e) still exists, and there are situations where clarity is needed.

### 3. Coppell's "paper segregation" has no support.

Coppell is asking this Court to adopt a novel theory of "paper segregation." Coppell's Br. 45-47. This theory finds no support in Texas nor any other state and is based on Coppell's misreading of an argument rejected by an appellate court in 1979. *See Bullock v. Dunigan Tool & Supply Co.*, 588 S.W.2d 633 (Tex. App.—Austin 1979, writ ref'd n.r.e.). This Court should not adopt this theory now. Interestingly, the term

"paper segregation" does not appear at any point in Texas law outside the *Dunigan* case. *See id.* at 635. In fact, *Dunigan* uses the phrase "paper separation." *Id.* But neither phrase appears in any other cases, treatise, textbook. Nor does the Comptroller ever use it in its STAR system. The term was coined by the *Dunigan* court, not the Comptroller in a rulemaking *See id.* at 633. It is not used in the Comptroller's rulemaking or briefing.

The paper segregation theory goes like this: A sale can be consummated where "physical segregation" takes place. Coppell's Br. 45-46. That is, where the item being sold is physically transferred to the buyer. "Paper segregation" takes place when an order is accepted. Coppell's Br. 46-47. That is, where the segregation in inventory takes place—but on paper only, not actually accounting for eventual delivery or possession by the buyer. Coppell did not raise this argument before the trial court. For the first time in this Court, Coppell advances the theory. Nevertheless, the theory is unavailing and should be rejected.

According to Coppell, the Legislature, in response to *Dunigan*, created a consummation-by-paper-segregation standard in the Tax Code. Coppell's Br. 45-46. Coppell writes that the "Legislature has decided where consummation occurs in the limited (d)(1) situation: where paper segregation happens." Coppell's Br. 47. But this is not true by the plain language of the bill in question:

> For the purpose of determining the proper local sales tax Imposed by this Act, a retail sale, lease, or rental is consummated as provided in Paragraphs (a), (b), (c), and (d) of this subdivision, regardless of where transfer of title or possession or segregation in contemplation of transfer of title or possession of the taxable item occurs unless the tangible personal property sold, leased, or rented is delivered by the retailer or

his agent to an out-of-state destination or to a common carrier for delivery to an out-of-state destination.

S.B. 582, 66th Leg., R.S. (1979) (enrolled version, pp. 1401–02) (App. N). Nor does the current sales tax statute create any type of "paper separation" standard. Tex. Tax Code § 321.203(a) ("A sale is consummated as provided by this section regardless of the place where transfer of title or possession occurs.").

Additionally, Coppell misinterprets the Court of Civil Appeal's use of "paper separation." That court actually rejected the argument that Coppell now advances, writing that "consummation of a taxable sale can occur where physical segregation happens or where paper segregation occurs." Coppell's Br. 46. The Court explicitly stated that because the statutes in question accounted for consummation at "the exact point of sale where physical separation or segregation take place" there was no need to consider any alternative "paper separation" arguments. *Dunigan*, 588 S.W.2d at 637.

## V. Response to Coppell's Argument 5: Rule 3.334 faithfully implements the statutory text in light of technological advancements.

Coppell's contention that the amended subsections of Rule 3.334 are tethered to an "outdated sales model—person to person" mischaracterizes both the Rule's operation and the breadth of the governing statutes, Tax Code §§ 321.002(a)(3)(A) and 321.203. Far from ignoring technological developments, the Rule modernizes local sales tax sourcing by anchoring "place of business" to physical locations where orders are substantively received while accommodating e-commerce through clear, administrable criteria. 49 Tex. Reg. 2450–51. This approach aligns with the statutes' purpose of allocating local tax revenue to physical places of business rather than

arbitrary virtual footprints like servers or IP addresses. Tex. Tax Code § 321.002(a)(3)(A). Coppell's contrary reading would tax based on server farms rather than where the sale is substantively consummated, contrary to the statutory text and legislative intent. 45 Tex. Reg. 3501. Rule 3.334 ensures administrable local taxation without contravening the statutory text or legislative intent.

### A. New rules were needed to encompass purely virtual locations.

Coppell asserts that the statutes' language is "broad enough to include new approaches based on technological developments," implying that digital elements like websites or data centers qualify as a "place of business" under § 321.002(a)(3)(A) without physical personnel or actual receipt of orders. Coppell's Br. 47. This overlooks the statutes' integrated framework, which ties consummation to a "place of business" defined as "an established outlet, office, or location operated by the retailer or the retailer's agent or employee," explicitly qualified by "for the purpose of receiving orders." Tax Code § 321.002(a)(3)(A). The phrase "receiving orders" is not surplusage; it denotes substantive business activity at that location, not passive digital hosting. *See In re Tex. Educ. Agency*, 619 S.W.3d 679, 687 (Tex. 2021) (orig. proceeding) ("[W]e construe the Legislature's chosen words and phrases within the context and framework of the statute as a whole, not in isolation.").

The Rule's requirement of "sales personnel" or actual receipt of orders—whether via phone, in-person, or digitally routed through a website—precisely implements this by ensuring the "place" is where a transaction is substantively consummated. 49 Tex. Reg. 2451 (outlining § 3.334(b)(5)). This is not a person-to-

person relic; it reflects that modern e-commerce still relies on personnel for order intake, verification, and fulfillment decisions, even if initiated online.

**B.     The Rule's promotes technological innovation by simplifying compliance and aligning the sales tax with economic benefit.**

Contrary to Coppell's portrayal, the Rule does not "limit" the statutes to an obsolete model; it facilitates e-commerce growth by providing bright-line rules for remote sellers. Without the "sales personnel" or order receipt criterion, sellers could base order receipt on digital presences alone, complicating audits and eroding trust in the system. The Comptroller's over forty-year interpretive history, including pre-2020 guidance as to sales personnel and receiving orders, confirms this is not a retroactive shift but a necessary clarification. *See* 4 Tex. Reg. 3618, 3621; 39 Tex. Reg. 9597, 9604; 41 Tex. Reg. 260, 262.

Coppell cites no authority that "broad" statutory language mandates including every innovation without limits; indeed, statutory construction requires harmonizing text with purpose. *See TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 439. Here, the statute's goals demand adaptation to e-commerce without subsidizing virtual "businesses" that do not receive orders. The Rule achieves this, refuting any claim of obsolescence. In sum, the Rule is a forward-looking safeguard, not a backward glance.

## CONCLUSION AND PRAYER

Coppell is asking this Court to render the same judgment as the trial court, but with an opinion attached. Instead, this Court should deny Coppell's requested relief,

and reverse and render judgment in favor of the Comptroller as requested in the Comptroller's cross-appellant brief.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**STEVEN ROBINSON**
Division Chief, Tax Litigation Division

*/s/ Kyle Pierce Counce*

**KYLE PIERCE COUNCE**
Deputy Division Chief
State Bar No. 24082862
T: (512) 463-3112
Kyle.Counce@oag.texas.gov

**PETER BERQUIST**
Assistant Attorney General
State Bar No. 24131255
T: (512) 936-1383
Peter.Berquist@oag.texas.gov

Tax Litigation Division
P. O. Box 12548
Austin, Texas 78711-2548
F: (512) 478-4013

Counsel for Appellee/Cross-Appellants

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirement of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. 9.4(i) because it contains 8983 words, excluding any parts exempted by Tex. R. App. 9.4(i)(1), as counted by the computer program used to prepare this document.

/s/ Kyle Pierce Counce

KYLE PIERCE COUNCE

## CERTIFICATE OF SERVICE

I certify that a copy of this document was served on all counsel of record by e-mail and/or e-service on November 26, 2025.

James B. Harris
Jim.Harris@hklaw.com
Stephen F. Fink
Stephen.Fink@hklaw.com
Reed C. Randel
Reed.Randel@hklaw.com
Richard B. Phillips, Jr.
Rich.Phillips@hklaw.com
HOLLAND & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 964-9500

Brandon L. King
Brandon.King@hklaw.com
HOLLAND & KNIGHT LLP
98 San Jacinto Boulevard, Suite 1900
Austin, Texas 78701
*Counsel for Appellants/Cross-Appellees*

Cindy Olson Bourland
Bourland@bourlandlaw.com
BOURLAND LAW FIRM, PC
P.O. Box 546
Round Rock, Texas 78680

Bryan Dotson
Bryan.Dotson@chamberlainlaw.com
WHITE, WILLIAMS, & AUGHTRY, P.C.
112 East Pecan Street, Suite 1450
San Antonio, Texas 78205
(210) 278-5844
*Counsel for Appellee*

/s/ Kyle Pierce Counce

KYLE PIERCE COUNCE

# INDEX OF APPENDICES

Final Judgment ..................................................................Appendix A

Conclusions of Law.............................................................. Appendix B

49 Tex. Reg. 2440–57 (Apr. 29, 2024) ("April 2024 Notice") ................Appendix C

49 Tex. Reg. 4797–4808 ( June 28, 2024) ("June 2024 Order").............Appendix D

34 Tex. Admin. Code § 3.334................................................ Appenidx E

4 Tex. Reg. 3618–29 (1979) .................................................. Appendix F

39 Tex. Reg. 9596–611 (2014) .............................................. Appendix G

41 Tex. Reg. 260–69 (2016) ................................................. Appendix H

45 Tex. Reg. 3499–3518 (2020)............................................... Appendix I

48 Tex. Reg. 6340–50 (2023) ................................................. Appendix J

Acts 1967, 60th Leg., R.S., ch. 36..........................................Appendix K

Acts 1979, 66th Leg., R.S., ch. 624, § 6(B)(1)......................................... Appendix L

H.B. 1525, 86th Leg., R.S. (2019).........................................Appendix M

S.B. 582, 66th Leg., R.S. (1979) (enrolled version, pp. 1401–02) ........... Appendix N

Tex. Tax Code § 321.203(c) (West 2009)............................................. Appendix O

Comptroller's Decision No. 15,654 (1985) ........................................... Appendix P

Comptroller Letter Ruling (Star Accession No.) 200510723L (2005) ... Appendix Q

# APPENDIX A

CAUSE NO. D-1-GN-21-003198*

(Consolidated with D-1-GN-21-003203)

| | | |
|---|---|---|
| CITY OF COPPELL, TEXAS, | § | IN THE DISTRICT COURT OF |
| CITY OF HUMBLE, TEXAS, | § | |
| CITY OF DESOTO, TEXAS, | § | |
| CITY OF CARROLLTON, TEXAS, | § | |
| CITY OF FARMERS BRANCH, TEXAS, and | § | |
| CITY OF ROUND ROCK, TEXAS, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | TRAVIS COUNTY, TEXAS |
| v. | § | |
| | § | |
| GLENN HEGAR, in his official capacity | § | |
| as Comptroller of Public Accounts of | § | |
| the State of Texas, | § | |
| | § | |
| *Defendant*. | § | 201ST JUDICIAL DISTRICT |
| | § | (*Assigned to the 250th District) |

**FINAL JUDGMENT**

On October 14–16, 2024, the Court heard the merits of these consolidated causes. Attorneys James Harris and Reed Randel appeared for Plaintiffs City of Humble, Texas; City of Desoto, Texas; City of Carroll, Texas; City of Coppell, Texas; and City of Farmers Branch, Texas (the Coppell Plaintiffs). Attorneys Cindy Olsen Bourland and Bryan Dotson appeared for Plaintiff City of Round Rock, Texas (the Round Rock Plaintiff). Attorneys Kyle Counce and Ray Langenberg appeared for Defendant Comptroller of Public Accounts of the State of Texas (the Comptroller). The parties announced ready and proceeded to trial.

After careful consideration of the evidence and arguments of counsel, the Court renders judgment as follows:

The Court FINDS that Section 321.002(a)(3)(A) of the Tax Code requires a determination of whether at least three orders were received by the retailer during the calendar year. Therefore, the Court cannot prospectively declare Fulfillment Centers as places of business.

Accordingly, the Court FINDS that Coppell Plaintiffs' request to declare Fulfillment Centers receiving only Website Orders places of business under the 2016 version of 34 TAC § 3.334 should be and is DENIED.

The Court FINDS that 34 TAC § 3.334(a)(9) contravenes existing statutes by adding a definition at the agency level that the Legislature has not defined in Chapter 151 of the Texas Tax Code and for which Sections 321.203 and 323.203 already provide a detailed statutory scheme for determining where a sale of taxable item is "consummated."

The Court FINDS that 34 TAC § 3.334(a)(18), (b)(5), and (c) contravene specific statutory language set forth in Texas Tax Code sections 321.002(a)(3)(A), 321.203, and 323.203.

The Court FINDS that 34 TAC § 3.334(c) [(c)(1) and (c)(2) inclusive] contravenes the statutory schemes for determining where a sale is consummated, under Sections 321.203 and 323.203.

The Court FURTHER FINDS that the Comptroller did not substantially comply with the notice requirements under the APA.

The Court FURTHER FINDS that Defendant Comptroller did not substantially comply with the "reasoned justification" requirement under the APA.

IT IS JUDICIALLY DECLARED that 34 TAC § 3.334 or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the Coppell Plaintiffs.

IT IS JUDICIALLY DECLARED that 34 TAC § 3.334 or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the Round Rock Plaintiff.

IT IS THEREFORE ORDERED that Defendant Comptroller of Public Accounts of the State of Texas is hereby PERMANENTLY ENJOINED from enforcing 34 TAC § 3.334, subsections (a)(9), (a)(18), (b)(5), and (c), effective July 4, 2024, and those subsections are hereby REMANDED to the Comptroller of Public Accounts of the State of Texas for further consideration not inconsistent with Chapters 151, 321, and 323 of the Texas Tax Code.

All other relief not expressly granted herein is DENIED. This judgment finally disposes of all parties and all claims and is appealable.

Signed on this third day of December 2024,

_____
KARIN CRUMP
JUDGE PRESIDING
250th DISTRICT COURT



# APPENDIX B

CAUSE NO. D-1-GN-21-003198*

(Consolidated with D-1-GN-21-003203)

| | | |
|---|---|---|
| CITY OF COPPELL, TEXAS, | § | IN THE DISTRICT COURT OF |
| CITY OF HUMBLE, TEXAS, | § | |
| CITY OF DESOTO, TEXAS, | § | |
| CITY OF CARROLLTON, TEXAS, | § | |
| CITY OF FARMERS BRANCH, TEXAS, and | § | |
| CITY OF ROUND ROCK, TEXAS, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| GLENN HEGAR, in his official capacity | § | |
| as Comptroller of Public Accounts of | § | |
| the State of Texas, | § | |
| | § | |
| *Defendant*. | § | 201ST JUDICIAL DISTRICT |
| | § | Assigned to the 250th District Court |

**CONCLUSIONS OF LAW**

On December 3, 2024, the Court issued its Final Judgment for this cause. The Coppell Plaintiffs' Request for Findings of Fact and Conclusions of Law was filed on December 23, 2024. On December 30, 2024, the Coppell Plaintiffs informed the Court that they have "concluded that findings of fact are unnecessary in this case [and] therefore withdraw that portion of the December 3, 2024 request for findings of fact." Accordingly, the Court hereby issues the following Conclusions of Law:

1. 34 Texas Administrative Code (TAC) § 3.334(a)(9) contravenes existing statutes by adding a definition at the agency level that the Legislature has not defined in Chapter 151 of the Texas Tax Code and for which Sections 321.203 and 323.203 already provide a detailed statutory scheme for determining where a sale of taxable item is "consummated."

2. 34 TAC § 3.334(a)(18), (b)(5), and (c) contravene specific statutory language set forth in Texas Tax Code sections 321.002(a)(3)(A), 321.203, and 323.203.

CONCLUSIONS OF LAW
Cause No. D-1-GN-21-003198 (Consolidated)

3.     34 TAC § 3.334(c) [(c)(1) and (c)(2) inclusive] contravenes the statutory schemes for determining where a sale is consummated, under Sections 321.203 and 323.203.

4.     34 TAC § 3.334(b)(1)(A), when read in conjunction with its (b)(1)(B), is a descriptive statement of those circumstances when a distribution center, manufacturing plant, storage yard, warehouse, or similar facility "is a place of business of the seller" within the meaning of Texas Tax Code section 321.002(a)(3)(A). As such, 34 TAC § 3.334(b)(1)(A) is a statement of qualification by which such a location may be considered a place of business of the seller under Section 321.002(a)(3)(A).

5.     The Comptroller did not substantially comply with the notice requirements under the Administrative Procedure Act (APA).

6.     The Comptroller did not substantially comply with the "reasoned justification" requirement under the APA.

7.     34 TAC § 3.334 or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the Coppell Plaintiffs.

8.     34 TAC § 3.334 or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the Round Rock Plaintiff.

Signed on the 30th day of December 2024.


_____
KARIN CRUMP
Judge Presiding, 250th District Court


CONCLUSIONS OF LAW
Cause No. D-1-GN-21-003198 (Consolidated)

# APPENDIX C

The department has determined that the rule as proposed will not affect rural communities, as it does not directly regulate any rural community.

The department has not drafted a local employment impact statement under the Administrative Procedures Act, §2001.022, as the agency has determined that the rule as proposed will not impact local economies.

The department has determined that Government Code, §2001.0225 (Regulatory Analysis of Major Environmental Rules), does not apply to the proposed rule.

The department has determined that there will not be a taking of private real property, as defined by Government Code, Chapter 2007, as a result of the proposed rule.

In compliance with the requirements of Government Code, §2001.0221, the department has prepared the following Government Growth Impact Statement (GGIS). The rule as proposed, if adopted, will not create a government program; not result in an increase or decrease in the number of full-time equivalent employee needs; not result in a need for additional General Revenue funding; not affect the amount of any fee; create a new regulation (to prohibit "canned" hunting of mountain lions and establish trapping rules); not expand an existing regulation; neither increase nor decrease the number of individuals subject to regulation; and not positively or adversely affect the state's economy.

Comments on the proposed rule may be submitted to Richard Heilbrun, Texas Parks and Wildlife Department, 4200 Smith School Road, Austin, Texas 78744; (512) 389-8104; email: richard.heilbrun@tpwd.texas.gov or via the department website at www.tpwd.texas.gov.

The new rule is proposed under the authority of Parks and Wildlife Code, §67.004, which requires the commission by regulation to establish any limits on the taking, possession, propagation, transportation, importation, exportation, sale, or offering for sale of nongame fish or wildlife that the department considers necessary to manage the species.

The proposed new rule affects Parks and Wildlife Code, Chapter 67.

*§65.950.   Mountain Lions (Puma concolor).*

(a)   In this section "captivity" means the state of being held under control, or kept caged, penned, or trapped.

(b)   No person in this state may:

(1)   hunt a mountain lion that is in captivity;

(2)   release a mountain lion from captivity for purposes of:

(A)   being hunted;

(B)   training dogs;

(3)   allow a live mountain lion to be captured in a trap or snare for more than 36 hours; or

(4)   conduct, promote, assist, or advertise an activity prohibited by this subsection.

(c)   This section does not:

(1)   prohibit a person from humanely dispatching a lawfully trapped mountain lion; or

(2)   apply to the use of snares designed to break away or disassemble with 285 pounds of force or less.

The agency certifies that legal counsel has reviewed the proposal and found it to be within the state agency's legal authority to adopt.

Filed with the Office of the Secretary of State on April 8, 2024.

TRD-202401417
James Murphy
General Counsel
Texas Parks and Wildlife Department
Earliest possible date of adoption: May 19, 2024
For further information, please call: (512) 389-4775



# TITLE 34.  PUBLIC FINANCE

# PART 1.   COMPTROLLER OF PUBLIC ACCOUNTS

## CHAPTER 3.   TAX ADMINISTRATION
## SUBCHAPTER O.   STATE AND LOCAL SALES AND USE TAXES

### 34 TAC §3.334

The Comptroller of Public Accounts proposes the repeal of §3.334, concerning local sales and use taxes. The comptroller repeals existing §3.334 to replace it with new §3.334.  The repeal of §3.334 will be effective the date the new §3.334 takes effect.

*Brief explanation of the proposed rulemaking.*

It has been called to the comptroller's attention that the October 27, 2023 notice of proposed rulemaking did not contain a statement of fiscal implications for small businesses or rural communities as required by Government Code, Chapter 2006. See (48 TexReg 6340) (October 27, 2023). Therefore, the comptroller is proposing to repeal the adopted rule as proposed in the October 27, 2023 notice of proposed rulemaking.  The comptroller is simultaneously proposing to readopt the text of the rule effective on January 5, 2024, with amendments, under the same number and title, with the repeal to be effective as of the date of the adopted rule.

*Fiscal note.*

Brad Reynolds, Chief Revenue Estimator, has determined that repeal of the current rule is of no consequence apart from facilitation of adoption of a new substitute §3.334 and has no fiscal implications in and of itself.  The fiscal implications of the repeal are the same as the fiscal implication of the proposed new substitute §3.334.  The statements in this fiscal note are supplemented by the additional statements in the preamble to the proposed new §3.334, which the comptroller will propose to adopt concurrently with this proposed repeal.

Brad Reynolds has determined the following for each year of the first five years that the proposed repeal and the substitute new rule will be in effect.

*The additional estimated cost to the state and to local governments expected as a result of enforcing or administering the rule.*

There will be no additional estimated cost to the state and to local governments expected as a result of enforcing or administering the proposed repeal of the existing rule and concurrent new rule.

The proposed amendments explain the manner in which the comptroller intends to apply the consummation statutes. The explanation should lead to greater taxpayer compliance, and less audit resources required to enforce or administer the rule.

*The estimated reductions in costs to the state and to local governments as a result of enforcing or administering the rule.*

There will be no estimated reductions in costs to the state and to local governments as a result of enforcing or administering the proposed repeal of the existing rule and the concurrent new rule. Local governments do not administer the tax, and the comptroller will not be reducing the size of its audit staff as a result of the rule.

*The estimated loss or increase in revenue to the state or to local governments as a result of enforcing or administering the rule, and the foreseeable implications relating to cost or revenues of the state or local governments.*

Change in sourcing of transactions subject to local sales taxation could result in net change in sales tax revenue of local taxing entities generally, which may be significant for some jurisdictions. Most, but not all, reductions in taxable transactions sourced to some jurisdictions would be increases in taxable transactions sourced to other jurisdictions. If the comptroller repeals the existing rule and concurrently adopts the proposed new rule, it is estimated that there could be a $28.5 million reduction in aggregate local sales tax levies sourced to unincorporated areas without local sales tax or with cumulative local county and special district tax rates less than the cumulative local rates that applied at the locations where the taxable transactions were formerly sourced. A $28.5 million reduction in aggregate local tax levies would result in reduced state service charge revenue of $570,000.

Reliable estimates of net changes in revenue for each of the 1,759 local sales taxing jurisdictions that might stem from compliance with the proposed repeal of the existing rule and concurrent adoption of new rule cannot feasibly be produced by the comptroller.

*Public benefits and costs.*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the existing rule will be repealed and the proposed new rule will be in effect.

The public will benefit from greater clarity regarding the consummation standards, making compliance easier.

There may be additional economic costs to a person required to comply with the proposed repeal of the existing rule and adoption of the new rule. The rule may cause some vendors to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase. And if vendors change from multiple-location reporting to single-location reporting, their compliance burden may diminish.

*Local employment impact statement.*

For the first five years that the existing rule will be repealed and the proposed new rule will be in effect, the effect on local economies and employment, if any, cannot be determined. To the extent that the repeal of the existing rule and the proposed new rule leads to greater awareness and compliance with the local tax consummation standards, some vendors may change their reporting methods, which might positively or negatively affect the tax revenue of particular local tax jurisdictions. Whether a change in local tax revenue might increase or decrease the provision of local government services to an extent that would affect local economic activity or employment would depend on discretionary actions of the governing body or the electorate of an affected jurisdiction, and cannot be determined.

*Government growth impact statement.*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the existing rule will be repealed and the proposed new rule will be in effect: the amendment will not create or eliminate a government program; will not require the creation or elimination of employee positions; will not require an increase or decrease in future legislative appropriations to the comptroller; will not require an increase or decrease in fees paid to the comptroller; will not create a new regulation; will increase the number of individuals subject to the rule's applicability because sellers without a physical presence in a local tax jurisdiction will be required to collect local use tax if they are required to collect state use tax; and will not positively or adversely affect this state's economy.

*Economic impact statement and regulatory flexibility analysis.*

A "rural community" is a municipality with a population of less than 25,000. The comptroller estimates that there are 1,098 such rural communities, of which 1,017 impose a sales tax and may have revenue affected by compliance with the rule.

A "small business" is a legal entity, including a corporation, partnership, or sole proprietorship, that: (A) is formed for the purpose of making a profit; (B) is independently owned and operated; and (C) has fewer than 100 employees or less than $6 million in annual gross receipts. The Comptroller estimates that there are 470,000 businesses with fewer than 100 employees, and 377,000 businesses with annual gross receipts less than $6 million; the sum of these two estimates would overstate the number of small businesses, as many businesses would be expected to have both fewer than 100 employees and less than $6 million in annual gross receipts.

To the extent that the repeal of the existing rule and the adoption of the proposed new rule leads to greater awareness and compliance with the local tax consummation standards, some vendors may change their reporting methods, which might positively or negatively affect the tax revenue of particular local tax jurisdictions. As previously explained, the comptroller does not have sufficient data on the business operations of each business to identify and quantify the businesses and transactions that might be affected, and the positive or negative revenue impact on each tax jurisdiction.

It is conceivable that repeal of the existing rule and adoption of the proposed new rule may cause some vendors, small or large, to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase.

The repeal of the existing rule and the adoption of the proposed new rule will expand the local tax collection obligations of remote sellers - out-of-state sellers that collect state use tax must also collect local sales tax. The expansion of the remote seller local tax collection obligation may benefit small businesses in Texas by reducing the perception of customers that purchases from out-of-state sellers are preferable because out-of-state sellers charge less sales or use tax than the small businesses in Texas.

The proposed new rule adds subsection (b)(6):

"If a small business or a micro-business operates a single location out of which it conducts all of its business activities, the

comptroller will presume that the location is a place of business of the seller."

To the extent that repeal of the existing rule facilitates the adoption of the proposed new rule, the repeal will simplify the collection of local sales tax for many small businesses and micro-businesses.

*Public hearing*

The comptroller will hold a hearing to take public comments, on May 9, 2024, at 9:00 a.m. in Room 2.034 of the Barbara Jordan Building, 1601 Congress Avenue, Austin, Texas 78701. Interested persons may sign up to testify beginning at 8:30 a.m. and testimony will be heard on a first come first serve basis beginning at 9:00 a.m. All persons will have 10 minutes to present their testimony and shall also provide their testimony in writing prior to their oral testimony.

*Comments*

You may submit comments on the proposal to Jenny Burleson, Director, Tax Policy Division, P.O. Box 13528 Austin, Texas 78711 or to the email address: tp.rule.comments@cpa.texas.gov. The comptroller must receive your comments no later than 30 days from the date of publication of the proposal in the *Texas Register*.

*Statement of the statutory or other authority under which the rulemaking is proposed.*

The repeal is proposed under Tax Code, §§111.002 (Comptroller's Rule; Compliance; Forfeiture), 321.306 (Comptroller's Rules), 322.203 (Comptroller's Rules), and 323.306 (Comptroller's Rules), which authorize the comptroller to adopt rules to implement the tax statutes.

*Sections or articles of the code affected.*

The repeal affects Tax Code, §151.0595 (Single Local Tax Rate for Remote Sellers); Tax Code, Chapter 321, Subchapters A, B, C, D, and F; Tax Code, Chapter 322; and Tax Code, Chapter 323.

*§3.334. Local Sales and Use Taxes.*
The agency certifies that legal counsel has reviewed the proposal and found it to be within the state agency's legal authority to adopt.

Filed with the Office of the Secretary of State on April 8, 2024.

TRD-202401426
Jenny Burleson
Director, Tax Policy Division
Comptroller of Public Accounts
Earliest possible date of adoption: May 19, 2024
For further information, please call: (512) 475-2220

♦　　　♦　　　♦

**34 TAC §3.334**

The Comptroller of Public Accounts proposes new §3.334, concerning local sales and use taxes. The comptroller proposes new §3.334 to readopt the text of existing §3.334 proposed for repeal, with the addition of paragraph (b)(6).

*Brief explanation of the proposed rule.*

In January 2020, the comptroller initiated a rulemaking to update its local sales and use tax rule. The comptroller subsequently adopted amendments in 2020, 2023, and 2024. (49 TexReg 53) (January 5, 2024), (48 TexReg 391) (January 27, 2023), (45 TexReg 3499) (May 22, 2020). The amendments implemented House Bill 1525, 86th Legislature, 2019, which placed local sales and use tax collection responsibilities on marketplace providers. The amendments also implemented House Bill 2153, 86th Legislature, 2019, which set a single local use tax rate that remote sellers may elect to use. The amendments also expanded the local sales tax collection responsibilities of sellers based on the United States Supreme Court decision in *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080 (June 21, 2018). These amendments have been noncontroversial.

The rulemaking made other revisions to the text, which are now the subject of litigation in Cause No. D-1-GN-21-003198, *City of Coppell, Texas, et al. v. Glenn Hegar,* in the 201st District Court of Travis County Texas. The Plaintiff cities claim that the agency did not comply with the rulemaking procedures in Government Code, §2001.024 and Government Code, Chapter 2006. The purpose of this rulemaking is to address those claims by proposing the readoption of the rule, with amendments, and a more complete statement of the elements required by Government Code, §2001.024 and Government Code, Chapter 2006.

The comptroller proposes to add the following definitions:

"Micro-business--a legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has not more than 20 employees."

"Small business--a legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has fewer than 100 employees or less than $6 million in annual gross receipts."

The definition of "independently owned and operated business" is taken from the Attorney General of Texas' Government Code Chapter 2006 Small Businesses and Rural Communities Impact Guidelines updated in December 2017.

The definitions of "micro-business" and "small business" are taken from Government Code, Chapter 2006.

The comptroller further proposes to add subsection (b)(6):

"If a small business seller or a micro-business seller operates a single location out of which it conducts all of its business activities, the comptroller will presume that the location is a place of business of the seller."

*Fiscal note.*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the rule will be in effect. The fiscal note considers the effect of the prior 2020, 2023, and 2024 amendments to the rule, as well as the amendments in this proposal.

*The additional estimated cost to the state and to local governments expected as a result of enforcing or administering the rule.*

There will be no additional estimated cost to the state and to local governments expected as a result of enforcing or administering the proposed rule. The proposed amendments explain the man-

ner in which the comptroller intends to apply the consummation statutes. The explanation should lead to greater taxpayer compliance, and less audit resources required to enforce or administer the rule.

*The estimated reductions in costs to the state and to local governments as a result of enforcing or administering the rule.*

There will be no estimated reductions in costs to the state and to local governments as a result of enforcing or administering the rule amendments. Local governments do not administer the tax, and the comptroller will not be reducing the size of its audit staff as a result of the rule.

*The estimated loss or increase in revenue to the state or to local governments as a result of enforcing or administering the rule, and the foreseeable implications relating to cost or revenues of the state or local governments.*

Change in sourcing of transactions subject to local sales taxation could result in net change in sales tax revenue of local taxing entities generally, with the net change quite significant for some jurisdictions. Most, but not all, reductions in taxable transactions sourced to some jurisdictions would be increases in taxable transactions sourced to other jurisdictions. But to the extent that transactions previously sourced within an incorporated municipality would be sourced to an unincorporated area without a cumulative local tax rate levied by municipal (pursuant to a limited purpose annexation agreement), county, and/or special purpose taxing authorities commensurate with the cumulative local tax rate levied by the municipal, county, and/or special purpose taxing authorities applicable where the transactions were formerly sourced, there would be a reduction in aggregate local sales tax levies and consequent reduction in state service charge revenues under §§ 321.503, 322.303, and 323.503, Tax Code.

For reasons further discussed, reliable estimates of net changes in revenue by individual jurisdictions for the 1,759 local sales taxing jurisdictions that might stem from compliance with the rule cannot feasibly be produced by the comptroller. Even if the requisite audits of potentially affected sales tax permittees in every jurisdiction could be timely performed to support such estimation, the sales tax permittees are not static entities. It would not be plausible to assume that those who currently source local tax to a location that is not a place of business as defined in the rule would not adjust their operations to qualify such locations as places of business and consequently not be obligated to change the sourcing of local tax.

Plaintiff cities allege that portions of the proposed rule are invalid, that the proposed rule "dramatically" or "fundamentally" changes the former rule, that compliance with the proposed rule will require vendors to change to existing reporting methods, and that the changes to existing reporting methods will result in the loss of revenue to the cities.

One consultant estimated that the City of Carrollton would have a likely net loss of $1.1 to $2 million; that the City of Coppell would have a likely net loss of $18.8 million of $30.8 million, that the City of DeSoto would have a likely net loss of $5.1 million, that the City of Farmers Branch would have a likely net loss of $600,000 to $1.8 million, and the City of Humble would have a likely net loss of $5.6 million. The consultant did not provide the comptroller with data to support these calculations and he declined to identify the vendors that he predicted would have to change their reporting methods.

The comptroller does not have sufficient data to verify these calculations or to make similar estimates for other jurisdictions. The agency does have data regarding the amount of sales tax receipts that that a vendor reports to local jurisdictions. But, that data does not prove that the vendor is incorrectly reporting, that the vendor would change its reporting as a result of the rule amendments, or that specific jurisdictions would gain or lose tax revenue as a result of the rule amendments. Those determinations would require an understanding of the business operations of the vendor to determine which business locations were "places of business" for purposes of local tax sourcing. Then, the comptroller would have to examine individual transactions to determine the location where the orders were received, the location where the orders were fulfilled, and the location where the order was delivered, since all three locations are potential sourcing locations. Then, the comptroller would have to compare that information with how the vendor has been reporting local tax on each transaction, identify the circumstances, if any, that would require the vendor to change its methods of reporting as a result of the rule, and determine the dollar value for each transaction. The comptroller does not have sufficient information on the individual vendors to make this determination.

The consultant's explanation of his methodology confirms that the comptroller does not have sufficient data on hand, and that the comptroller could not reasonably acquire the necessary data to perform a study for every jurisdiction. The consultant identified and researched the "top tier" taxpayers for the cities in his study, and then conducted research to determine who they were selling to and whether any sales were made other than through websites. The research ranged from interviews with local employees, to passive research on web pages, job postings, certificate of occupancy maps/filings, and in some instances, purchases were made as well as physical visits to the taxpayer's locations. From this research, the consultant identified "suspect" taxpayers and estimated the value of their shipment outside of the city. In doing this work, the consultant estimated that he spent forty hours per jurisdiction. The comptroller does not have the time or resources to conduct what is essentially an audit of the tens of thousands of permitted taxpayers to identify noncompliant taxpayers and then estimate the extent of their noncompliance.

With the exception of the City of Round Rock, the Plaintiff cities have alleged that their jurisdictions have a particular type of taxpayer that is primarily affected - "fulfillment centers" that ship orders to customers. According to the cities, the fulfillment centers are sourcing local tax to the cities in which they are located, pursuant to Tax Code, §321.203(c-1)(1), which provides that a sale is consummated at the place of business of the retailer from which the retailer ships or delivers the item. For subsection (c-1)(1) to apply, a fulfillment center has to be a "place of business of the retailer" for local sales tax sourcing purposes. The term "place of business of the retailer" (hereinafter "place of business") is defined by Tax Code, §321.002(a)(3)(A) to include a location at which three or more orders are received during a calendar year.

The Plaintiff cities contend that the fulfillment centers are properly sourcing local tax to the cities in which they are located because every fulfillment center is automatically a "place of business." The theory is that a fulfillment center is automatically a "place of business" because it has to "receive" orders as a necessary prerequisite to fulfilling the orders, and a fulfillment center can be expected to "receive" three or more orders in a calendar year.

Subsection (c)(7) of the proposed rule now explicitly states that the location where an order is "received" for purposes of local sales tax sourcing is the location where the order is *initially* received. Therefore, under the proposed rule, a fulfillment center that processes orders forwarded from another location is not automatically a "place of business" for local tax sourcing. The Plaintiff cities contend that if the fulfillment centers in their jurisdiction begin sourcing local sales tax to other cities, they will lose millions of dollars in tax revenue.

The merits of the conflicting interpretations are discussed in the preambles of the previous rulemakings. The issue here is the effect on local tax revenue, and whether the comptroller can reliably estimate the effect on cities, individually or collectively. The estimates of the Plaintiff cities and the fulfillment centers in those cities cannot be reliably projected to other cities. The comptroller does not have data to identify the "fulfillment centers" in any particular jurisdiction or statewide - it is not a characteristic that is reported to the agency.

And, even if agency could identify "fulfillment centers" from its data, the agency could not assume that the fulfillment centers in other cities are sourcing local tax like the Plaintiff cities' fulfillment centers purportedly are sourcing. For reasons enumerated to the Revenue Estimating Division by agency counsel, it is comptroller's opinion that a fulfillment center could reasonably reach a different conclusion, and conclude that it was not automatically a "place of business" for local tax sourcing purposes, as claimed by the Plaintiff cities.

First, the text of former §3.334(h)(3) indicated that a fulfillment center is not automatically a "place of business" for local sourcing (emphasis added):

"(3) Consumption of sale. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have a place of business in Texas or multiple places of business in the state.

...

(B) Order received at a place of business in Texas, fulfilled at a location that is not a place of business. When an order that is placed over the telephone, through the Internet, or by any means other than in person is received by the seller at a place of business in Texas, and the seller *fulfills the order at a location that is not a place of business of the seller in Texas, such as a warehouse or distribution center,* the sale is consummated at the place of business at which the order for the taxable item is received.

...

(D) Order fulfilled within the state at a location that is not a place of business. When an order is received by a seller at any location other than a place of business of the seller in this state, and

the seller *fulfills the order at a location in Texas that is not a place of business of the seller,* then the sale is consummated at the location in Texas to which the order is shipped or delivered, or the location where it is transferred to the purchaser."

(41 TexReg 260, 265) (2016) (former 34 Tex. Admin. Code §3.334(h)(3), emphasis added); (39 TexReg 9597, 9606) (2014) (former 34 Tex. Admin. Code §3.334(h)(3), emphasis added).

Second, the consummation rules in former §3.334(h)(3) were augmented with an explicit provision for fulfillment centers, which the former rule referred to as "distribution centers" (emphasis added):

"(2) *Distribution centers,* manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A *distribution center,* manufacturing plant, storage yard, warehouse, or similar facility operated by a seller at which the seller receives three or more orders for taxable items during the calendar year is a place of business.

(B) If a salesperson who receives three or more orders for taxable items within a calendar year is assigned to work from, or to work at, a *distribution center,* manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, *then* the facility is a place of business.

(C) If a location that is a place of business of the seller, such as a sales office, is in the same building as a *distribution center,* manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, *then* the entire facility is a place of business of the seller."

(41 TexReg 260, 263) (2016) (former 34 Tex. Admin. Code §3.334(e)(2), emphasis added); (39 TexReg 9597, 9605) (2014) (former 34 Tex. Admin. Code §3.334(e)(2), emphasis added).

If a distribution center were automatically a "place of business" for local tax sourcing as the Plaintiff cities contend, subparagraphs (B) and (C) would not be required - there would be no need for a salesperson or a sales office to "then" make the distribution center a "place of business" for local tax sourcing purposes.

Third, in addition to its rule, the comptroller distributed Publication 94-105, sometimes called the "Local Sales and Use Tax Bulletin - Guidelines for Collecting Local Sales and Use Tax," or "Tax Topics - Guidelines of Collecting Local Sales and Use Tax" (Guidelines). These Guidelines were posted on the comptroller's website and indexed in the comptroller's State Tax Automated Research System. Since at least 2007, the Guidelines referred to a "location within the state that is not a place of business (such as a warehouse or distribution center)." *E.g.,* STAR Accession No. 200902596L (February 2009). The Guidelines were intended as a general guide and not as a comprehensive resource. But, an ordinary reader would not walk away with the impression that a taxpayer's fulfillment center was automatically a "place of business" for purposes of local tax sourcing.

Fourth, in 2016, the comptroller rewrote the Guidelines to be even more specific regarding fulfillment centers: "The warehouse from which the person ships those items is not a place of business, unless the warehouse separately qualifies as a place of business." STAR Accession No. 201606995L (June 1, 2016).

And, fifth, in 2019, a comptroller letter ruling discussed fulfillment centers, referring to the former rule, then in effect: "Scenario One: Taxpayer Retailer operates fulfillment centers in Texas that are not open to the public. ... When an order is received at a location that is not a place of business and is *fulfilled in Texas at a location that is not a place of business,* the sale is consummated at the location in Texas to which the order is shipped. *See* §3.334(h)(3)(D). For Scenario One, local sales and use tax is due based on the location where the order is delivered." STAR Accession No. 201906015L (June 13, 2019) (emphasis added).

If the Plaintiff cities and their consultant's study are right about how the various fulfillment centers in their cities reported local tax, those fulfillment centers must have either disregarded the comptroller's prior written guidance, overlooked the guidance, or interpreted the guidance as being the opposite of what the comptroller intended. But, it cannot be assumed that fulfillment

centers in other cities have also disregarded, overlooked, or interpreted the prior rulings in such a way that they will have to change their reporting as a result of the proposed rule. So, even if the comptroller could identify the permitted locations that are fulfillment centers, the revenue implications of the proposed rule cannot be reliably extrapolated from the study conducted on behalf of the Plaintiff cities.

Furthermore, the cities' calculations of revenue loss assume the proposed rule would force fulfillment centers to begin sourcing local tax to other cities, when that is not the case. The Legislature set a low threshold for a location to be a "place of business" for local tax sourcing - the receipt of three or more orders during a calendar year. A fulfillment center that is not a "place of business" under the proposed rule could easily become one by directly receiving three or more orders. The Plaintiff cities have alleged that it is easier to source local tax to one jurisdiction than to source to many. So, a fulfillment warehouse would have an incentive to become a "place of business." And, a fulfillment center with a tax sharing agreement with a city would have an even greater incentive to make the minor adjustments required to become a "place of business," so as to maintain the return on its revenue sharing agreement. Therefore, even if the potential tax revenue loss from fulfillment centers could be reliably measured, it is unreasonable to assume that no fulfillment center would take remedial efforts to continue its sourcing procedures.

The City of Round Rock has asserted claims that are different from or in addition to the claims of the other Plaintiff cities. The City has suggested that the proposed rule will radically change the way that Texas retailers with one place of business in Texas will source local tax. However, for enumerated reasons, agency counsel advises that it should be assumed that in most instances, the proposed rule will not change the sourcing of products sold by Texas retailers with one place of business in Texas.

First, the proposed rule does not change the comptroller's previous application of the statute, which does not recognize special treatment for vendors with a "single place of business" for purposes of local tax sourcing. Proposed subsection (c) states in relevant part:

"The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in Texas, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in Texas."

The language in the proposed rule has the same effect as the language in the prior 2014 and 2016 versions of the rule - no special treatment for vendors with a single "place of business":

"The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have a place of business in Texas or multiple places of business in the state."

(41 TexReg 260, 265) (2016) (former 34 Tex. Admin. Code §3.334(h)(3); (39 TexReg 9597, 9606) (2014) (former 34 Tex. Admin. Code §3.334(h)(3)).

Second, the proposed rule should have little impact on most businesses that are a single place of business in the ordinary sense of the word - *i.e.,* all operations are conducted at a single location. If orders are received and fulfilled in a single facility, local sales tax will continue to be sourced to that location. A typical example would be a retail store.

The City of Round Rock suggests that a single facility that conducts all transactions through automated shopping cart software may be affected, since a software application does not constitute a "place of business." However, the threshold for becoming a "place of business" is very low, including the receipt by sales personnel of three or more orders per year. If a vendor occasionally engages with a customer directly, such as by telephone or email, as the final step in receiving an order under subsection (c)(7), the vendor's location should be a "place of business" for local tax sourcing, even if orders are ordinarily processed by the vendor's automated software. To ease the burden on auditors, and on small businesses and micro-businesses that operate out of a single location, proposed subsection (b)(6) presumes that is the case.

Third, sales made by through a marketplace by a seller with a single place of business will not be affected because those orders are sourced to destination by Tax Code, §321.203(e-1).

The City of Round Rock claims that Dell Technologies has a single place of business in the city and suggests that Dell is sourcing all of its local sales tax collections to the City of Round Rock. The city further claims that it will lose a significant amount of local sales tax revenue under the proposed rule. However, when the comptroller served third party discovery on Dell to understand how Dell's current business operations would be affected by the proposed rule, both Round Rock and Dell objected. Dell insisted that the inquiry should only be "conducted under the applicable sections of the Texas Tax Code" in Chapter 111 -- in other words, an audit.

This discovery dispute illustrates the impracticability of preparing a revenue impact estimate for the City of Round Rock - it would require the audit of Dell and any other vendors from whom the city thinks there will be a revenue loss. A local sales tax audit of Dell would have to examine all the business locations of Dell to determine which, if any of the locations were a "place of business" for local tax sourcing purposes. And, if the comptroller verified that Dell in fact operated a single "place of business" in Texas, the comptroller would still have to audit the sourcing of Dell's sales to determine which sales were compliant and which sales were noncompliant with the proposed rule. For example, Dell purports to have a sales force in Round Rock. Assuming that orders generated by that sales force are received in Round Rock and not fulfilled from a "place of business" elsewhere in Texas, those sales would still be sourced to Round Rock. And, any orders fulfilled from Dell's "place of business" in Round Rock would still be sourced to Round Rock. And, any orders delivered in Round Rock would still be sourced to Round Rock. Therefore, to meaningfully determine the revenue impact of the proposed rule on the City of Round Rock, the comptroller would have to thoroughly audit Dell and any other vendors from whom Round Rock thinks there will be a revenue loss.

Repeating this audit exercise on a jurisdiction-by-jurisdiction basis across the state is infeasible. Audits are not quick or easy. Considerable time and effort is required to acquire and analyze taxpayer data. Taxpayers are understandably reluctant to furnish confidential business data. And, the data varies in degree of accessibility. The average duration of an audit in fiscal year 2023 was 450 days, and the average number auditor hours spent on an audit was 80.5 hours.

It is also possible that an audit of Dell or other vendors would identify noncompliance with sourcing provisions that are not involved in the disputed rulemaking. For example, if Dell were sourcing marketplace sales to the City of Round Rock rather than

to the delivery location specified by statute, Dell would have to change its sourcing methods and the City of Round Rock would suffer a revenue loss. But, that revenue loss should be attributed to the marketplace statute enacted by the Legislature, not the proposed comptroller rule.

This possibility is real. During the 2020 rulemaking, the City of San Marcos filed comments claiming that the proposed rule would cause the city to lose $7-8 million in local sales tax revenue generated by a Best Buy call center, with the net effect of economic development incentive revenue loss estimated at $3.4 million. Best Buy also filed comments stating that it created a subsidiary called Best Buy Texas.com LLC and sourced the local tax for all of its Internet and telephone sales to the City of San Marcos. This would mean that if a resident of the City of Houston placed an online order from Houston and picked up the item at an affiliated Best Buy Stores outlet in Houston, Best Buy Texas.com LLC would collect local sales tax for the City of San Marcos. However, it appears that the Best Buy website was actually operated by a different Best Buy affiliate, which would make it a marketplace provider as defined in Tax Code, §151.0242(a)(2). Under the marketplace statute, local tax is sourced to the location where the item is shipped or delivered or at which possession is taken by the purchaser. Thus, any loss to the City of San Marcos of local sales tax revenue from the sale to the Houston resident would be the result of compliance with the marketplace statute. And the loss of tax revenue would not be attributable to the rule. The loss resulting from compliance with the statute would occur without regard to whether the proposed rule was adopted.

The comptroller has considered various other comments of the Plaintiff cities and others to the effect that the proposed rule will dramatically change local tax sourcing and concluded that the comments do not accurately apply the proposed rule. The comptroller disagrees with the allegation that the proposed rule will "dramatically change where a sale is consummated if the Comptroller interprets the change to require destination sourcing when a sale is made online using a retailer's website, even if the retailer has only one place of business." And, the comptroller disagrees with the allegation that "sales made by way of websites using the Internet are treated as having been consummated where the taxable item is delivered to the buyer instead of where the order for the item is received and fulfilled by the seller." The consummation hierarchy in subsection (c) does not require the alleged results.

The comptroller has amended the definition of "place of business of the seller" in subsection (a)(18) to provide that the term does not include a computer server, Internet protocol address, domain name, website, or software application. While the discussion of computer servers was added to the rule in 2020, the comptroller had previously advised taxpayers that the location of the server does not create a "place of business" for purposes of the local tax collection and that orders placed on a website or though applications and processed and routed by servers are not "received at" a place of business. *See* STAR Accession Nos. 200510723L (October 6, 2005), 200605592L (May 17, 2006), and 201906015L (June 13, 2019).

The comptroller has also amended the definition of "place of business of the seller" in subsection (a)(18) to provide that staffing by one or more sales personnel is usually required. The statement is not a requirement, but an objective criterion that will often be an important factor in determining whether an outlet, office, or location is a "place of business." In the January

2023 rulemaking, the comptroller explained how the reference to sales personnel is a logical extension of prior comptroller statements, including prior statements regarding fulfillment warehouses and computer servers. *See* (48 TexReg 391, 398) (2023).

Agency counsel has advised that there are several instances in which the rule proposed for readoption is substantively different than the 2016 version of the rule. Subsection (c)(2)(B)(ii) provides that a seller required to collect state use tax must also collect local use tax. This provision expands the collection responsibilities of sellers, which, formerly were obligated to collect local use tax only if they were engaged in business in the local jurisdiction. This provision should have a positive, but indeterminant revenue effect on all local jurisdictions.

The proposed rule, as compared with the 2016 version, adds provisions that the sourcing of marketplace sales is based on destination, because the consummation statute was amended in 2019 by House Bill 1525 to require that result. The fiscal note for House Bill 1525 estimated a probable revenue gain for local governments. However, because House Bill 1525 was already in effect, and rulemaking is not required to effectuate the legislation, the comptroller is assigning no fiscal implication to the rule revision incorporating House Bill 1525, other than a potential increase in compliance with the statute.

The proposed rule, as compared with the 2016 version, also adds provisions for remote sellers to apply a single local tax rate, as authorized by House Bill 2153 in 2019. The fiscal note for House Bill 2153 stated:

"There would be no significant fiscal implications for local governments in the aggregate; there could be some variance in distribution of revenue among jurisdictions compared with the distribution that would occur were all remote sellers required to collect and remit tax at applicable local combined rates, but the extent of such variance cannot be determined and would not be expected to be significant in relation to the total allocations of local sales and use tax revenues."

The comptroller is assigning no fiscal implication to the rule revision incorporating House Bill 2153, since the statute went into effect before the rulemaking, and rulemaking was not required to implement the statute.

The proposed rule, as compared with the 2016 version, alters the treatment of a "traveling salesperson," which was previously defined as: "A seller, or an agent or employee of a seller, who visits potential purchasers in person to solicit sales, and who does not carry inventory ready for immediate sale, but who may carry samples or perform demonstrations of items for sale." Former §3.334(h)(4) provided: "Orders taken by traveling salespersons are received by the seller at the administrative office or other place of business from which the traveling salesperson operates." (41 TexReg 260, 265) (2016) (former 34 Tex. Admin. Code §3.334(h)(4)). The former rule did not further explain the location from which the traveling salesperson operates.

Subsection (b)(4) of the proposed rule replaces the traveling salesperson language with a provision for an order that is received by a salesperson who is not at a place of business when the salesperson receives the order. Subsection (b)(4) provides that the order is treated as being received at the location from which the salesperson operates. Subsection (b)(4) further provides that the location from which the salesperson operates is the principal fixed location where the salesperson conducts work-related activities.

Commenters have reported that the orders from some traveling salespersons have been sourced to the location to which the traveling salesperson is "assigned," even though the traveling salesperson may conduct principal work-related activities from another location. In these situations, the proposed rule might result in a change to local tax sourcing. However, the significance of this change is indeterminant. The comptroller does not have data to identify traveling salespersons as defined under the former rule, and does not have data to identify the instances in which a traveling salesperson has been "assigned" to a location from which the salesperson does not conduct principal work-related activities. And, if the agency could identify those instances, without conducting extensive audits, the agency would still not know which instances would result in a change of sourcing. For example, if the order is fulfilled from a "place of business," the location of the salesperson is irrelevant.

In summary, due to both to the number of taxing jurisdictions and lack of pertinent, detailed information regarding the specific circumstances of the myriad businesses reporting local sales and use taxes, estimation of fiscal effects of the proposed rule, whether of dollar amounts or merely sign of change, on an individual jurisdiction by jurisdiction basis is infeasible of execution.

The comptroller recognizes that compliance with the proposed rule could result in changes to the local tax reporting methods of some vendors. As a result, there could be loss or increase in revenue to individual local governments. A revenue loss to one local government will often but not always be a revenue gain to others. There will also be revenue gains experienced by all local tax jurisdictions from the expansion of the use tax collection obligations of remote, out-of-state sellers. For the reasons previously stated, the aggregate net gain or loss cannot be reliably estimated by the comptroller from available or reasonably accessible data.

The comptroller has been provided with estimates that some cities will experience net revenue losses. However, the comptroller has not been provided with sufficient information to verify the estimates, and the data from the estimates cannot be extrapolated to other local tax jurisdictions. That said, the estimates of anticipated revenue losses provided by Plaintiffs and others in comments to proposed rulemakings are accepted as valid good faith estimates and may serve as a basis for estimating a minimum amount of revenue from online sales associated with locations that are not places of business as defined in the rule, that will be subject to different sourcing if the affected sales tax permittees cannot or choose not to modify their procedures in order to qualify such business locations as places of business for purposes of local sales tax sourcing. As those estimates were constructed from 2020 data and there has been significant inflation as well as real economic growth since then, they are scaled up by a factor of 1.35 to yield a minimum estimate of $110 million on a current annual basis that may be lost to those cities, plus another $80 million that may be lost to the other local taxing jurisdictions imposing tax at the affected locations, for a total of $190 million of gross revenue reductions, of which 85% or $161.5 million would be estimated gains to other local taxing jurisdiction, and 15% or $28.5 million would be reduction in aggregate local sales tax levies sourced to unincorporated areas without local sales tax or with cumulative local county and special district tax rates less than the cumulative local rates that applied at the locations where the taxable transactions were formerly sourced. A $28.5 million reduction in aggregate local tax levies would result in reduced state service charge revenue of $570,000.

*Public benefits and costs.*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the rule will be in effect.

The public will benefit from greater clarity regarding the consummation standards, making compliance easier.

There may be additional economic costs to a person required to comply with the rule. It is conceivable that the rule may cause some vendors to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase. And if vendors change from multiple-location reporting to single-location reporting, their compliance burden may diminish.

*Local employment impact statement.*

For the first five years that the rule will be in effect, the effect on local economies and employment, if any, cannot be determined. To the extent that the proposed rule leads to greater awareness and compliance with the local tax consummation standards, some vendors may change their reporting methods, which might positively or negatively affect the tax revenue of particular local tax jurisdictions. Whether a change in local tax revenue might increase or decrease the provision of local government services to an extent that would affect local economic activity or employment would depend on discretionary actions of the governing body or the electorate of an affected jurisdiction, and cannot be determined.

*Government growth impact statement.*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the rule will be in effect: the amendment will not create or eliminate a government program; will not require the creation or elimination of employee positions; will not require an increase or decrease in future legislative appropriations to the comptroller; will not require an increase or decrease in fees paid to the comptroller; will not create a new regulation; will increase the number of individuals subject to the rule's applicability because sellers without a physical presence in a local tax jurisdiction will be required to collect local use tax if they are required to collect state use tax; and will not positively or adversely affect this state's economy.

*Economic impact statement and regulatory flexibility analysis.*

A statement of fiscal implications for small businesses or rural communities under Government Code, Chapter 2006 is normally not required for a comptroller rule because the rule is proposed under Tax Code, Title 2. In this instance, the rule is proposed under both Title 2 (State Taxation) and Title 3 (Local Taxation). So, the comptroller provides the following statement.

A "rural community" is a municipality with a population of less than 25,000. The comptroller estimates that there are 1,098 such rural communities, of which 1,017 impose a sales tax and may have revenue affected by compliance with the rule.

A "small business" is a legal entity, including a corporation, partnership, or sole proprietorship, that: (A) is formed for the purpose of making a profit; (B) is independently owned and operated; and (C) has fewer than 100 employees or less than $6 million in annual gross receipts. The Comptroller estimates that there are 470,000 businesses with fewer than 100 employees, and 377,000 businesses with annual gross receipts less than $6 million; the sum of these two estimates would overstate the num-

ber of small businesses, as many businesses would be expected to have both fewer than 100 employees and less than $6 million in annual gross receipts.

To the extent that the proposed rule leads to greater awareness and compliance with the local tax consummation standards, some vendors may change their reporting methods, which might positively or negatively affect the tax revenue of particular local tax jurisdictions. As previously explained, the comptroller does not have sufficient data on the business operations of each business to identify and quantify the businesses and transactions that might be affected, and the positive or negative revenue impact on each tax jurisdiction.

Although the fiscal implications for local tax jurisdictions cannot be quantified without additional information, several observations can be made. First, the cities asserting that the clarifications provided by the rule will result in changes in sourcing and reporting of local taxes, with consequent reductions in their revenues, tend to be cities with Local Government Code, Chapter 380 agreements involving rebates of local sales and use tax revenues. And, cities with Government Code, Chapter 380 agreements involving distribution or fulfillment centers tend to be larger than rural communities. Of the 1,017 rural communities imposing sales tax, 45 have Chapter 380 agreements involving sales tax on file with the comptroller. Almost all of those involve rebates of sales tax to physical shopping centers or restaurants, or of sales tax paid on equipment or building materials, and would unlikely be affected by a change in sourcing of online sales associated with locations that are not places of business; two of the 45 communities that are not party to the suit against the comptroller appear to involve distribution or fulfillment centers and could be affected if the centers will not qualify as places of business (in Grand Prairie and Waxahachie). Five of the six cities currently suing the Comptroller have populations greater than 25,000. The comptroller has not verified the assertions of revenue shifting. But, if the assertions are correct, the revenue shifting away from cities with Chapter 380 agreements may result in positive revenues for the smaller rural communities from whom the revenues have been diverted.

Second, although the comptroller does not have sufficient information to determine the number of small businesses that may change their local tax reporting as a result of greater awareness and compliance with the local tax consummation standards, it is reasonable to assume that many small businesses will not be affected. A small business that has all of its operations at a single location in Texas, including sales and fulfillment, is probably reporting local sales tax to the taxing jurisdiction where it is located, and it will continue that reporting. Non-marketplace orders fulfilled from that location will continue to be consummated at that location pursuant to §3.334(c)(1) or (c)(2)(A). And, sales of a small business that are through a marketplace are already subject to destination sourcing performed by the marketplace provider. Nevertheless, in some circumstances, it is conceivable that the rule may cause some vendors, small or large, to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase.

Third, the proposed rule expands the local tax collection obligations of remote sellers - out-of-state sellers that collect state use tax must also collect local sales tax. The expansion of the remote seller local tax collection obligation may benefit small businesses in Texas by reducing the perception of customers that purchases from out-of-state sellers are preferable because out-of-state sellers charge less sales or use tax than the small businesses in Texas.

Since the comptroller initiated its rulemaking in 2020, the agency has considered ways to minimize the potential adverse impact on small businesses. In the fall of 2020, the agency added a multi-address search capability to its local sales tax rate locator. And in the spring of 2021, the agency added downloadable address files to determine local tax rates. And, in the winter of 2023, the agency added map search and latitude/longitude search options.

In addition, the comptroller is proposing to add subsection (b)(6):

"If a small business or a micro-business operates a single location out of which it conducts all of its business activities, the comptroller will presume that the location is a place of business of the seller."

The comptroller cannot make a location a "place of business" by rule if the statute does not allow it. But, the agency can presume that a location is a "place of business" based on indicative facts, such as a small, independent business that conducts all of its business operations out of a single location. If extraordinary facts are presented to the agency, the presumption may be rebutted.

The agency has considered other alternatives to reduce the adverse impact on small businesses and micro-businesses, such as allowing small or micro-businesses to source local sales tax to their principal place of business, or establishing a single local sales tax rate for small or micro-businesses that would be distributed similar to the distribution of the single local sales tax collected by remote sellers. However, because these proposals would require amendments to the consummation statutes, the comptroller does not have the regulatory flexibility to implement these proposed methods.

*Public hearing*

The comptroller will hold a hearing to take public comments, on May 9, 2024, at 9:00 a.m. in Room 2.034 of the Barbara Jordan Building, 1601 Congress Avenue, Austin, Texas 78701. Interested persons may sign up to testify beginning at 8:30 a.m. and testimony will be heard beginning at 9:00 a.m. on a first come first serve basis. All persons will have 10 minutes to present their testimony and shall also provide their testimony in writing prior to their oral testimony.

*Comments*

You may submit comments on the proposal to Jenny Burleson, Director, Tax Policy Division, P.O. Box 13528 Austin, Texas 78711 or to the email address: tp.rule.comments@cpa.texas.gov. The comptroller must receive your comments no later than 30 days from the date of publication of the proposal in the *Texas Register*.

*Statement of the statutory or other authority under which the rule is proposed to be adopted.*

Tax Code, §§111.002 (Comptroller's Rule; Compliance; Forfeiture), 321.306 (Comptroller's Rules), 322.203 (Comptroller's Rules), and 323.306 (Comptroller's Rules) authorize the comptroller to adopt rules to implement the tax statutes.

*Sections or articles of the code affected.*

Tax Code, §151.0595 (Single Local Tax Rate for Remote Sellers); Tax Code, Chapter 321, Subchapters A, B, C, D, and F; Tax Code, Chapter 322; and Tax Code, Chapter 323 are affected.

*§3.334.  Local Sales and Use Taxes.*

(a)  Definitions.  The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

(1)  Cable system--The system through which a cable service provider delivers cable television or bundled cable service, as those terms are defined in §3.313 of this title (relating to Cable Television Service and Bundled Cable Service).

(2)  City--An incorporated city, municipality, town, or village.

(3)  City sales and use tax--The tax authorized under Tax Code, §321.101(a), including the additional municipal sales and use tax authorized under Tax Code, §321.101(b), the municipal sales and use tax for street maintenance authorized under Tax Code, §327.003, the Type A Development Corporation sales and use tax authorized under Local Government Code, §504.251, the Type B Development Corporation sales and use tax authorized under Local Government Code, §505.251, a sports and community venue project sales and use tax adopted by a city under Local Government Code, §334.081, and a municipal development corporation sales and use tax adopted by a city under Local Government Code, §379A.081.  The term does not include the fire control, prevention, and emergency medical services district sales and use tax authorized under Tax Code, §321.106, or the municipal crime control and prevention district sales and use tax authorized under Tax Code, §321.108.

(4)  Comptroller's website--The comptroller's website concerning local taxes located at: https://comptroller.texas.gov/taxes/sales/.

(5)  County sales and use tax--The tax authorized under Tax Code, §323.101, including a sports and community venue project sales and use tax adopted by a county under Local Government Code, §334.081.  The term does not include the county health services sales and use tax authorized under Tax Code, §324.021, the county landfill and criminal detention center sales and use tax authorized under Tax Code, §325.021, or the crime control and prevention district sales and use tax authorized under Tax Code, §323.105.

(6)  Drop shipment--A transaction in which an order is received by a seller at one location, but the item purchased is shipped by the seller from another location, or is shipped by the seller's third-party supplier, directly to a location designated by the purchaser.

(7)  Engaged in business--This term has the meaning given in §3.286 of this title (relating to Seller's and Purchaser's Responsibilities).

(8)  Extraterritorial jurisdiction--An unincorporated area that is contiguous to the corporate boundaries of a city as defined in Local Government Code, §42.021.

(9)  Fulfill--To complete an order by transferring possession of a taxable item to a purchaser, or to ship or deliver a taxable item to a location designated by the purchaser.  The term does not include receiving or tracking an order, determining shipping costs, managing inventory, or other activities that do not involve the transfer, shipment, or delivery of a taxable item to the purchaser or a location designated by the purchaser.

(10)  Independently owned and operated business--A self-controlling entity that is not a subsidiary of another entity or otherwise subject to control by another entity, and that is not publicly traded.

(11)  Itinerant vendor--A seller who travels to various locations for the purpose of receiving orders and making sales of taxable items and who has no place of business in this state.  A person who sells items through vending machines is also an itinerant vendor.  A salesperson that operates out of a place of business in this state is not an itinerant vendor.

(12)  Kiosk--A small stand-alone area or structure:

(A)  that is used solely to display merchandise or to submit orders for taxable items from a data entry device, or both;

(B)  that is located entirely within a location that is a place of business of another seller, such as a department store or shopping mall; and

(C)  at which taxable items are not available for immediate delivery to a purchaser.

(13)  Local taxes--Sales and use taxes imposed by any local taxing jurisdiction.

(14)  Local taxing jurisdiction--Any of the following:

(A)  a city that imposes sales and use tax as provided under paragraph (3) of this subsection;

(B)  a county that imposes sales and use tax as provided under paragraph (5) of this subsection;

(C)  a special purpose district created under the Special District Local Laws Code or other provisions of Texas law that is authorized to impose sales and use tax by the Tax Code or other provisions of Texas law and as governed by the provisions of Tax Code, Chapters 321 or 323 and other provisions of Texas law; or

(D)  a transit authority that imposes sales and use tax as authorized by Transportation Code, Chapters, 451, 452, 453, 457, or 460 and governed by the provisions of Tax Code, Chapter, 322.

(15)  Marketplace provider--This term has the meaning given in §3.286 of this title.

(16)  Micro-business--A legal entity, including a corporation, partnership, or sole proprietorship, that:

(A)  is formed for the purpose of making a profit;

(B)  is independently owned and operated; and

(C)  has not more than 20 employees.

(17)  Order placed in person--An order placed by a purchaser with the seller while physically present at the seller's place of business regardless of how the seller subsequently enters the order.

(18)  Place of business of the seller - general definition--A place of business of the seller must be an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items from persons other than employees, independent contractors, and natural persons affiliated with the seller. An "established outlet, office, or location" usually requires staffing by one or more sales personnel.  The term does not include a computer server, Internet protocol address, domain name, website, or software application.  The "purpose" element of the definition may be established by proof that the sales personnel of the seller receive three or more orders for taxable items at the facility during the calendar year.  Additional criteria for determining when a location is a place of business of the seller are provided in subsection (b) of this section for distribution centers, manufacturing plants, storage yards, warehouses and similar facilities; kiosks; and purchasing offices. An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business, is not a place of business

of the seller if the comptroller determines that the outlet, office, facility, or location functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or exists solely to rebate a portion of the tax imposed by those chapters to the contracting business. An outlet, office, facility, or location does not exist to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or solely to rebate a portion of the tax imposed by those chapters if the outlet, office, facility, or location provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services.

(19) Purchasing office--An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business.

(20) Remote Seller--As defined in §3.286 of this title, a remote seller is a seller engaged in business in this state whose only activity in the state is:

(A) engaging in regular or systematic solicitation of sales of taxable items in this state by the distribution of catalogs, periodicals, advertising flyers, or other advertising, by means of print, radio, or television media, or by mail, telegraphy, telephone, computer data base, cable, optic, microwave, or other communication system for the purpose of effecting sales of taxable items; or

(B) soliciting orders for taxable items by mail or through other media including the Internet or other media that may be developed in the future.

(21) Seller--This term has the meaning given in §3.286 of this title and also refers to any agent or employee of the seller.

(22) Small business--A legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has fewer than 100 employees or less than $6 million in annual gross receipts.

(23) Special purpose district--A local governmental entity authorized by the Texas legislature for a specific purpose, such as crime control, a local library, emergency services, county health services, or a county landfill and criminal detention center.

(24) Storage--This term has the meaning given in §3.346 of this title (relating to Use Tax).

(25) Temporary place of business of the seller--A location operated by a seller for a limited period of time for the purpose of selling and receiving orders for taxable items and where the seller has inventory available for immediate delivery to a purchaser. For example, a person who rents a booth at a weekend craft fair or art show to sell and take orders for jewelry, or a person who maintains a facility at a job site to rent tools and equipment to a contractor during the construction of real property, has established a temporary place of business. A temporary place of business of the seller includes a sale outside of a distribution center, manufacturing plant, storage yard, warehouse, or similar facility of the seller in a parking lot or similar space sharing the same physical address as the facility but not within the walls of the facility.

(26) Transit authority--A metropolitan rapid transit authority (MTA), advanced transportation district (ATD), regional or subregional transportation authority (RTA), city transit department (CTD), county transit authority (CTA), regional mobility authority (RMA) or coordinated county transportation authority created under Transportation Code, Chapters 370, 451, 452, 453, 457, or 460.

(27) Two percent cap--A reference to the general rule that, except as otherwise provided by Texas law and as explained in this section, a seller cannot collect, and a purchaser is not obligated to pay, more than 2.0% of the sales price of a taxable item in total local sales and use taxes for all local taxing jurisdictions.

(28) Use--This term has the meaning given in §3.346 of this title.

(29) Use tax--A tax imposed on the storage, use or other consumption of a taxable item in this state.

(b) Determining the place of business of a seller.

(1) Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller for the purpose of selling taxable items where sales personnel of the seller receive three or more orders for taxable items during the calendar year from persons other than employees, independent contractors, and natural persons affiliated with the seller is a place of business of the seller. Forwarding previously received orders to the facility for fulfilment does not make the facility a place of business.

(B) If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the entire facility is a place of business of the seller.

(2) Kiosks. A kiosk is not a place of business of the seller for the purpose of determining where a sale is consummated for local tax purposes. A seller who owns or operates a kiosk in Texas is, however, engaged in business in this state as provided in §3.286 of this title.

(3) Purchasing offices.

(A) A purchasing office is not a place of business of the seller if the purchasing office exists solely to rebate a portion of the local sales and use tax imposed by Tax Code, Chapters 321, 322, or 323 to a business with which it contracts; or if the purchasing office functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, or 323. A purchasing office does not exist solely to rebate a portion of the local sales and use tax or to avoid the tax legally due under Tax Code, Chapters 321, 322, or 323 if the purchasing office provides significant business services to the contracting business beyond processing invoices, including logistics management, purchasing, inventory control, or other vital business services.

(B) In making a determination under subparagraph (A) of this paragraph, as to whether a purchasing office provides significant business services to the contracting business beyond processing invoices, the comptroller will compare the total value of the other business services to the value of processing invoices. If the total value of the other business services, including logistics management, purchasing, inventory control, or other vital business services, is less than the value of the service to process invoices, then the purchasing office will be presumed not to be a place of business of the seller.

(C) If the comptroller determines that a purchasing office is not a place of business of the seller, the sale of any taxable item is deemed to be consummated at the place of business of the seller from whom the purchasing office purchased the taxable item for resale and local sales and use taxes are due according to the following rules.

*(i)* When taxable items are purchased from a Texas seller, local sales taxes are due based on the location of the seller's place of business where the sale is deemed to be consummated, as determined in accordance with subsection (c) of this section.

*(ii)* When the sale of a taxable item is deemed to be consummated at a location outside of this state, local use tax is due based on the location where the items are first stored, used or consumed by the entity that contracted with the purchasing office in accordance with subsection (d) of this section.

(4) An order that is received by a salesperson who is not at a place of business of the seller when the salesperson receives the order is treated as being received at the location from which the salesperson operates. Examples include orders that a salesperson receives by mail, telephone, including Voice over Internet Protocol and cellular phone calls, facsimile, and email while traveling. The location from which the salesperson operates is the principal fixed location where the salesperson conducts work-related activities. The location from which a salesperson operates will be a place of business of the seller only if the location meets the definition of a "place of business of a seller" in subsection (a)(16) of this section on its own, without regard to the orders imputed to that location by this paragraph.

(5) A facility without sales personnel is usually not a "place of business of the seller." A vending machine is not "an established outlet, office, or location," and does not constitute a "place of business of the seller." Instead, a vending machine sale is treated as a sale by an itinerant vendor. See subsections (a)(10) and (c)(6) of this section. However, a walk-in retail outlet with a stock of goods available for immediate purchase through a cashier-less point of sale terminal at the outlet would be "an established outlet, office, or location" so as to constitute a "place of business of the seller" even though sales personnel are not required for every sale. A computer that operates an automated shopping cart software program is not an established outlet, office, or location," and does not constitute a "place of business of the seller." A computer that operates an automated telephone ordering system is not "an established outlet, office, or location," and does not constitute a "place of business of the seller."

(6) If a small business or a micro-business operates a single location out of which it conducts all of its business activities, the comptroller will presume that the location is a place of business of the seller.

(c) Local sales tax - Consummation of sale - determining the local taxing jurisdictions to which sales tax is due. Except for the special rules applicable to remote sellers in subsection (i)(3) of this section, direct payment permit purchases in subsection (j) of this section, and certain taxable items, including taxable items sold by a marketplace provider, as provided in subsection (k) of this section, each sale of a taxable item is consummated at the location indicated by the provisions of this subsection. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in Texas, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in Texas.

(1) Consummation of sale - order received at a place of business of the seller in Texas.

(A) Order placed in person. Except as provided by paragraph (3) of this subsection, when an order for a taxable item is placed in person at a seller's place of business in Texas, including at a temporary place of business of the seller in Texas, the sale of that item is consummated at that place of business of the seller, regardless of the location where the order is fulfilled.

(B) Order not placed in person.

*(i)* Order fulfilled at a place of business of the seller in Texas. When an order is received at a place of business of the seller in Texas and is fulfilled at a place of business of the seller in Texas, the sale is consummated at the place of business where the order is fulfilled.

*(ii)* Order not fulfilled at a place of business of the seller in Texas. When an order is received at a place of business of the seller in Texas and is fulfilled at a location that is not a place of business of the seller in Texas, the sale is consummated at the place of business where the order is received.

(2) Consummation of sale - order not received at a place of business of the seller in Texas.

(A) Order fulfilled at a place of business of the seller in Texas. When an order is received at a location that is not a place of business of the seller in Texas or is received outside of Texas, and is fulfilled from a place of business of the seller in Texas, the sale is consummated at the place of business where the order is fulfilled.

(B) Order not fulfilled from a place of business of the seller in Texas.

*(i)* Order fulfilled in Texas. When an order is received at a location that is not a place of business of the seller in Texas and is fulfilled from a location in Texas that is not a place of business of the seller, the sale is consummated at the location in Texas to which the order is shipped or delivered, or at which the purchaser of the item takes possession.

*(ii)* Order not fulfilled in Texas. When an order is received by a seller at a location that is not a place of business of the seller in Texas, and is fulfilled from a location outside of Texas, the sale is not consummated in Texas. However, a use is consummated at the first point in Texas where the item is stored, used, or consumed after the interstate transit has ceased. A taxable item delivered to a point in Texas is presumed to be for storage, use, or consumption at that point until the contrary is established. Local use tax should be collected as provided in subsection (d) of this section. Except as provided in subsection (i)(3) of this section, a remote seller required to collect state use tax under §3.286(b)(2) of this title must also collect local use tax.

(3) Exception for qualifying economic development agreements entered into before January 1, 2009, pursuant to Tax Code, §321.203(c-4) - (c-5) or §323.203(c-4) - (c-5). This paragraph is effective until September 1, 2024. If applicable, the local sales tax due on the sale of a taxable item is based on the location of the qualifying warehouse, which is a place of business of the seller, from which the item is shipped or delivered or at which the purchaser of the item takes possession.

(4) Local sales taxes are due to each local taxing jurisdiction with sales tax in effect where the sale is consummated. Local use tax may also be due if the total amount of local sales taxes due does not reach the two percent cap, and the item purchased is shipped or delivered to a location in one or more different local taxing jurisdictions, as provided in subsection (d) of this section.

(5) Multiple special purpose district taxes, multiple transit authority sales taxes, or a combination of the two may apply to a single transaction. If the sale of a taxable item is consummated at a location within the boundaries of multiple special purpose districts or transit authorities, local sales tax is owed to each of the jurisdictions in effect at that location. For example, a place of business of the seller located in the city of San Antonio is within the boundaries of both the San Antonio Advanced Transportation District and the San Antonio Metropolitan Transit Authority, and the seller is required to collect sales tax for both transit authorities. Similarly, a place of business of the seller in Flower Mound is located within the boundaries of two special purpose districts,

the Flower Mound Crime Control District and the Flower Mound Fire Control District, and the seller is responsible for collecting sales tax for both special purpose districts.

(6) Itinerant vendors; vending machines.

(A) Itinerant vendors. Sales made by itinerant vendors are consummated at, and itinerant vendors must collect sales tax based upon, the location where the item is delivered or at which the purchaser of the item takes possession. Itinerant vendors do not have any responsibility to collect use tax.

(B) Vending machines. Sales of taxable items made from a vending machine are consummated at the location of the vending machine. See §3.293 of this title (relating to Food; Food Products; Meals; Food Service) for more information about vending machine sales.

(7) The location where the order is received by or on behalf of the seller means the physical location of a seller or third party such as an established outlet, office location, or automated order receipt system operated by or on behalf of the seller where an order is initially received by or on behalf of the seller and not where the order may be subsequently accepted, completed or fulfilled. An order is received when all of the information from the purchaser necessary to the determination whether the order can be accepted has been received by or on behalf of the seller. The location from which a product is shipped shall not be used in determining the location where the order is received by the seller.

(d) Local use tax. The provisions addressing the imposition of state use tax in §3.346 of this title also apply to the imposition of local use tax. For example, consistent with §3.346(e) of this title, all taxable items that are shipped or delivered to a location in this state that is within the boundaries of a local taxing jurisdiction are presumed to have been purchased for use in that local taxing jurisdiction as well as presumed to have been purchased for use in the state.

(1) General rules.

(A) When local use taxes are due in addition to local sales taxes as provided by subsection (c) of this section, all applicable use taxes must be collected or accrued in the following order until the two percent cap is reached: city, county, special purpose district, and transit authority. If more than one special purpose district use tax is due, all such taxes are to be collected or accrued before any transit authority use tax is collected or accrued. See subparagraphs (D) and (E) of this paragraph.

(B) If a local use tax cannot be collected or accrued at its full rate without exceeding the two percent cap, the seller cannot collect it, or any portion of it, and the purchaser is not responsible for accruing it.

(C) If a seller collects a local sales tax on an item, or a purchaser accrues a local sales tax on an item, a use tax for the same type of jurisdiction is not due on the same item. For example, after a city sales tax has been collected or accrued for an item, no use tax is due to that same or a different city on that item, but use tax may be due to a county, special purpose district, or transit authority. Similarly, if one or more special purpose district sales taxes have been collected or accrued for an item, no special purpose district use tax is due on that item, and if one or more transit authority sales taxes have been collected or accrued for an item, no transit authority use tax is due on that item.

(D) Collection or accrual of use tax for multiple special purpose districts. If more than one special purpose district use tax is in effect at the location where use of an item occurs, the special purpose district taxes are due in the order of their effective dates, beginning

with the earliest effective date, until the two percent cap is met. The effective dates of all special purpose district taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the district with the earliest effective date would exceed the two percent cap, the tax for that district is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (C) of this paragraph, whether use tax is due for the district that next became effective.

(i) If the competing special purpose district taxes became effective on the same date, the special purpose district taxes are due in the order of the earliest date for which the election in which the district residents authorized the imposition of sales and use tax by the district was held.

(ii) If the elections to impose the local taxes were held on the same date, the special purpose district taxes are due in the order of the earliest date for which the enabling legislation under which each district was created became effective.

(E) Collection or accrual of use tax for multiple transit authorities. If more than one transit authority use tax is in effect at the location where use of an item occurs, and the two percent cap has not been met, the transit authority taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all transit authority taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the authority with the earliest effective date would exceed the two percent cap, the tax for that authority is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (D) of this paragraph, whether use tax is due for the authority that next became effective.

(i) If the competing transit authorities became effective on the same date, the transit authority taxes are due in the order of the earliest date for which the election in which the authority residents authorized the imposition of sales and use tax by the authority was held.

(ii) If the elections to impose local taxes were held on the same date, the transit authority use taxes are due in the order of the earliest date for which the enabling legislation under which each authority was created became effective.

(2) General use tax rules applied to specific situations. The following fact patterns explain how local use tax is to be collected or accrued and remitted to the comptroller based on, and subject to, the general rules in paragraph (1) of this subsection.

(A) Sale consummated outside the state, item delivered from outside the state or from a location in Texas that is not operated by the seller - local use tax due. Except as provided in subsection (i)(3) of this section, if a sale is consummated outside of this state according to the provisions of subsection (c) of this section, and the item purchased is either shipped or delivered to a location in this state as designated by the purchaser from a location outside of the state, or if the order is drop shipped directly to the purchaser from a third-party supplier, local use tax is owed based upon the location in this state to which the order is shipped or delivered or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use tax due on the sale. If the seller does not collect the local use taxes due on the sale, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller according to the provisions in paragraph (1) of this subsection. For example, if an order for a taxable item is received by a seller at a location outside of Texas, and the order is shipped to the purchaser from a location outside of the state, local use tax is due based upon the location to which the order is shipped or delivered or at which the purchaser of the item takes possession.

(B) Sale consummated in Texas outside a local taxing jurisdiction, item delivered into one or more local taxing jurisdictions - local use tax due. If a sale is consummated at a location in Texas that is outside of the boundaries of any local taxing jurisdiction according to the provisions of subsection (c) of this section, and the order is shipped or delivered to the purchaser at a location in this state that is within the boundaries of one or more local taxing jurisdictions, local use tax is due based on the location to which the items are shipped or delivered or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use taxes due on the sale, regardless of the location of the seller in Texas. If the seller fails to collect any local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

(C) Sale consummated in any local taxing jurisdictions imposing less than 2.0% in total local taxes - local sales taxes and use taxes due. If a sale is consummated at a location in Texas where the total local sales tax rate imposed by the taxing jurisdictions in effect at that location does not equal 2.0% according to the provisions of subsection (c) of this section, and the item is shipped or delivered to the purchaser at a location in this state that is inside the boundaries of a different local taxing jurisdiction, additional local use tax may be due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the two percent cap. The seller is responsible for collecting any additional local use taxes due on the sale, regardless of the location of the seller in Texas. See subsection (i) of this section. If the seller fails to collect the additional local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

(i) Example one - if an order is received in person at a place of business of the seller, such that the sale is consummated at the location where the order is received as provided under subsection (c)(1)(A) of this section, and the local sales tax due on the sale does not meet the two percent cap, additional local use taxes are due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the provisions in paragraph (1) of this subsection.

(ii) Example two - if a seller receives an order for a taxable item at a seller's place of business in Texas, and the seller ships or delivers the item from an out-of-state location to a location in this state as designated by the purchaser, local sales tax is due based upon the location of the place of business of the seller where the order is received. If the local sales tax due on the item does not meet the two percent cap, use taxes, subject to the provisions in paragraph (1) of this subsection, are due based upon the location where the items are shipped or delivered or at which the purchaser of the item takes possession.

(e) Effect of other law.

(1) Tax Code, Title 2, Subtitles A (General Provisions) and B (Enforcement and Collection), Tax Code, Chapter 141 (Multistate Tax Compact) and Tax Code, Chapter 151 (Limited Sales, Excise, and Use Tax) apply to transactions involving local taxes. Related sections of this title and comptroller rulings shall also apply with respect to local taxes. This includes authorities such as court cases and federal law that affect whether an item is taxable or is excluded or exempt from taxation.

(2) Permits, exemption certificates, and resale certificates required by Tax Code, Chapter 151, shall also satisfy the requirements for collecting and remitting local taxes, unless otherwise indicated by this section or other sections of this title. For example, see subsection (n) of this section concerning prior contract exemptions.

(3) Any provisions in this section or other sections of this title related to a seller's responsibilities for collecting and remitting local taxes to the comptroller shall also apply to a purchaser if the seller does not collect local taxes that are due. The comptroller may proceed against the seller or purchaser for the local tax owed by either.

(f) Tax rates. Except as otherwise provided by law, no local governmental entity may adopt or increase a sales and use tax if, as a result of the adoption or increase of the tax, the combined rate of all sales and use taxes imposed by local taxing jurisdictions having territory in the local governmental entity would exceed 2.0% at any location within the boundaries of the local governmental entity's jurisdiction. The following are the local tax rates that may be adopted.

(1) Cities. Cities may impose sales and use tax at a rate of up to 2.0%.

(2) Counties. Counties may impose sales and use tax at rates ranging from 0.5% to 1.5%.

(3) Special purpose districts. Special purpose districts may impose sales and use tax at rates ranging from 0.125% to 2.0%.

(4) Transit authorities. Transit authorities may impose sales and use tax at rates ranging from 0.25% to 1.0%.

(g) Jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements.

(1) Jurisdictional boundaries.

(A) City boundaries. City taxing jurisdictional boundaries cannot overlap one another and a city cannot impose a sales and use tax in an area that is already within the jurisdiction of another city.

(B) County boundaries. County tax applies to all locations within that county.

(C) Special purpose district and transit authority boundaries. Special purpose districts and transit authorities may cross or share boundaries with other local taxing jurisdictions and may encompass, in whole or in part, other local taxing jurisdictions, including cities and counties. A geographic location or address in this state may lie within the boundaries of more than one special purpose district or more than one transit authority.

(D) Extraterritorial jurisdictions. Except as otherwise provided by paragraph (3) of this subsection concerning strategic partnership agreements and subsection (l)(5) of this section concerning the City of El Paso and Fort Bliss, city sales and use tax does not apply to taxable sales that are consummated outside the boundaries of the city, including sales made in a city's extraterritorial jurisdiction. However, an extraterritorial jurisdiction may lie within the boundaries of a special purpose district, transit authority, county, or any combination of the three, and the sales and use taxes for those jurisdictions would apply to those sales.

(2) Combined areas. A combined area is an area where the boundaries of a city overlap the boundaries of one or more other local taxing jurisdictions as a result of an annexation of additional territory by the city, and where, as the result of the imposition of the city tax in the area in addition to the local taxes imposed by the existing taxing jurisdictions, the combined local tax rate would exceed 2.0%. The comptroller shall make accommodations to maintain a 2.0% rate in any combined area by distributing the 2.0% tax revenue generated in these combined areas to the local taxing jurisdictions located in the combined areas as provided in Tax Code, §321.102 or Health and Safety Code, §775.0754. Combined areas are identified on the comptroller's website. Sellers engaged in transactions on which local sales or use taxes are due in a combined area, or persons who must self-accrue and remit tax directly to the comptroller, must use the combined area local code when reporting the tax rather than the codes for the individual

city, county, special purpose districts, or transit authorities that make up the combined area.

(3) City tax imposed through strategic partnership agreements.

(A) The governing bodies of a district, as defined in Local Government Code, §43.0751, and a city may enter into a limited-purpose annexation agreement known as a strategic partnership agreement. Under this agreement, the city may impose sales and use tax within all or part of the boundaries of a district. Areas within a district that are annexed for this limited purpose are treated as though they are within the boundaries of the city for purposes of city sales and use tax.

(B) Counties, transit authorities, and special purpose districts may not enter into strategic partnership agreements. Sales and use taxes imposed by those taxing jurisdictions do not apply in the limited-purpose annexed area as part of a strategic partnership agreement between a city and an authorized district. However, a county, special purpose district, or transit authority sales and use tax, or any combination of these three types of taxes, may apply at locations included in a strategic partnership agreement between a city and an authorized district if the tax is imposed in that area by the applicable jurisdiction as allowed under its own controlling authorities.

(C) Prior to September 1, 2011, the term "district" was defined in Local Government Code, §43.0751 as a municipal utility district or a water control and improvement district. The definition was amended effective September 1, 2011, to mean a conservation and reclamation district operating under Water Code, Chapter 49.

(h) Places of business of the seller and job sites crossed by local taxing jurisdiction boundaries.

(1) Places of business of the seller crossed by local taxing jurisdiction boundaries. If a place of business of the seller is crossed by one or more local taxing jurisdiction boundaries so that a portion of the place of business of the seller is located within a taxing jurisdiction and the remainder of the place of business of the seller lies outside of the taxing jurisdiction, tax is due to the local taxing jurisdictions in which the sales office is located. If there is no sales office, sales tax is due to the local taxing jurisdictions in which any cash registers are located.

(2) Job sites.

(A) Residential repair and remodeling; new construction of an improvement to realty. When a contractor is improving real property under a separated contract, and the job site is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on any separately stated charges for taxable items incorporated into the real property must be allocated to the local taxing jurisdictions based on the total square footage of the real property improvement located within each jurisdiction, including the square footage of any standalone structures that are part of the construction, repair, or remodeling project. For more information about tax due on materials used at residential and new construction job sites, refer to §3.291 of this title (relating to Contractors).

(B) Nonresidential real property repair and improvement. When taxable services are performed to repair, remodel, or restore nonresidential real property, including a pipeline, transmission line, or parking lot, that is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on the taxable services, including materials and any other charges connected to the services performed, must be allocated among the local taxing jurisdictions based upon the total mileage or square footage, as appropriate, of the repair, remodeling, or restoration project located in each jurisdiction. For more information about tax due on materials used at nonresidential

real property repair and remodeling job sites, refer to §3.357 of this title (relating to Nonresidential Real Property Repair, Remodeling, and Restoration; Real Property Maintenance).

(i) Sellers' and purchasers' responsibilities for collecting or accruing local taxes.

(1) Sale consummated in Texas; seller responsible for collecting local sales taxes and applicable local use taxes. When a sale of a taxable item is consummated at a location in Texas as provided by subsection (c) of this section, the seller must collect each local sales tax in effect at the location. If the total rate of local sales tax due on the sale does not reach the two percent cap, and the seller ships or delivers the item into another local taxing jurisdiction, then the seller is required to collect additional local use taxes due, if any, based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession, regardless of the location of the seller in Texas. For more information regarding local use taxes, refer to subsection (d) of this section.

(2) Out-of-state sale; seller engaged in business in Texas. Except as provided in paragraph (3) of this subsection, when a sale is not consummated in Texas, a seller who is engaged in business in this state is required to collect and remit local use taxes due, if any, on orders of taxable items shipped or delivered at the direction of the purchaser into a local taxing jurisdiction in this state based upon the location in this state to which the item is shipped or delivered or at which the purchaser of the item takes possession as provided in subsection (d) of this section.

(3) Local use tax rate for remote sellers.

(A) A remote seller required to collect and remit one or more local use taxes in connection with a sale of a taxable item must compute the amount using:

(i) the combined tax rate of all applicable local use taxes based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession; or

(ii) at the remote seller's election, the single local use tax rate published in the *Texas Register.*

(B) A remote seller that is storing tangible personal property in Texas to be used for fulfillment at a facility of a marketplace provider that has certified that it will assume the rights and duties of a seller with respect to the tangible personal property, as provided for in §3.286 of this title, may elect the single local use tax rate under subparagraph (A)(ii) of this paragraph.

(C) Notice to the comptroller of election and revocation of election.

(i) Before using the single local use tax rate, a remote seller must notify the comptroller of its election using a form prescribed by the comptroller. A remote seller may also notify the comptroller of the election on its use tax permit application form. The remote seller must use the single local use tax rate for all of its sales of taxable items until the election is revoked as provided in clause (ii) of this subparagraph.

(ii) A remote seller may revoke its election by filing a form prescribed by the comptroller. If the comptroller receives the notice by October 1, the revocation will be effective January 1 of the following year. If the comptroller receives the notice after October 1, the revocation will be effective January 1 of the year after the following year. For example, a remote seller must notify the comptroller by October 1, 2020, for the revocation to be effective January 1, 2021. If the comptroller receives the revocation on November 1, 2020, the revocation will be effective January 1, 2022.

(D) Single local use tax rate.

(i) The single local use tax rate in effect for the period beginning October 1, 2019, and ending December 31, 2019, is 1.75%.

(ii) The single local use tax rate in effect for the period beginning January 1, 2020, and ending December 31, 2020, is 1.75%.

(E) Annual publication of single local use tax rate. Before the beginning of a calendar year, the comptroller will publish notice of the single local use tax rate in the *Texas Register* that will be in effect for that calendar year.

(F) Calculating the single local use tax rate. The single local use tax rate effective in a calendar year is equal to the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year. As soon as practicable after the end of a state fiscal year, the comptroller must determine the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year by:

(i) dividing the total amount of net local sales and use taxes remitted to the comptroller during the state fiscal year by the total amount of net state sales and use tax remitted to the comptroller during the state fiscal year;

(ii) multiplying the amount computed under clause (i) of this subparagraph by the rate provided in Tax Code, §151.051; and

(iii) rounding the amount computed under clause (ii) of this subparagraph to the nearest .0025.

(G) Direct refund. A purchaser may request a refund based on local use taxes paid in a calendar year for the difference between the single local use tax rate paid by the purchaser and the amount the purchaser would have paid based on the combined tax rate for all applicable local use taxes. Notwithstanding the refund requirements under §3.325(a)(1) of this title (relating to Refunds and Payments Under Protest), a non-permitted purchaser may request a refund directly from the comptroller for the tax paid in the previous calendar year, no earlier than January 1 of the following calendar year within the statute of limitation under Tax Code, 111.104 (Refunds).

(H) Marketplace providers. Notwithstanding subparagraph (A) of this paragraph, marketplace providers may not use the single local use tax rate and must compute the amount of local use tax to collect and remit using the combined tax rate of all applicable local use taxes.

(4) Purchaser responsible for accruing and remitting local taxes if seller fails to collect.

(A) If a seller does not collect the state sales tax, any applicable local sales taxes, or both, on a sale of a taxable item that is consummated in Texas, then the purchaser is responsible for filing a return and paying the tax. The local sales taxes due are based on the location in this state where the sale is consummated as provided in subsection (c) of this section.

(B) A purchaser who buys an item for use in Texas from a seller who does not collect the state use tax, any applicable local use taxes, or both, is responsible for filing a return and paying the tax. The local use taxes due are based on the location where the item is first stored, used, or consumed by the purchaser.

(C) For more information about how to report and pay use tax directly to the comptroller, see §3.286 of this title.

(5) Local tax is due on the sales price of a taxable item, as defined in Tax Code, §151.007, in the report period in which the taxable item is purchased or the period in which the taxable item is first stored, used, or otherwise consumed in a local taxing jurisdiction.

(6) A purchaser is not liable for additional local use tax if the purchaser pays local use tax using the rate elected by an eligible remote seller according to paragraph (3) of this subsection. The remote seller must be identified on the comptroller's website as electing to use the single local use tax rate. A purchaser must verify that the remote seller is listed on the comptroller's website. If the remote seller is not listed on the comptroller's website, the purchaser will be liable for additional use tax due in accordance to paragraph (4) of this subsection.

(j) Items purchased under a direct payment permit.

(1) When taxable items are purchased under a direct payment permit, local use tax is due based upon the location where the permit holder first stores the taxable items, except that if the taxable items are not stored, then local use tax is due based upon the location where the taxable items are first used or otherwise consumed by the permit holder.

(2) If, in a local taxing jurisdiction, storage facilities contain taxable items purchased under a direct payment exemption certificate and at the time of storage it is not known whether the taxable items will be used in Texas, then the taxpayer may elect to report the use tax either when the taxable items are first stored in Texas or are first removed from inventory for use in Texas, as long as use tax is reported in a consistent manner. See also §3.288(i) of this title (relating to Direct Payment Procedures and Qualifications) and §3.346(g) of this title.

(3) If local use tax is paid on stored items that are subsequently removed from Texas before they are used, the tax may be recovered in accordance with the refund and credit provisions of §3.325 of this title and §3.338 of this title (relating to Multistate Tax Credits and Allowance of Credit for Tax Paid to Suppliers).

(k) Special rules for certain taxable goods and services. Sales of the following taxable goods and services are consummated at, and local tax is due based upon, the location indicated in this subsection.

(1) Amusement services. Local tax is due based upon the location where the performance or event occurs. For more information on amusement services, refer to §3.298 of this title (relating to Amusement Services).

(2) Cable services. When a service provider uses a cable system to provide cable television or bundled cable services to customers, local tax is due as provided for in §3.313 of this title. When a service provider uses a satellite system to provide cable services to customers, no local tax is due on the service in accordance with the Telecommunications Act of 1996, §602.

(3) Florists. Local sales tax is due on all taxable items sold by a florist based upon the location where the order is received, regardless of where or by whom delivery is made. Local use tax is not due on deliveries of taxable items sold by florists. For example, if the place of business of the florist where an order is taken is not within the boundaries of any local taxing jurisdiction, no local sales tax is due on the item and no local use tax is due regardless of the location of delivery. If a Texas florist delivers an order in a local taxing jurisdiction at the instruction of an unrelated florist, and if the unrelated florist did not take the order within the boundaries of a local taxing jurisdiction, local use tax is not due on the delivery. For more information about florists' sales and use tax obligations, refer to §3.307 of this title (relating to Florists).

(4) Landline telecommunications services. Local taxes due on landline telecommunications services are based upon the location of the device from which the call or other transmission originates. If the seller cannot determine where the call or transmission originates, local taxes due are based on the address to which the service is billed. For more information, refer to §3.344 of this title (relating to Telecommunications Services).

(5) Marketplace provider sales. Local taxes are due on sales of taxable items through a marketplace provider based on the location in this state to which the item is shipped or delivered or at which the purchaser takes possession. For more information, refer to §3.286 of this title.

(6) Mobile telecommunications services. Local taxes due on mobile telecommunications services are based upon the location of the customer's place of primary use as defined in §3.344(a)(8) of this title, and local taxes are to be collected as indicated in §3.344(h) of this title.

(7) Motor vehicle parking and storage. Local taxes are due based on the location of the space or facility where the vehicle is parked. For more information, refer to §3.315 of this title (relating to Motor Vehicle Parking and Storage).

(8) Natural gas and electricity. Any local city and special purpose taxes due are based upon the location where the natural gas or electricity is delivered to the purchaser. As explained in subsection (l)(1) of this section, residential use of natural gas and electricity is exempt from all county sales and use taxes and all transit authority sales and use taxes, most special purpose district sales and use taxes, and many city sales and use taxes. A list of the cities and special purpose districts that do impose, and those that are eligible to impose, local sales and use tax on residential use of natural gas and electricity is available on the comptroller's website. For more information, also refer to §3.295 of this title (relating to Natural Gas and Electricity).

(9) Nonresidential real property repair and remodeling services. Local taxes are due on services to remodel, repair, or restore nonresidential real property based on the location of the job site where the remodeling, repair, or restoration is performed. See also subsection (h)(2)(B) of this section and §3.357 of this title.

(10) Residential real property repair and remodeling and new construction of a real property improvement performed under a separated contract. When a contractor constructs a new improvement to realty pursuant to a separated contract or improves residential real property pursuant to a separated contract, the sale is consummated at the job site at which the contractor incorporates taxable items into the customer's real property. See also subsection (h)(2)(A) of this section and §3.291 of this title.

(11) Waste collection services. Local taxes are due on garbage or other solid waste collection or removal services based on the location at which the waste is collected or from which the waste is removed. For more information, refer to §3.356 of this title (relating to Real Property Service).

(l) Special exemptions and provisions applicable to individual jurisdictions.

(1) Residential use of natural gas and electricity.

(A) Mandatory exemptions from local sales and use tax. Residential use of natural gas and electricity is exempt from most local sales and use taxes. Counties, transit authorities, and most special purpose districts are not authorized to impose sales and use tax on the residential use of natural gas and electricity. Pursuant to Tax Code, §321.105, any city that adopted a local sales and use tax effective October 1, 1979, or later is prohibited from imposing tax on the residential use of natural gas and electricity. See §3.295 of this title.

(B) Imposition of tax allowed in certain cities. Cities that adopted local sales tax prior to October 1, 1979, may, in accordance with the provisions in Tax Code, §321.105, choose to repeal the exemption for residential use of natural gas and electricity. The comptroller's website provides a list of cities that impose tax on the residential use of natural gas and electricity, as well as a list of those cities that do not currently impose the tax, but are eligible to do so.

(C) Effective January 1, 2010, a fire control, prevention, and emergency medical services district organized under Local Government Code, Chapter 344 that imposes sales tax under Tax Code, §321.106, or a crime control and prevention district organized under Local Government Code, Chapter 363 that imposes sales tax under Tax Code, §321.108, that is located in all or part of a municipality that imposes a tax on the residential use of natural gas and electricity as provided under Tax Code, §321.105 may impose tax on residential use of natural gas and electricity at locations within the district. A list of the special purpose districts that impose tax on residential use of natural gas and electricity and those districts eligible to impose the tax that do not currently do so is available on the comptroller's website.

(2) Telecommunication services. Telecommunications services are exempt from all local sales taxes unless the governing body of a city, county, transit authority, or special purpose district votes to impose sales tax on these services. However, since 1999, under Tax Code, §322.109(d), transit authorities created under Transportation Code, Chapter 451 cannot repeal the exemption unless the repeal is first approved by the governing body of each city that created the local taxing jurisdiction. The local sales tax is limited to telecommunications services occurring between locations within Texas. See §3.344 of this title. The comptroller's website provides a list of local taxing jurisdictions that impose tax on telecommunications services.

(3) Emergency services districts.

(A) Authority to exclude territory from imposition of emergency services district sales and use tax. Pursuant to the provisions of Health and Safety Code, §775.0751(c-1), an emergency services district wishing to enact a sales and use tax may exclude from the election called to authorize the tax any territory in the district where the sales and use tax is then at 2.0%. The tax, if authorized by the voters eligible to vote on the enactment of the tax, then applies only in the portions of the district included in the election. The tax does not apply to sales made in the excluded territories in the district and sellers in the excluded territories should continue to collect local sales and use taxes for the local taxing jurisdictions in effect at the time of the election under which the district sales and use tax was authorized as applicable.

(B) Consolidation of districts resulting in sales tax sub-districts. Pursuant to the provisions of Health and Safety Code, §775.018(f), if the territory of a district proposed under Health and Safety Code, Chapter 775 overlaps with the boundaries of another district created under that chapter, the commissioners court of each county and boards of the counties in which the districts are located may choose to create a consolidated district in the overlapping territory. If two districts that want to consolidate under Health and Safety Code, §775.024 have different sales and use tax rates, the territory of the former districts located within the consolidated area will be designated as sub-districts and the sales tax rate within each sub-district will continue to be imposed at the rate the tax was imposed by the former district that each sub-district was part of prior to the consolidation.

(4) East Aldine Management District.

(A) Special sales and use tax zones within district; separate sales and use tax rate. As set out in Special District Local Laws Code, §3817.154(e) and (f), the East Aldine Management District board may create special sales and use tax zones within the boundaries of the District and, with voter approval, enact a special sales and use tax rate in each zone that is different from the sales and use tax rate imposed in the rest of the district.

(B) Exemptions from special zone sales and use tax. The sale, production, distribution, lease, or rental of; and the use, storage, or other consumption within a special sales and use tax zone of; a taxable item sold, leased, or rented by the entities identified in clauses (i) - (vi) of this subparagraph are exempt from the special zone sales and use tax. State and all other applicable local taxes apply unless otherwise exempted by law. The special zone sales and use tax exemption applies to:

(i) a retail electric provider as defined by Utilities Code, §31.002;

(ii) an electric utility or a power generation company as defined by Utilities Code, §31.002;

(iii) a gas utility as defined by Utilities Code, §101.003 or §121.001, or a person who owns pipelines used for transportation or sale of oil or gas or a product or constituent of oil or gas;

(iv) a person who owns pipelines used for the transportation or sale of carbon dioxide;

(v) a telecommunications provider as defined by Utilities Code, §51.002; or

(vi) a cable service provider or video service provider as defined by Utilities Code, §66.002.

(5) Imposition of city sales tax and transit tax on certain military installations; El Paso and Fort Bliss. Pursuant to Tax Code, §321.1045 (Imposition of Sales and Use Tax in Certain Federal Military Installations), for purposes of the local sales and use tax imposed under Tax Code, Chapter 321, the city of El Paso includes the area within the boundaries of Fort Bliss to the extent it is in the city's extraterritorial jurisdiction. However, the El Paso transit authority does not include Fort Bliss. See Transportation Code, §453.051 concerning the Creation of Transit Departments.

(m) Restrictions on local sales tax rebates and other economic incentives. Pursuant to Local Government Code, §501.161, Section 4A and 4B development corporations may not offer to provide economic incentives, such as local sales tax rebates authorized under Local Government Code, Chapters 380 or 381, to persons whose business consists primarily of purchasing taxable items using resale certificates and then reselling those same items to a related party. A related party means a person or entity which owns at least 80% of the business enterprise to which sales and use taxes would be rebated as part of an economic incentive.

(n) Prior contract exemptions. The provisions of §3.319 of this title (relating to Prior Contracts) concerning definitions and exclusions apply to prior contract exemptions.

(1) Certain contracts and bids exempt. No local taxes are due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of any local tax if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of any local tax if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(2) Annexations. Any annexation of territory into an existing local taxing jurisdiction is also a basis for claiming the exemption provided by this subsection.

(3) Local taxing jurisdiction rate increase; partial exemption for certain contracts and bids. When an existing local taxing jurisdiction raises its sales and use tax rate, the additional amount of tax that would be due as a result of the rate increase is not due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of the tax rate increase if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of the tax rate increase if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(4) Three-year statute of limitations.

(A) The exemption in paragraph (1) of this subsection and the partial exemption in paragraph (3) of this subsection have no effect after three years from the date the adoption or increase of the tax takes effect in the local taxing jurisdiction.

(B) The provisions of §3.319 of this title apply to this subsection to the extent they are consistent.

(C) Leases. Any renewal or exercise of an option to extend the time of a lease or rental contract under the exemptions provided by this subsection shall be deemed to be a new contract and no exemption will apply.

(5) Records. Persons claiming the exemption provided by this subsection must maintain records which can be verified by the comptroller or the exemption will be lost.

(6) Exemption certificate. An identification number is required on the prior contract exemption certificates furnished to sellers. The identification number should be the person's 11-digit Texas taxpayer number or federal employer's identification (FEI) number.

The agency certifies that legal counsel has reviewed the proposal and found it to be within the state agency's legal authority to adopt.

Filed with the Office of the Secretary of State on April 8, 2024.

TRD-202401427
Jenny Burleson
Director, Tax Policy
Comptroller of Public Accounts
Earliest possible date of adoption: May 19, 2024
For further information, please call: (512) 475-2220

♦ ♦ ♦

# TITLE 43. TRANSPORTATION

# PART 3. MOTOR VEHICLE CRIME PREVENTION AUTHORITY

# APPENDIX D

# TITLE 34. PUBLIC FINANCE

## PART 1. COMPTROLLER OF PUBLIC ACCOUNTS

### CHAPTER 3. TAX ADMINISTRATION
### SUBCHAPTER O. STATE AND LOCAL SALES AND USE TAXES

**34 TAC §3.334**

The Comptroller of Public Accounts adopts the repeal of §3.334, concerning local sales and use taxes, without changes to the proposed text as published in the April 19, 2024, issue of the *Texas Register* (49 TexReg 2440). The rule will not be republished. The comptroller repeals existing §3.334 to replace it with new §3.334. The repeal of §3.334 will be effective the date the new §3.334 takes effect.

*Brief explanation of the rulemaking.*

It has been called to the comptroller's attention that the October 27, 2023, notice of proposed rulemaking did not contain a statement of fiscal implications for small businesses or rural communities as required by Government Code, Chapter 2006. See (48 TexReg 6340) (October 27, 2023). Therefore, the comptroller repeals the adopted rule as proposed in the October 27, 2023, notice of proposed rulemaking. The comptroller is simultaneously readopting the text of the rule effective on January 5, 2024, with amendments, under the same number and title, with the repeal to be effective as of the date the adopted rule.

*Comments*

The comptroller received comments from James Harris on behalf of the Coalition for Appropriate Sales Tax Law and its members, the cities of Coppell, Carrollton, Desoto, Farmers Branch, Humble, Kilgore, Lancaster, and Lewisville, in favor of the repeal of all revisions to the rule, starting with the version adopted in May 2020. The comptroller addresses the criticisms of the revisions in §3.334 in the preamble of the new §3.334, which the comptroller will adopt to be effective concurrently with this repeal.

*Statement of the statutory or other authority under which the rulemaking is adopted.*

The repeal is adopted under Tax Code, §§111.002 (Comptroller's Rule; Compliance; Forfeiture), 321.306 (Comptroller's Rules), 322.203 (Comptroller's Rules), and 323.306 (Comptroller's Rules), which authorize the comptroller to adopt rules to implement the tax statutes.

*Sections or articles of the code affected.*

The repeal affects Tax Code, §151.0595 (Single Local Tax Rate for Remote Sellers); Tax Code, Chapter 321, Subchapters A, B, C, D, and F; Tax Code, Chapter 322; and Tax Code, Chapter 323.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on June 14, 2024.

TRD-202402640

Jenny Burleson
Director, Tax Policy Division
Comptroller of Public Accounts
Effective date: July 4, 2024
Proposal publication date: April 19, 2024
For further information, please call: (512) 475-2220



**34 TAC §3.334**

The Comptroller of Public Accounts adopts new §3.334, concerning local sales and use taxes, without changes to the proposed text as published in the April 19, 2024, issue of the *Texas Register* (49 TexReg 2442). The rule will not be republished. The comptroller adopts new §3.334 to replace the existing §3.334 that the comptroller is repealing. The new §3.334 includes the text of existing §3.334, with the addition of subsection (b)(6) and supporting definitions.

In addition to soliciting written comments, the comptroller held a public hearing on May 9, 2024. The comptroller received oral and/or written comments regarding adoption of the rule from the following persons:

John Christian, Ryan, LLC, against the rule.

TJ Gilmore, Mayor of the City of Lewisville, against the rule.

Jim Harris, on behalf of the Coalition for Appropriate Sales Tax Law Enactment (CASTLE) and its members, the cities of Coppell, Farmers Branch, Grand Prairie, Humble, Kilgore, Lancaster, and Lewisville, against the rule.

John Kroll, HMWK, against the rule.

Mike Land, City Manager of the City of Coppell, against the rule.

Wes Mays, Mayor of the City of Coppell, against the rule.

Stephan L. Sheets, Attorney for the City of Round Rock, against the rule.

Rich Whitehead, Mayor of the City of Helotes, against the rule.

*Summary of the Principal Reasons For and Against Adoption of the Rule*

The comptroller's principal reason for adoption of the rule is to provide guidance to taxpayers and auditors regarding the application of the local sales and use tax consummation statutes.

The principal reasons alleged against adoption are: that the rule is not needed, that the rule will hurt cities and taxpayers, that the rule is a departure from prior comptroller policy, that the stated reasons for adoption have no factual basis, that the rule is inconsistent with the local sales and use tax consummation statutes, and that the notice of rulemaking did not comply with the requirements of the Administrative Procedure Act.

The subsequent discussion provides the reasons for adopting the rule without changes related to the comments received.

*Summary of the Factual Bases for the Rule - Background*

In January 2020, the comptroller initiated rulemaking to update its local sales and use tax rule. The comptroller subsequently adopted amendments in 2020, 2023, and 2024. (49 TexReg 53) (January 5, 2024), (48 TexReg 391) (January 27, 2023), (45 TexReg 3499) (May 22, 2020). The amendments implemented House Bill 1525, 86th Legislature, 2019, which placed local sales and use tax collection responsibilities on marketplace providers.

The amendments also implemented House Bill 2153, 86th Legislature, 2019, which set a single local use tax rate that remote sellers may elect to use. The amendments also expanded the local sales tax collection responsibilities of sellers based on the United States Supreme Court decision in *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080 (June 21, 2018). These amendments have been noncontroversial.

The rulemaking made other revisions to the text, which are now the subject of litigation in Cause No. D-1-GN-21-003198, *City of Coppell, Texas, et al. v. Glenn Hegar,* in the 201st District Court of Travis County Texas. The Plaintiff cities claim that the agency did not comply with the rulemaking procedures in Government Code, §2001.024 and Government Code, Chapter 2006. The comptroller initiated this rulemaking to address those claims by proposing the readoption of the rule, with amendments, along with a more complete statement of the elements required by Government Code, §2001.024 and Government Code, Chapter 2006.

The comptroller is addressing comments received in the current rulemaking, as well as the prior local tax rulemakings in 2020, 2023, and 2024. The orders adopting the prior rulemakings are available for inspection in the *Texas Register,* and contain additional explanations that augment this document.

*Summary of the Factual Bases for the Rule - Subsection (a)(18) - The definition of "place of business of the seller."*

Local sales and use taxes are generally sourced to where a sale or use is "consummated." Tax Code, §321.203 and §321.205. There are about three dozen sourcing provisions. *Id.* And, there are three potential locations where local sales tax can be soured: the location where the order was received, the location where the order was fulfilled, and the location where the order was delivered to the customer. *Id.* The sourcing outcome can be affected by whether an order is placed in person at, received at, or fulfilled at a seller's "place of business" in Texas.

Tax Code, §321.002(3)(A) uses 82 words to define "place of business of the retailer":

"(3)(A) 'Place of business of the retailer' means an established outlet, office, or location operated by the retailer or the retailer's agent or employee for the purpose of receiving orders for taxable items and includes any location at which three or more orders are received by the retailer during a calendar year. A warehouse, storage yard, or manufacturing plant is not a 'place of business of the retailer' unless at least three orders are received by the retailer during the calendar year at the warehouse, storage yard, or manufacturing plant."

The term "place of business of the retailer" is a term of art because the term is more limited than its plain and ordinary meaning. Many business activities can be conducted at a location without that location becoming a "place of business" for local tax sourcing. The definition specifically includes the concept of receiving orders for taxable items. For example, the corporate headquarters of a company may not be a "place of business" if no orders are received there. Additionally, a location is not a "place of business" simply because it receives orders. If that were the case, the legislature could have defined the phrase with those very few words, which can be counted on one hand. And, the final sentence indicates that business locations such as warehouses, storage yards, and manufacturing plants may not be "places of business."

Ultimately, the statutory test is a combination of elements -- whether a facility is an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items. The statutory references to an "established outlet, office, or location," operation "by the retailer or the retailer's agent or employee," and "receiving orders for taxable items" all suggest that the presence of sales personnel is a reasonable criterion for evaluating whether a facility is a "place of business."

Subsection (a)(18) defines "place of business of the seller" as follows:

"(18) Place of business of the seller - general definition--A place of business of the seller must be an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items from persons other than employees, independent contractors, and natural persons affiliated with the seller. An 'established outlet, office, or location' usually requires staffing by one or more sales personnel. The term does not include a computer server, Internet protocol address, domain name, website, or software application. The 'purpose' element of the definition may be established by proof that the sales personnel of the seller receive three or more orders for taxable items at the facility during the calendar year. Additional criteria for determining when a location is a place of business of the seller are provided in subsection (b) of this section for distribution centers, manufacturing plants, storage yards, warehouses and similar facilities; kiosks; and purchasing offices. An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business, is not a place of business of the seller if the comptroller determines that the outlet, office, facility, or location functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or exists solely to rebate a portion of the tax imposed by those chapters to the contracting business. An outlet, office, facility, or location does not exist to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or solely to rebate a portion of the tax imposed by those chapters if the outlet, office, facility, or location provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services."

The first sentence of subsection (a)(16) states: "A place of business of the seller must be an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items from persons other than employees, independent contractors, and natural persons affiliated with the seller." This definition tracks the statutory definition but adds a qualifier from the prior rule that allows a facility to make in-house courtesy sales without becoming a place of business.

The second sentence of the definition of "place of business of the seller" in subsection (a)(16) states: "An 'established outlet, office, or location' usually requires staffing by one or more sales personnel." The word "usually" clarifies that the presence of sales personnel is not an absolute requirement, but rather, an important factor that will often determine whether an outlet, office, or location is a "place of business." In subsequent subsections of the rule, the comptroller describes some examples.

The comptroller is adding the sales personnel language to provide an objective criterion for buyers, sellers, and auditors to consider. Does a facility have sales personnel? If it does, it is likely

a "place of business" -- an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items. If the facility does not have sales personnel, it is likely not a "place of business."

The reference to sales personnel is also consistent with the general objectives of the local tax statute. "It is a fundamental principle of statutory construction and indeed of language itself that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used." *TGS-NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 441 (Tex. 2011). The context for the "place of business" definition is not limited to the consummation statutes. It also extends to the sales tax permit requirement. The requirement of a sales tax permit for each "place of business" suggests that presence of sales personnel is a reasonable factor to consider.

The third sentence in the definition of "place of business" in subsection (a)(16) states: "The term does not include a computer server, Internet protocol address, domain name, website, or software application." This sentence is consistent with the concept that a "place of business" usually requires the presence of personnel to receive the order. Even a broad, every-day usage of the term "place of business" does not include computer servers, Internet protocol addresses, and websites. Many sellers house their computer servers at a co-location facility or rent computer server space at a managed hosting site. An ordinary person would not consider the physical locations of these computer servers to be places of business of the seller. Similarly, an ordinary person would not perceive an Internet protocol address, a domain name, or a website as an "established outlet, office, or location" so as to constitute a place of business in ordinary usage. And, in this statutory context, which is narrower than ordinary usage, the comptroller has concluded that the legislature could not have intended that the receipt of an order by an automated mechanical device would make the device an "established outlet, office or location operated by the retailer."

In addition to being a reasonable interpretation of the statute and consistent with precedent, the comptroller's interpretation that computer servers and the software applications that run on the servers are not places of business, is a practical interpretation that will facilitate uniformity and ease of administration for taxpayers and auditors. Website orders can be received at multiple physical addresses - any locations that have Internet access. A website order is sent to an Internet protocol (IP) address. An IP address is not a permanent physical address. It is a series of numbers assigned to a device, such as a computer server. Websites may use dynamic IP addresses that are assigned by the network upon connection and that change over time. The public IP address of a website may simply be routing orders to different, private IP addresses. Load balancers may change the IP addresses that communicate with customers. Conversely, multiple websites may be hosted at a single IP address.

The computer server receiving an order may belong to the seller or it may belong to a third party. The computer server may be situated on the seller's premises, it may be situated at a co-location facility operated by a third party, or it may be situated at a web hosting facility operated by a third party. The computer server may be one of multiple servers that serve the same website from different physical addresses as part of a cloud distribution network. The computer server may route the order to multiple other servers for load balancing purposes. Conversely, a single computer server may serve multiple websites. Also, the seller may or may not know the physical address of the server receiving the order. The physical locations of computer servers that receive website orders are often random, variable, and uncertain. The best way to treat computer servers consistently and coherently is to uniformly recognize that they are not "established" places of business of the seller.

The fourth sentence of the definition of "place of business of the seller" in subsection (a)(16) states: "The 'purpose' element of the definition may be established by proof that sales personnel of the seller received three or more orders for taxable items at the facility during the calendar year." This language is consistent with the statutory language that a "'place of business of the retailer' ... includes any location at which three or more orders are received by the retailer during a calendar year."

The remaining sentences of the definition of "place of business of the seller" are noncontroversial.

Mr. Gilmore, Mr. Kroll, Mr. Land, and Mr. Mays do not believe that this definition simplifies local tax sourcing. However, the comptroller is under no illusions that the definition will eliminate all ambiguities. In some instances, the determination will depend upon the particular facts. But in many instances, it will be clear. And, the rule also makes clear that mere hardware installations are not "places of business of the seller." To that extent, the rule will help taxpayers understand how the comptroller interprets and intends to apply the statute.

*Summary of the Factual Bases for the Rule - Subsection (b)(5) - A facility without sales personnel is usually not a "place of business of the seller."*

Subsection (b)(5) provides:

"(5) A facility without sales personnel is usually not a 'place of business of the seller.' A vending machine is not an 'established outlet, office, or location,' and does not constitute a 'place of business of the seller.' Instead, a vending machine sale is treated as a sale by an itinerant vendor. See subsections (a)(10) and (c)(6) of this section. However, a walk-in retail outlet with a stock of goods available for immediate purchase through a cashier-less point of sale terminal at the outlet would be an 'established outlet, office, or location' so as to constitute a 'place of business of the seller' even though sales personnel are not required for every sale. A computer that operates an automated shopping cart software program is not an 'established outlet, office, or location,' and does not constitute a 'place of business of the seller.' A computer that operates an automated telephone ordering system is not an 'established outlet, office, or location,' and does not constitute a 'place of business of the seller.'"

Subsection (b)(5) provides examples of the application of the definition of "place of business of the seller," and the factual bases for subsection (b)(5) are the same as the for the definition. In addition, the treatment of vending machines is consistent with the treatment of vending machines in prior versions of the rule.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Subsections (a)(10) and (b)(5).*

Some commenters asserted that a "place of business" does not have to be operated for the purpose of receiving orders for taxable items. According to the comments submitted by CASTLE:

"The statutory definition of 'place of business,' Tax Code, §321.002(3)(A), describes five different place of business categories: established outlets; established offices; established locations operated by the retailer or the retailer's agent or employee for the purpose of receiving orders for taxable items;

any location at which three or more orders are received by the retailer during a calendar year; and warehouses, storage yards, or manufacturing plants that receive three or more orders in a calendar year. Tax Code, §321.002(a)(3)(A). The first two categories need not have as a purpose receipt of orders and do not need to receive orders to be a place of business."

CASTLE further commented that the function of an "established office" is "business." This interpretation would mean that any facility operated by a seller for a business purpose would be a "place of business" -- executive offices, administrative offices, research and development laboratories, maintenance facilities, vehicle garages, etc. The comptroller rejects this interpretation as unreasonable. The 1979 legislation, which adopted the definition of "place of business," required each "place of business" to have a sales tax permit. See 66th Legislature, 1979, Ch. 624, §3. That requirement is now in Tax Code, §321.303. It is unreasonable to think that the legislature intended that a maintenance facility would be required to have a sales tax permit. A more reasonable interpretation is that a "place of business," whether it is an outlet, office, or location, "must be operated by a seller for the purpose of receiving orders for taxable items," as the rule requires.

Mr. Mays and other commenters also alleged that there is no reason for the comptroller to amend its rule. But, CASTLE's interpretation of the "purpose" requirement illustrates the need for clarification. The CASTLE interpretation may work at cross-purposes with other commenters who claim the right to source all their sales to their "single place of business." If every taxpayer facility with a business purpose is in fact a "place of business" as CASTLE suggests, many of these commenters may have multiple places of businesses. The adopted rule states the comptroller's interpretation, and sets the stage for a definitive court resolution of the conflict between competing commenters.

Mr. Christian commented on the portion of the definition of "place of business" that excludes orders from "employees, independent contractors, and natural persons affiliated with the seller." He commented that the language was "extra-statutory." The comptroller disagrees. The language has been in the rule since 2014, when it was adopted without adverse comment. It allows a facility to make in-house courtesy sales to workers at the facility without the facility becoming a place of business. Courtesy sales to workers are insufficient to conclude that a facility was established for the purpose of receiving orders.

Mr. Christian and other commenters observed that the statutory definition of "place of business" does not mention sales personnel. However, an agency rule need not be limited to parroting the words of the statute. The courts have said that a rule may not impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *State Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.,* 131 S.W.3d 314, 321 (Tex. App.--Austin 2004, pet. denied). The implication of that statement is that a rule may impose burdens, conditions, or restrictions that are consistent with the relevant statutory provisions. *E.g., id.* at 342 (court approved "formulaic means" not specified in the statute). Previous tax cases have approved comptroller rules that articulated requirements that were not explicitly stated in the statute. *Perry Homes v. Strayhorn,* 108 S.W.3d 444, 448 (Tex. App.--Austin 2003, no pet.); *DuPont Photomasks, Inc. v. Strayhorn,* 219 S.W.3d 414, 422 (Tex. App.--Austin 2006, pet. denied). The reference to sales personnel in the rule is consistent with the statutory reference to a

retailer's employee in the definition of "place of business of the retailer."

As previously stated, the comptroller is adding the sales personnel language to provide an objective criterion for buyers, sellers, and auditors to consider. Does a facility have sales personnel? If it does, it is likely a "place of business" -- an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items. If the facility does not have sales personnel, it is likely not a "place of business." This objective criterion is supported by the previously explained legislative history of the statute.

Mr. Sheets, citing former §3.334(h)(3)(B), commented that "the prior version of Rule 3.334 recognized that an Internet order is received at a place of business while the proposed amendments cause Internet orders to be received nowhere."

The comptroller responds that the comment overstates the effect of the prior rule and misunderstands the effect of the adopted rule. Prior to the 2020 amendments, §3.334(h)(3)(B) provided:

"(B) Order received at a place of business in Texas, fulfilled at a location that is not a place of business. *When an order that is placed* over the telephone, *through the Internet,* or by any means other than in person *is received by the seller at a place of business in Texas,* and the seller fulfills the order at a location that is not a place of business of the seller in Texas, such as a warehouse or distribution center, the sale is consummated at the place of business at which the order for the taxable item is received."

(41 TexReg 260, 265) (2016) (former 34 TAC §3.334(h)(3), emphasis added); (39 TexReg 9597, 9606) (2014) (former 34 TAC §3.334(h)(3), emphasis added).

The former language only meant that a place of business may receive an order through the Internet, or any other method of communication except in-person communication. For example, a sales representative at a place of business in Texas could receive an order through the Internet in the form of a VOIP call or an email. But, the former language did not mean that every Internet order is automatically received at a place of business, as illustrated by the following comptroller rulings before and after the comptroller adopted §3.334 in 2014.

Comptroller Letter Ruling (STAR Accession No.) 200510723L (2005) stated:

"The location of the server does not create a 'place of business' for purposes of local tax collection."

And Comptroller Letter Ruling (STAR Accession No.) 200605592L (2006) similarly stated:

"The location of the server does not create a 'place of business' for purposes of local tax collection."

And Comptroller Letter Ruling (STAR Accession No.) 201906015L (2019) similarly stated:

"COMPANY operates **************'s online marketplace (Website) and various apps used by Texas customers to make online orders. ... Orders placed on the Website or through COMPANY's apps and processed and routed by servers are not received at a place of business."

Furthermore, the adopted rule does not mean that Internet orders are received "nowhere." Internet orders, such and VOIP calls and emails may be received at a place of business. And under subsection (b)(5), an Internet order received by an auto-

mated shopping cart is received somewhere - at the computer server -- but, that somewhere is not a "place of business of the seller."

*Summary of the Factual Bases for the Rule - Subsections (b)(1) and (c)(7) - Distributions centers, manufacturing plants, storage yards, and warehouses, and when and where an order is "received."*

Subsection (b)(1) provides:

"(1) Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller for the purpose of selling taxable items where sales personnel of the seller receive three or more orders for taxable items during the calendar year from persons other than employees, independent contractors, and natural persons affiliated with the seller is a place of business of the seller. Forwarding previously received orders to the facility for fulfilment does not make the facility a place of business.

(B) If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the entire facility is a place of business of the seller."

And subsection (c)(7) provides:

"(7) The location where the order is received by or on behalf of the seller means the physical location of a seller or third party such as an established outlet, office location, or automated order receipt system operated by or on behalf of the seller where an order is initially received by or on behalf of the seller and not where the order may be subsequently accepted, completed or fulfilled. An order is received when all of the information from the purchaser necessary to the determination whether the order can be accepted has been received by or on behalf of the seller. The location from which a product is shipped shall not be used in determining the location where the order is received by the seller."

The text of subsection (c)(7) is taken from Section 3.10.1C5 of the Streamlined Sales and Use Tax Agreement (SSUTA). See https://www.streamlinedsalestax.org/docs/default-source/agreement/ssuta/ssuta-as-amended-through-05-24-23-with-hyperlinks-and-compiler-notes-at-end.pdf.

In its 2014 rulemaking, the comptroller proposed a definition of "receive," but deleted the proposed definition in response to concerns stated in oral and written comments. See (39 TexReg 4179) (May 30, 2014) (proposed rule amendment) and (39 TexReg 9598) (December 5, 2014) (adopted rule amendment).

In its January 2023 rulemaking, the comptroller again declined to adopt a definition of "receive" and instead, addressed the two circumstances that were most prominently debated - automated website orders and fulfillment warehouses. Subsection (b) of the adopted rule articulated the comptroller's interpretation that an automated website "receives" the order and that a fulfillment warehouse does not "receive" the order when it is forwarded from the website to the warehouse. See (48 TexReg 400) (January 27, 2023).

Since then, it has become apparent that other circumstances also require a clear articulation of the comptroller's interpretation of the term "received." Thus, the comptroller is adopting a general standard that is applicable to all situations, as well as to automated website orders and fulfillment warehouses.

The adopted standard comports with the ordinary usage of the terms, as evidenced by the fact that the standard has been approved by twenty-four states under the Streamlined Sales Tax Agreement. The adopted standard will also promote uniformity with those states that have elected or will elect origin-based sourcing.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Subsections (b)(1) and (c)(7).*

Most of the commenters are concerned with the effect of the subsections on fulfillment warehouses and similar facilities. Subsection (b)(1)(A) provides: "Forwarding previously received orders to a facility for fulfillment does not make the facility a place of business." Subsection (c)(7) similarly provides: "The location where an order is received ... means the physical location ... where an order is initially received ... and not where the order may be subsequently accepted, completed or fulfilled."

Subsection (c)(7) explicitly limits receipt to the location where the order is initially received, ruling out intermediate and final locations where an order might be accepted, completed, or fulfilled. Subsection (c)(7) also explicitly states the criteria for determining when an order is received: "An order is received when all of the information from the purchaser necessary to the determination whether the order can be accepted has been received by or on behalf of the seller."

CASTLE commented that the modifier "initially" is not present in the portion of definition of "place of business" that refers to the location at which orders are "received." CASTLE, and Kyle Kasner in a previous rulemaking proceeding, also commented that the consummation statute in Tax Code, §321.203 sometimes refers to where the retailer "first receives" the order, implying that an order can be "received" at more than one place.

CASTLE also argued that the dictionary defines "receive" as "to take into one's possession, to take delivery of a thing, to get, or to come by," and a fulfillment warehouse cannot fulfill an order unless it gets or comes by the order. This argument may seem reasonable in the abstract, but not in context. When the statute and its legislative history are considered as a whole, the proper construction is the opposite - a fulfillment warehouse does not receive an order for purposes of the local sales tax statutes merely because fulfillment information has been sent to the warehouse.

With regard to statutory construction, the Texas Supreme Court has stated: "We must analyze statutory language in its context, considering the specific sections at issue as well as the statute as a whole. {Citation omitted}. While 'it is not for courts to undertake to make laws "better" by reading language into them,' we must make logical inferences when necessary 'to effect clear legislative intent or avoid an absurd or nonsensical result that the Legislature could not have intended.'" *Castleman v. Internet Money Ltd.,* 546 S.W.3d 684, 688 (Tex. 2018), quoting *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n,* 518 S.W.3d 318, 338 (Tex. 2017).

Considering the local sales tax statute sections as a whole, the term "received" must be limited to the location where an order is initially received. This construction effects the clear legislative intent and avoids an absurd or nonsensical result that the legislature could not have intended.

The legislature did not define "receiving," "received," or "order." So, the terms must be construed in the context in which they

are used. One context is the definition of "place of business of the retailer" in Tax Code, §321.002(3)(A). A "place of business of a retailer" is a location operated "for the purpose of receiving orders." One might say, as CASTLE does, that a purpose of a fulfillment warehouse is to receive the order because receipt is a necessary step in fulfillment. However, one might also reasonably say that while a sales office is operated for the "purpose of receiving orders," a fulfillment warehouse without sales personnel is not operated for such a purpose - the purpose is only fulfillment, which does not require the receipt of the entire order containing price and payment terms. The only necessary information is delivery information - the product description, quantity, and delivery location. Because there are at least two reasonable interpretations, the terms in this context are ambiguous.

In another context the meaning becomes clearer. That context is the consummation statute in Tax Code, §321.203. Consider Tax Code, §321.203(d):

"(d) If the retailer has more than one place of business in this state and Subsections (c) and (c-1) do not apply, the sale is consummated at:

(1) the place of business of the retailer in this state where the order is received; or

(2) if the order is not received at a place of business of the retailer, the place of business from which the retailer's agent or employee who took the order operates."

Assume a situation in which the retailer has multiple retail stores in Texas (more than one place of business in the state), but a customer calls in an order to a Texas sales office and the order is fulfilled from a location outside of Texas, so that Tax Code, §321.203(c) and (c-1) indisputably do not apply. Also assume that information from the order is forwarded to the retailer's executive office in Texas for approval, to the retailer's Texas credit office for a credit check, to the retailer's Texas manufacturing facility for assembly, to the retailer's Texas storage lot for bundled shipping to a fulfillment center, to the retailer's fulfillment center for fulfillment to the customer, to the retailer's Texas accounting office for billing, and to the retailer's Texas controller for collection on the account.

In the sense proposed by CASTLE, all these locations "received" the "order" to complete their assigned tasks. But this interpretation leads to absurd results. If the "order" was "received" at multiple locations, so that each location became a "place of business," it would be impossible to identify the particular location where the local tax should be sourced.

Furthermore, Tax Code, §321.203(d) refers to "*the* place of business ... where the order is received," indicating that there is a singular location where the order is received. The most reasonable singular location, and perhaps the only reasonable singular location, is where the information necessary to accept the order is initially received as provided in subsection (c)(7). In the example above, the location where the order is received would be the Texas sales office.

This example regarding Tax Code, §321.203(d) also illustrates the need for additional clarity. Subsection (b)(1)(A) explicitly provides that a fulfillment center is not a "place of business" simply because orders may be forwarded to the facility for fulfillment. But subsection (b)(1)(A) does not explicitly eliminate the possibility that other locations are "places of business," such as locations where orders are accepted or otherwise completed. Subsection (c)(7) explicitly eliminates those possibilities. There is a single

location where an order is received - the initial location where all the information necessary for acceptance has been received. With this clarification, the consummation statute can be applied with greater certainty.

CASTLE commented: "For all practical purposes an order placed on a website is typically received at the same time at various locations, including fulfillment centers." However, for the practical purpose of sourcing local tax, there is a single location where a website order is initially received - the Web server. According to a report from the group's own expert, Amit Basu: "...the Buyer places the online order by communicating with a Web server that manages the Seller's Web site. ... The Web server transmits the order electronically to the Seller's e-Commerce software program."

Mr. Kroll commented that it may be impossible to determine the location of initial receipt: "Some companies will have multiple redundant server/data center operations spread across multiple geographic locations." The comptroller agrees. As pointed out in the 2020 rulemaking, a computer server may be situated on the seller's premises, it may be situated at a co-location facility operated by a third party, or it may be situated at a web hosting facility operated by a third party. The computer server may be one of multiple servers that serve the same website from different physical addresses as part of a cloud distribution network. The computer server may route the order to multiple other servers for load balancing purposes. Conversely, a single computer server may serve multiple websites. The seller may or may not know the physical address of the server receiving the order. If the seller does not even know the physical location of the server, an ordinary person would not consider the physical location of the computer server to be a place of business of the seller. So, the best way to treat these orders consistently and coherently is to treat them uniformly as being received at locations that are not places of business of the seller. If a server is not a "place of business" of the seller, then the exact location of the server does not have to be determined because the location will not determine the sourcing of local sales tax.

The comptroller's application of the statute to fulfillment centers is also supported by statutory history. Prior to 1979, the consummation statute had no provision for sourcing to where an "order" was "received," and the statute provided:

"If the retailer has more than one place of business in the State, the place or places at which retail sales, leases, and rentals are consummated shall be the retailer's place or places where the purchaser or lessee takes possession and removes from the retailer's premises the articles of tangible personal property, or if the retailer delivers the tangible personal property to a point designated by the purchaser or lessee, then the sales, leases, or rentals are consummated at the retailer's place or places of business from which tangible personal property is delivered to the purchaser or lessee." Acts 1969, 61st Leg., 2nd C.S., Ch. 1. Art. 1 §42.

In 1979, the Texas Legislature added a definition of "place of business of the retailer," which was previously undefined. The definition required that the location be operated "for the purpose of receiving orders." Acts 1979, 66th Legislature, Ch. 624, Art. 1, §3 (amended Article 1066c(B)(1)). The legislature also added a sourcing provision based on where the order is received, comparable to current Tax Code, §321.203(d):

"If neither possession of tangible personal property is taken at nor shipment or delivery of the tangible personal property is

made from the retailer's place of business within this State, the sale, lease, or rental is consummated at the retailer's place of business within the State where the order is received or if the order is not received at a place of business of the retailer, at the place of business from which the retailer's salesman who took the order operates."

Acts 1979, 66th Legislature, Ch. 624, Art. 1, §3 (amended Article 1066c(B)(1)(c)). Like current Tax Code, §321.203(d), the legislature referred to "*the* place of business ... where the order is received," contemplating a single location, and not multiple locations. And like the current statute, the 1979 sourcing statute would be unworkable if an "order" could be "received" at multiple locations where order information might be sent for processing.

The 1979 amendments were originally set to expire on August 31, 1981. But, following an October 2, 1980, Interim Report of the House Ways and Means Committee, the legislature made the 1979 amendments permanent. Acts 1981, 67th Legislature, Ch. 838, §1.

Mr. Kroll commented that the comptroller "misremembers the legislative history." The comptroller disagrees. During the 1979 session of the legislature, a House Study Group analysis stated that the "bill is necessary to protect the state from possible consequences of the pending court suits." The analysis specifically referenced *"Dunigan Tool and Supply v. Bullock"* as one of those suits. The analysis is available at the Legislative Reference Library website at https://lrl.texas.gov/scanned/hro-BillAnalyses/66-0/SB582.pdf.

In the *Dunigan* litigation, sales personnel took orders that were forwarded to pipe storage facilities where the orders were fulfilled. At the time of the 1979 legislation, the district court had ruled that the transactions should be sourced to the pipe storage facilities. *Bullock v. Dunigan Tool & Supply Co.,* 588 S.W.2d 633, 635 (Tex. Civ. App. - Austin, Sept. 6, 1979, writ ref'd n.r.e.). Therefore, when the 1979 House Study Group bill analysis stated that the bill was intended to protect the state from the consequences of the Dunnigan litigation, the analysis meant that the legislation was intended to reduce the circumstances in which transactions would be sourced to fulfillment warehouses, which at the time were often located in rural areas not subject to local sales tax. The legislature accomplished this objective by adding a definition of "place of business" that was limited to a location operated "for the purpose of receiving orders," and by adding a provision for sourcing transactions to where the order was received. Acts 1979, 66th Legislature, Ch. 624, Art. 1, §3.

Mr. Kasner in a previous rulemaking proceeding commented that the proposed rule reverses the effect of the *Dunigan* decision. He is correct, because the rule attempts to follow the subsequent legislation, which was intended to reverse the effect of the Dunigan decision.

In the subsequent October 2, 1980, Interim Report of the House Ways and Means Committee, the committee considered whether to allow the recently adopted statutory definition of "place of business" to expire. The committee described the consequence: "The location of sale would no longer be tied to permitted outlets, salesmen's locations, or sales offices." Interim Report at 20. The committee understood that the phrase "operated for the purpose of receiving orders" meant sales activities and not ancillary activities necessary to subsequently effectuate the sale.

To be clear, under the 1979 legislation and today, a fulfillment warehouse could be and can be a "place of business." The legislature set a low threshold: "A warehouse, storage yard, or manu-facturing plant may not be considered a 'place of business of the retailer' unless three or more orders are received by the retailer in a calendar year at such warehouse, storage yard, or manufacturing plant." Acts 1979, 66th Legislature, Ch. 624, Art. 1, §3. A typical warehouse, storage yard, or manufacturing plant would almost certainly process more than three orders in a calendar year. So, this explicit threshold requirement is an additional indication that the legislature did not intend for these facilities to automatically be "places of business" simply because they processed order information that was previously received at other locations. Instead, the legislature set a low threshold yet still expected these facilities to engage in at least some sales activities.

Mr. Gilmore commented: "This is a major revision to a state practice that has been in place for more than 50 years." CASTLE commented that the amendment is "inconsistent with his {the comptroller's} pre-2019 application of the statutory definition of 'place of business.'" The comptroller disagrees with these comments.

First, the comptroller's treatment of fulfillment warehouses goes as far back as Comptroller's Decision No. 15,654 (1985), which stated (emphasis added):

"But it seems to the administrative law judge that the legislature was amending the law if not entirely in reaction to the then-pending case of *Bullock v. Dunigan Tool & Supply Co.,* 588 S.W.2d 633 (Tex. Civ. App.-Texarkana, writ ref'd n.r.e.), at least partly in reaction to that case. And if that be so, then the legislature did not want warehousing and storage facilities (many of which are outside city limits) to be the places where sales were consummated for local sales tax purposes unless orders were actually received there by personnel working there, but wanted the office location out of which the salesman operated to be the place where the sales were consummated."

CASTLE commented: "The Comptroller misreads the decision." But, the text of the decision speaks for itself: "the legislature ... wanted the office location out of which the salesman operated to be the place where the sales were consummated."

Second, the text of former §3.334(h)(3) indicated that a fulfillment center is not automatically a "place of business" for local sourcing (emphasis added):

"(3) Consummation of sale. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have a place of business in Texas or multiple places of business in the state.

...

(B) Order received at a place of business in Texas, fulfilled at a location that is not a place of business. When an order that is placed over the telephone, through the Internet, or by any means other than in person is received by the seller at a place of business in Texas, and the seller *fulfills the order at a location that is not a place of business of the seller in Texas,* such as a warehouse or distribution center, the sale is consummated at the place of business at which the order for the taxable item is received.

...

(D) Order fulfilled within the state at a location that is not a place of business. When an order is received by a seller at any location other than a place of business of the seller in this state, and the seller *fulfills the order at a location in Texas that is not a place of business of the seller,* then the sale is consummated at the

location in Texas to which the order is shipped or delivered, or the location where it is transferred to the purchaser."

(41 TexReg 260, 265) (2016) (former 34 TAC §3.334(h)(3), emphasis added); (39 TexReg 9597, 9606) (2014) (former 34 TAC §3.334(h)(3), emphasis added).

Third, the consummation rules in former §3.334(h)(3) were augmented with an explicit provision for fulfillment centers, which the former rule referred to as "distribution centers" (emphasis added):

"(2) Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller at which the seller receives three or more orders for taxable items during the calendar year is a place of business.

(B) If a salesperson who receives three or more orders for taxable items within a calendar year is assigned to work from, or to work at, a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, *then* the facility is a place of business.

(C) If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, *then* the entire facility is a place of business of the seller."

(41 TexReg 260, 263) (2016) (former 34 TAC §3.334(e)(2), emphasis added); (39 TexReg 9597, 9605) (2014) (former 34 TAC §3.334(e)(2), emphasis added).

If a distribution center were automatically a "place of business" for local tax sourcing as the Plaintiff cities contend, subparagraphs (B) and (C) would not be required - there would be no need for a salesperson or a sales office to "then" make the distribution center a "place of business" for local tax sourcing purposes.

Fourth, in addition to its rule, the comptroller distributed Publication 94-105, sometimes called the "Local Sales and Use Tax Bulletin - Guidelines for Collecting Local Sales and Use Tax," or "Tax Topics - Guidelines of Collecting Local Sales and Use Tax" (Guidelines). These Guidelines were posted on the comptroller's website and indexed in the comptroller's State Tax Automated Research System. Since at least 2007, the Guidelines referred to a "location within the state that is not a place of business (such as a warehouse or distribution center)." E.g., STAR Accession No. 200902596L (February 2009). The Guidelines were intended as a general guide and not as a comprehensive resource. But, an ordinary reader would not walk away with the impression that a taxpayer's fulfillment center was automatically a "place of business" for purposes of local tax sourcing.

Fifth, in 2016, the comptroller rewrote the Guidelines to be even more specific regarding fulfillment centers: "The warehouse from which the person ships those items is not a place of business, unless the warehouse separately qualifies as a place of business." STAR Accession No. 201606995L (June 1, 2016).

And, sixth, in 2019, a comptroller letter ruling discussed fulfillment centers, referring to the former rule, then in effect: "Scenario One: Taxpayer Retailer operates fulfillment centers in Texas that are not open to the public. ... When an order is received at a location that is not a place of business and is *fulfilled in Texas at a location that is not a place of business,* the

sale is consummated at the location in Texas to which the order is shipped. See §3.334(h)(3)(D). For Scenario One, local sales and use tax is due based on the location where the order is delivered." STAR Accession No. 201906015L (June 13, 2019) (emphasis added).

Each of these documents, which predate the rulemaking, and which the comptroller indexed and made available for public inspection on the State Tax Automated Research (STAR) System, is consistent with the statement in the rule that the location from which a product is shipped shall not be used in determining the location where the order is received by the seller.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - The use of language from the SSUTA in subsection (c)(7).*

In the rulemaking that adopted subsection (c))(7), the comptroller received comments that are discussed below.

Mr. Kroll commented: "The Texas Legislature, (the entity with constitutional responsibility for the state's Tax Policy), has had nine regular sessions to adopt the SSUTA's preferred origin sourcing model found in SSUTA 3.10.1. The Legislature has not acted, even in 2013 when then Senator Hegar was chairing the Senate Finance, Subcommittee on Fiscal Matters with Tax policy responsibility."

CASTLE similarly commented: "the Legislature, in general, rejected the Comptroller's efforts to become a member and be subject to the Agreement, and, more specifically, declined to adopt the language of 3.10.1 and change the definition of what is a 'place of business.'"

Mr. Land commented: "By not adopting the agreement, the legislature was rejecting the very language the Comptroller proposes to adopt..."

Clyde Hairston, Mayor of the City of Lancaster, commented: "Rule changes refer to the Streamline Sales and Use Tax Agreement. States participating in this agreement do not seem to have similar economic issues as the State of Texas. If the intent of the rule change is to position the state to participate in the Sales and Use Tax Agreement, further research is needed to better support the rationale for this action."

And, Rolin McPhee, City Manager of the City of Longview, commented: "This sentiment runs counter to the story of Texas. Yes, we should look to and learn from other states, but Texas should lead and not follow. We should not implement statewide policies because 'everyone else is doing it.'"

David Bristol, Mayor of the City of Prosper, had similar comments.

Although the legislature declined to adopt the SSUTA, it would be an overstatement to suggest that the legislature specifically rejected the language of a single subsection of the SSUTA. As CASTLE pointed out: "Therefore, prior to December 31, 2007, the Legislature had to agree to the quoted 3.10.1 language, as a step in allowing Texas to be subject to the Agreement. But doing so would have required not only that the Legislature radically revise the statutory definition of 'place of business' but make many other changes to the sections of the Tax Code addressing sales and use tax."

Texas has a unique, composite consummation statute, in which sales are sometimes sourced to where the order is received, sometimes sourced to where the order is fulfilled, and sometimes sourced to where the order is delivered. Adoption of the SSUTA

would require fundamental changes to this composite consummation statute, which the comptroller is not advocating or promoting. However, there is one area of overlap. Both systems use the receipt of an order as a factor in sourcing. In this area of overlap, it is entirely appropriate to consider how the SSUTA does it.

The comptroller has considered the language in the SSUTA and concluded that it is a reasonable and practical method of determining where and when an order is received. And, the SSUTA language has the added benefit of being a concept that other states have acknowledged, and a concept with which many taxpayers will already be familiar.

*Summary of the Factual Bases for the Rule - Subsection (c) - Application of the consummation rules.*

Subsection (c) states in relevant part:

"The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in Texas, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in Texas."

The language of subsection (c) tracks the language in the prior 2014 and 2016 versions of the rule:

"The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have a place of business in Texas or multiple places of business in the state."

(41 TexReg 260, 265) (2016) (former 34 TAC §3.334(h)(3); (39 TexReg 9597, 9606) (2014) (former 34 TAC §3.334(h)(3)).

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Subsection (c).*

Mr. Sheets commented that the rule changes how Internet orders are sourced for retailers with a single place of business in Texas. However, the language of subsection (c) has the same effect as the language in the prior 2014 and 2016 versions of the rule - no special treatment for vendors with a single "place of business."

Mr. Sheets commented that the rule conflicts with Tax Code, §321.203(b), which provides:

"(b) If a retailer has only one place of business in this state, all of the retailer's retail sales of taxable items are consummated at that place of business except as provided by Subsection (e)."

Tax Code, §321.203(b) describes the consummation principles for a seller that has only one place of business in the state. In the comptroller's view, those principles are consistent with the treatment of other sellers and do not require special treatment in the rule.

As a matter of statutory construction, Tax Code, §321.203(b) should be viewed in the context of the statute as a whole. *Castleman v. Internet Money Ltd.,* 546 S.W.3d 684, 688 (Tex. 2018). When the statute is considered as a whole, the only reasonable interpretation is that all retail sales associated with a single place of business are consummated at that single place of business, regardless of whether the order was placed in person there, the order was received there from a purchaser at another location, or the order was fulfilled there. But, the statute cannot reasonably mean that an order with no connection to that place of business would be consummated there.

Tax Code, §321.203 establishes a hierarchy among places of business involved in a transaction, subject to certain exceptions. The hierarchy is described in a summary chart in the Comptroller's Guide for Sellers. See https://comptroller.texas.gov/taxes/publications/94-105.php (Local Sales and Use Tax Collection - A Guide for Sellers). If an order is fulfilled from a place of business of the seller in Texas, the sale is consummated at that location even if the order is received at another place of business in Texas (except for orders received in person). Conversely, an order is consummated at the place of business of the seller in Texas where the order is received only if the order was not fulfilled from a place of business in Texas (except for orders received in person). Subsection (c) of the comptroller rule reflects this hierarchy.

The statutory provision in Tax Code, §321.203(b), for a seller with a single place of business in Texas, is simply a recognition that the hierarchy is not required in those circumstances. The outcome will be the same regardless of whether the order is received, fulfilled, or received and fulfilled from that place of business, and regardless of whether the order is placed at that location in person - the sale will be consummated at that place of business.

But the place of business must have a discrete connection to the sale for the sale to be consummated there. Tax Code, §321.203(b) cannot reasonably be interpreted to mean that a sale is consummated at the seller's single place of business in Texas, even if that place of business did not receive the order from the customer, did not fulfill the order to the customer, and was not the location where the order was delivered.

Suppose a reseller has a single place of business, located in City A, that consists only of a sales office. The reseller also has a fully-automated shopping website hosted by a server in City B that receives and processes an order from a customer in City C. The order is then fulfilled from a third-party manufacturer's warehouse in City D and shipped to the customer in City C. To make the customer in City C pay local sales tax to City A, a jurisdiction that had no relation to the customer or the transaction, would be an unreasonable reading of the statute that the Legislature could not have intended. See, *Castleman v. Internet Money Ltd.,* 546 S.W.3d 684, 688 (Tex. 2018) (making "logical inferences" necessary "to avoid an absurd or nonsensical result that the Legislature could not have intended.").

Another rule of statutory construction is that compliance with the constitutions of this State and the United States is intended. Government Code, §311.021(a). In the tax arena, as elsewhere, the United States Constitution requires due process. In tax cases, the United States Supreme Court has stated that due process "centrally concerns the fundamental fairness of governmental activity." *N. Carolina Dep't of Revenue v. The Kimberley Rice Kaestner 1992 Family Tr.,* 139 S. Ct. 2213, 2219, (2019), quoting *Quill v. North Dakota,* 504 U.S. 298, 312 (1992).

The "due course of law" provision of the Texas constitution provides protections similar to, and in some instances, greater than the protections in the federal due process clause. *Patel v. Tex. Dep't of Licensing & Regulation,* 469 S.W.3d 69, 86-87 (Tex. 2015) ("the Texas due course of law protections in Article I, §19, for the most part, align with the protections found in the Fourteenth Amendment to the United States Constitution. But, ... Section 19's substantive due course provisions undoubtedly were intended to bear at least some burden for protecting individual rights that the United States Supreme Court determined were not protected by the federal Constitution.").

A statute violates the Texas due course of law protection if the "statute's actual, real-world effect as applied to the challenging party could not arguably be rationally related to, or is so burdensome as to be oppressive in light of, the governmental interest." *Id.* at 87.

The actual, real-world effect of Mr. Sheet's interpretation could not arguably be rationally related to, or is so burdensome as to be oppressive to taxpayers in light of, the governmental interest in local taxation. Specifically, there is no rational connection or sufficient government interest to make a purchaser in City C pay sales tax to City A simply because the vendor arranged its business such that it had a single sales office in City A that had nothing to do with the transaction.

Mr. Sheets commented that procedural due process requirements do not apply because Tax Code, §321.203(b) is the result of legislative action. However, the comptroller's statutory interpretation is based on substantive due process. See, *Patel,* 469 S.W.3d at 75.

Mr. Sheets also proposes to add a "special" exception for sellers with a single place of business in Texas. The comptroller declines to make the proposed revisions for the reasons stated in the preceding paragraphs. The City of Round Rock is challenging the comptroller's interpretation in the pending litigation. Again, it is appropriate to state the comptroller's interpretation in the rule so that those who disagree may challenge the interpretation in court.

*Summary of the Factual Bases for the Rule - Subsection (b)(4) - Order received by a salesperson who is not at a place of business when the salesperson receives the order.*

Subsection (b)(4) provides:

"(4) An order that is received by a salesperson who is not at a place of business of the seller when the salesperson receives the order is treated as being received at the location from which the salesperson operates. Examples include orders that a salesperson receives by mail, telephone, including Voice over Internet Protocol and cellular phone calls, facsimile, and email while traveling. The location from which the salesperson operates is the principal fixed location where the salesperson conducts work-related activities. The location from which a salesperson operates will be a place of business of the seller only if the location meets the definition of a 'place of business of a seller' in subsection (a)(16) of this section on its own, without regard to the orders imputed to that location by this paragraph."

Tax Code, §321.203(d) provides for consummation of a local sale at the place of business "from which the retailer's agent or employee who took the order operates." Prior to the 2020 amendment, the rule did not define the location from which a salesperson operates. The third sentence of subsection (b)(4) now provides in part: "The location from which the salesperson operates is the principal fixed location from which the salesperson conducts work-related activities..." A physical connection between the salesperson and the place of business is a reasonable interpretation of the location from which a salesperson operates.

The final sentence of subsection (b)(4) clarifies that the principal fixed location from which the salesperson conducts work-related activities may or may not be a place of business of the seller, depending upon whether the location meets the definitional requirements of subsection (a)(16). For example, if an entrepreneur conducts sales operations from the entrepreneur's residence, the entrepreneur will be operating out of a place of business of the seller. But if a person performs contract telemarketing from the person's residence, the person will not be operating out of a place of business of the seller because the residence is not "operated by the seller," as required by subsection (a)(16).

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Subsection (b)(4).*

In the rulemaking that adopted subsection (b)(4), Mr. Kroll commented that subsection (b)(4) "no longer imputes the order to the place of business where the employee is assigned, and that the new policy does not accurately or easily reflect the mobile workforce of today." And Brian Pannell, North America Tax Director for Dell Inc., commented that subsection (b)(4) deviates from Tax Code, §321.203(d)(2) and "effectively changes sourcing rules for salespersons who are assigned to regional places of business but do their principal work-related activities at other locations."

The comptroller disagrees with these comments. Tax Code, §321.203(d) does not impute an order to the location where a salesperson is "assigned." Instead, the statute provides that in certain circumstances, an order may be imputed to the "place of business from which the retailer's agent or employee who took the order operates." And, although an order may be imputed to a place of business of the retailer if the agent or employee operates out of that place of business, the statute does not mandate that an agent or employee be assigned to, or operate out of, a place of business. If an agent or employee does not operate out of a place of business, Tax Code, §321.203(d) has no application. And, it would be unreasonable to allow a vendor to source sales to a place of business by merely "assigning" a salesperson to that location in the absence of any physical connection.

*Summary of the Factual Bases for the Rule - Subsection (b)(6) -small and micro-businesses.*

The comptroller adds subsection (b)(6) to the former rule:

"If a small business or a micro-business operates a single location out of which it conducts all of its business activities, the comptroller will presume that the location is a place of business of the seller."

The comptroller also adds following supporting definitions to subsection (a):

"Independently owned and operated business--a self-controlling entity that is not a subsidiary of another entity or otherwise subject to control by another entity, and that is not publicly traded."

"Micro-business--a legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has not more than 20 employees."

"Small business--a legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has fewer than 100 employees or less than $6 million in annual gross receipts."

The definition of "independently owned and operated business" is taken from Government Code, Chapter 2006, Small Busi-

nesses and Rural Communities Impact Guidelines, updated in December 2017.

The definitions of "micro-business" and "small business" are taken from Government Code, Chapter 2006.

The comptroller cannot make a location a "place of business" by rule if the statute does not allow it. But, the agency can presume that a location is a "place of business" based on indicative facts, such as a small, independent business that conducts all of its business operations out of a single location.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Subsection (b)6).*

Mr. Sheets commented that the subsection does nothing to reduce the adverse economic effects on small and microbusinesses. Mr. Land commented that there is no rational policy reason for treating businesses differently based upon size or revenue, and Mr. Gilmore questioned the reasoning behind the differentiation. CASTLE commented that the presumption is contrary to the law and factually unsupported. And, Mr. Christian commented that the presumption should be expanded.

The comptroller responds that the agency routinely uses presumptions in applying statutes, and the courts have honored them. A word search of the Texas Administrative Code produces over 60 instances in which the comptroller rules use presumptions. For example, the Austin Court of Appeals recognized that "repainting is presumed to be a taxable activity unless the taxpayer affirmatively shows that the repainting meets the specific requisites of maintenance as set out in the rule." *GATX Terminals Corp. v. Rylander,* 78 S.W.3d 630, 635 (Tex. App. - Austin 2002, no pet.); 34 TAC §3.357(b)(8).

The rational policy reason for special treatment, and the size and revenue requirements have been mandated by the Texas Legislature in Government Code, Chapter 2006. And, the parameters are appropriate for the presumption. It is reasonable to assume that a small business or a micro-business that operates a single location out of which it conducts all of its business activities will receive three or more orders per calendar year at that location, making that location a place of business of the seller. It is less reasonable to make that assumption if the business operates out of more than one location, or if the business is an affiliate of another, creating the possibility that the order receipt and order fulfillment may occur in different locations.

*Summary of the Factual Bases for the Rule - Subsections (c)(2)(B)(ii), (d)(2), and (i) - Seller's obligation to collect local use tax.*

Subsection (c)(2)(B)(ii) provides that a remote seller that is required to collect state use tax must also collect local use tax. Subsection (d)(2) and subsection (i) provide that a non-remote seller is responsible for collecting local use tax regardless of the location of the seller in Texas. Physical presence in the local jurisdiction is no longer required. These expansions of the local sales tax collection responsibilities of sellers are based on the United States Supreme Court decision in *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080 (June 21, 2018).

The comptroller received no negative submissions or proposals regarding these subsections.

*Summary of the Factual Bases for the Rule - Subsection (i)(3) - Single local tax option for remote sellers.*

Subsection (i)(3) implements House Bill 2153, 86th Legislature, 2019, which sets a single local use tax rate that remote sellers may elect to use.

The comptroller received no negative submissions or proposals regarding this subsection.

*Summary of the Factual Bases for the Rule - Subsection (k)(5) - Marketplace sales.*

Subsection (k)(5) implemented House Bill 1525, 86th Legislature, 2019, which places local sales and use tax collection responsibilities on marketplace providers.

The comptroller received no negative submissions or proposals regarding this subsection.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Public benefits and costs.*

Mr. Christian commented that there will be a significant fiscal implication for businesses that must invest in reprogramming software for enhanced local tax compliance, and the economic cost to the public must be estimated. Mr. Gilmore, Mr. Land, Mr. Sheets, and Mr. Mays also commented that the rule will increase business compliance costs.

The comptroller acknowledges that there may be additional compliance costs, since it is conceivable that the rule may cause some vendors to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase. And if vendors change from multiple-location reporting to single-location reporting, their compliance burden may diminish.

The total net economic cost cannot be reliably estimated for reasons explained in the preamble to the proposed rule. The comptroller cannot determine the number of vendors that would change from single-location report to multiple-location reporting. Furthermore, the cost of compliance with the statute cannot be a factor in the rulemaking because compliance with the statute is required with or without the rule.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Revenue Effect*

The preamble to the proposed rule explained the methodology that the comptroller used to estimate the revenue effect. Mr. Mays, Mr. Sheets, Mr. Gilmore, Mr. Land, and CASTLE all commented that the analysis of the revenue impact on cities was insufficient, but did not identify any errors in the assumptions that the agency used in the estimate.

CASTLE contends that "there must be a dollar amount specific to each local government or a dollar amount that can be easily calculated from the methodology used by the Comptroller to generate an estimate." The comptroller responds that Government Code, §2001.024 has never been interpreted by any agency or any court to require individual estimates. There are over 1,700 local governments in Texas with a local sales tax. In all prior rulemakings, the comptroller has never estimated the loss of or increase in local sales tax revenue for each local government in Texas with a local sales tax. And, the comptroller is unaware of any other agency that has made individual estimates for each local government.

Furthermore, the statute does not require the comptroller to articulate a methodology for individual estimates that the agency is not required to make. If an individual jurisdiction wants to con-

duct its own investigation, the preamble to the proposed rule explained the data that the jurisdiction would have to obtain, and the preamble explained how a consultant used the data in his study. See, (49 TexReg 2440, 2443) (April 19, 2024).

CASTLE suggests that the comptroller could develop a sample of local governments. The comptroller responds that Government Code, §2001.024 does not require sampling. Furthermore, an aggregate estimate based on sample of individual jurisdictions would do little to tell individual jurisdictions how they would be affected.

Mr. Sheets suggested that the comptroller could have undertaken alternatives, such as making estimates for the top twenty most populated jurisdictions or making estimates for the cities involved in the lawsuit. The comptroller responds that Government Code, §2001.024 does not require selective, individual estimates.

The Administrative Procedure Act only requires a fiscal note showing "the estimated loss or increase in revenue to the state or to local governments as a result of enforcing or administering the rule." Government Code, §2001.024(a)(4)(C). The comptroller has done that. In addition, the rulemaking process has disclosed the types of cities and taxpayers that may be most affected - cities receiving substantial tax revenues from fulfillment centers, such as the CASTLE group, and cities receiving substantial tax revenues from taxpayers sourcing all their sales to a single location, such as the City of Round Rock.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Local employment impact statement.*

CASTLE commented that the comptroller "fails to provide a non-conclusory explanation of why the impact cannot be determined." The comptroller disagrees. The explanation is stated in the preamble of the proposed rule.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Government growth impact statement.*

CASTLE comments that the preamble to the proposed rule "fails to discuss in any meaningful way" the government growth statement required by Government Code, §2001.0221. Comptroller Rule 11.1(d) states that an agency shall "reasonably describe" the effect on government growth. 34 TAC §11.1(d). Historically, the reasonable descriptions published by the comptroller, as well as other agencies, consist of statements of no effect without explanation, and statements of effect with brief explanations. The comptroller followed the historical approach in this rulemaking.

CASTLE comments that the rule will create or eliminate a government program if a local government loses significant local sales tax revenue. The comptroller responds that the rule itself does not create or eliminate a government program. The creation or elimination of local government programs is at the discretion of local governments.

CASTLE also comments that "the Comptroller has already admitted that there will be a decrease in the fees he receives." The comptroller acknowledges that to the extent that transactions previously sourced within an incorporated municipality would be sourced to an unincorporated area without a cumulative local tax rate levied by municipal (pursuant to a limited purpose annexation agreement), county, and/or special purpose taxing authorities commensurate with the cumulative local tax rate levied by the municipal, county, and/or special purpose taxing authorities

applicable where the transactions were formerly sourced, there would be a reduction in aggregate local sales tax levies and consequent reduction in state service charge revenues under Tax Code, §§321.503, 322.303, and 323.503.

*Statement of the statutory or other authority under which the rule is adopted.*

Tax Code, §§111.002 (Comptroller's Rule; Compliance; Forfeiture), 321.306 (Comptroller's Rules), 322.203 (Comptroller's Rules), and 323.306 (Comptroller's Rules) authorize the comptroller to adopt rules to implement the tax statutes.

*Sections or articles of the code affected.*

Tax Code, §151.0595 (Single Local Tax Rate for Remote Sellers); Tax Code, Chapter 321, Subchapters A, B, C, D, and F; Tax Code, Chapter 322; and Tax Code, Chapter 323 are affected.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on June 14, 2024.

TRD-202402641
Jenny Burleson
Director, Tax Policy Division
Comptroller of Public Accounts
Effective date: July 4, 2024
Proposal publication date: April 19, 2024
For further information, please call: (512) 475-2220



CHAPTER 5. FUNDS MANAGEMENT (FISCAL AFFAIRS)
SUBCHAPTER D. CLAIMS PROCESSING--PAYROLL

**34 TAC §5.46**

The Comptroller of Public Accounts adopts amendments to §5.46 concerning deductions for paying membership fees to certain state employee organizations, without changes to the proposed text as published in the May 3, 2024, issue of the *Texas Register* (49 TexReg 2985). The rule will not be republished.

The amendments add a definition of CAPPS in new subsection (a)(1) and renumber the subsequent provisions accordingly.

The amendments to subsections (b)(1)(C) and (b)(2)(B) add a second method of establishing, changing or cancelling a payroll deduction for state employee organization membership fees. These provisions currently allow a state employee to establish, change or cancel a payroll deduction by submitting a written authorization form to the employer's human resource officer or payroll officer. The amendments to these provisions also allow a state employee to establish, change or cancel a payroll deduction by submitting an electronic authorization through CAPPS.

The amendments to subsection (b)(2)(D) make a conforming change to require state agencies to notify the affected eligible organization if a state employee submits an electronic authorization form through CAPPS cancelling a payroll deduction for state employee organization membership fees.

# APPENDIX E

TITLE 34. PUBLIC FINANCE

PART 1. COMPTROLLER OF PUBLIC ACCOUNTS

CHAPTER 3. TAX ADMINISTRATION

SUBCHAPTER O. STATE AND LOCAL SALES AND USE TAXES

§3.334. Local Sales and Use Taxes.

(a) Definitions. The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

(1) Cable system--The system through which a cable service provider delivers cable television or bundled cable service, as those terms are defined in §3.313 of this title (relating to Cable Television Service and Bundled Cable Service).

(2) City--An incorporated city, municipality, town, or village.

(3) City sales and use tax--The tax authorized under Tax Code, §321.101(a), including the additional municipal sales and use tax authorized under Tax Code, §321.101(b), the municipal sales and use tax for street maintenance authorized under Tax Code, §327.003, the Type A Development Corporation sales and use tax authorized under Local Government Code, §504.251, the Type B Development Corporation sales and use tax authorized under Local Government Code, §505.251, a sports and community venue project sales and use tax adopted by a city under Local Government Code, §334.081, and a municipal development corporation sales and use tax adopted by a city under Local Government Code, §379A.081. The term does not include the fire control, prevention, and emergency medical services district sales and use tax authorized under Tax Code, §321.106, or the municipal crime control and prevention district sales and use tax authorized under Tax Code, §321.108.

(4) Comptroller's website--The comptroller's website concerning local taxes located at: https://comptroller.texas.gov/taxes/sales/.

(5) County sales and use tax--The tax authorized under Tax Code, §323.101, including a sports and community venue project sales and use tax adopted by a county under Local Government Code, §334.081. The term does not include the county health services sales and use tax authorized under Tax Code, §324.021,

the county landfill and criminal detention center sales and use tax authorized under Tax Code, §325.021, or the crime control and prevention district sales and use tax authorized under Tax Code, §323.105.

(6) Drop shipment--A transaction in which an order is received by a seller at one location, but the item purchased is shipped by the seller from another location, or is shipped by the seller's third-party supplier, directly to a location designated by the purchaser.

(7) Engaged in business--This term has the meaning given in §3.286 of this title (relating to Seller's and Purchaser's Responsibilities).

(8) Extraterritorial jurisdiction-An unincorporated area that is contiguous to the corporate boundaries of a city as defined in Local Government Code, §42.021.

(9) Fulfill--To complete an order by transferring possession of a taxable item to a purchaser, or to ship or deliver a taxable item to a location designated by the purchaser. The term does not include receiving or tracking an order, determining shipping costs, managing inventory, or other activities that do not involve the transfer, shipment, or delivery of a taxable item to the purchaser or a location designated by the purchaser.

(10) Independently owned and operated business--A self-controlling entity that is not a subsidiary of another entity or otherwise subject to control by another entity, and that is not publicly traded.

(11) Itinerant vendor--A seller who travels to various locations for the purpose of receiving orders and making sales of taxable items and who has no place of business in this state. A person who sells items through vending machines is also an itinerant vendor. A salesperson that operates out of a place of business in this state is not an itinerant vendor.

(12) Kiosk--A small stand-alone area or structure:

   (A) that is used solely to display merchandise or to submit orders for taxable items from a data entry device, or both;

   (B) that is located entirely within a location that is a place of business of another seller, such as a department store or shopping mall; and

   (C) at which taxable items are not available for immediate delivery to a purchaser.

(13) Local taxes--Sales and use taxes imposed by any local taxing jurisdiction.

(14) Local taxing jurisdiction--Any of the following:

(A) a city that imposes sales and use tax as provided under paragraph (3) of this subsection;

(B) a county that imposes sales and use tax as provided under paragraph (5) of this subsection;

(C) a special purpose district created under the Special District Local Laws Code or other provisions of Texas law that is authorized to impose sales and use tax by the Tax Code or other provisions of Texas law and as governed by the provisions of Tax Code, Chapters 321 or 323 and other provisions of Texas law; or

(D) a transit authority that imposes sales and use tax as authorized by Transportation Code, Chapters, 451, 452, 453, 457, or 460 and governed by the provisions of Tax Code, Chapter, 322.

(15) Marketplace provider--This term has the meaning given in §3.286 of this title.

(16) Micro-business--A legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has not more than 20 employees.

(17) Order placed in person--An order placed by a purchaser with the seller while physically present at the seller's place of business regardless of how the seller subsequently enters the order.

(18) Place of business of the seller - general definition--A place of business of the seller must be an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items from persons other than employees, independent contractors, and natural persons affiliated with the seller. An "established outlet, office, or location" usually requires staffing by one or more sales personnel. The term does not include a computer server, Internet protocol address, domain name, website, or software application. The "purpose" element of the definition may be established by proof that the sales personnel of the seller receive three or more orders for taxable items at the facility during the calendar year. Additional criteria for determining when a location is a place of business of the seller are provided in subsection (b) of this section for distribution centers, manufacturing plants, storage yards, warehouses and similar facilities; kiosks; and purchasing offices. An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added,

including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business, is not a place of business of the seller if the comptroller determines that the outlet, office, facility, or location functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or exists solely to rebate a portion of the tax imposed by those chapters to the contracting business. An outlet, office, facility, or location does not exist to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or solely to rebate a portion of the tax imposed by those chapters if the outlet, office, facility, or location provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services.

(19) Purchasing office--An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business.

(20) Remote Seller--As defined in §3.286 of this title, a remote seller is a seller engaged in business in this state whose only activity in the state is:

(A) engaging in regular or systematic solicitation of sales of taxable items in this state by the distribution of catalogs, periodicals, advertising flyers, or other advertising, by means of print, radio, or television media, or by mail, telegraphy, telephone, computer data base, cable, optic, microwave, or other communication system for the purpose of effecting sales of taxable items; or

(B) soliciting orders for taxable items by mail or through other media including the Internet or other media that may be developed in the future.

(21) Seller--This term has the meaning given in §3.286 of this title and also refers to any agent or employee of the seller.

(22) Small business--A legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has fewer than 100 employees or less than $6 million in annual gross receipts.

(23) Special purpose district--A local governmental entity authorized by the Texas legislature for a specific purpose, such as crime control, a local library, emergency services, county health services, or a county landfill and criminal detention center.

(24) Storage--This term has the meaning given in §3.346 of this title (relating to Use Tax).

(25) Temporary place of business of the seller--A location operated by a seller for a limited period of time for the purpose of selling and receiving orders for taxable items and where the seller has inventory available for immediate delivery to a purchaser. For example, a person who rents a booth at a weekend craft fair or art show to sell and take orders for jewelry, or a person who maintains a facility at a job site to rent tools and equipment to a contractor during the construction of real property, has established a temporary place of business. A temporary place of business of the seller includes a sale outside of a distribution center, manufacturing plant, storage yard, warehouse, or similar facility of the seller in a parking lot or similar space sharing the same physical address as the facility but not within the walls of the facility.

(26) Transit authority--A metropolitan rapid transit authority (MTA), advanced transportation district (ATD), regional or subregional transportation authority (RTA), city transit department (CTD), county transit authority (CTA), regional mobility authority (RMA) or coordinated county transportation authority created under Transportation Code, Chapters 370, 451, 452, 453, 457, or 460.

(27) Two percent cap--A reference to the general rule that, except as otherwise provided by Texas law and as explained in this section, a seller cannot collect, and a purchaser is not obligated to pay, more than 2.0% of the sales price of a taxable item in total local sales and use taxes for all local taxing jurisdictions.

(28) Use--This term has the meaning given in §3.346 of this title.

(29) Use tax--A tax imposed on the storage, use or other consumption of a taxable item in this state.

(b) Determining the place of business of a seller.

(1) Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller for the purpose of selling taxable items where sales personnel of the seller receive three or more orders for taxable items during the calendar year from persons other than employees, independent contractors, and natural persons affiliated with the seller is a place of business of the seller. Forwarding previously received orders to the facility for fulfilment does not make the facility a place of business.

(B) If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard,

warehouse, or similar facility operated by a seller, then the entire facility is a place of business of the seller.

(2) Kiosks. A kiosk is not a place of business of the seller for the purpose of determining where a sale is consummated for local tax purposes. A seller who owns or operates a kiosk in Texas is, however, engaged in business in this state as provided in §3.286 of this title.

(3) Purchasing offices.

(A) A purchasing office is not a place of business of the seller if the purchasing office exists solely to rebate a portion of the local sales and use tax imposed by Tax Code, Chapters 321, 322, or 323 to a business with which it contracts; or if the purchasing office functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, or 323. A purchasing office does not exist solely to rebate a portion of the local sales and use tax or to avoid the tax legally due under Tax Code, Chapters 321, 322, or 323 if the purchasing office provides significant business services to the contracting business beyond processing invoices, including logistics management, purchasing, inventory control, or other vital business services.

(B) In making a determination under subparagraph (A) of this paragraph, as to whether a purchasing office provides significant business services to the contracting business beyond processing invoices, the comptroller will compare the total value of the other business services to the value of processing invoices. If the total value of the other business services, including logistics management, purchasing, inventory control, or other vital business services, is less than the value of the service to process invoices, then the purchasing office will be presumed not to be a place of business of the seller.

(C) If the comptroller determines that a purchasing office is not a place of business of the seller, the sale of any taxable item is deemed to be consummated at the place of business of the seller from whom the purchasing office purchased the taxable item for resale and local sales and use taxes are due according to the following rules.

(i) When taxable items are purchased from a Texas seller, local sales taxes are due based on the location of the seller's place of business where the sale is deemed to be consummated, as determined in accordance with subsection (c) of this section.

(ii) When the sale of a taxable item is deemed to be consummated at a location outside of this state, local use tax is due based on the location where the items are first stored, used or consumed by the entity that contracted with the purchasing office in accordance with subsection (d) of this section.

(4) An order that is received by a salesperson who is not at a place of business of the seller when the salesperson receives the order is treated as being received at the location from which the salesperson operates. Examples include orders that a salesperson receives by mail, telephone, including Voice over Internet Protocol and cellular phone calls, facsimile, and email while traveling. The location from which the salesperson operates is the principal fixed location where the salesperson conducts work-related activities. The location from which a salesperson operates will be a place of business of the seller only if the location meets the definition of a "place of business of a seller" in subsection (a)(16) of this section on its own, without regard to the orders imputed to that location by this paragraph.

(5) A facility without sales personnel is usually not a "place of business of the seller." A vending machine is not "an established outlet, office, or location," and does not constitute a "place of business of the seller." Instead, a vending machine sale is treated as a sale by an itinerant vendor. See subsections (a)(10) and (c)(6) of this section. However, a walk-in retail outlet with a stock of goods available for immediate purchase through a cashier-less point of sale terminal at the outlet would be "an established outlet, office, or location" so as to constitute a "place of business of the seller" even though sales personnel are not required for every sale. A computer that operates an automated shopping cart software program is not an established outlet, office, or location," and does not constitute a "place of business of the seller." A computer that operates an automated telephone ordering system is not "an established outlet, office, or location," and does not constitute a "place of business of the seller."

(6) If a small business or a micro-business operates a single location out of which it conducts all of its business activities, the comptroller will presume that the location is a place of business of the seller.

(c) Local sales tax - Consummation of sale - determining the local taxing jurisdictions to which sales tax is due. Except for the special rules applicable to remote sellers in subsection (i)(3) of this section, direct payment permit purchases in subsection (j) of this section, and certain taxable items, including taxable items sold by a marketplace provider, as provided in subsection (k) of this section, each sale of a taxable item is consummated at the location indicated by the provisions of this subsection. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in Texas, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in Texas.

(1) Consummation of sale - order received at a place of business of the seller in Texas.

(A) Order placed in person. Except as provided by paragraph (3) of this subsection, when an order for a taxable item is placed in person at a seller's

place of business in Texas, including at a temporary place of business of the seller in Texas, the sale of that item is consummated at that place of business of the seller, regardless of the location where the order is fulfilled.

(B) Order not placed in person.

(i) Order fulfilled at a place of business of the seller in Texas. When an order is received at a place of business of the seller in Texas and is fulfilled at a place of business of the seller in Texas, the sale is consummated at the place of business where the order is fulfilled.

(ii) Order not fulfilled at a place of business of the seller in Texas. When an order is received at a place of business of the seller in Texas and is fulfilled at a location that is not a place of business of the seller in Texas, the sale is consummated at the place of business where the order is received.

(2) Consummation of sale - order not received at a place of business of the seller in Texas.

(A) Order fulfilled at a place of business of the seller in Texas. When an order is received at a location that is not a place of business of the seller in Texas or is received outside of Texas, and is fulfilled from a place of business of the seller in Texas, the sale is consummated at the place of business where the order is fulfilled.

(B) Order not fulfilled from a place of business of the seller in Texas.

(i) Order fulfilled in Texas. When an order is received at a location that is not a place of business of the seller in Texas and is fulfilled from a location in Texas that is not a place of business of the seller, the sale is consummated at the location in Texas to which the order is shipped or delivered, or at which the purchaser of the item takes possession.

(ii) Order not fulfilled in Texas. When an order is received by a seller at a location that is not a place of business of the seller in Texas, and is fulfilled from a location outside of Texas, the sale is not consummated in Texas. However, a use is consummated at the first point in Texas where the item is stored, used, or consumed after the interstate transit has ceased. A taxable item delivered to a point in Texas is presumed to be for storage, use, or consumption at that point until the contrary is established. Local use tax should be collected as provided in subsection (d) of this section. Except as provided in subsection (i)(3) of this section, a remote seller required to collect state use tax under §3.286(b)(2) of this title must also collect local use tax.

(3) Exception for qualifying economic development agreements entered into before January 1, 2009, pursuant to Tax Code, §321.203(c-4) - (c-5) or

§323.203(c-4) - (c-5). This paragraph is effective until September 1, 2024. If applicable, the local sales tax due on the sale of a taxable item is based on the location of the qualifying warehouse, which is a place of business of the seller, from which the item is shipped or delivered or at which the purchaser of the item takes possession.

(4) Local sales taxes are due to each local taxing jurisdiction with sales tax in effect where the sale is consummated. Local use tax may also be due if the total amount of local sales taxes due does not reach the two percent cap, and the item purchased is shipped or delivered to a location in one or more different local taxing jurisdictions, as provided in subsection (d) of this section.

(5) Multiple special purpose district taxes, multiple transit authority sales taxes, or a combination of the two may apply to a single transaction. If the sale of a taxable item is consummated at a location within the boundaries of multiple special purpose districts or transit authorities, local sales tax is owed to each of the jurisdictions in effect at that location. For example, a place of business of the seller located in the city of San Antonio is within the boundaries of both the San Antonio Advanced Transportation District and the San Antonio Metropolitan Transit Authority, and the seller is required to collect sales tax for both transit authorities. Similarly, a place of business of the seller in Flower Mound is located within the boundaries of two special purpose districts, the Flower Mound Crime Control District and the Flower Mound Fire Control District, and the seller is responsible for collecting sales tax for both special purpose districts.

(6) Itinerant vendors; vending machines.

    (A) Itinerant vendors. Sales made by itinerant vendors are consummated at, and itinerant vendors must collect sales tax based upon, the location where the item is delivered or at which the purchaser of the item takes possession. Itinerant vendors do not have any responsibility to collect use tax.

    (B) Vending machines. Sales of taxable items made from a vending machine are consummated at the location of the vending machine. See §3.293 of this title (relating to Food; Food Products; Meals; Food Service) for more information about vending machine sales.

(7) The location where the order is received by or on behalf of the seller means the physical location of a seller or third party such as an established outlet, office location, or automated order receipt system operated by or on behalf of the seller where an order is initially received by or on behalf of the seller and not where the order may be subsequently accepted, completed or fulfilled. An order is received when all of the information from the purchaser necessary to the determination whether the order can be accepted has been received by or on behalf of the seller. The location from which a product is shipped shall not be used in determining the location where the order is received by the seller.

(d) Local use tax. The provisions addressing the imposition of state use tax in §3.346 of this title also apply to the imposition of local use tax. For example, consistent with §3.346(e) of this title, all taxable items that are shipped or delivered to a location in this state that is within the boundaries of a local taxing jurisdiction are presumed to have been purchased for use in that local taxing jurisdiction as well as presumed to have been purchased for use in the state.

(1) General rules.

(A) When local use taxes are due in addition to local sales taxes as provided by subsection (c) of this section, all applicable use taxes must be collected or accrued in the following order until the two percent cap is reached: city, county, special purpose district, and transit authority. If more than one special purpose district use tax is due, all such taxes are to be collected or accrued before any transit authority use tax is collected or accrued. See subparagraphs (D) and (E) of this paragraph.

(B) If a local use tax cannot be collected or accrued at its full rate without exceeding the two percent cap, the seller cannot collect it, or any portion of it, and the purchaser is not responsible for accruing it.

(C) If a seller collects a local sales tax on an item, or a purchaser accrues a local sales tax on an item, a use tax for the same type of jurisdiction is not due on the same item. For example, after a city sales tax has been collected or accrued for an item, no use tax is due to that same or a different city on that item, but use tax may be due to a county, special purpose district, or transit authority. Similarly, if one or more special purpose district sales taxes have been collected or accrued for an item, no special purpose district use tax is due on that item, and if one or more transit authority sales taxes have been collected or accrued for an item, no transit authority use tax is due on that item.

(D) Collection or accrual of use tax for multiple special purpose districts. If more than one special purpose district use tax is in effect at the location where use of an item occurs, the special purpose district taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all special purpose district taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the district with the earliest effective date would exceed the two percent cap, the tax for that district is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (C) of this paragraph, whether use tax is due for the district that next became effective.

(i) If the competing special purpose district taxes became effective on the same date, the special purpose district taxes are due in the order of the earliest date for which the election in which the district residents authorized the imposition of sales and use tax by the district was held.

(ii) If the elections to impose the local taxes were held on the same date, the special purpose district taxes are due in the order of the earliest date for which the enabling legislation under which each district was created became effective.

(E) Collection or accrual of use tax for multiple transit authorities. If more than one transit authority use tax is in effect at the location where use of an item occurs, and the two percent cap has not been met, the transit authority taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all transit authority taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the authority with the earliest effective date would exceed the two percent cap, the tax for that authority is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (D) of this paragraph, whether use tax is due for the authority that next became effective.

(i) If the competing transit authorities became effective on the same date, the transit authority taxes are due in the order of the earliest date for which the election in which the authority residents authorized the imposition of sales and use tax by the authority was held.

(ii) If the elections to impose local taxes were held on the same date, the transit authority use taxes are due in the order of the earliest date for which the enabling legislation under which each authority was created became effective.

(2) General use tax rules applied to specific situations. The following fact patterns explain how local use tax is to be collected or accrued and remitted to the comptroller based on, and subject to, the general rules in paragraph (1) of this subsection.

(A) Sale consummated outside the state, item delivered from outside the state or from a location in Texas that is not operated by the seller - local use tax due. Except as provided in subsection (i)(3) of this section, if a sale is consummated outside of this state according to the provisions of subsection (c) of this section, and the item purchased is either shipped or delivered to a location in this state as designated by the purchaser from a location outside of the state, or if the order is drop shipped directly to the purchaser from a third-party supplier, local use tax is owed based upon the location in this state to which the order is shipped or delivered or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use tax due on the sale. If the seller does not collect the local use taxes due on the sale, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller according to the provisions in paragraph (1) of this subsection. For

example, if an order for a taxable item is received by a seller at a location outside of Texas, and the order is shipped to the purchaser from a location outside of the state, local use tax is due based upon the location to which the order is shipped or delivered or at which the purchaser of the item takes possession.

(B) Sale consummated in Texas outside a local taxing jurisdiction, item delivered into one or more local taxing jurisdictions - local use tax due. If a sale is consummated at a location in Texas that is outside of the boundaries of any local taxing jurisdiction according to the provisions of subsection (c) of this section, and the order is shipped or delivered to the purchaser at a location in this state that is within the boundaries of one or more local taxing jurisdictions, local use tax is due based on the location to which the items are shipped or delivered or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use taxes due on the sale, regardless of the location of the seller in Texas. If the seller fails to collect any local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

(C) Sale consummated in any local taxing jurisdictions imposing less than 2.0% in total local taxes - local sales taxes and use taxes due. If a sale is consummated at a location in Texas where the total local sales tax rate imposed by the taxing jurisdictions in effect at that location does not equal 2.0% according to the provisions of subsection (c) of this section, and the item is shipped or delivered to the purchaser at a location in this state that is inside the boundaries of a different local taxing jurisdiction, additional local use tax may be due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the two percent cap. The seller is responsible for collecting any additional local use taxes due on the sale, regardless of the location of the seller in Texas. See subsection (i) of this section. If the seller fails to collect the additional local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

(i) Example one - if an order is received in person at a place of business of the seller, such that the sale is consummated at the location where the order is received as provided under subsection (c)(1)(A) of this section, and the local sales tax due on the sale does not meet the two percent cap, additional local use taxes are due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the provisions in paragraph (1) of this subsection.

(ii) Example two - if a seller receives an order for a taxable item at a seller's place of business in Texas, and the seller ships or delivers the item from an out-of-state location to a location in this state as designated by the purchaser,

local sales tax is due based upon the location of the place of business of the seller where the order is received. If the local sales tax due on the item does not meet the two percent cap, use taxes, subject to the provisions in paragraph (1) of this subsection, are due based upon the location where the items are shipped or delivered or at which the purchaser of the item takes possession.

(e) Effect of other law.

(1) Tax Code, Title 2, Subtitles A (General Provisions) and B (Enforcement and Collection), Tax Code, Chapter 141 (Multistate Tax Compact) and Tax Code, Chapter 151 (Limited Sales, Excise, and Use Tax) apply to transactions involving local taxes. Related sections of this title and comptroller rulings shall also apply with respect to local taxes. This includes authorities such as court cases and federal law that affect whether an item is taxable or is excluded or exempt from taxation.

(2) Permits, exemption certificates, and resale certificates required by Tax Code, Chapter 151, shall also satisfy the requirements for collecting and remitting local taxes, unless otherwise indicated by this section or other sections of this title. For example, see subsection (n) of this section concerning prior contract exemptions.

(3) Any provisions in this section or other sections of this title related to a seller's responsibilities for collecting and remitting local taxes to the comptroller shall also apply to a purchaser if the seller does not collect local taxes that are due. The comptroller may proceed against the seller or purchaser for the local tax owed by either.

(f) Tax rates. Except as otherwise provided by law, no local governmental entity may adopt or increase a sales and use tax if, as a result of the adoption or increase of the tax, the combined rate of all sales and use taxes imposed by local taxing jurisdictions having territory in the local governmental entity would exceed 2.0% at any location within the boundaries of the local governmental entity's jurisdiction. The following are the local tax rates that may be adopted.

(1) Cities. Cities may impose sales and use tax at a rate of up to 2.0%.

(2) Counties. Counties may impose sales and use tax at rates ranging from 0.5% to 1.5%.

(3) Special purpose districts. Special purpose districts may impose sales and use tax at rates ranging from 0.125% to 2.0%.

(4) Transit authorities. Transit authorities may impose sales and use tax at rates ranging from 0.25% to 1.0%.

(g) Jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements.

(1) Jurisdictional boundaries.

(A) City boundaries. City taxing jurisdictional boundaries cannot overlap one another and a city cannot impose a sales and use tax in an area that is already within the jurisdiction of another city.

(B) County boundaries. County tax applies to all locations within that county.

(C) Special purpose district and transit authority boundaries. Special purpose districts and transit authorities may cross or share boundaries with other local taxing jurisdictions and may encompass, in whole or in part, other local taxing jurisdictions, including cities and counties. A geographic location or address in this state may lie within the boundaries of more than one special purpose district or more than one transit authority.

(D) Extraterritorial jurisdictions. Except as otherwise provided by paragraph (3) of this subsection concerning strategic partnership agreements and subsection (l)(5) of this section concerning the City of El Paso and Fort Bliss, city sales and use tax does not apply to taxable sales that are consummated outside the boundaries of the city, including sales made in a city's extraterritorial jurisdiction. However, an extraterritorial jurisdiction may lie within the boundaries of a special purpose district, transit authority, county, or any combination of the three, and the sales and use taxes for those jurisdictions would apply to those sales.

(2) Combined areas. A combined area is an area where the boundaries of a city overlap the boundaries of one or more other local taxing jurisdictions as a result of an annexation of additional territory by the city, and where, as the result of the imposition of the city tax in the area in addition to the local taxes imposed by the existing taxing jurisdictions, the combined local tax rate would exceed 2.0%. The comptroller shall make accommodations to maintain a 2.0% rate in any combined area by distributing the 2.0% tax revenue generated in these combined areas to the local taxing jurisdictions located in the combined areas as provided in Tax Code, §321.102 or Health and Safety Code, §775.0754. Combined areas are identified on the comptroller's website. Sellers engaged in transactions on which local sales or use taxes are due in a combined area, or persons who must self-accrue and remit tax directly to the comptroller, must use the combined area local code when reporting the tax rather than the codes for the individual city, county, special purpose districts, or transit authorities that make up the combined area.

(3) City tax imposed through strategic partnership agreements.

(A) The governing bodies of a district, as defined in Local Government Code, §43.0751, and a city may enter into a limited-purpose annexation agreement known as a strategic partnership agreement. Under this agreement, the city may impose sales and use tax within all or part of the boundaries of a district. Areas within a district that are annexed for this limited purpose are treated as though they are within the boundaries of the city for purposes of city sales and use tax.

(B) Counties, transit authorities, and special purpose districts may not enter into strategic partnership agreements. Sales and use taxes imposed by those taxing jurisdictions do not apply in the limited-purpose annexed area as part of a strategic partnership agreement between a city and an authorized district. However, a county, special purpose district, or transit authority sales and use tax, or any combination of these three types of taxes, may apply at locations included in a strategic partnership agreement between a city and an authorized district if the tax is imposed in that area by the applicable jurisdiction as allowed under its own controlling authorities.

(C) Prior to September 1, 2011, the term "district" was defined in Local Government Code, §43.0751 as a municipal utility district or a water control and improvement district. The definition was amended effective September 1, 2011, to mean a conservation and reclamation district operating under Water Code, Chapter 49.

(h) Places of business of the seller and job sites crossed by local taxing jurisdiction boundaries.

(1) Places of business of the seller crossed by local taxing jurisdiction boundaries. If a place of business of the seller is crossed by one or more local taxing jurisdiction boundaries so that a portion of the place of business of the seller is located within a taxing jurisdiction and the remainder of the place of business of the seller lies outside of the taxing jurisdiction, tax is due to the local taxing jurisdictions in which the sales office is located. If there is no sales office, sales tax is due to the local taxing jurisdictions in which any cash registers are located.

(2) Job sites.

(A) Residential repair and remodeling; new construction of an improvement to realty. When a contractor is improving real property under a separated contract, and the job site is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on any separately stated charges for taxable items incorporated into the real property must be allocated to the local taxing jurisdictions based on the total square footage of the real property improvement located within each jurisdiction, including the square footage of any standalone structures that are part of the construction, repair, or remodeling project. For

more information about tax due on materials used at residential and new construction job sites, refer to §3.291 of this title (relating to Contractors).

(B) Nonresidential real property repair and improvement. When taxable services are performed to repair, remodel, or restore nonresidential real property, including a pipeline, transmission line, or parking lot, that is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on the taxable services, including materials and any other charges connected to the services performed, must be allocated among the local taxing jurisdictions based upon the total mileage or square footage, as appropriate, of the repair, remodeling, or restoration project located in each jurisdiction. For more information about tax due on materials used at nonresidential real property repair and remodeling job sites, refer to §3.357 of this title (relating to Nonresidential Real Property Repair, Remodeling, and Restoration; Real Property Maintenance).

(i) Sellers' and purchasers' responsibilities for collecting or accruing local taxes.

(1) Sale consummated in Texas; seller responsible for collecting local sales taxes and applicable local use taxes. When a sale of a taxable item is consummated at a location in Texas as provided by subsection (c) of this section, the seller must collect each local sales tax in effect at the location. If the total rate of local sales tax due on the sale does not reach the two percent cap, and the seller ships or delivers the item into another local taxing jurisdiction, then the seller is required to collect additional local use taxes due, if any, based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession, regardless of the location of the seller in Texas. For more information regarding local use taxes, refer to subsection (d) of this section.

(2) Out-of-state sale; seller engaged in business in Texas. Except as provided in paragraph (3) of this subsection, when a sale is not consummated in Texas, a seller who is engaged in business in this state is required to collect and remit local use taxes due, if any, on orders of taxable items shipped or delivered at the direction of the purchaser into a local taxing jurisdiction in this state based upon the location in this state to which the item is shipped or delivered or at which the purchaser of the item takes possession as provided in subsection (d) of this section.

(3) Local use tax rate for remote sellers.

(A) A remote seller required to collect and remit one or more local use taxes in connection with a sale of a taxable item must compute the amount using:

(i) the combined tax rate of all applicable local use taxes based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession; or

(ii) at the remote seller's election, the single local use tax rate published in the *Texas Register.*

(B) A remote seller that is storing tangible personal property in Texas to be used for fulfillment at a facility of a marketplace provider that has certified that it will assume the rights and duties of a seller with respect to the tangible personal property, as provided for in §3.286 of this title, may elect the single local use tax rate under subparagraph (A)(ii) of this paragraph.

(C) Notice to the comptroller of election and revocation of election.

(i) Before using the single local use tax rate, a remote seller must notify the comptroller of its election using a form prescribed by the comptroller. A remote seller may also notify the comptroller of the election on its use tax permit application form. The remote seller must use the single local use tax rate for all of its sales of taxable items until the election is revoked as provided in clause (ii) of this subparagraph.

(ii) A remote seller may revoke its election by filing a form prescribed by the comptroller. If the comptroller receives the notice by October 1, the revocation will be effective January 1 of the following year. If the comptroller receives the notice after October 1, the revocation will be effective January 1 of the year after the following year. For example, a remote seller must notify the comptroller by October 1, 2020, for the revocation to be effective January 1, 2021. If the comptroller receives the revocation on November 1, 2020, the revocation will be effective January 1, 2022.

(D) Single local use tax rate.

(i) The single local use tax rate in effect for the period beginning October 1, 2019, and ending December 31, 2019, is 1.75%.

(ii) The single local use tax rate in effect for the period beginning January 1, 2020, and ending December 31, 2020, is 1.75%.

(E) Annual publication of single local use tax rate. Before the beginning of a calendar year, the comptroller will publish notice of the single local use tax rate in the *Texas Register* that will be in effect for that calendar year.

(F) Calculating the single local use tax rate. The single local use tax rate effective in a calendar year is equal to the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year. As soon as practicable after the end of a state fiscal year, the comptroller must determine the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year by:

(i) dividing the total amount of net local sales and use taxes remitted to the comptroller during the state fiscal year by the total amount of net state sales and use tax remitted to the comptroller during the state fiscal year;

(ii) multiplying the amount computed under clause (i) of this subparagraph by the rate provided in Tax Code, §151.051; and

(iii) rounding the amount computed under clause (ii) of this subparagraph to the nearest .0025.

(G) Direct refund. A purchaser may request a refund based on local use taxes paid in a calendar year for the difference between the single local use tax rate paid by the purchaser and the amount the purchaser would have paid based on the combined tax rate for all applicable local use taxes. Notwithstanding the refund requirements under §3.325(a)(1) of this title (relating to Refunds and Payments Under Protest), a non-permitted purchaser may request a refund directly from the comptroller for the tax paid in the previous calendar year, no earlier than January 1 of the following calendar year within the statute of limitation under Tax Code, 111.104 (Refunds).

(H) Marketplace providers. Notwithstanding subparagraph (A) of this paragraph, marketplace providers may not use the single local use tax rate and must compute the amount of local use tax to collect and remit using the combined tax rate of all applicable local use taxes.

(4) Purchaser responsible for accruing and remitting local taxes if seller fails to collect.

(A) If a seller does not collect the state sales tax, any applicable local sales taxes, or both, on a sale of a taxable item that is consummated in Texas, then the purchaser is responsible for filing a return and paying the tax. The local sales taxes due are based on the location in this state where the sale is consummated as provided in subsection (c) of this section.

(B) A purchaser who buys an item for use in Texas from a seller who does not collect the state use tax, any applicable local use taxes, or both, is responsible for filing a return and paying the tax. The local use taxes due are based on the location where the item is first stored, used, or consumed by the purchaser.

(C) For more information about how to report and pay use tax directly to the comptroller, see §3.286 of this title.

(5) Local tax is due on the sales price of a taxable item, as defined in Tax Code, §151.007, in the report period in which the taxable item is purchased or the period in which the taxable item is first stored, used, or otherwise consumed in a local taxing jurisdiction.

(6) A purchaser is not liable for additional local use tax if the purchaser pays local use tax using the rate elected by an eligible remote seller according to paragraph (3) of this subsection. The remote seller must be identified on the comptroller's website as electing to use the single local use tax rate. A purchaser must verify that the remote seller is listed on the comptroller's website. If the remote seller is not listed on the comptroller's website, the purchaser will be liable for additional use tax due in accordance to paragraph (4) of this subsection.

(j) Items purchased under a direct payment permit.

(1) When taxable items are purchased under a direct payment permit, local use tax is due based upon the location where the permit holder first stores the taxable items, except that if the taxable items are not stored, then local use tax is due based upon the location where the taxable items are first used or otherwise consumed by the permit holder.

(2) If, in a local taxing jurisdiction, storage facilities contain taxable items purchased under a direct payment exemption certificate and at the time of storage it is not known whether the taxable items will be used in Texas, then the taxpayer may elect to report the use tax either when the taxable items are first stored in Texas or are first removed from inventory for use in Texas, as long as use tax is reported in a consistent manner. See also §3.288(i) of this title (relating to Direct Payment Procedures and Qualifications) and §3.346(g) of this title.

(3) If local use tax is paid on stored items that are subsequently removed from Texas before they are used, the tax may be recovered in accordance with the refund and credit provisions of §3.325 of this title and §3.338 of this title (relating to Multistate Tax Credits and Allowance of Credit for Tax Paid to Suppliers).

(k) Special rules for certain taxable goods and services. Sales of the following taxable goods and services are consummated at, and local tax is due based upon, the location indicated in this subsection.

(1) Amusement services. Local tax is due based upon the location where the performance or event occurs. For more information on amusement services, refer to §3.298 of this title (relating to Amusement Services).

(2) Cable services. When a service provider uses a cable system to provide cable television or bundled cable services to customers, local tax is due as provided for in §3.313 of this title. When a service provider uses a satellite system to provide cable services to customers, no local tax is due on the service in accordance with the Telecommunications Act of 1996, §602.

(3) Florists. Local sales tax is due on all taxable items sold by a florist based upon the location where the order is received, regardless of where or by whom delivery is made. Local use tax is not due on deliveries of taxable items sold by florists. For

example, if the place of business of the florist where an order is taken is not within the boundaries of any local taxing jurisdiction, no local sales tax is due on the item and no local use tax is due regardless of the location of delivery. If a Texas florist delivers an order in a local taxing jurisdiction at the instruction of an unrelated florist, and if the unrelated florist did not take the order within the boundaries of a local taxing jurisdiction, local use tax is not due on the delivery. For more information about florists' sales and use tax obligations, refer to §3.307 of this title (relating to Florists).

(4) Landline telecommunications services. Local taxes due on landline telecommunications services are based upon the location of the device from which the call or other transmission originates. If the seller cannot determine where the call or transmission originates, local taxes due are based on the address to which the service is billed. For more information, refer to §3.344 of this title (relating to Telecommunications Services).

(5) Marketplace provider sales. Local taxes are due on sales of taxable items through a marketplace provider based on the location in this state to which the item is shipped or delivered or at which the purchaser takes possession. For more information, refer to §3.286 of this title.

(6) Mobile telecommunications services. Local taxes due on mobile telecommunications services are based upon the location of the customer's place of primary use as defined in §3.344(a)(8) of this title, and local taxes are to be collected as indicated in §3.344(h) of this title.

(7) Motor vehicle parking and storage. Local taxes are due based on the location of the space or facility where the vehicle is parked. For more information, refer to §3.315 of this title (relating to Motor Vehicle Parking and Storage).

(8) Natural gas and electricity. Any local city and special purpose taxes due are based upon the location where the natural gas or electricity is delivered to the purchaser. As explained in subsection (l)(1) of this section, residential use of natural gas and electricity is exempt from all county sales and use taxes and all transit authority sales and use taxes, most special purpose district sales and use taxes, and many city sales and use taxes. A list of the cities and special purpose districts that do impose, and those that are eligible to impose, local sales and use tax on residential use of natural gas and electricity is available on the comptroller's website. For more information, also refer to §3.295 of this title (relating to Natural Gas and Electricity).

(9) Nonresidential real property repair and remodeling services. Local taxes are due on services to remodel, repair, or restore nonresidential real property based on the location of the job site where the remodeling, repair, or restoration is performed. See also subsection (h)(2)(B) of this section and §3.357 of this title.

(10) Residential real property repair and remodeling and new construction of a real property improvement performed under a separated contract. When a contractor constructs a new improvement to realty pursuant to a separated contract or improves residential real property pursuant to a separated contract, the sale is consummated at the job site at which the contractor incorporates taxable items into the customer's real property. See also subsection (h)(2)(A) of this section and §3.291 of this title.

(11) Waste collection services. Local taxes are due on garbage or other solid waste collection or removal services based on the location at which the waste is collected or from which the waste is removed. For more information, refer to §3.356 of this title (relating to Real Property Service).

(l) Special exemptions and provisions applicable to individual jurisdictions.

(1) Residential use of natural gas and electricity.

(A) Mandatory exemptions from local sales and use tax. Residential use of natural gas and electricity is exempt from most local sales and use taxes. Counties, transit authorities, and most special purpose districts are not authorized to impose sales and use tax on the residential use of natural gas and electricity. Pursuant to Tax Code, §321.105, any city that adopted a local sales and use tax effective October 1, 1979, or later is prohibited from imposing tax on the residential use of natural gas and electricity. See §3.295 of this title.

(B) Imposition of tax allowed in certain cities. Cities that adopted local sales tax prior to October 1, 1979, may, in accordance with the provisions in Tax Code, §321.105, choose to repeal the exemption for residential use of natural gas and electricity. The comptroller's website provides a list of cities that impose tax on the residential use of natural gas and electricity, as well as a list of those cities that do not currently impose the tax, but are eligible to do so.

(C) Effective January 1, 2010, a fire control, prevention, and emergency medical services district organized under Local Government Code, Chapter 344 that imposes sales tax under Tax Code, §321.106, or a crime control and prevention district organized under Local Government Code, Chapter 363 that imposes sales tax under Tax Code, §321.108, that is located in all or part of a municipality that imposes a tax on the residential use of natural gas and electricity as provided under Tax Code, §321.105 may impose tax on residential use of natural gas and electricity at locations within the district. A list of the special purpose districts that impose tax on residential use of natural gas and electricity and those districts eligible to impose the tax that do not currently do so is available on the comptroller's website.

(2) Telecommunication services. Telecommunications services are exempt from all local sales taxes unless the governing body of a city, county, transit authority, or

special purpose district votes to impose sales tax on these services. However, since 1999, under Tax Code, §322.109(d), transit authorities created under Transportation Code, Chapter 451 cannot repeal the exemption unless the repeal is first approved by the governing body of each city that created the local taxing jurisdiction. The local sales tax is limited to telecommunications services occurring between locations within Texas. See §3.344 of this title. The comptroller's website provides a list of local taxing jurisdictions that impose tax on telecommunications services.

(3) Emergency services districts.

(A) Authority to exclude territory from imposition of emergency services district sales and use tax. Pursuant to the provisions of Health and Safety Code, §775.0751(c-1), an emergency services district wishing to enact a sales and use tax may exclude from the election called to authorize the tax any territory in the district where the sales and use tax is then at 2.0%. The tax, if authorized by the voters eligible to vote on the enactment of the tax, then applies only in the portions of the district included in the election. The tax does not apply to sales made in the excluded territories in the district and sellers in the excluded territories should continue to collect local sales and use taxes for the local taxing jurisdictions in effect at the time of the election under which the district sales and use tax was authorized as applicable.

(B) Consolidation of districts resulting in sales tax sub-districts. Pursuant to the provisions of Health and Safety Code, §775.018(f), if the territory of a district proposed under Health and Safety Code, Chapter 775 overlaps with the boundaries of another district created under that chapter, the commissioners court of each county and boards of the counties in which the districts are located may choose to create a consolidated district in the overlapping territory. If two districts that want to consolidate under Health and Safety Code, §775.024 have different sales and use tax rates, the territory of the former districts located within the consolidated area will be designated as sub-districts and the sales tax rate within each sub-district will continue to be imposed at the rate the tax was imposed by the former district that each sub-district was part of prior to the consolidation.

(4) East Aldine Management District.

(A) Special sales and use tax zones within district; separate sales and use tax rate. As set out in Special District Local Laws Code, §3817.154(e) and (f), the East Aldine Management District board may create special sales and use tax zones within the boundaries of the District and, with voter approval, enact a special sales and use tax rate in each zone that is different from the sales and use tax rate imposed in the rest of the district.

(B) Exemptions from special zone sales and use tax. The sale, production, distribution, lease, or rental of; and the use, storage, or other consumption within a special sales and use tax zone of; a taxable item sold, leased, or rented by the entities identified in clauses (i) - (vi) of this subparagraph are exempt from the special zone sales and use tax. State and all other applicable local taxes apply unless otherwise exempted by law. The special zone sales and use tax exemption applies to:

(i) a retail electric provider as defined by Utilities Code, §31.002;

(ii) an electric utility or a power generation company as defined by Utilities Code, §31.002;

(iii) a gas utility as defined by Utilities Code, §101.003 or §121.001, or a person who owns pipelines used for transportation or sale of oil or gas or a product or constituent of oil or gas;

(iv) a person who owns pipelines used for the transportation or sale of carbon dioxide;

(v) a telecommunications provider as defined by Utilities Code, §51.002; or

(vi) a cable service provider or video service provider as defined by Utilities Code, §66.002.

(5) Imposition of city sales tax and transit tax on certain military installations; El Paso and Fort Bliss. Pursuant to Tax Code, §321.1045 (Imposition of Sales and Use Tax in Certain Federal Military Installations), for purposes of the local sales and use tax imposed under Tax Code, Chapter 321, the city of El Paso includes the area within the boundaries of Fort Bliss to the extent it is in the city's extraterritorial jurisdiction. However, the El Paso transit authority does not include Fort Bliss. See Transportation Code, §453.051 concerning the Creation of Transit Departments.

(m) Restrictions on local sales tax rebates and other economic incentives. Pursuant to Local Government Code, §501.161, Section 4A and 4B development corporations may not offer to provide economic incentives, such as local sales tax rebates authorized under Local Government Code, Chapters 380 or 381, to persons whose business consists primarily of purchasing taxable items using resale certificates and then reselling those same items to a related party. A related party means a person or entity which owns at least 80% of the business enterprise to which sales and use taxes would be rebated as part of an economic incentive.

(n) Prior contract exemptions. The provisions of §3.319 of this title (relating to Prior Contracts) concerning definitions and exclusions apply to prior contract exemptions.

(1) Certain contracts and bids exempt. No local taxes are due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of any local tax if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of any local tax if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(2) Annexations. Any annexation of territory into an existing local taxing jurisdiction is also a basis for claiming the exemption provided by this subsection.

(3) Local taxing jurisdiction rate increase; partial exemption for certain contracts and bids. When an existing local taxing jurisdiction raises its sales and use tax rate, the additional amount of tax that would be due as a result of the rate increase is not due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of the tax rate increase if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of the tax rate increase if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(4) Three-year statute of limitations.

(A) The exemption in paragraph (1) of this subsection and the partial exemption in paragraph (3) of this subsection have no effect after three years from the date the adoption or increase of the tax takes effect in the local taxing jurisdiction.

(B) The provisions of §3.319 of this title apply to this subsection to the extent they are consistent.

(C) Leases. Any renewal or exercise of an option to extend the time of a lease or rental contract under the exemptions provided by this subsection shall be deemed to be a new contract and no exemption will apply.

(5) Records. Persons claiming the exemption provided by this subsection must maintain records which can be verified by the comptroller or the exemption will be lost.

(6) Exemption certificate. An identification number is required on the prior contract exemption certificates furnished to sellers. The identification number should be the person's 11-digit Texas taxpayer number or federal employer's identification (FEI) number.

# APPENDIX F

An agency may adopt a proposed rule no earlier than 30 days after publication in the *Register*, and the adoption may go into effect no sooner than 20 days after filing, except where a federal statute or regulation requires implementation of a rule on shorter notice.

An agency, on request, shall provide a statement of the reasons for and against adoption of a rule. Any interested person may request this statement before adoption or within 30 days afterward. The statement shall include the principal reasons for overruling considerations urged against the agency's decision.

Numbering System—Each rule is designated by a unique 10-digit number which is divided into four units by decimal points. The first unit (three digits) indicates the agency which promulgates the rule. The second unit (two digits) indicates the chapter of rules to which the rule belongs. The third unit (two digits) indicates the subchapter of rules, if any, within the chapter. The fourth unit (three digits) indicates the individual rule.

# Comptroller of Public Accounts

## Tax Administration

### Motor Vehicle Division 026.02.06

Under the authority of Texas Taxation—General Annotated, Article 6.09 (Vernon 1969), the comptroller of public accounts has adopted Rule 026.02.06.026 to read as follows:

*.026. Refunds.*

(a) Refund of motor vehicle sales or use tax paid in error.

(1) Refund from county tax assessor-collector. Any person may request from the county tax assessor-collector a refund of motor vehicle sales or use tax which he paid to the tax assessor-collector in error.

(A) If the tax assessor-collector has not yet remitted the tax to the comptroller, he must void all five copies of the Form 31 tax receipt showing the tax that had been paid, then refund the portion of the tax which was paid in error. A second Form 31 tax receipt must then be prepared documenting the correct amount of tax collected.

(B) If the tax assessor-collector has already remitted the tax to the comptroller, the taxpayer must apply directly to the comptroller for a refund. See subsection (a)(2) below.

(2) Refund from the comptroller. Any person may request from the comptroller a refund of motor vehicle sales or use tax which has been remitted to the comptroller in error.

(A) All requests for refunds must be made in writing, and must state the specific grounds upon which the claim is founded. The comptroller may require additional verification, including proof of tax paid, affidavits supporting the grounds for refund or other documentation necessary to validate the claim.

(B) A request for refund of motor vehicle sales or use tax must be made within seven years of the date of payment of the tax, or within six months after any deficiency determination becomes final, or within six months from the date of any overpayment made to satisfy such deficiency determination.

(C) Failure to file a claim within the limitation prescribed by subsection (a)(2)(B) constitutes a waiver of any demand against the state on account of overpayment.

(b) Refund of gross rental receipts tax paid in error.

(1) Tax paid to the comptroller. Any person may request a refund of gross rental receipts tax which he has remitted to the comptroller in error.

(A) All requests for refunds must be made in writing, and must state the specific grounds upon which the claim is founded. The comptroller may require additional verification, including proof of tax paid, affidavits supporting the grounds for refund or other documentation necessary to validate the claim.

(B) A request for refund of motor vehicle gross rental receipts tax must be made within seven years of the last day of the month following the close of the quarterly or monthly period for which the overpayment was made, or within six months after any deficiency determination becomes final, or within six months from the date of any overpayment made to satisfy such deficiency determination.

(C) Failure to file a claim within the limitation prescribed by subsection (b)(1)(B) constitutes a waiver of any demand against the state on account of overpayment.

(2) Tax paid to a rental agency. Any person who remits gross rental receipts tax to a rental agency (or to any other person collecting the tax in the fashion of a rental agency) rather than directly to the comptroller, may not request from the comptroller a refund of any tax he has paid in error. Such tax must be recovered from the rental agency.

(A) A written request for refund must be directed to the rental agency and must be accompanied by verification that tax was paid in error. The request and certification must be retained by the rental agency to document the reason he refunded the tax.

(B) After the rental agency has refunded or credited the tax to the account of the purchaser, he may seek reimbursement from the state in accordance with the provisions of subsection (b)(1), above, or may file an amended motor vehicle gross rental receipts tax return for the period in which the error was made. He may take credit on his next gross rental receipts tax return for the amount refunded or credited to the account of the purchaser.

(c) Payments under protest.

(1) Payment made to county tax assessor-collector or rental agency. If, pursuant to the authority of either Texas Taxation—General Annotated, Article 1.05, or Texas Revised Civil Statutes Annotated, Article 7057b, motor vehicle sales and use tax or motor vehicle gross rental receipts tax is paid under protest to a county tax assessor-collector or a rental agency, the comptroller will place the amount protested in a suspense account pending resolution of the matter in issue. A written letter of protest which sets out in detail each and every ground or reason why it is contended that the assessment is unlawful or unauthorized must be sent to the comptroller immediately upon payment of the tax to the tax assessor-collector or rental agency. The letter of protest must be accompanied by a copy of the tax receipt or rental receipt showing the tax was paid. If the letter of protest is not submitted immediately upon payment of the tax, the payment will not be placed in a suspense account and it will not be deemed to have been made under protest.

(2) Payment made to the comptroller. If motor vehicle sales and use tax or motor vehicle gross rental receipts tax is paid directly to the comptroller under protest pursuant to

the authority of either Texas Taxation—General Annotated, Article 1.05, or Texas Revised Civil Statutes Annotated, Article 7057b, the amount will be placed in a suspense account pending resolution of the matter in issue. A written letter of protest which sets out fully and in detail each and every ground or reason why it is contended that the assessment is unlawful or unauthorized must accompany the payment. If the payment and letter of protest do not accompany one another, the payment will not be placed in a suspense account and the payment will not be deemed to have been made under protest.

(3) For the taxpayer's convenience, the comptroller will advise him of the amount received that is paid under protest and the date of such payment. If suit is not filed in accordance with the statute, the protest payment will be cleared to the general fund after the expiration of 90 days from the date of the payment.

Doc. No. 796509

## Business Tax Division 026.02.12.001

Under the authority of Texas Taxation—General Annotated, Article 12.12 (Vernon Supplement 1978-1979), the comptroller of public accounts has adopted Rule 026.02.12.001 to read as follows:

*.001. Franchise Tax Reports and Payments.*

(a) Reports and payments; penalties.

(1) Each domestic and foreign corporation subject to the franchise tax levied by Article 12.01 shall file a first year franchise tax report and, thereafter, an annual franchise tax report, and at the same time shall pay the franchise tax and any applicable penalties and interest due by the corporation as shown by such reports. It is the responsibility of a receiver to file franchise tax reports and pay the franchise tax of a corporation in receivership for which he has been appointed receiver. A debtor in possession, or the appointed trustee or receiver, of a corporation in reorganization or arrangement proceedings under the Bankruptcy Act, is responsible for filing franchise tax reports and paying the franchise tax prior to the confirming and consummating of the plan of reorganization or arrangement.

(A) The initial franchise tax deposit of $100, as required by Article 12.06, Texas Taxation—General, and franchise tax Rule. 019, is due prior to a corporation's receipt of its charter or certificate of authority under the Texas Business Corporation Act or Texas Professional Corporation Act.

(B) The first-year report and payment of the tax, if any, over the $100 prepayment credit, are due no later than 90 days after the expiration of one year from the date of the charter of a Texas corporation, or from the date of the certificate of authority of a foreign corporation, whichever is applicable. The first franchise tax report and payment are for the period beginning on the date of such charter or certificate of authority and ending on April 30 following the first anniversary of such charter or certificate. In addition, when the first anniversary occurs between January 1 and April 30, both dates inclusive, there shall also be computed and paid in advance with the first-year report an additional year's tax for the franchise tax year beginning on May 1 following the first anniversary and ending on April 30 of the succeeding year.

The report and tax (including the additional year's tax when applicable) shall be based on and computed in accordance with the corporation's financial condition as of the end of the month nearest its first anniversary. This closing date may fall within the same calendar year as the closing date for the corporation's initial annual franchise tax report. This circumstance does not result in double taxation or overlapping liability as the two reports are for different periods of time. Preprinted reports will be furnished by the comptroller on which the corporation must report its first-year franchise tax liability.

(C) (No change.)

(2) (No change.)

(3) Penalty and interest.

(A) Article 12.14 imposes a 5.0% penalty on the amount of franchise tax due by a corporation which fails to report and pay the tax when due. If the tax is not reported and paid within 30 days after the due date, an additional 5.0% penalty is imposed. There is a minimum penalty of $1.00. Delinquent taxes accrue interest at an annual rate of 6.0%, until December 31, 1979, and thereafter at an annual rate of 7.0%, said interest to begin accruing 60 days after the due date. If only a portion of the tax is timely paid, the foregoing penalties and interest are applied only to the balance of the tax which was not timely paid. Interest is not payable by the comptroller on overpayments or credits to which a taxpayer may be due.

(B)-(C) (No change.)

(b) Preparing the report; financial data; amended reports.

(1) The first-year franchise tax report and the annual report shall be completed in accordance with this rule and the instructions printed on the report, and any special instructions which may be issued from time to time by the comptroller. Except as otherwise prescribed, the report shall reflect and the tax shall be computed on the corporation's financial condition as shown in its books and records of account. For example, if a corporation elects to treat intangible development costs as expenses for federal income tax purposes, but capitalizes such costs for book purposes, or vice versa, the franchise tax report must be filed in accordance with the books and records, not as shown by the federal income tax return. The "books and records of account" on which a corporation's financial condition is determined means general and special journals and the ledger accounts. In conducting an audit or other examination of a corporation's franchise tax account, the comptroller, for the purpose of determining whether the books and records accurately reflect the corporation's financial condition, may examine financial statements, working papers, registers, memorandums, contracts, and any other business papers used in connection with its accounting system.

(2) Except as may be permitted as a special reporting method under franchise tax Rule .003, a consolidated or combined report, reflecting the financial data of a parent corporation and its subsidiaries, or the financial data of other separate corporations, as though they were a single economic entity, is not authorized by statute or by rule of the comptroller.

(3) (No change.)

(c) Payments under protest. It is the responsibility of the corporation which pays tax under protest to comply with Article 1.05. For the corporation's convenience, the comptroller will advise it of the amount received that is paid by it


under protest and the date of such payment. The amount protested will be placed in a suspense account pending resolution of the matters in issue. If suit is not filed in accordance with the statute, the protest payment will be cleared to the general fund after the expiration of 90 days from the date of payment.

(d) (No change.)

Doc. No. 796510

## 026.02.12.002

Under the authority of Texas Taxation—General Annotated, Article 12.12 (Vernon Supplement 1978-1979), the comptroller of public accounts has adopted Rule 026.02.12.002 to read as follows:

*.002. Optional Short-Form Report.*

(a) Eligibility to use optional short-form report. A short-form annual franchise tax report may be filed by a corporation whose total assets are less than $1,000,000. The optional short form may not be used in a corporation's first-year report.

(b) Income tax return must accompany report. A signed copy of the corporation's federal income tax return (i.e., Form 1120 or 990), which contains a balance sheet showing total assets and liabilities, must be furnished with the short-form report. If a consolidated federal income tax return is filed, the corporation also must furnish copies of all supporting schedules pertaining to the ending balance sheet for each corporation included in the consolidated return. The phrase "total assets" includes all items that are reported or should have been reported in the balance sheet on the federal return, or in the balance sheet schedule filed with a consolidated return, as of the last day of the corporation's income tax reporting period ending in the preceding calendar year of the year in which the short-form report is filed. In computing such total assets for short-form reporting purposes, a cash deficit balance or some other asset account with a credit balance, may not be used to reduce total assets.

(c) Amended reports. A corporation may file an amended report for the purpose of changing a long-form report to an optional short-form report or vice versa, provided the amended report is filed on or before September 15 of the year in which the report is due. The comptroller will require the filing of an amended report on the long form by a corporation which has used the short form in its first-year franchise tax report, or whose total assets are $1,000,000 or more, or in instances in which the corporation fails or refuses to submit with its short-form report a copy of the federal income tax return and/or schedules as hereinabove required.

Doc. No. 796511

## 026.02.12.019

Under the authority of Texas Taxation—General Annotated, Article 12.12 (Vernon Supplement 1978-1979), the comptroller of public accounts has adopted Rule 026.02.12.019 to read as follows:

*.019. Initial Franchise Tax Deposits by First-Year Corporations.*

(a) Initial franchise tax deposit.

(1) Prior to and as a precondition to receiving a charter or certificate of authority from the secretary of state of Texas on or after September 1, 1979, each domestic corporation incorporating under the Texas Business Corporation Act or the Texas Professional Corporation Act or a foreign corporation qualifying under the Texas Business Corporation Act must prepay an initial franchise tax deposit in the amount of $100 to the comptroller of public accounts. This deposit will be collected by the secretary of state at the time a charter of certificate of authority application is submitted for approval.

(2) The $100 initial franchise tax deposit may not be refunded in whole or in part for any reason after the charter or certificate of authority has been issued by the secretary of state.

(3) Domestic corporations organized under the Texas Nonprofit Corporation Act and foreign corporations issued a certificate of authority under such Act are not required to pay the initial franchise tax deposit prescribed in this rule.

(b) Filing the first-year franchise tax report. Each corporation subject to this rule shall file its first-year franchise report and pay the amount of tax shown to be due and payable, as required by Chapter 12, Title 122A, and franchise tax Rule .001. The initial franchise tax deposit prescribed by Article 12.06, Title 122A, Texas Civil Statutes, shall be applied as a credit against the tax computed on the first-year franchise tax report and subsequent reports. This credit will be preprinted on the first-year franchise tax report mailed to each first-year corporation.

(c) Other statutory provisions. All other provisions of Chapter One and Chapter 12, Title 122A, Texas Civil Statutes, which are applicable to the reporting and payment of the franchise tax, shall be enforced and applied in the administration of this rule. However, an extension of time within which to tender the initial franchise tax deposit will not be granted.

Doc. No. 796512

## Sales Tax Division 026.02.22.001

Under the authority of Texas Revised Civil Statutes Annotated, Article 1066c, Section 11, the comptroller of public accounts has adopted Rule 026.02.22.001 to read as follows:

*.001. Effect of Rules and Regulations; Permits and Certificates; Exclusion of Sales of $ .09 or Less (Texas Revised Civil Statutes Annotated, Article 1066c, Sections 2(B), 4(C), 6(C), and 2(K)(2)).*

(a) For the purpose of administering the Local Sales and Use Tax Act (hereafter referred to as the City Act), all rules and regulations relating to the Limited Sales, Excise, and Use Tax Act (hereafter referred to as the State Act), shall have the same effect with respect to the local sales and use tax (hereafter referred to as city tax) except in those situations where rules and regulations relating to city taxes have been issued to clarify specific statutory provisions.

(b) Only those taxable items that are subject to taxation by the State of Texas under the State Act shall be subject to taxation under the City Act. All exemptions granted to agencies of government, organizations, persons, and to the sale, storage, use, and other consumption of certain taxable items under the provisions of Article 20.04 also apply to the

imposition and collection of the city tax unless otherwise modified.

(c) Permits, exemption certificates, and resale certificates required for the State Limited Sales, Excise, and Use Tax (hereafter referred to as state tax) shall satisfy the requirements of the City Act; no additional permit or certificates shall be required as a result of the City Act. See Rules 026.02.20.006—Permits; 026.02.20.005—Resale Certificates; 026.02.20.007—Exemption Certificates; and 026.02.20.008—Direct Payment Permits.

(d) An exception is made to the above provision when an exemption is claimed from the city tax on taxable items that will be used in the performance of certain written contracts and bids executed prior to the effective date of the city tax. In order to claim this latter exemption, which applies only to the city tax, a special exemption certificate form is required. Refer to Rule .006—Prior Contracts, for further details regarding eligibility for the exemption.

(e) Exclusion of sales of $ .09 or less.

(1) Any retailer who can establish to the satisfaction of the comptroller that 50% or more of his total receipts from sales of taxable items arise from individual transactions in which the total sales price is $ .09 or less may exclude the receipts from such individual sales when reporting and paying the tax. No such reporting method shall be used unless the comptroller has given prior written approval to the retailer. Prior written approval may be obtained only by providing the comptroller with records which conclusively establish that 50% or more of the applicant's receipts are from sales of $ .09 or less. If two or more items, each of which sells for $ .09 or less, are sold together for a total sales price of more than $ .09, the receipts from such sales may not be treated as two separate sales of $ .09 or less.

(2) Every retailer desiring to use the method mentioned above must maintain adequate records, satisfactory to the comptroller, to support his eligibility. After the written approval of the comptroller is granted to any retailer to use the method, the retailer must maintain adequate records to support every report. If during any reporting period the retailer's records fail to establish the facts necessary to exclude sales of $ .09 or less, the tax for such period(s) must be reported and paid at the rate of 1.0% on all receipts from sales of taxable items, including sales of $ .09 or less.

Doc. No. 796513

## 026.02.22.004

Under the authority of Texas Revised Civil Statutes Annotated, Article 1066c, Section 11, the comptroller of public accounts has adopted Rule 026.02.22.004 to read as follows:

*.004. Imposition of the Sales Tax; Collection by Retailer; Bracket System Formula; Determining City Tax (Texas Revised Civil Statutes Annotated, Article 1066c, Sections 2(B) and 6(B)(1)).*

(a) Definitions.

(1) "Place of business" of the retailer means an established outlet, office, or location operated by the retailer, his agent, or employee for the purpose of receiving orders for taxable items. The term "place of business" of the retailer includes any location at which three or more orders are received by the retailer in a calendar year. In order for a warehouse, storage yard, or manufacturing plant to be con-

sidered a "place of business," the retailer must receive three or more orders in a calendar year at such location. Each "place of business" of the retailer must have a permit issued by the comptroller in accordance with Article 20.021.

(2) "Itinerant vendor" means a retailer who does not operate any "place of business" as defined above.

(3) "Taxing city" means any city in Texas that has adopted the local sales and use tax.

(b) Sales tax imposition.

(1) The sales tax adopted under the City Act is imposed at the rate of 1.0% on the receipts from the sale at retail of all taxable items within any city adopting such tax if the items are subject to taxation by the State of Texas under the provisions of the Limited Sales, Excise, and Use Tax Act.

(2) In each taxing city every retailer shall add the tax imposed by the State Act and the tax imposed by the City Act to his sale price, and when added, the combined tax shall constitute a part of the price, shall be a debt of the purchaser to the retailer until paid, and shall be recoverable at law in the same manner as the purchase price.

(3) When the sale price in such city shall involve a fraction of a dollar, the two combined taxes shall be added to the sale price upon the schedule and bracket system formula shown below:

| Amount of Sale | Tax |
|---|---|
| $ .00-$ .09 | No tax |
| .10- .29 | $ .01 |
| .30- .49 | .02 |
| .50- .69 | .03 |
| .70- .89 | .04 |
| .90- 1.09 | .05 |

Provided, that for successive brackets for the above schedule, the tax shall be computed by multiplying 5.0% times the amount of sale. Any fraction of $ .01 which is less than one half of $ .01 of tax shall not be collected. Any fraction of $ .01 of tax equal to one half of $ .01 or more shall be collected as a whole cent of tax.

(c) Determining City Tax.

(1) Pick up, delivery, or shipment from a Texas retailer's place of business.

(A) One place of business. If a retailer has only one place of business and that place of business is within the state, all retail sales, leases, and rentals by the retailer are subject to city sales tax based upon the location of that place of business. This applies regardless of where transfer of title or possession or segregation of the taxable items sold, leased, or rented occurred within this state. If the taxable items are delivered directly to the retailer's customer from outside the state or if the retailer's place of business is not in a taxing city, this subsection is not applicable. See Rule .005—City Use Tax for Proper Determination of Use Tax. Also, see the exception in subsection (c)(3) of this rule.

(B) Multiple places of business. If a retailer has more than one place of business in this state, city sales tax is due based upon the location of the retailer's place of business where the customer takes possession of the item sold or leased. If, however, the retailer ships or delivers the item to the customer, city sales tax is due based upon the location of the retailer's place of business from which the item is shipped or delivered.

(2) Delivery or shipment from a location within Texas other than the retailer's place of business.

(A) Order placed with a Texas retailer.


(i) If an order is received at the place of business of a Texas retailer, but delivery or shipment is made from a location within the state other than that place of business, city sales tax is due based upon the location of the place of business where the order was received.

(ii) If an order is received by a traveling salesperson, and delivery or shipment is made from a location within the state which is not a place of business of the Texas retailer, city sales tax is due based on the retailer's place of business from which the salesperson operates.

(B) Order placed with an out-of-state retailer.

(i) If an order is initially received at a retailer's place of business outside the state, but delivery or shipment is made from a location within the state other than a place of business of that retailer, city sales tax is due based upon the city where delivery is made or possession is taken by the purchaser.

(ii) If an order is received by a salesperson for an out-of-state retailer, and delivery or shipment is made from a location within this state other than a place of business of that retailer, city sales tax is due based upon the city where delivery is made or possession is taken by the purchaser.

(3) Drop shipment by supplier receiving order. If the purchaser places the order directly with the retailer's supplier and the items are shipped or delivered directly to the purchaser by the supplier, city sales tax is due based upon the city where delivery is made or possession is taken by the purchaser.

(4) Itinerant vendors. If the retailer is an itinerant vendor, city sales tax is due based upon the city where delivery is made or possession is taken by the purchaser.

(5) Shipments from out of state. Notwithstanding any of the foregoing provisions, if the retailer makes deliveries of taxable items from a location outside the State of Texas to a Texas purchaser, the city use tax is applicable. See local Rule .055—City Use Tax.

(6) Gas and electricity. The sale of natural gas or electricity takes place at the point of delivery to the consumer. Companies selling natural gas or electricity must collect the city tax, if adopted, for the city in which delivery is made to the consumer.

Doc. No. 796514

## 026.02.22.005

Under the authority of Texas Revised Civil Statutes Annotated, Article 1066c, Section 11, the comptroller of public accounts has adopted Rule 026.02.22.005 to read as follows:

*.005. Administration of Use Tax; Collection by Retailer (Texas Revised Civil Statutes Annotated Article 1066c, Section 4 and Article 7359a; Texas Taxation General—Annotated Article 20.01, Sections (N),(O), and (R); and Article 20.031 and Article 20.04(J)).*

(a) Definitions.

(1) "Use tax" means a nonrecurring tax which is imposed on the exercise or enjoyment of any right or power over taxable items incident to the ownership, possession, or custody of those items.

(2) The term "use" means the exercise of any right or power over taxable items except the sale, lease, or rental of the items in the regular course of business or the holding of the items for the purpose of subsequently transporting them outside Texas for use solely outside Texas.

(3) The term "storage" includes any retention of taxable items in Texas for any purpose other than sale, lease, or rental in the regular course of business or for subsequent use solely outside Texas.

(4) "Engaged in business" in a particular city means and includes any of the following:

(A) any retailer maintaining, occupying, or using, permanently or temporarily, directly or through an agent, an office, place of distribution, sales or sample room, warehouse, storage place, or other location;

(B) any retailer having any representative, agent, salesman, canvasser, or solicitor operating in the city under the authority of the retailer for the purpose of selling, delivering, or the taking of orders for any taxable items.

(5) "Interstate transit has ceased" means when the interstate journey is interrupted for reasons of convenience or business needs of the owner but does not include a temporary interruption necessary and incidental to the transit.

(6) "Intrastate transit has ceased" means when the intrastate journey is interrupted for reasons of convenience or business needs of the owner but does not include a temporary interruption necessary and incidental to the transit.

(7) "Taxing city" means any city in Texas that has adopted the local sales and use tax.

(b) Imposition of city use tax.

(1) If taxable items are purchased out of state for use in a taxing city and are brought or shipped into that city for storage, use, or other consumption, city use tax is due. The liability may be extinguished by payment of the city use tax directly to the comptroller or to a retailer authorized to collect it. See Rule 026.02.20.006—Permits, concerning use tax permit requirements for out-of-state retailers.

(2) If taxable items are purchased within the state but not within a taxing city and those items are shipped or delivered by the retailer directly into or brought by the purchaser or lessee directly into a taxing city, the items are subject to the city use tax. The city use tax, if any, is determined by the location where the items are first stored, used, or otherwise consumed.

(3) The basis of the tax is the purchase price. The tax should be reported in the period in which the taxable items are first stored, used, or otherwise consumed.

(4) City use tax does not apply when the taxable items are transferred from some other city in Texas or from a point outside a city where they were first stored, used, or otherwise consumed.

(5) If, in a taxing city, storage facilities contain taxable items purchased out of state and at the time of storage it is not known whether the items will be used in or removed from Texas, then the taxpayer may elect to report city use tax when the items are first stored or when they are first removed from storage for use. Once the election is made, the tax must be reported in a consistent manner.

If city use tax is paid on stored items that are subsequently removed from Texas before use, the tax may be recouped in accordance with the refund and credit provisions in Rules 026.02.20.045—Refunds and 026.02.20.058—Credits.

(c) Collection by retailer.

(1) Retailer not maintaining a place of business in this state. Every out-of-state retailer who:

(A) does not maintain a place of business within this state; but

(B) is engaged in business in a taxing city;

(C) sells, leases, or rents taxable items for storage, use, or other consumption in that city; and

(D) ships or delivers those items into the city to the purchaser; shall collect both the use tax imposed by the state and the use tax imposed by the city. The combined tax shall be collected at the time the sale is made.

(2) Retailer maintaining a place of business within this state. Every retailer who:

(A) maintains a place of business within this state but not in a taxing city;

(B) is engaged in business in a taxing city;

(C) sells, leases, or rents taxable items for storage, use, or other consumption in that city; and

(D) ships or delivers those items into the city to the purchaser; shall collect both the sales tax imposed by the state and the use tax imposed by the city. The combined tax shall be collected at the time the sale is made.

(d) Purchaser's liability for use tax. If the seller is not required to collect any state or city use tax which is due, the purchaser is still responsible for filing reports and paying the tax.

(e) Exceptions.

(1) City use tax is not applicable if the purchaser paid city sales tax to a Texas retailer or owes city sales tax to a Texas retailer who failed to collect it. The comptroller may proceed against the seller or the purchaser for the city sales tax owed by either.

(2) City use tax is not applicable to the storage, use, or other consumption of taxable items in this state if the sale or use of the items would be exempt from the state sales and use tax were it purchased within this state.

(3) Credit will be allowed against a city use tax liability to the extent sales or use tax is legally due and paid to another state under the conditions provided in Texas Taxation—General Annotated, Article 20.04(J), and Texas Revised Civil Statutes Annotated, Article 7359(a).

(4) If taxable items are purchased out of state, temporarily stored in Texas, and then removed and used solely outside Texas, city use tax does not apply.

(5) The purchase of taxable items will not be presumed to have been for use in a taxing city, if the items were purchased and used outside Texas for more than one year before the date of entry into Texas. The use outside Texas must be substantial and constitute a primary use for which the property was purchased. Either the comptroller or the purchaser may introduce evidence to establish the intent or absence of intent to use the taxble items in a taxing city at the time of purchase.

(f) Collection formula. When the sales price in a taxing city shall involve a fraction of a dollar, the two combined taxes (state and city) shall be added to the sale price upon the following schedules:

| Amount of Sale | Tax |
|---|---|
| $ .00-$ .09 | No tax |
| .10- .29 | $ .01 |
| .30- .49 | .02 |
| .50- .69 | .03 |
| .70- .89 | .04 |
| .90- 1.09 | .05 |

Provided, that for successive brackets for the above schedule, the tax shall be computed by multiplying 5.0% times the amount of sale. Any fraction of $ .01 which is less than one-half of $ .01 of tax shall not be collected. Any fraction of $ .01

of tax equal to one-half of $ .01 or more shall be collected as a whole cent of tax.

Doc. No. 796515

## 026.02.22.007

Under the authority of Texas Revised Civil Statutes Annotated, Article 1066c, Section 11, the comptroller of public accounts has adopted Rule 026.02.22.007 to read as follows:

.007. Liability of Purchaser Giving Resale, Exemption, or Direct Payment Exemption Certificate (Texas Taxation—General Annotated, Article 20.01(N),(O),(R); Article 20.04(B); Texas Revised Civil Statutes Annotated, Article 1066c, Section 6(B)(1),(2),(3)).

(a) Exemption certificate—divergent use.

(1) If a valid exemption certificate is issued at the time of purchase for items exempted under Article 20.04 and the purchaser makes a nonexempt use of the items, the purchaser owes city sales tax to the city where the nonexempt use occurred.

(2) The basis for the sales tax is the purchase price. The tax is due in the reporting period in which the items were used or consumed in a nonexempt manner. See Rule 026.02.20.007—Exemption Certificates.

(3) If an exemption certificate was invalid at the time of issuance, the purchaser owes city sales tax to the taxing city where the items were initially purchased.

(b) Resale certificate—divergent use.

(1) If taxable items were purchased tax-free for resale and were at any time used in a taxing city in a manner other than retention, demonstration, or display, then city use tax is due.

(2) If storage facilities contain taxable items purchased for resale, no city use tax is due if the items are removed from storage and transported outside the state for use solely outside the state. Although the items are not resold, no taxable use occurs in Texas. If the items are removed from storage for use or consumption in a taxing city, then city use tax is due.

(3) The basis for the tax is the purchase price. The tax is due for the reporting period in which the items were used or consumed in a manner not allowed by the resale certificate. See Rule 026.02.20.005—Sales for Resale and Resale Certificates.

(4) The city use tax is due the taxing city where the items are stored or kept at the time of or just prior to their use or consumption. If stored or kept outside a taxing city at the time of or just prior to their use, no city use tax is due.

(5) If the resale certificate was invalid at the time of its issuance, the purchaser owes city sales tax to the taxing city where the items were initially purchased.

(c) Direct payment exemption certificate.

(1) When taxable items purchased under direct payment exemption certificate are used or consumed, city use tax is due the city in which the items were first removed from storage. If the items were not stored prior to use, city use tax is due the city where they are used or consumed after transportation.

(2) Storage, use, or other consumption does not include a temporary delay or interruption necessary and incidental to the transportation or further fabrication, processing, or assembling of taxable items within this state for delivery to the permit holder.



(3) If taxable items are first stored, used, or consumed within a nontaxing city or outside of a city, no city use tax is due.

(4) A charge for processing, fabrication, or further assembly performed in a taxing city is subject to the city use tax.

(5) If, in a taxing city, storage facilities contain taxable items purchased under a direct payment exemption certificate, and at the time of storage it is not known whether the items will be used in or removed from Texas, the taxpayer may elect to report city use tax when the items are first stored or when they are first removed from inventory for use. Once the election is made, the tax must be reported in a consistent manner.

If city use tax is paid on stored items that are subsequently removed from Texas before use, the tax may be recouped in accordance with the refund and credit provisions in Rules 026.02.20.045—Refunds and 026.02.20.058—Credits. See also Rule 026.02.20.066—Use Tax.

Doc. No. 796516

## 026.02.22.009

Under the authority of Texas Revised Civil Statutes Annotated, Article 1066c, Section 11, the comptroller of public accounts has adopted Rule 026.02.22.009 to read as follows:

*.009. Contractors (Texas Revised Civil Statutes Annotated, Article 1066c, Sections 4(A) and 6(B)(1); Texas Taxation—General Annotated, Article 20.01(T)).*

(a) Definitions. For the definition of lump-sum and separated contracts, see Rule 026.02.20.011—Contractors.

(b) Separated contracts.

(1) Contractors performing separated contracts are retailers of the materials incorporated in the customer's real property.

(2) Contractors performing separated contracts are required to hold permits and to collect city sales tax from customers on the sales price of the materials. See Rule 026.02.20.006—Permits.

(3) The job site is the contractor's place of business for the purpose of determining where city tax is due.

(4) If the job site is within a taxing city, tax is due for that city on the separate charges for materials. If the job site is not in a taxing city, the city tax is not due.

(5) Contractors are not selling the equipment and consumable supplies they use but do not incorporate into the customer's property. The contractor may not issue or accept resale certificates but must pay the city tax, if any, on the equipment and consumable supplies. This city tax may not be passed on directly to the customer.

(c) Lump-sum contracts.

(1) Contractors performing lump-sum contracts are consumers of all materials, supplies, and equipment used or incorporated into the customer's property.

(2) Contractors purchasing taxable items for use in lump-sum contracts must pay city sales tax to Texas retailers as set out in local Rule .004—City Sales Tax. The job site of the lump-sum contractor does not determine city sales tax.

(3) If taxable items are brought into Texas by a contractor for use in the performance of a lump-sum contract in a taxing city, the city use tax is due. See local Rule .005—City Use Tax.

(4) If taxable items are purchased from a retailer within the state but outside a taxing city, and the items are shipped into or brought by the contractor directly into a taxing city, the city use tax is due. See Rule .005—City Use Tax.

(5) The basis of the city use tax is the purchase price. The city use tax is due in the reporting period in which the item was first stored, used, or otherwise consumed in a taxing city.

(d) Contractors improving realty for exempt customers.

(1) Certain taxable items purchased by contractors for use in improving realty pursuant to a contract with an organization exempt under Article 20.04(H) of the State Act are exempt from city tax. The items that qualify for exemption are those that would be exempt from state tax under Rule 026.02.20.011—Contractors.

(2) If equipment purchased for use in improving realty for an exempt organization is used in a nonexempt manner within a taxing city, city sales tax is due in accordance with the depreciation schedule in Rule 026.02.20.011—Contractors.

Doc. No. 796517

## Sales Tax Division—Metropolitan Transit Authority Sales and Use Tax 026.02.24.001

Under the authority of Texas Revised Civil Statutes Annotated, Article 1118x, Section 11B(B)(g), the comptroller of public accounts has adopted Rule 026.02.24.001 to read as follows:

*.001. Effect of Rules and Regulations; Permits and Certificates; Exclusion of Certain Sales of Qualified Retailers (Texas Revised Civil Statutes Annotated) Article 1118x, Section 11B(B)(e), and Article 1066c, Sections 2(B), 4(C), 6(C); and 2(K)(2)).*

(a) For the purpose of administering the Metropolitan Transit Authority Sales and Use Tax Act (hereafter referred to as the MTA Act), all rules and regulations relating to the Limited Sales, Excise, and Use Tax Act (hereafter referred to as the State Act), shall have the same effect with respect to the MTA sales and use tax (hereafter referred to as the MTA tax) except in those situations where rules and regulations relating to MTA taxes have been issued to clarify specific statutory provisions.

(b) Only those taxable items that are subject to taxation by the State of Texas under the State Act shall be subject to taxation under the MTA Act. All exemptions granted to agencies of government, organizations, persons, and to the sale, storage, use, and other consumption of certain taxable items under the provisions of Article 20.04 also apply to the imposition and collection of the MTA tax unless otherwise modified.

(c) Permits, exemption certificates, and resale certificates required for the limited sales, excise, and use tax (hereafter referred to as state tax) shall satisfy the requirements of the MTA sales and use tax, and no additional permit or certificates shall be required as a result of the MTA Act. See Rules 026.02.20.006—Permits; 026.02.20.005—Resale Certificates; 026.02.20.007—Exemption Certificates; and 026.02.20.008—Direct Payment Permits.

(d) An exception is made to the above provision when an exemption is claimed from the MTA tax on taxable items that will be used in the performance of certain written con-

tracts and bids executed prior to the effective date of the MTA tax. In order to claim this latter exemption, which applies only to the MTA tax, a special exemption certificate form is required. Refer to Rule .006—Prior Contracts for further details regarding eligibility for the exemption.

(e) Exclusion of sales of $ .09 or less.

(1) Any retailer who is responsible for collecting the San Antonio MTA tax and who can establish to the satisfaction of the comptroller that 50% or more of his total receipts from sales of taxable items arise from individual transactions where the total sales price is $ .09 or less may exclude the receipts from such individual sales when reporting and paying the tax. No such reporting method shall l e used unless the comptroller has given prior written approval to the retailer. Prior written approval may be obtained only by providing the comptroller with records which conclusively establish that 50% or more of the retailer's receipts are from sales of $ .09 or less. If two or more items, each of which sells for $ .09 or less, are sold together for a total sales price of more than $ .09, the receipts from such sale may not be treated as two separate sales of $ .09 or less.

(2) Every retailer desiring to use the method mentioned above must maintain adequate records, satisfactory to the comptroller, to support his eligibility. After the written approval of the comptroller is granted to any retailer to use the method, the retailer must maintain adequate records to support every report. If, during any reporting period the retailer's records fail to establish the facts necessary to exclude sales of $ .09 or less, the tax for such periods must be reported and paid at the rate of 1.0% on all receipts from sales of taxable items, including sales of $ .09 or less.

(f) Exclusion of sales of $ .08 or less.

(1) Any retailer who is responsible for collecting the Houston Metropolitan Transit Authority tax and who can establish to the satisfaction of the comptroller that 50% or more of his total receipts from sales of taxable items arise from individual transactions where the total sales price is $ .08 or less may exclude the receipts from such individual sales when reporting and paying the tax. No such reporting method shall be used unless the comptroller has given prior written approval to the retailer. Prior written approval may be obtained only by providing the comptroller with records which conclusively establish that 50% or more of the retailer's receipts are sales of $ .08 or less. If two or more items, each of which sells for $ .08 or less, are sold together for a total sales price of more than $ .08, the receipts from such sale may not be treated as two separate sales of $ .08 or less.

(2) Every retailer desiring to use the method mentioned above must maintain adequate records, satisfactory to the comptroller, to support his eligibility. After the written approval of the comptroller is granted to any retailer to use the method, the retailer must maintain adequate records to support every report. If, during any reporting period the retailer's records fail to establish the facts necessary to exclude sales of $ .08 or less, the tax for such periods must be reported and paid at the rate of 1.0% on all receipts from sales of taxable items, including sales of $ .08 or less.

(3) If the retailer is not required to collect any city tax, the above sections apply except that the total sales price must be $ .09 or less.

Doc. No. 796518

### 026.02.24.004

Under the authority of Texas Revised Civil Statutes Annotated, Article 1118x, Section 11B(B)(g), the comptroller of public accounts has adopted Rule 026.02.24.004 to read as follows:

*.004. Imposition of Sales Tax; Collection by Retailer; Bracket System Formula; Determining City Tax (Texas Revised Civil Statutes Annotated, Article 1118x, Section 11B(B)(e), and Article 1066c, Sections 2(B) and 6(B)(1)).*

(a) Definitions.

(1) "Place of business" of the retailer means an established outlet, office, or location operated by the retailer, his agent, or employee for the purpose of receiving orders for taxable items. The term "place of business" of the retailer includes any location at which three or more orders are received by the retailer in a calendar year. In order for a warehouse, storage yard, or manufacturing plant to be considered a "place of business," the retailer must receive three or more orders in a calendar year at such location. Each "place of business" of the retailer must have a permit issued by the comptroller in accordance with Article 20.021.

(2) "Itinerant vendor" means a retailer who does not operate any "place of business" as defined above.

(3) "Authority" means a metropolitan transit authority that has adopted the metropolitan transit authority sales and use tax.

(b) Sales tax imposition.

(1) The sales tax adopted under the portion of any MTA Act is imposed at the rate of up to 1.0% on the receipts from the sale at retail of all taxable items within any authority if the items are subject to taxation under the provisions of the state act.

(2) In an authority every retailer shall add the tax imposed by the state act, the tax imposed by the city act, if any, and the tax imposed by the MTA Act, to his sales price, and when added, the combined taxes shall constitute a part of the price, shall be a debt of the purchaser to the retailer until paid, and shall be recoverable at law in the same manner as the purchase price.

(3) Effect of city tax.

(A) When the sales price involves a fraction of a dollar and no city tax is applicable, the two combined taxes (state and MTA) shall be added to the sale price upon the following schedules:

(i) Based upon the one-half of 1.0% rate adopted by the San Antonio Metropolitan Transit Authority:

| Amount of Sale | Tax |
|---|---|
| $ .00-$ .11 | No tax |
| .12- .33 | $ .01 |
| .34- .55 | .02 |
| .56- .77 | .03 |
| .78- .99 | .04 |
| 1.00- 1.22 | .05 |

Successive brackets for the above schedule shall be computed by multiplying 4.5% times the amount of sale. Any fraction of $ .01 which is less than one-half of $ .01 of tax shall not be collected. Any fraction of $ .01 of tax equal to one-half of $ .01 or more shall be collected as a whole cent of tax.

(ii) Based upon the 1.0% rate adopted by the Houston Metropolitan Transit Authority:


| Amount of Sale | Tax |
|---|---|
| $ .00-$ .09 | No tax |
| .10- .29 | $ .01 |
| .30- .49 | .02 |
| .50- .69 | .03 |
| .70- .89 | .04 |
| .90- 1.09 | .05 |

Successive brackets for the above schedule shall be computed by multiplying 5.0% times the amount of sale. Any fraction of $ .01 which is less than one-half of $ .01 of tax shall not be collected. Any fraction of $ .01 of tax equal to one-half of $ .01 or more shall be collected as a whole cent of tax.

(B) When the sales price involves a fraction of a dollar and city tax is applicable, the three combined taxes (state, city, and MTA) shall be added to the sales price upon the following schedules:

(i) Based upon the one-half of 1.0% rate adopted by the San Antonio Metropolitan Transit Authority:

| Amount of Sale | Tax |
|---|---|
| $ .00-$ .09 | No tax |
| .10- .27 | $ .01 |
| .28- .45 | .02 |
| .46- .63 | .03 |
| .64- .81 | .04 |
| .82- .99 | .05 |

Successive brackets for the above schedule shall be computed by multiplying 5.5% times the amount of sale. Any fraction of $ .01 which is less than one-half of $ .01 of tax shall not be collected. Any fraction of $ .01 of tax equal to one-half of $ .01 or more shall be collected as a whole cent of tax.

(ii) Based upon the 1.0% rate adopted by the Houston Metropolitan Transit Authority:

| Amount of Sale | Tax |
|---|---|
| $ .00-$ .08 | No tax |
| .09- .24 | $ .01 |
| .25- .41 | .02 |
| .42- .58 | .03 |
| .59- .74 | .04 |
| .75- .91 | .05 |
| .92- 1.08 | .06 |

Successive brackets for the above schedule shall be computed by multiplying 6.0% times the amount of sale. Any fraction of $ .01 which is less than one-half of $ .01 of tax shall not be collected. Any fraction of $ .01 of tax equal to one-half of $ .01 or more shall be collected as a whole cent of tax.

(c) Determining MTA tax.

(1) Pick up, delivery, or shipment from a Texas retailer's place of business.

(A) One place of business. If a retailer has only one place of business and that place of business is within the state, all retail sales, leases, and rentals by the retailer are subject to the MTA sales tax based upon the location of that place of business. This applies regardless of where transfer of title or possession or segregation of the taxable items sold, leased, or rented occurred within this state. If the taxable items are delivered directly to the retailer's customer from outside the state or if the retailer's place of business is not in an authority, this subsection is not applicable. See Rule 026.02.22.005—MTA Use Tax for proper determination of use tax. Also, see the exception in subsection (c)(3) of this rule.

(B) Multiple places of business. If a retailer has more than one place of business in this state, MTA sales tax is due based upon the location of the retailer's place of business where the customer takes possession of the item sold or leased. If, however, the retailer ships or delivers the item to the customer, MTA sales tax is due based upon the location of the retailer's place of business from which the item is shipped or delivered.

(2) Delivery or shipment from a location within Texas other than the retailer's place of business.

(A) Order placed with a Texas retailer.

(i) If an order is received at the place of business of a Texas retailer but delivery or shipment is made from a location within the state other than that place of business, MTA sales tax is due based upon the location of the place of business where the order was received.

(ii) If an order is received by a traveling salesperson and delivery or shipment is made from a location within the state which is not a place of business of the retailer, MTA sales tax is due based on the retailer's place of business from which the salesperson operates.

(B) Order placed with an out-of-state retailer.

(i) If an order is initially received at a retailer's place of business outside the state but delivery or shipment is made from a location within the state other than a place of business of the retailer, MTA sales tax is due based upon the authority where delivery is made or possession is taken by the purchaser.

(ii) If an order is received by a salesperson for an out-of-state retailer and delivery or shipment is made from a location within the state other than a place of business of the retailer, MTA sales tax is due based upon the authority where delivery is made or possession is taken by the purchaser.

(3) Drop shipment by supplier receiving order. If the purchaser places the order directly with the retailer's supplier and the items are shipped or delivered directly to the purchaser by the supplier, MTA sales tax is due based upon the authority where delivery is made or possession is taken by the purchaser.

(4) Itinerant vendors. If the retailer is an itinerant vendor, MTA sales tax is due based upon the authority where delivery is made or possession is taken by the customer.

(5) Shipments from out of state. Notwithstanding any of the foregoing provisions, if the retailer makes deliveries of taxable items from a location outside the state of Texas to a Texas purchaser, the MTA use tax is applicable. See MTA Rule .005—MTA Use Tax.

(6) Gas and electricity. The sale of natural gas or electricity takes place at the point of delivery to the consumer. Consequently, companies selling natural gas or electricity must collect the MTA tax, if adopted, for the authority in which delivery is made to the consumer.

Doc No 796519

## 026.02.24.005

Under the authority of Texas Revised Civil Statutes Annotated, Article 1118x, Section 11B(B)(g), the comptroller of public accounts has adopted Rule 026.02.24.005 to read as follows:

*.005. Administration of Use Tax; Imposition and Collection (Texas Revised Civil Statutes Annotated, Article 1118x, Section 11B(B)(e), Article 1066c, Section 4, and Article 7359a; Texas Taxation—General Annotated, Article 20.01, Sections (N), (O), and (Z), Article 20.031, and Article 20.04(J).*

(a) Definitions.

(1) "Use tax" means a nonrecurring tax, complementary to the sales tax, which is imposed on the exercise or enjoyment of any right or power over taxable items incident to the ownership, possession, or custody of those items.

(2) The term "use" means the exercise of any right or power over taxable items except the sale, lease, or rental of the item in the regular course of business or the holding of the items for the purpose of subsequently transporting them outside Texas for use solely outside Texas.

(3) The term "storage" includes any retention of taxable items in Texas for any purpose, other than sale, lease, or rental in the regular course of business or for subsequent use solely outside Texas.

(4) "Engaged in business" in a particular authority means and includes any of the following:

(A) any retailer maintaining, occupying, or using, permanently or temporarily, directly or through an agent, an office, place of distribution, sales or sample room, warehouse, storage place, or other location;

(B) any retailer having any representative, agent, salesman, canvasser, or solicitor operating in the authority on behalf of the retailer or its subsidiary for the purpose of selling, delivering, or the taking of orders for any taxable items.

(5) "Interstate transit has ceased" means when the interstate journey is interrupted for reasons of convenience or business needs of the owner but does not include a temporary interruption necessary and incidental to the transit.

(6) "Intrastate transit has ceased" means when the intrastate journey is interrupted for reasons of convenience or business needs of the owner but does not include a temporary interruption necessary and incidental to the transit.

(7) "Authority" means any metropolitan transit authority in Texas that has adopted the Metropolitan Transit Authority Sales and Use Tax.

(b) Imposition of MTA use tax.

(1) If taxable items are purchased out of state for use in an authority and are brought or shipped into that authority for storage, use, or other consumption, MTA use tax is due. The liability may be extinguished by payment of the MTA use tax directly to the comptroller or to a retailer authorized to collect it. See Rule 026.02.20.006—Permits—concerning use tax permit requirements for out-of-state retailers.

(2) If taxable items are purchased within the state but not within an authority and those items are shipped or delivered by the retailer directly into or brought by the purchaser or lessee directly into an authority, the items are subject to the MTA use tax. The MTA use tax, if any, is determined by the location where the items are first stored, used, or otherwise consumed.

(3) The basis of the tax is the purchase price. The tax should be reported in the period in which the taxable items are first stored, used, or otherwise consumed.

(4) MTA use tax does not apply when the taxable items are transferred from some other authority or from a point outside an authority where they were first stored, used, or otherwise consumed.

(5) If, in an authority, storage facilities contain taxable items purchased out of state and at the time of storage it is not known whether the items will be used in or removed from Texas, then the taxpayer may elect to report MTA use tax when the items are first stored or are first removed from storage for use. Once the election is made, the tax must be

reported in a consistent manner. If MTA use tax is paid on stored items that are subsequently removed from Texas before use, the tax may be recouped in accordance with the refund and credit provisions in Rules 026.02.20.045—Refunds, and 026.02.20.058—Credits.

(c) Collection by retailer.

(1) Retailer not maintaining a place of business in this state. Every out-of-state retailer who:

(A) does not maintain a place of business within this state; but

(B) is engaged in business in an authority;

(C) sells, leases, or rents taxable items for storage, use, or other consumption in that authority; and

(D) ships or delivers those items into the authority to the purchaser; shall collect the use tax imposed by the state and the use tax imposed by the city and the authority. The combined tax shall be collected at the time the sale is made.

(2) Retailer maintaining a place of business in this state. Every retailer who:

(A) maintains a place of business within this state; but not within an authority;

(B) is engaged in business in an authority;

(C) sells, leases, or rents taxable items for storage, use, or other consumption in that authority; and

(D) ships or delivers those items into the authority to the purchaser; shall collect the sales tax imposed by the state, the sales or use tax imposed by the city and the use tax imposed by the authority. The combined tax shall be collected at the time the sale is made.

(d) Purchaser's liability for use tax. If the seller is not required to collect any state, city, or MTA use tax which is due, the purchaser is still responsible for filing reports and paying the tax.

(e) Exceptions.

(1) MTA use tax is not applicable if the purchaser paid MTA sales tax to a Texas retailer or owes MTA sales tax to a Texas retailer who failed to collect it. The comptroller may proceed against the seller or the purchaser for the MTA sales tax owed by either.

(2) MTA use tax is not applicable to the storage, use, or other consumption of taxable items in this state if the sale or use of the items would be exempt from the state sales and use tax were it purchased within this state.

(3) Credit will be allowed against an MTA use tax liability to the extent sales or use tax is legally due and paid to another state under the conditions provided in Article 20.04(J) and Article 7359(a).

(4) If taxable items are purchased out of state, temporarily stored in Texas, and then removed and used solely outside Texas, MTA use tax does not apply.

(5) The purchase of taxable items will not be presumed to have been for use in an authority if the items were purchased and used outside Texas for more than one year before the date of entry into an authority. The use outside Texas must be substantial and constitute a primary use for which the property was purchased. Either the comptroller or the purchaser may introduce evidence to establish the intent or absence of intent to use taxable items in an authority at the time of purchase.

(f) Collection formula.

(1) When the sales price in an authority involves a fraction of a dollar and no city tax is applicable, the two com-



bined taxes (state and MTA) shall be added to the sales price upon the following schedules:

(A) Based upon the one-half of 1.0% rate adopted by the San Antonio Metropolitan Transit Authority:

| Amount of Sales | Tax |
|---|---|
| $ .00-$ .11 | No tax |
| .12- .33 | $ .01 |
| .34- .55 | .02 |
| .56- .77 | .03 |
| .78- .99 | .04 |
| 1.00- 1.22 | .05 |

Successive brackets for the above schedule shall be computed by multiplying 4.5% times the amount of sale. Any fraction of $ .01 which is less than one-half of $ .01 of tax shall not be collected. Any fraction of $ .01 of tax equal to one-half of $ .01 or more shall be collected as a whole cent of tax.

(B) Based upon the 1.0% rate adopted by the Houston Metropolitan Transit Authority:

| Amount of Sale | Tax |
|---|---|
| $ .00-$ .09 | No tax |
| .10- .29 | $ .01 |
| .30- .49 | .02 |
| .50- .69 | .03 |
| .70- .89 | .04 |
| .90- 1.09 | .05 |

Successive brackets for the above schedule shall be computed by multiplying 5.0% times the amount of sale. Any fraction of $ .01 which is less than one-half of $ .01 of tax shall not be collected. Any fraction of $ .01 of tax equal to one-half of $ .01 or more shall be collected as a whole cent of tax.

(2) When the sales prices involve a fraction of a dollar and city tax is applicable, the three combined taxes (state, city, and MTA) shall be added to the sales price upon the following schedules

(A) Based upon the one-half of 1.0% rate adopted by the San Antonio Metropolitan Transit Authority:

| Amount of Sales | Tax |
|---|---|
| $ .00-$ .09 | No tax |
| .10- .27 | $ .01 |
| .28- .45 | .02 |
| .46- .63 | .03 |
| .64- .81 | .04 |
| .82- .99 | .05 |

Successive brackets for the above schedule shall be computed by multiplying 5.5% times the amount of sale. Any fraction of $ .01 which is less than one-half of $ .01 of tax shall not be collected. Any fraction of $ .01 of tax equal to one-half of $ .01 or more shall be collected as a whole cent of tax.

(B) Based upon the 1.0% rate adopted by the Houston Metropolitan Transit Authority:

| Amount of Sale | Tax |
|---|---|
| $ .00-$ .08 | No tax |
| .09- .24 | $ .01 |
| .25- .41 | .02 |
| .42- .58 | .03 |
| .59- .74 | .04 |
| .75- .91 | .05 |
| .92- 1.08 | .06 |

Successive brackets for the above schedule shall be computed by multiplying 6.0% times the amount of sale. Any fraction of $ .01 which is less than one-half of $ .01 of tax shall not be

collected. Any fraction of $ .01 of tax equal to one-half of $ .01 or more shall be collected as a whole cent of tax.

Doc. No. 796520

## 026.02.24.007

Under the authority of Texas Revised Civil Statutes Annotated, Article 1118x, Section 11B(B)(g), the comptroller of public accounts has adopted Rule 026.02.24.007 to read as follows:

*.007. Liability of Purchaser Giving Resale, Exemption, or Direct Payment Exemption Certificate (Texas Revised Civil Statutes Annotated, Article 1118x, Section 11B(B)(c); Article 1066c, Subsections 6(B)(1),(2),(3); Texas Taxation—General Annotated, Article 20.01(N),(O),(R) and Article 20.04(B)).*

(a) Exemption certificate—divergent use.

(1) If a valid exemption certificate is issued at the time of purchase for items exempted under Article 20.04 and the purchaser makes a nonexempt use of the items, the purchaser owes MTA sales tax to the authority where the nonexempt use occurred.

(2) The basis for the sales tax is the purchase price. The tax is due in the reporting period in which the items were used or consumed in a nonexempt manner. See Rule 026.02.20.007—Exemption Certificates.

(3) If an exemption certificate was invalid at the time of its issuance, the purchaser owes MTA sales tax to the authority where the items were initially purchased.

(b) Resale certificate—divergent use.

(1) If taxable items were purchased tax free for resale and were at any time used in an authority in a manner other than retention, demonstration, or display, then MTA use tax is due.

(2) If storage facilities contain taxable items purchased for resale, no MTA use tax is due if the items are removed from storage and transported outside the state for use solely outside the state. Although the items are not resold, no taxable use occurs in Texas. If the items are removed from storage for use or consumption in an authority, MTA use tax is due.

(3) The basis for the tax is the purchase price and is due for the reporting period in which the items were used or consumed in a manner not allowed by the resale certificate. See Rule 026.02.20.005—Sales for Resale and Resale Certificates.

(4) The MTA use tax is due the authority where the items are stored or kept at the time of or just prior to their use or consumption. If stored or kept outside an authority at the time of or just prior to its use, no MTA use tax is due.

(5) If the resale certificate was invalid at the time of its issuance, the purchaser owes MTA sales tax to the authority were the items were initially purchased.

(c) Direct payment exemption certificate.

(1) When taxable items purchased under a direct payment permit are used or consumed, MTA use tax is due the authority in which the items were first removed from storage. If the items were not stored prior to use, MTA use tax is due the authority where they were used or consumed after transportation.

(2) Storage, use, or other consumption does not include a temporary delay or interruption necessary and inci-

dental to the transportation or further fabrication, processing, or assembling of taxable items within this state for delivery to the permit holder.

(3) If taxable items are first stored, used, or consumed outside an authority, no MTA use tax is due.

(4) A charge for processing, fabrication, or further assembly performed in an authority is subject to the MTA use tax.

(5) If, in an authority, storage facilities contain taxable items purchased under a direct payment exemption certificate and at the time of storage it is not known whether the property will be used in or removed from Texas, the taxpayer may elect to report MTA use tax when the items are first stored or when they are first removed from inventory for use. Once the election is made, the tax must be reported in a consistent manner.

If MTA use tax is paid on stored items that are subsequently removed from Texas before use, the tax may be recouped in accordance with the refund and credit provisions in Rules 026.02.20.045—Refunds, and 026.02.20.058—Credits. See also Rule 026.02.20.066—Use Tax.

Doc No 796521

## 026.02.24.009

Under the authority of Texas Revised Civil Statutes Annotated, Article 1118x, Section 11B(B)(g), the comptroller of public accounts has adopted Rule 026.02.24.009 to read as follows:

.009. *Contractors (Texas Revised Civil Statutes Annotated, Article 1118x, Section 11B(B)(e), and Article 1066c, Sections 4(A) and 6(B)(1); Texas Taxation—General Annotated, Article 20.01(T)).*

(a) Definitions. For the definition of lump-sum and separated contracts, see Rule 026.02.20.011—Contractors.

(b) Separated contracts.

(1) Contractors performing separated contracts are retailers of the materials incorporated in the customer's real property.

(2) Contractors performing separated contracts are required to hold permits and to collect MTA sales tax from customers on the sales price of the materials. See Rule 026.02.20.006—Permits.

(3) The job site is the contractor's place of business for the purpose of determining where MTA tax is due.

(4) If the job site is within an authority, the MTA tax is due for that authority on the separate charge for materials. If the job site is not in an authority, MTA tax is not due.

(5) Contractors are not selling the equipment and consumable supplies they use but do not incorporate into the customer's property. The contractor may not issue or accept resale certificates but must pay the MTA tax, if any, on the equipment and consumable supplies. This MTA tax may not be passed on directly to the customer.

(c) Lump-sum contracts.

(1) Contractors performing lump-sum contracts are consumers of all materials, supplies, and equipment used or incorporated into the customer's property.

(2) Contractors purchasing taxable items for use in lump-sum contracts must pay MTA sales tax to Texas retailers as set out in MTA Rule .004—MTA Sales Tax. The job site of the lump-sum contractor does not determine MTA sales tax.

(3) If taxable items are brought into Texas by a contractor for use in the performance of a lump-sum contract in an authority, MTA use tax is due. See MTA Rule .005—MTA Use Tax.

(4) If taxable items are purchased from a retailer within the state but outside an authority and the taxable items are shipped into or brought by the contractor directly into the authority, MTA use tax is due. See Rule .005—MTA Use Tax.

(5) The basis of the MTA use tax is the purchase price. The MTA use tax is due in the reporting period in which the item was first stored, used, or otherwise consumed in an authority.

(d) Contractors improving realty for exempt customers.

(1) Certain taxable items purchased by contractors for use in improving realty pursuant to a contract with an organization exempt under Article 20.04(H) of the state act are exempt from MTA tax. The items that qualify for exemption are those that would be exempt from state tax under Rule 026.02.20.011—Contractors.

(2) If equipment purchased for use in improving realty for an exempt organization is used in a nonexempt manner within an authority, MTA sales tax is due in accordance with the depreciation schedule in Rule 026.02.20.011—Contractors.

Issued in Austin, Texas, on September 28, 1979.

Doc No 796522          Bob Bullock
                       Comptroller of Public Accounts

Effective Date October 19, 1979
Proposal Publication Date August 28, 1979
For further information, please call (512) 475-6872.

# Texas Education Agency
## Comprehensive Instruction
### Driver Education Personnel 226.32.96

The Texas Education Agency has adopted Rule 226.32.96.001, concerning the training of teaching assistants for driver education programs. The program is designed to provide qualified individuals with orientation, knowledge, and skills to prepare them to assist in the classroom phase of driver education, and to conduct behind the wheel and simulator training under the supervision of a certified teacher. The rule is adopted with no change from the text as proposed.

This rule is promulgated under the authority of Section 16.177, Texas Education Code.

.001. *Program of Training for Teaching Assistants in Driver Education.*

(a) Overview.

(1) Objectives of the program: To provide qualified individual with orientation, knowledge, and skills to prepare them to assist in the classroom phase of driver education, and to conduct behind-the-wheel and simulator training under the supervision of a certified teacher.

(2) Persons eligible for the program. A teaching assistant in driver education must:

# APPENDIX G

loss audit computing the utility's system water loss during the preceding calendar year, unless a different 12-month period is allowed by the executive administrator. The water loss audit may be submitted electronically.

(1) Audit required annually. The utility must file the water loss audit with the executive administrator annually by May 1st if the utility:

(A) has more than 3,300 connections; or

(B) is receiving financial assistance from the board, regardless of the number of connections. A retail public utility is receiving financial assistance from the board if it has an outstanding loan, loan forgiveness agreement, or grant agreement from the board.

(2) Audit required every five years. The utility must file the water loss audit with the executive administrator by May 1, 2016, and every five years thereafter by May 1st if the utility has 3,300 or fewer connections and is not receiving financial assistance from the board.

(3) The water loss audit shall be performed in accordance with methodologies developed by the executive administrator based on the population served by the utility and taking into consideration the financial feasibility of performing the water loss audit, population density in the service area, the retail public utility's source of water supply, the mean income of the service population, and any other factors determined by the executive administrator. The executive administrator will provide the necessary forms and methodologies to the retail public utility.

(c) The executive administrator shall determine if the water loss audit is administratively complete. A water loss audit is administratively complete if all required responses are provided. In the event the executive administrator determines that a retail public utility's water loss audit is incomplete, the executive administrator shall notify the utility.

(d) A retail public utility that provides potable water that fails to submit a water loss audit or that fails to correct a water loss audit that is not administratively complete within the timeframe provided by the executive administrator is ineligible for financial assistance for water supply projects under Texas Water Code, Chapter 15, Subchapters C, D, E, F, G, H, J, O, Q, and R; Chapter 16, Subchapters E and F; and Chapter 17, Subchapters D, I, K, and L. The retail public utility will remain ineligible for financial assistance until a complete water loss audit has been filed with and accepted by the executive administrator.

(e) The following thresholds shall apply to the indicated categories of retail public utility:

(1) For a retail public utility with a population of more than 10,000:

(A) Apparent loss expressed as gallons per connection per day must be less than the utility's allowed apparent loss.

(B) Real loss expressed as gallons per connection per day must be less than three times the utility's unavoidable annual real loss.

(2) For a retail public utility with a population of 10,000 or fewer and a service connection density more than or equal to 32 connections per mile:

(A) Apparent loss expressed as gallons per connection per day must be less than the utility's allowed apparent loss.

(B) Real loss expressed as gallons per connection per day must be less than 50 gallons per connection per day.

(3) For a retail public utility with a population of 10,000 or fewer and a service connection density less than 32 connections per mile:

(A) Apparent loss expressed as gallons per connection per day must be less than the utility's allowed apparent loss.

(B) Real loss expressed as gallons per mile per day must be less than 1,600 gallons per mile per day.

(4) For a utility that has a volume of wholesale water sales that flow through the retail water distribution system:

(A) Apparent loss expressed as gallons per connection per day, determined using a modified calculation that includes the wholesale volume, must be less than the utility's allowed apparent loss.

(B) Real loss, expressed as gallons per connection per day and including a wholesale factor that takes into account the wholesale water volume, must be less than three times the utility's unavoidable annual real loss.

(f) If a retail public utility's total water loss meets or exceeds the threshold for that utility, the retail public utility must use a portion of any financial assistance received from the board for a water supply project to mitigate the utility's water loss. Mitigation will be in a manner determined by the retail public utility and the executive administrator in conjunction with the project proposed by the utility and funded by the board.

(g) Subsection (f) of this section shall apply to applications for financial assistance received by the board after January 1, 2015.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on November 20, 2014.

TRD-201405565
Les Trobman
General Counsel
Texas Water Development Board
Effective date: December 10, 2014
Proposal publication date: August 8, 2014
For further information, please call: (512) 463-8061

♦ ♦ ♦

# TITLE 34. PUBLIC FINANCE

# PART 1. COMPTROLLER OF PUBLIC ACCOUNTS

## CHAPTER 3. TAX ADMINISTRATION

## SUBCHAPTER N. COUNTY SALES AND USE TAX

### 34 TAC §§3.251 - 3.253

The Comptroller of Public Accounts adopts the repeal of Subchapter N, concerning County Sales and Use Tax, without changes to the proposed text as published in the May 30, 2014, issue of the *Texas Register* (39 TexReg 4174). The content of §3.251 (Adopting or Abolishing County Tax) is being repealed entirely and will not be included in another section of this or another subchapter. The content of §3.252 (Collection and

Allocation of County Tax) and §3.253 (Use Tax) will be included and updated in new §3.334 of this title, Local Sales and Use Taxes.

No comments were received regarding adoption of the repeals.

These repeals are adopted under Tax Code, §111.002, which provides the comptroller with the authority to prescribe, adopt, and enforce rules relating to the administration and enforcement of the provisions of Tax Code, Title 2. These repeals implement Tax Code, Chapter 323, County Sales and Use Tax Act.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on November 18, 2014.

TRD-201405490
Ashley Harden
General Counsel
Comptroller of Public Accounts
Effective date: January 1, 2015
Proposal publication date: May 30, 2014
For further information, please call: (512) 475-0387



## SUBCHAPTER O.    STATE AND LOCAL SALES AND USE TAXES

### 34 TAC §3.334

The Comptroller of Public Accounts adopts new §3.334, concerning local sales and use taxes, with changes to the proposed text as published in the May 30, 2014, issue of the *Texas Register* (39 TexReg 4175). The new section is located in Title 34, Chapter 3, Subchapter O, which is retitled State and Local Sales and Use Taxes.

As of October 2013, there were a total of 1,510 local sales and use taxing jurisdictions in Texas - 1,147 cities, 123 counties, 10 transit authorities, and 230 special purpose districts. Existing sections of this title that address how to collect, accrue, and remit taxes to these jurisdictions and other jurisdictions that are currently authorized, or may be authorized by the legislature in the future, are out of date and not conveniently organized. The new section replaces Subchapters N (County Sales and Use Tax), P (Municipal Sales and Use Tax), and R (Transit Sales and Use Tax) of Title 34, which are repealed. Relevant content from the sections in Subchapters N, P, and R is included and updated in this new section, which also incorporates applicable law and policy changes and policy clarifications and provides information about the rules that apply to the collection and accrual of local sales and use taxes by sellers and purchasers.

In addition, information about the collection, accrual, and remittance of local taxes is currently found in other sections of this title concerning specific taxable items - as noted, for example, in subsection (k) of this section - and the comptroller intends for the information in this new section to be consistent with the local sales and use tax information in those other sections. To the extent the information in this section differs from the information concerning local sales and use tax contained in other sections of this title, it is the comptroller's intent that this section control.

At a public hearing on the proposed section held on October 15, 2014, Mr. Darrell Boeske, speaking on behalf of the City of Humble, noted the substantial impact this section would have for communities like Humble, where more than 90% of the municipal budget comes from local sales and use taxes. Mr. Kyle Kasner requested that the comptroller clarify which policies in the section are longstanding and which will be applied prospectively. The legislature has delegated to the comptroller the responsibility for administering, collecting, and enforcing the local sales and use taxes, and the comptroller appreciates the importance of these tasks. In order to provide certainty to taxpayers and localities alike, the comptroller will apply subsection (h)(5) of this section, concerning drop shipments, and subsection (n) of this section, concerning prior contract exemptions, on a prospective basis as of the effective date of this section, January 1, 2015, in accordance with Tax Code, §151.022.

Subsection (a) contains definitions of key terms and phrases. The statutory sources for some of the defined terms and phrases are provided in the definitions themselves. In other cases the defined terms are deemed clear without the need for further explanation. The sources for certain terms and phrases are explained as follows.

The term "cable system" is used in Tax Code, §321.203(j) and §323.203(j) but is not defined in those statutory provisions. Subsection (a)(1) explains the comptroller's determination that the term "cable system" means a system that is used to provide cable television or bundle cable service, as those terms are defined in §3.313 of this title (concerning Cable Television Service and Bundle Cable Service).

Subsection (a)(6) provides a definition for the term "drop shipment," which is a commonly used term that appeared in sections of this title that are repealed. See, for example, §3.252(e) of this title (concerning Collection and Allocation of County Tax). This section defines the term according to longstanding comptroller policy.

New subsection (a)(7), which defines the term "engaged in business" by reference to §3.286 of this title (relating to Seller's and Purchaser's Responsibilities, including Nexus, Permits, Returns and Reporting Periods, and Collection and Exemption Rules), is added to the version of this section that was proposed for public comment. Subsequent paragraphs are renumbered accordingly.

Subsection (a)(8) provides a definition of the term "extraterritorial jurisdiction" that is based on Local Government Code, §42.021.

The term "itinerant vendor" was defined in sections of Subchapters N, P, and R of this title, which are repealed. The definition provided in new subsection (a)(10) expands on the existing definition to provide additional guidance and clarity consistent with current comptroller policy as reflected in Tax Publication 94-105, "Guidelines for Collecting Local Sales and Use Tax" (February 2009).

The definition for the term "kiosk" in subsection (a)(11) comes directly from Tax Code, §321.002(a)(3).

The general definition for the term "place of business" provided in subsection (a)(14) is based on Tax Code, §321.002(a)(3). Additional information explaining agency policy as to how the term is defined for administrative offices; distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities; job sites; kiosks; and purchasing offices, is provided in subsection (e).

Written comments regarding the proposed definition of the term "place of business" were provided by: Mr. Bill Hammond, on behalf of the Texas Association of Business; Mr. Ronnie Volkening, on behalf of the Texas Retailers Association; and Mr. Eric Cannon, on behalf of the City of Addison, Ms. Julie M. Robinson, on behalf of the City of Dickinson, Mr. Darrell Boeske, on behalf of the City of Humble, Ms. Sandra Yarbrough, on behalf of the City of Kerrville, Mr. Corby D. Alexander, on behalf of the City Manager's Office of the City of La Porte, Ms. Pam Moon, on behalf of the City of Lubbock, Mr. Alan Guard, on behalf of the City of Rowlett, Mr. Steve Smith, on behalf of the Town of Cross Roads, Mr. Robert D. Harmon, on behalf of the Fort Worth Transportation Authority, and Mr. Chris Yeary, on behalf of MuniServices (hereinafter "local governments"). Each of these commenters expressed concern about the statement in the proposed definition that a place of business is a location operated by a seller for the purpose of making sales "to members of the general public or to specific segments of the public."

The comptroller also received written comments from Mr. Wayne J. Sabo, on behalf of the City of Webster, expressing concern that the proposed section would inadvertently result in private clubs, such as Sam's Club, no longer being treated as places of business. Mr. Sabo recommended amending the language of the section to state: "An established outlet, office, or location operated by a seller for the purpose of selling taxable items to those other than employees, contractors, and individuals affiliated with the seller..."

In addition, at a public hearing held on October 15, 2014, the comptroller received oral comments on the proposed definition from: Mr. Boeske, Mr. Volkening, and Mr. John Kroll, on behalf of Michael's, Inc. Mr. Boeske echoed Mr. Sabo's concerns and voiced support for Mr. Sabo's recommended language. Mr. Kroll noted that the proposed definition could inadvertently result in purchasing offices no longer being places of business, as they often make sales only to related entities.

The comptroller has determined that the definition of the term "place of business of the retailer" in Tax Code, §321.002(a)(3) is subject to multiple interpretations. Consequently, additional guidance on the application of the term is necessary.

The comptroller's proposal that a place of business must sell taxable items to members of the general public, or specific segments of the public, was intended to give weight and meaning to the statutory language requiring that the location be established for the purpose of receiving orders. The comptroller appreciates that the proposed definition could have created confusion because the phrases "general public" and "segment of the public" do not have a single, clear meaning. In response to the concerns raised in the oral and written comments, the definition is revised from the version published for public comment. The revised definition states that a place of business must be operated for the purpose of selling taxable items "to those other than employees, contractors, and individual persons affiliated with the seller." It is the comptroller's intent that locations operated by warehouse membership clubs, such as Costco and Sam's Club, be treated as places of business. In addition, the comptroller intends for purchasing offices that make sales to related entities be treated as places of business, subject to the requirements of subsection (e)(4) concerning valid purchasing offices. Finally, in response to the concerns identified in the comments, the comptroller has revised the definition of "place of business" from the version that was proposed for public comment to delete the phrase "with regular hours of operation."

The term "purchasing office" in subsection (a)(15) is based on the statutory language in Tax Code, §321.002(a)(3). Written comments received by the comptroller from Mr. Volkening expressed concern that the proposed definition exceeded the comptroller's statutory authority. At a public hearing held on October 15, 2014, the comptroller also received oral comments from Mr. Volkening, Mr. Kroll, and Mr. Ned Munoz, on behalf of the Texas Association of Builders, expressing concern that the proposed definition deviated from the statutory language. In response to these concerns, the definition of the term is revised to follow the wording of Tax Code, §321.002(a)(3)(B) as closely as possible.

The word "receive" is widely used in the controlling local tax statutes, along with the modifiers "first" and "initially," but is not defined in those statutes. Compare, for example, Tax Code, §321.203(c) and (e)(2). A definition was included in subsection (a)(15) of the version of this section that was proposed for public comment. The comptroller received written comments from Mr. Volkening expressing concern that the proposed definition was too vague. At a public hearing on the proposed section held on October 15, 2014, the comptroller received oral comments from Mr. Kasner, representing unspecified north Texas cities, stating that the proposed definition was consistent with the definitions of the term adopted in other states with an origin-based sales tax. At the hearing, the comptroller also received oral comments from Mr. Volkening and Ms. Susan Bittick, on behalf of Ryan, LLC, stating that they did not understand the language used in the proposed definition. In response to the concerns identified in these oral and written comments, the definition of the term "receive" is deleted from the section. Subsequent paragraphs are renumbered accordingly. The comptroller intends to define the term in a future version of this section, however, and anticipates holding public discussions to solicit input on this topic.

A definition for the term "temporary place of business" provided in subsection (a)(19) memorializes policies that the comptroller has developed over time clarifying that locations such as a booth at a flea market, weekend trade show, or craft fair are places of business of the seller as the term is defined in Tax Code, §321.002(a)(3) because such locations are established for the purpose of selling taxable items to the public.

The comptroller has developed local tax guidelines relating to "traveling salespersons." The definition included in subsection (a)(21) memorializes those policy guidelines.

Subsection (a)(22) provides a definition for the term "two percent cap," which is the comptroller's longstanding terminology for describing the statutory requirement found in Tax Code, §321.101(f), that, as a general rule, local sales and use taxes due on a single transaction may total no more than 2.0% of the sales price.

Subsection (b), concerning the effect of other laws and comptroller policy, is included to explain that the laws and rules that apply to the collection of state sales and use taxes, such as the laws and rules governing the use of resale and exemption certificates and the determination of which items are taxable and which are exempt, also apply to local sales and use taxes, unless the law provides otherwise.

Subsection (c) addresses local tax rates, specifically identifying the range of tax rates that the four different types of local taxing jurisdictions authorized by the legislature may adopt.

Subsection (d) concerns the physical boundaries of the authority of local taxing jurisdictions. The subsection is titled, "Jurisdic-

tional boundaries, combined areas, and city tax imposed through strategic partnership agreements." Paragraph (1) explains how jurisdictional boundaries are established for the four different types of local taxing jurisdictions as determined by Local Government Code, Chapters 41, 42, and 43, Tax Code, Chapters 321, 322, and 323, and those entities identified in the Special District Local Laws Code and other provisions of other Texas Codes. Paragraph (2) explains how state and local taxes are to be collected in what are referred to as "combined areas" that have been authorized by the legislature through Tax Code, §321.102, and the responsibility the comptroller has to provide for the sharing of those revenues. In combined areas where the total sales and use tax imposed would otherwise exceed 2.0%, the Tax Code provides direction for how the rates of the jurisdictions in the combined area are to be adjusted in order to maintain the two percent cap. Paragraph (2) also implements House Bill 3159, 83rd Legislature, 2013, which enacted Health and Safety Code, §775.0754. This new section provides, in certain circumstances, an alternate method for maintaining the two percent cap. Paragraph (3) discusses how local city sales tax is to be collected under strategic partnership agreements that are authorized by Local Government Code, §43.0751.

Subsection (e) provides guidance on how the term "place of business" is applied in specific situations that are outside the scope of the general definition. These rules, which have been developed over time, address administrative offices that support a traveling salesperson (see, e.g., STAR Accession No. 200805376L (May 19, 2008) and STAR Accession No. 200904406H (April 29, 2009)); distribution centers, manufacturing plants, storage yards, warehouses, or similar facilities (see, e.g., §3.374(a) of this title (concerning Collection and Allocation of the City Sales Tax)); construction job sites concerning both residential and non-residential real property according to longstanding agency policy and as passed into law in House Bill 3319, 80th Legislature, 2007; and kiosks (Tax Code, §321.002(a)(3)).

Written comments regarding proposed subsection (e)(2)(D), addressing when a distribution center, manufacturing plant, warehouse, or similar facility is not a place of business, were received from Mr. Hammond and Mr. Volkening. In addition, at a public hearing held on October 15, 2014, the comptroller received oral comments on this subsection from Mr. Volkening. The proposed subsection memorialized guidance previously provided in STAR Accession No. 200508201L (August 3, 2005). In response to the comments received, the comptroller is deleting subsection (e)(2)(D), revising subsection (e)(2)(C) to state that a retail location and an attached warehouse or distribution center will be treated as a single place of business, and superseding the guidance provided in STAR Accession No. 200508201L.

Subsection (e)(4), concerning valid purchasing offices, implements House Bill 590, 82nd Legislature, 2011 and Senate Bill 1533, 83rd Legislature, 2013. Written comments regarding proposed subsection (e)(4) were received from: Mr. Volkening; Mr. Kroll; Mr. Munoz; Ms. Robinson; Mr. Boeske; and Mr. John Hawkins, on behalf of the Texas Hospital Association. These comments expressed concern that the list of factors provided in subsection (e)(4)(C), which the comptroller proposed to consider in making a determination as to whether a purchasing office was a place of business, exceeded the comptroller's authority under Tax Code, §321.002(a)(3)(B). This provision was proposed to memorialize guidance previously provided in STAR Accession No. 200704372L (April 12, 2007). In response to these concerns, the comptroller is deleting proposed subsection (e)(4)(C)

and superseding the guidance provided in STAR Accession No. 200704372L.

The written comments also expressed concern about proposed subsection (e)(4)(D), which was included to explain the comptroller's interpretation of the ambiguous term "significant business services." In addition to the written comments, at a public hearing held on October 15, 2014, the comptroller received oral comments on this issue from: Mr. Volkening, Mr. Kroll, and Mr. Munoz. The comptroller declines to delete all of subsection (e)(4)(D), as an explanation of the statutory term "significant business services" is necessary to provide guidance to taxpayers and to administer the statute consistently. In response to the concerns raised, however, the subsection is revised to more closely follow the language of Tax Code, §321.002(a)(3)(B).

Subsection (e) also states, in paragraph (4)(E) of the section that was proposed for public comment, that the special exclusion under Special District Local Laws Code, §3853.202(d), concerning the Dickinson Management District, for purchasing offices from the application of Tax Code, §321.203(m), formerly Tax Code, §321.203(l), to the administration of a sales and use tax imposed by the Dickinson Management District is invalid and the comptroller will not adopt or implement that exclusion. Written comments on this subsection were received from Ms. Robinson. In addition, at a public hearing held on October 15, 2014, the comptroller received oral comments on this subsection from the following individuals: Mr. Loren Smith, on behalf of the City of Dickinson; Mr. Renn Neilson of Baker Botts, LLP, on behalf of Exterran; and Mr. Ralph Parman of Exterran. Mr. Neilson also provided additional written comments. These oral and written comments requested that subsection (e)(4)(E) be deleted from the section.

The comptroller's position on the Dickinson Management District exemption is longstanding. As explained in correspondence to Senator Mike Jackson and Representative Larry Taylor on September 8, 2011, it is the comptroller's view that Special District Local Laws Code, §3853.202(d) violates Article III, Section 56 of the Texas Constitution, concerning Local and Special Laws, because it attempts to relieve the comptroller's office of the duties delegated to it by Tax Code, Chapter 321. Further, the comptroller believes that the general law codified as Tax Code, §321.002(a)(3) and §321.203(m) is a later-amended general provision that applies in place of the preexisting local law. In fact, the legality of the exclusion created under Special District Local Laws Code, §3853.202(d) was the subject of litigation. See City of Dickinson v. Combs, No. D-1-GV-12-000094 (353rd Dist. Ct., Travis County, Tex. filed Feb. 2, 2012). The City of Dickinson and the Intervenors (CIL Procurement LLC, EES Leasing LLC, EXLP Leasing LLC, and T.A.S. Proco LLC) filed a Joint Notice of Nonsuit on March 13, 2014. The comptroller declines to make the requested change.

Subsection (f) explains which local taxes are due when a place of business is bisected or otherwise crossed by multiple local taxing jurisdiction boundaries. Over the years, the comptroller has received requests for guidance when, for example, the boundaries of a local taxing jurisdiction cross a construction job site or a seller's brick and mortar store such that only part of the job site or store is located within the jurisdiction. The Tax Code is silent as to what local taxes are due in these types of situations. The comptroller has issued guidance over the years to address these situations. See, e.g. STAR Accession No. 9009L1044E01 (September 14, 1990) (explaining that the location of a store's cash register determines the local jurisdiction that is entitled to

any local tax that is due). This subsection memorializes that guidance. Minor revisions are made to paragraph (2)(A) and (B) from the version of this section that was proposed for adoption. These revisions are intended to improve the readability of this subsection.

Subsection (g) concerns sellers' and purchasers' responsibilities for collecting or accruing and remitting local sales and use taxes. Subsection (g)(1) and (2) of the version of the section that was proposed for public comment reflected a proposed change in comptroller policy with respect to the local taxing jurisdictions for which a seller must collect local use taxes. Under current policy, a seller's collection responsibilities are limited to those local taxing jurisdictions in which the seller is "engaged in business." See, for example, §3.253(c) and (d) of this title (concerning County Use Tax), which is repealed. This local use tax policy reflects the nexus requirement established by the United States Supreme Court's analysis of the Due Process and Commerce Clauses of the United States Constitution and enacted in Tax Code, §151.103 and §151.107. The comptroller determined that the plain language of the controlling statutes does not support the application of federal nexus requirements to intrastate sales of taxable items. Local use tax is due to the local taxing jurisdictions in which a taxable item is first used, stored or consumed. See Tax Code, §§321.205, 322.105, and 323.205. The comptroller therefore proposed ending the "engaged in business" limitation on sellers' obligation for collecting use tax and instead requiring all sellers with nexus in the state to collect all local taxes that are due.

Written comments regarding proposed subsection (g)(1) and (2) were received from: Mr. Doug Duffie, on behalf of the Texas Society of Certified Public Accountants; Mr. Hammond; Mr. Volkening; and local governments. These comments raised a variety of conflicting concerns. In their written comments, Mr. Duffie, Mr. Hammond, and Mr. Volkening expressed concern that sellers would be unable to comply with the proposed requirements. In contrast, the local governments requested that the proposed policy be implemented retrospectively. At a public hearing held on October 15, 2014, the comptroller received additional oral comments on the proposed change from: Mr. John Kennedy, on behalf of the Texas Taxpayers and Research Association; Ms. Eleanor Kim of DuCharme, McMillen & Associates, Inc.; and Mr. Volkening. These commenters expressed concern that the deletion of the "engaged in business" requirement would violate the due process and commerce clauses of the U.S. Constitution.

In response to the written and oral comments provided, the comptroller has decided not to change sellers' local use tax collection obligations at this time. The section is amended from the version that was proposed for public comment to incorporate existing policy from §§3.253(c) and (d), 3.375(c) and (d), and 3.425(c) and (d) of this title, which are repealed. Going forward, the comptroller intends to continue to evaluate sellers' local tax collection responsibilities, including holding discussions with representatives from industry, local government, and the public at large, in order to develop a policy that better follows the statutory language while addressing retailers' concerns and protecting the interests of local governments.

The comptroller also received oral comments from Ms. Kim recommending that the provisions of subsection (g)(2) regarding trailing nexus be revised to mirror proposed changes to §3.286 of this title. The comptroller agrees and has made the requested change.

Subsection (g)(3) reflects existing law and policy that if a seller does not collect sales or use tax that is due, the purchaser is liable for, and must accrue and pay, the tax directly to the comptroller. Minor revisions are made to the version of subsection (g)(3) proposed for public comment. Subparagraphs (A) and (B) are amended to use similar phrasing. In addition, the last sentence of subsection (g)(3)(B) is adopted as subsection (g)(2)(C).

Written comments on this subsection were also received from the local governments requesting that subsection (g) be revised to state that the failure by a seller or purchaser to properly charge, collect, report, or pay local tax to the proper local tax authority will result in delinquent local taxes for which the comptroller will issue a deficiency determination under Tax Code, §111.008. After carefully considering this request, the comptroller has determined that the change requested would duplicate language already present in this section. Subsection (b)(1) of this section provides that Tax Code, Title 2, Subtitles A (General Provisions) and B (Enforcement and Collection) apply to transactions involving local taxes. Tax Code, Chapter 111, concerning collection procedures, falls within Subtitle B. The comptroller therefore declines to make the requested change.

Subsection (h) explains how to determine the local taxing jurisdiction in which sales taxes are due. Paragraph (1) explains the consummation of sale concept. The place where a sale is consummated per Texas laws and agency policy determines which local sales taxes are due, not the location where a purchaser acquires title to a taxable item. See Tax Code, §321.203(a) and §323.203(a).

Subsection (h)(2) addresses the situation, which is not addressed by statute, in which a sale is consummated at a location that is within the boundaries of multiple special purpose taxing jurisdictions and/or multiple transit authority taxing jurisdictions. This paragraph reflects longstanding agency policy.

Subsection (h)(3) sets forth five general rules for determining where the sale of a taxable item is consummated for local sales tax purposes. These rules are taken from Tax Code, §321.203 and §323.203, and apply to all sellers engaged in business in this state, regardless of whether they have one or more places of business in Texas. Subsection (h)(3)(A) states that a sale made in person at a place of business in Texas is consummated at that place of business. This is based on Tax Code, §321.203(b) and (c) and §323.203(b) and (c). Subsection (h)(3)(B) states that if an order is (1) not placed in person, (2) is received at a place of business of the seller in Texas, and (3) is fulfilled at a location that is not a place of business in Texas, then the sale is consummated at the place of business where the order is received. This is based on Tax Code, §321.203(b) and (d) and §323.203(b) and (d). Subsection (h)(3)(C) states that if an order is placed by any means other than in person at a place of business in Texas, including the situation in which an order is placed in person at a kiosk, and the order is fulfilled at a place of business in Texas, then the sale is consummated at the place of business where the order is fulfilled. This is based on Tax Code, §321.203(b) and (c-1) and §323.203(b) and (c-1). Subsection (h)(3)(D) states that if an order is received by a seller at any location other than a place of business of the seller in Texas, and the order is fulfilled at a location in Texas that is not a place of business of the seller, then the sale is consummated at the location in Texas to which the order is shipped or delivered. This is based on Tax Code, §321.203(e)(2) and §323.203(e)(2). Finally, subsection (h)(3)(E) states that if an order is received outside of Texas, and is fulfilled outside of Texas, the sale is not consum-

mated in Texas. If the order is shipped or delivered to a location in Texas, however, local use tax is due based upon the location in Texas to which the order is shipped or delivered. This is based on Tax Code, §321.205 and §323.205.

Written comments on this subsection were received from local governments requesting that subsection (h)(3) of this section be amended to add the following language: "Order received at a place of business within the state, order fulfilled outside of the state. When an order is received by a seller at a place of business of the seller in this state, and the seller fulfills the order at a location outside of the state, the sale is consummated at the Texas place of business where the order is received." The scenario identified by the local governments is already addressed in subsection (h)(3)(A) and (B), which states that if an order is placed in person at a place of business of the seller in this state, or otherwise received at a place of business of the seller in this state and shipped or delivered from a location that is not a place of business of the seller, then the sale is consummated at the place of business at which the order is received. The comptroller declines to make the requested revision.

Subsection (h)(3)(F) addresses the exception to the general rules for certain economic development agreements established by Tax Code, §321.203(c-4) - (c-5) and §323.203(c-2) - (c-5). This subsection implements Senate Bill 997, 83rd Legislature, 2013. This subsection is revised from the version of the section proposed for public comment to follow the language of the statute more closely by stating that a qualifying warehouse must be a place of business of the seller. In addition, references to Tax Code, §321.203(c-2) - (c-3) and §321.203(c-2) - (c-3) are deleted as those provisions expired September 1, 2014.

Subsection (h)(4) explains where sales are consummated when made by traveling salespersons.

Subsection (h)(5) explains how a seller is to collect local sales and use taxes when the transaction involves a drop shipment. The provisions of this subsection will be applied on a prospective basis as of the effective date of this section, January 1, 2015, in accordance with Tax Code, §151.022. Prior policy on drop shipments, as expressed in STAR Accession No. 200501993L (January 13, 2005), provided that when an item is shipped directly to the purchaser from a third-party supplier, local sales taxes are due based on the location of the place of business of the seller where the order is received. Subsection (h)(5)(A) supersedes this sourcing rule, as well as the exclusive application of use tax to all items shipped from out of state that is currently found in the local tax rules. Subsection (h)(5)(A) provides that when an order is received at a seller's place of business in Texas, the sale is consummated at that location and local sales taxes apply, as provided under Tax Code, §321.203, rather than subjecting the order to use tax only under Tax Code, §321.205. This change in policy is intended to give weight to Tax Code, §151.051 (sales tax imposed on each sale of a taxable item in this state) and §321.203 (sale is consummated as provided by this section). In addition, the policy change will ease the administrative burden for sellers since drop shipments will be sourced in the same manner as all other sales consummated in this state, which, generally, is to the place of business where the order is received. This provision of the new section will be applied on a prospective basis to give affected sellers time to change their tax collection systems and practices.

The comptroller received written comments on this subsection from Mr. John Torigian of Krell & Torigian suggesting the addition of a drop-shipment scenario to subsection (h)(5). The comptroller agrees with Mr. Torigian's suggestion. The subsection is amended to add: "When an order for a taxable item is received by a seller at one location, but shipped by the seller to the purchaser from a different location, the sale is consummated at, and local sales tax is due based upon, the location designated in paragraph (3) of this subsection."

Subsection (h)(5)(B) concerning drop shipments of orders that are placed outside Texas reflects current law and longstanding agency policy that if an item is shipped to the purchaser from the third-party supplier, local use taxes are due based on the point of delivery. This is consistent with §§3.253, 3.375, and 3.425 of this title (concerning County Use Tax, City Use Tax, and Transit Use Tax, respectively), which are repealed, but which provided that use tax based on point of delivery is due whenever an item is shipped to a location in Texas for storage, use, or consumption.

Subsection (h)(6) provides guidance for itinerant vendors and persons operating vending machines or temporary places of business. Subsection (h)(6)(A) states longstanding policy as to how itinerant vendors are to collect sales tax, and only sales tax. Subsection (h)(6)(B) reflects longstanding policy that persons who operate vending machines in the state are treated as itinerant vendors. See, e.g., STAR Accession Nos. 8312H0552B06 (December 29, 1983) and 200111617L (November 15, 2001). Subsection (h)(6)(C) explains how tax is to be collected when a seller establishes a temporary place of business in the state, both under the law in effect prior to June 19, 2009, when there was a change in statute as noted in the paragraph, and the law in effect after that date. This paragraph implements Senate Bill 636, 81st Legislature, 2009.

Subsection (i) explains how sellers and purchasers determine the local tax jurisdiction in which use tax is due, if any. This subsection notes that the provisions of §3.346 of this title, concerning state use tax, apply to the local use tax.

Subsection (i) is revised from the version of the section proposed for public comment to reflect changes made to subsection (g). Subsection (i)(1) explains longstanding agency policy as to which local use taxes are due when all local sales taxes have been collected and the two percent cap has not been reached. Subsection (i)(1)(A) restates the well-established rule that applicable use taxes are due in the following order: city, county, special purpose district, and transit authority. Subsection (i)(1)(D) and (E) specifically addresses how local use tax is determined when tax is due to multiple special purpose districts or transit authorities. These paragraphs explain longstanding agency policy for determining the order in which such jurisdictions are to receive local use tax.

Subsection (i)(2) illustrates the application of the general use tax rules in four specific fact situations. Subsection (i)(2)(A) is amended to correct a misstatement in the version of the section that was proposed for public comment. If an order is received at any location that is not a place of business of the seller in Texas, including an out of state location, and the item is delivered to the purchaser in Texas from a location in this state that is not a place of business of the seller, then the sale is consummated at the location to which it is delivered. See subsection (h)(3)(D) of this section. In addition, minor revisions are made to subsection (i)(2)(B) and (C) to reflect the changes made to subsection (g)(1) and (2) to limit a seller's local use tax collection obligations to those local taxing jurisdictions in which the seller is engaged in business.

In addition, the comptroller received written comments on this subsection from Mr. Mark Vane of Gardere Wynne Sewell LLP on behalf of two Texas caterpillar dealers, Holt Cat and Mustang Cat. Mr. Vane expressed concerns about the ability of sellers to comply with the provisions of subsection (i) of this section. The comptroller appreciates the concerns Mr. Vane has identified; however, subsection (i) simply implements the Local Tax Code, which imposes a local use tax on any taxable item that is sold in this state within a local taxing jurisdiction that has not adopted a local tax and is shipped or delivered directly into a local taxing jurisdiction that has adopted a local tax. For example, Local Tax Code, §321.205(b) states: "If a sale of a taxable item is consummated in this state but not within a municipality that has adopted the taxes authorized by this chapter and the item is shipped directly, or brought by the purchaser or lessee directly, into a municipality that has adopted the taxes authorized by this chapter, the item is subject to the municipality's use tax." See also Local Tax Code, §321.105(b) and §323.205(b).

Subsection (j) provides guidance to persons who make purchases under a direct payment permit, which is based on Tax Code, §§321.205(c) and (d), 322.105(c), and 323.205(c) and (d). Subsection (j)(2) makes clear that a direct payment permit holder may make an irrevocable election to pay local use tax on purchases at the time the purchased items are first stored or when the items are first removed from storage for use in Texas. Local tax is due to the jurisdictions where the item is first stored regardless of which election is chosen. See §3.346(g) of this title.

Subsection (k) contains special rules for determining the application of local sales and use taxes to certain taxable goods and services. The paragraphs of this subsection reflect agency policies and statutory mandates for determining where the sales of items such as natural gas and electricity, amusement services, and cable television services are consummated, and they also provide cross-references to relevant sections in this title that provide additional information about these taxable items.

Subsection (l) identifies the special exemptions and provisions applicable to individual jurisdictions, or types of jurisdictions, mandated by the legislature - specifically, emergency services districts; jurisdictions that impose tax on residential sales of natural gas and electricity; jurisdictions that impose tax on sales of telecommunications services; the East Aldine Management District; and the Fort Bliss military installation.

Subsection (m) explains the restrictions that apply to local sales tax rebates and other economic incentives that may be authorized by certain local development corporations. The subsection implements Local Government Code, §501.161, and is also consistent with direction provided by the Attorney General of Texas in his publication: Economic Development Handbook for Texas Cities (2013).

Subsection (n) addresses the special rules that exist for prior contract exemptions that may apply when local taxing jurisdictions are authorized and voted into existence, tax rates are increased over time, or areas of existing local taxing jurisdictions are expanded through annexations. These provisions implement Tax Code, §§321.209 (Transition Exemption: General Purpose Sales and Use Tax), 321.2091 (Transition Exemption: Additional Municipal Sales and Use Tax), 321.303(b) (Sales Tax Permits and Exemption Resale Certificates), 322.108(a)(6) - (7) (Certain Provisions of Municipal Sales and Use Tax Applicable), 323.209 (Transition Exemption), and 323.303(c) (Sales Tax Permits and Exemption and Resale Certificates).

In this subsection, for purposes of administrative convenience and on a prospective basis from the effective date of this section, in accordance with Tax Code, §151.022, prior contract exemptions will be allowed when there is a new tax adopted by, or a tax increase in, any local taxing jurisdiction. The only place in the statutes that says a prior contract exemption applies to a tax increase is with regards to the additional city sales and use tax. See Tax Code, §321.101(b) and §321.2091. In addition, many STAR documents have allowed a prior contract exemption for city tax rate increases. However, taxpayers usually do not have the resources necessary to determine whether an increase in a city sales tax is tied to the imposition of the regular city sales tax, the imposition or increase of the additional city tax, or the imposition or increase of a street maintenance, Type A/B Development Corporation, or a sports and community venue project sales and use tax, which are also categorized by the comptroller as city taxes.

In addition, while the legislature has tied the administration of many special purpose districts to Tax Code, Chapter 321 concerning city sales and use taxes, some districts have been authorized with a specific exclusion from the statutes authorizing a prior contract exemption. Therefore, the legislature's intent is not clear whether to allow a prior contract exemption for an increase in a special purpose district tax rate when the district is administered under Tax Code, Chapter 321.

Other provisions of this subsection are not changed from what exists in §3.376 (concerning Prior Contract Exemptions for Cities) and §3.426 of this title (concerning Prior Contract Exemptions for Transit Authorities), which are repealed, with the exception of the attached graphics, which identify a special exemption certificate to be used to claim prior contract exemptions. These graphics are also being repealed, but the comptroller intends to develop a new exemption form to be used for local tax prior contract exemptions that will be available on the agency's website. Until the new exemption form is promulgated, taxpayers may use Texas Sales and Use Tax Exemption Certificate, Form 01-339, or any form promulgated by the comptroller that succeeds such form, to claim the exemption.

The comptroller received additional comments, both oral and written, from Mr. Volkening requesting that a small business impact study be performed in accordance with Government Code, §2006.002. The comptroller has considered Mr. Volkening's request, but has determined that because this section is proposed under Tax Code, Title 2, a statement of fiscal implications for small businesses is not required. Tax Code, §321.003 states: "Subtitles A and B, Title 2, and Chapters 142 and 151 apply to the taxes and to the administration and enforcement of the taxes imposed by this chapter in the same manner that those laws apply to state taxes, unless modified by this chapter." See also Tax Code, §323.002. Nothing in Tax Code, Chapters 321 or 323 modifies the application of Tax Code, Title 2, or otherwise requires the comptroller to perform a small business impact study.

The comptroller has also received both written and oral comments from Mr. Volkening, and oral comments from Ms. Bittick and Mr. Kroll, expressing concerns about the transparency of the rulemaking process. In promulgating this section, the comptroller has closely followed the requirements of the Administrative Procedures Act (Government Code, Chapter 2001), and has, in fact, gone beyond them. The comptroller first circulated a draft version of the section to the Taxpayer Advisory Group, including Mr. Volkening and representatives of Ryan, LLC, on November 15, 2013. The Texas Society of Certified

Public Accountants (TSCPA) provided comments, and changes were made to the section in response to their concerns. Neither the Texas Retailers Association nor Ryan, LLC provided any response to the draft section - no comments were made, no concerns were raised, and no meetings were requested. The section, as amended based on the comments received from TSCPA, was proposed in the *Texas Register* for public comment on May 30, 2014. The comptroller considered and responded to all written comments received in the 30-day comment period, as well as all written comments received thereafter. In response to Mr. Volkening's request, the comptroller held a public hearing on the proposed section on October 15, 2014. In the Notice of Hearing published on September 26, 2014, the comptroller provided a detailed description of those areas of the section that would be revised based on the written comments received. In short, the comptroller has provided several forums for all parties impacted by local tax issues to provide suggestions and raise concerns.

The new section is adopted under Tax Code, §111.002, which provides the comptroller with the authority to prescribe, adopt, and enforce rules relating to the administration and enforcement of the provisions of Tax Code, Title 2, and Tax Code, §§321.306, 322.203, and 323.306, which all provide that the comptroller may adopt reasonable rules and prescribe forms that are consistent with the provisions of those chapters regarding the administration of local sales and use taxes.

The new section implements Tax Code, Chapters 321 (Municipal Sales and Use Tax Act), 322 (Sales and Use tax for Special Purpose Taxing Authorities), and 323 (County Sales and Use Tax Act). However, other Texas code provisions determine what local taxing jurisdictions have authority to impose local sales and use taxes and some, but not all, of these code provisions are identified in the preamble of, or throughout, the section. Throughout the new section are other references to authorities and code provisions that are implemented by the provisions in the section.

*§3.334. Local Sales and Use Taxes.*

(a) Definitions. The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

(1) Cable system--The system through which a cable service provider delivers cable television or bundled cable service, as those terms are defined in §3.313 of this title (relating to Cable Television Service and Bundled Cable Service).

(2) City--An incorporated city, municipality, town, or village.

(3) City sales and use tax--The tax authorized under Tax Code, §321.101(a), including the additional municipal sales and use tax authorized under Tax Code, §321.101(b), the municipal sales and use tax for street maintenance authorized under Tax Code, §327.003, the Type A Development Corporation sales and use tax authorized under Local Government Code, §504.251, the Type B Development Corporation sales and use tax authorized under Local Government Code, §505.251, a sports and community venue project sales and use tax adopted by a city under Local Government Code, §334.081, and a municipal development corporation sales and use tax adopted by a city under Local Government Code, §379A.081. The term does not include the fire control, prevention, and emergency medical services district sales and use tax authorized under Tax Code, §321.106, or the municipal crime control and prevention district sales and use tax authorized under Tax Code, §321.108.

(4) Comptroller's website--The agency's website concerning local taxes located at: http://www.window.state.tx.us/taxinfo/local/index.html.

(5) County sales and use tax--The tax authorized under Tax Code, §323.101, including a sports and community venue project sales and use tax adopted by a county under Local Government Code, §334.081. The term does not include the county health services sales and use tax authorized under Tax Code, §324.021, the county landfill and criminal detention center sales and use tax authorized under Tax Code, §325.021, or the crime control and prevention district sales and use tax authorized under Tax Code, §323.105.

(6) Drop shipment--A transaction in which an order is received by a seller at one location, but the item purchased is shipped by the seller from another location, or is shipped by the seller's third-party supplier, directly to a location designated by the purchaser.

(7) Engaged in business--This term has the meaning given in §3.286 of this title (relating to Seller's and Purchaser's Responsibilities, including Nexus, Permits, Returns and Reporting Periods, and Collection and Exemption Rules).

(8) Extraterritorial jurisdiction--An unincorporated area that is contiguous to the corporate boundaries of a city as defined in Local Government Code, §42.021

(9) Fulfill--To complete an order by transferring a taxable item directly to a purchaser at a Texas location, or to ship or deliver a taxable item to a location in Texas designated by the purchaser.

(10) Itinerant vendor--A person who travels to various locations for the purpose of receiving orders and making sales of taxable items and who does not operate a place of business. For example, a person who sells rugs from the back of a truck that the person drives to a different location each day is an itinerant vendor. A person who sells items through vending machines is also an itinerant vendor. A salesperson that operates out of an office, place of business, or other location that provides administrative support to the salesperson is not an itinerant vendor.

(11) Kiosk--A small stand-alone area or structure:

(A) that is used solely to display merchandise or to submit orders for taxable items from a data entry device, or both;

(B) that is located entirely within a location that is a place of business of another seller, such as a department store or shopping mall; and

(C) at which taxable items are not available for immediate delivery to a purchaser.

(12) Local taxes--Sales and use taxes imposed by any local taxing jurisdiction.

(13) Local taxing jurisdiction--Any of the following:

(A) a city that imposes sales and use tax as provided under paragraph (3) of this subsection;

(B) a county that imposes sales and use tax as provided under paragraph (5) of this subsection;

(C) a special purpose district created under the Special District Local Laws Code or other provisions of Texas law that is authorized to impose sales and use tax by the Tax Code or other provisions of Texas law and as governed by the provisions of Tax Code, Chapters 321 or 323 and other provisions of Texas law; or

(D) a transit authority that imposes sales and use tax as authorized by Transportation Code, Chapters, 451, 452, 453, 457, or 460 and governed by the provisions of Tax Code, Chapter, 322.

(14) Place of business - general definition--An established outlet, office, or location operated by a seller for the purpose of selling taxable items to those other than employees, contractors, and individual persons affiliated with the seller. Places of business include, but are not limited to, call centers, showrooms, and clearance centers. The term also includes any location operated by a seller at which the seller receives three or more orders for taxable items during a calendar year. For example, a home office at which three or more items are sold through an online auction website is a place of business. Additional criteria for determining when a location is a place of business are provided in subsection (e) of this section for administrative offices; distribution centers, manufacturing plants, storage yards, warehouses and similar facilities; kiosks; and purchasing offices.

(15) Purchasing office--An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business.

(16) Seller--This term has the meaning given in §3.286 of this title and also refers to any agent or employee of the seller.

(17) Special purpose district--A local governmental entity authorized by the Texas legislature for a specific purpose, such as crime control, a local library, emergency services, county health services, or a county landfill and criminal detention center.

(18) Storage--This term has the meaning given in §3.346 of this title (relating to Use Tax).

(19) Temporary place of business--A location operated by a seller for a limited period of time for the purpose of selling and receiving orders for taxable items and where the seller has inventory available for immediate delivery to a purchaser. For example, a person who rents a booth at a weekend craft fair or art show to sell and take orders for jewelry, or a person who maintains a facility at a job site to rent tools and equipment to a contractor during the construction of real property, has established a temporary place of business.

(20) Transit authority--A metropolitan rapid transit authority (MTA), advanced transportation district (ATD), regional or subregional transportation authority (RTA), city transit department (CTD), county transit authority (CTA), regional mobility authority (RMA) or coordinated county transportation authority created under Transportation Code, Chapters 370, 451, 452, 453, 457, or 460.

(21) Traveling salesperson--A seller, or an agent or employee of a seller, who visits potential purchasers in person to solicit sales, and who does not carry inventory ready for immediate sale, but who may carry samples or perform demonstrations of items for sale.

(22) Two percent cap--A reference to the general rule that, except as otherwise provided by Texas law and as explained in this section, a seller cannot collect, and a purchaser is not obligated to pay, more than 2.0% of the sales price of a taxable item in total local sales and use taxes for all local taxing jurisdictions

(23) Use--This term has the meaning given in §3.346 of this title.

(24) Use tax--A tax imposed on the storage, use or other consumption of a taxable item in this state.

(b) Effect of other law.

(1) Tax Code, Title 2, Subtitles A (General Provisions) and B (Enforcement and Collection), Tax Code, Chapter 141 (Multistate Tax Compact) and Tax Code, Chapter 151 (Limited Sales, Excise, and Use Tax) apply to transactions involving local taxes. Related sections of this title and comptroller rulings shall also apply with respect to local taxes. This includes authorities such as court cases and federal law that affect whether an item is taxable or is excluded or exempt from taxation.

(2) Permits, exemption certificates, and resale certificates required by Tax Code, Chapter 151, shall also satisfy the requirements for collecting and remitting local taxes, unless otherwise indicated by this section or other sections of this title. For example, see subsection (n) of this section concerning prior contract exemptions.

(3) Any provisions in this section or other sections of this title related to a seller's responsibilities for collecting and remitting local taxes to the comptroller shall also apply to a purchaser if the seller does not collect local taxes that are due. The comptroller may proceed against the seller or purchaser for the local tax owed by either.

(c) Tax rates. Except as otherwise provided by law, no local governmental entity may adopt or increase a sales and use tax if, as a result of the adoption or increase of the tax, the combined rate of all sales and use taxes imposed by local taxing jurisdictions having territory in the local governmental entity would exceed 2.0% at any location within the boundaries of the local governmental entity's jurisdiction. The following are the local tax rates that may be adopted.

(1) Cities. Cities may impose sales and use tax at a rate of up to 2.0%.

(2) Counties. Counties may impose sales and use tax at rates ranging from 0.5% to 1.5%.

(3) Special purpose districts. Special purpose districts may impose sales and use tax at rates ranging from 0.125% to 2.0%.

(4) Transit authorities. Transit authorities may impose sales and use tax at rates ranging from 0.25% to 1.0%.

(d) Jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements.

(1) Jurisdictional boundaries.

(A) City boundaries. City taxing jurisdictional boundaries cannot overlap one another and a city cannot impose a sales and use tax in an area that is already within the jurisdiction of another city.

(B) County boundaries. County tax applies to all locations within that county.

(C) Special purpose district and transit authority boundaries. Special purpose districts and transit authorities may cross or share boundaries with other local taxing jurisdictions and may encompass, in whole or in part, other local taxing jurisdictions, including cities and counties. A geographic location or address in this state may lie within the boundaries of more than one special purpose district or more than one transit authority.

(D) Extraterritorial jurisdictions. Except as otherwise provided by paragraph (3) of this subsection concerning strategic partnership agreements and subsection (l)(5) of this section concerning the City of El Paso and Fort Bliss, city sales and use tax does not apply to taxable sales that are consummated outside the boundaries of the city, including sales made in a city's extraterritorial jurisdiction. However, an extraterritorial jurisdiction may lie within the boundaries of a special purpose district, transit authority, county, or any combination of the three, and the sales and use taxes for those jurisdictions would apply to those sales.

(2) Combined areas. A combined area is an area where the boundaries of a city overlap the boundaries of one or more other local taxing jurisdictions as a result of an annexation of additional territory by the city, and where, as the result of the imposition of the city tax in the area in addition to the local taxes imposed by the existing taxing jurisdictions, the combined local tax rate would exceed 2.0%. The comptroller shall make accommodations to maintain a 2.0% rate in any combined area. Sellers engaged in transactions on which local sales or use taxes are due in a combined area, or persons who must self-accrue and remit tax directly to the comptroller, must use the combined area local code when reporting the tax rather than the codes for the individual city, county, special purpose districts, or transit authorities that make up the combined area. The comptroller shall distribute the tax revenue generated in these combined areas to the local taxing jurisdictions located in the combined areas as provided in Tax Code, §321.102 or Health and Safety Code, §775.0754. Combined areas are identified on the comptroller's website.

(3) City tax imposed through strategic partnership agreements.

(A) The governing bodies of a district, as defined in Local Government Code, §43.0751, and a city may enter into a limited-purpose annexation agreement known as a strategic partnership agreement. Under this agreement, the city may impose sales and use tax within all or part of the boundaries of a district. Areas within a district that are annexed for this limited purpose are treated as though they are within the boundaries of the city for purposes of city sales and use tax.

(B) Counties, transit authorities, and special purpose districts may not enter into strategic partnership agreements. Sales and use taxes imposed by those taxing jurisdictions do not apply in the limited-purpose annexed area as part of a strategic partnership agreement between a city and an authorized district. However, a county, special purpose district, or transit authority sales and use tax, or any combination of these three types of taxes, may apply at locations included in a strategic partnership agreement between a city and an authorized district if the tax is imposed in that area by the applicable jurisdiction as allowed under its own controlling authorities.

(C) Prior to September 1, 2011, the term "district" was defined in Local Government Code, §43.0751 as a municipal utility district or a water control and improvement district. The definition was amended effective September 1, 2011, to mean a conservation and reclamation district operating under Water Code, Chapter 49.

(e) Place of business - special definitions. In addition to the general definition of the term "place of business" in subsection (a)(13) of this section, the following rules apply.

(1) Administrative offices supporting traveling salespersons. Any outlet, office, or location operated by a seller that serves as a base of operations for a traveling salesperson or that provides administrative support to a traveling salesperson is a place of business.

(2) Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller at which the seller receives three or more orders for taxable items during the calendar year is a place of business.

(B) If a salesperson who receives three or more orders for taxable items within a calendar year is assigned to work from, or to work at, a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the facility is a place of business.

(C) If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the entire facility is a place of business of the seller.

(3) Kiosks. A kiosk is not a place of business for the purpose of determining where a sale is consummated for local tax purposes. A seller who owns or operates a kiosk in Texas is, however, engaged in business in this state as provided in §3.286 of this title.

(4) Purchasing offices

(A) A purchasing office is not a place of business if the purchasing office exists solely to rebate a portion of the local sales and use tax imposed by Tax Code, Chapter 321 or 323 to a business with which it contracts; or if the purchasing office functions or exists to avoid the tax legally due under Tax Code, Chapter 321 or 323. A purchasing office does not exist solely to rebate a portion of the local sales and use tax or to avoid the tax legally due under Tax Code, Chapter 321 or 323 if the purchasing office provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services.

(B) When the comptroller determines that a purchasing office is not a place of business, the sale of any taxable item is deemed to be consummated at the place of business of the seller from whom the purchasing office purchased the taxable item for resale and local sales and use taxes are due according to the following rules.

(i) When taxable items are purchased from a Texas seller, local sales taxes are due based on the location of the seller's place of business where the sale is deemed to be consummated, as determined in accordance with subsection (h) of this section.

(ii) When the sale of a taxable item is deemed to be consummated at a location outside of this state, local use tax is due based on the location where the items are first stored, used or consumed by the entity that contracted with the purchasing office in accordance with subsection (i) of this section.

(C) In making a determination under subparagraph (A) of this paragraph, as to whether a purchasing office provides significant business services to the contracting business, the comptroller will look to the books and records of the purchasing office to determine whether the total value of the business services provided to the contracting business equals or exceeds the total value of processing invoices. If the total value of the business services provided, including logistics management, purchasing, inventory control, or other vital business services, is less than the total value of the service to process invoices, then the purchasing office will be presumed not to be a place of business of the seller.

(D) Dickinson Management District; purchasing office exclusion invalid. Special District Local Laws Code, §3853.202(d) is invalid to the extent that it attempts to exclude the Dickinson Management District from the application of Tax Code, §321.203(m), formerly Tax Code, §321.203(l). Any purchasing office operated within the Dickinson Management District is subject to this paragraph.

(f) Places of business and job sites crossed by local taxing jurisdiction boundaries.

(1) Places of business crossed by local taxing jurisdiction boundaries. If a place of business is crossed by one or more local taxing jurisdiction boundaries so that a portion of the place of business is located within a taxing jurisdiction and the remainder of the place of business lies outside of the taxing jurisdiction, tax is due to the local

taxing jurisdictions in which the sales office is located. If there is no sales office, sales tax is due to the local taxing jurisdictions in which any cash registers are located.

    (2)   Job sites.

      (A)   Residential repair and remodeling; new construction of an improvement to realty. When a contractor is improving real property under a separated contract, and the job site is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on any separately stated charges for taxable items incorporated into the real property must be allocated to the local taxing jurisdictions based on the total square footage of the real property improvement located within each jurisdiction, including the square footage of any standalone structures that are part of the construction, repair, or remodeling project. For more information about tax due on materials used at residential and new construction job sites, refer to §3.291 of this title (relating to Contractors).

      (B)   Nonresidential real property repair and improvement. When taxable services are performed to repair, remodel, or restore nonresidential real property, including a pipeline, transmission line, or parking lot, that is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on the taxable services, including materials and any other charges connected to the services performed, must be allocated among the local taxing jurisdictions based upon the total mileage or square footage, as appropriate, of the repair, remodeling, or restoration project located in each jurisdiction. For more information about tax due on materials used at nonresidential real property repair and remodeling job sites, refer to §3.357 of this title (relating to Nonresidential Real Property Repair, Remodeling, and Restoration; Real Property Maintenance).

  (g)   Sellers' and purchasers' responsibilities for collecting or accruing local taxes.

    (1)   Sale consummated in Texas; seller responsible for collecting local sales taxes and applicable local use taxes. When a sale of a taxable item is consummated at a location in Texas as provided by subsection (h) of this section, the seller must collect each local sales tax in effect at the location. If the total rate of local sales tax due on the sale does not reach the two percent cap, and the seller ships or delivers the item into another local taxing jurisdiction in which the seller is engaged in business, then the seller is required to collect additional local use taxes due, if any, based on the location to which the item is shipped or delivered. For more information regarding local use taxes, refer to subsection (i) of this section.

    (2)   Out-of-state sale; seller engaged in business in Texas. A seller who is engaged in business in this state is required to collect and remit local use taxes due, if any, on orders of taxable items shipped or delivered at the direction of the purchaser into a local taxing jurisdiction in this state in which the seller is engaged in business.

    (3)   Purchaser responsible for accruing and remitting local taxes if seller fails to collect.

      (A)   If a seller does not collect the state sales tax, any applicable local sales taxes, or both on a sale of a taxable item that is consummated in Texas, then the purchaser is responsible for filing a return and paying the tax. The local sales taxes due are based on the location in this state where the sale is consummated as provided in subsection (h) of this section.

      (B)   A purchaser who buys an item for use in Texas from a seller who does not collect the state use tax, any applicable local use taxes, or both, is responsible for filing a return and paying the tax. The local use taxes due are based on the location where the item is first stored, used, or consumed by the purchaser.

      (C)   For more information about how to report and pay use tax directly to the comptroller, see §3.286 of this title.

    (4)   Local tax is due on the sales price of a taxable item, as defined in Tax Code, §151.007, in the report period in which the taxable item is purchased or the period in which the taxable item is first stored, used, or otherwise consumed in a local taxing jurisdiction.

  (h)   Local sales tax. Determining the local taxing jurisdictions to which sales tax is due; consummation of sale.

    (1)   General rule. Except for the special rules applicable to direct payment permit purchases and certain taxable items as provided in subsections (j) and (k) of this section, each sale of a taxable item is consummated at the location indicated by the provisions of this subsection. Local sales taxes must be collected for all local taxing jurisdictions in effect at the location where the sale is consummated. Local use tax may also be due if the total amount of local sales taxes due does not reach the two percent cap, and the item purchased is shipped or delivered to a location in one or more different local taxing jurisdictions, as provided in subsection (i) of this section.

    (2)   Multiple special purpose district taxes, multiple transit authority sales taxes, or a combination of the two may apply to a single transaction. If the sale of a taxable item is consummated at a location within the boundaries of multiple special purpose districts or transit authorities, local sales tax is owed to each of the jurisdictions in effect at that location. For example, a place of business located in the city of San Antonio is within the boundaries of both the San Antonio Advanced Transportation District and the San Antonio Metropolitan Transit Authority, and the seller is required to collect sales tax for both transit authorities. Similarly, a place of business in Flower Mound is located within the boundaries of two special purpose districts, the Flower Mound Crime Control District and the Flower Mound Fire Control District, and the seller is responsible for collecting sales tax for both special purpose districts.

    (3)   Consummation of sale. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have a place of business in Texas or multiple places of business in the state.

      (A)   Order placed in person at a seller's place of business in Texas. When a purchaser places an order for a taxable item in person at a seller's place of business in Texas, the sale of that item is consummated at that place of business, regardless of the location where the order is fulfilled, except in the limited circumstances described in subparagraph (F) of this paragraph, concerning qualifying economic development agreements.

      (B)   Order received at a place of business in Texas, fulfilled at a location that is not a place of business. When an order that is placed over the telephone, through the Internet, or by any means other than in person is received by the seller at a place of business in Texas, and the seller fulfills the order at a location that is not a place of business of the seller in Texas, such as a warehouse or distribution center, the sale is consummated at the place of business at which the order for the taxable item is received.

      (C)   Order fulfilled at a place of business in Texas. When an order is placed in person at a location that is not a place of business of the seller in this state, such as a kiosk, or when an order is placed over the telephone, through the Internet, or by any means other than in person, and the seller fulfills the order at a location that is a place of business in Texas, the sale is consummated at the place of business where the order is fulfilled.

      (D)   Order fulfilled within the state at a location that is not a place of business. When an order is received by a seller at any

location other than a place of business of the seller in this state, and the seller fulfills the order at a location in Texas that is not a place of business of the seller, then the sale is consummated at the location in Texas to which the order is shipped or delivered, or the location where it is transferred to the purchaser.

(E)   Order received outside of the state, fulfilled outside of the state. When an order is received by a seller at a location outside of Texas, and the order is shipped or delivered into a local taxing jurisdiction from a location outside of the state, the sale is not consummated at a location in Texas. However, local use tax is due based upon the location in this state to which the item is shipped or delivered or at which possession of the item is taken by the purchaser as provided in subsection (i) of this section.

(F)   Exception for qualifying economic development agreements entered into before January 1, 2009, pursuant to Tax Code, §321.203(c-4) - (c-5) or §323.203(c-4) - (c-5). This subparagraph is effective until September 1, 2024. If applicable, the local sales tax due on the sale of a taxable item is based on the location of the qualifying warehouse, which is a place of business of the seller, from which the item is shipped or delivered or at which the purchaser takes possession of the item.

(4)   Orders received by traveling salespersons.   Orders taken by traveling salespersons are received by the seller at the administrative office or other place of business from which the traveling salesperson operates, and such sales are consummated at the location indicated in paragraph (3) of this subsection. For example, if a traveling salesperson who operates out of a place of business of a seller in Texas takes an order for a taxable item, and the order is fulfilled at a location that is not a place of business of the seller in this state, the sale is consummated at the place of business from which the salesperson operates, in accordance with paragraph (3)(B) of this subsection. Similarly, if a traveling salesperson takes an order for a taxable item, and the order is fulfilled at a place of business of the seller in this state, the sale is consummated at the location of the place of business where the order is fulfilled, in accordance with paragraph (3)(C) of this subsection.

(5)   Drop shipments.

(A)   When an order for a taxable item is received at a seller's place of business in Texas, or by a traveling salesperson operating out of a place of business in this state, and the item is drop-shipped directly to the purchaser from a third-party supplier, the sale is consummated at, and local sales tax is due based upon, the location of the place of business where the order is received. When an order for a taxable item is received by a seller at one location, but shipped by the seller to the purchaser from a different location, the sale is consummated at, and local sales tax is due based upon, the location designated in paragraph (3) of this subsection. If the local sales taxes due based on the location of the seller's place of business at which the sale is consummated equal less than 2.0%, additional local use tax may be due based upon the location in this state to which the purchased item is shipped or delivered or at which possession of the item is taken by the purchaser as provided in subsection (i) of this section.

(B)   When an order for a taxable item is received by the seller at a location outside of Texas, or by a traveling salesperson operating from a location outside of this state, and the item is drop-shipped directly to the purchaser from a third-party supplier, the item is subject to use tax. See subsection (i) of this section concerning use tax.

(6)   Itinerant vendors; vending machines; temporary places of business.

(A)   Itinerant vendors. Sales made by itinerant vendors are consummated at, and itinerant vendors must collect sales tax based upon, the location where the item is delivered or where the purchaser takes possession of the item. Itinerant vendors do not have any responsibility to collect use tax.

(B)   Vending machines. Sales of taxable items made from a vending machine are consummated at the location of the vending machine. See §3.293 of this title (relating to Food; Food Products; Meals; Food Service) for more information about vending machine sales.

(C)   Temporary places of business.

(i)   Item transferred to purchaser at time of sale. When a seller operates a temporary place of business, and items purchased are transferred to the purchasers at the time of sale, the sales are consummated at, and local sales tax is due based upon, the location of the temporary place of business.

(ii)   Order accepted at temporary place of business prior to June 19, 2009. If a seller received an order at a temporary place of business prior to June 19, 2009, and the order was fulfilled at another place of business of the seller in this state, the sale was consummated at, and local sales taxes are due based upon, the location of the place of business where the order was fulfilled and not the temporary location where the order was received.

(iii)   Order accepted at temporary place of business on or after June 19, 2009. When a seller receives an order at a temporary place of business and the order is fulfilled at another location, the sale is consummated at, and local sales taxes are due based upon, the location of the temporary place of business where the order was received.

(i)   Use tax. The provisions addressing the imposition of state use tax in §3.346 of this title also apply to the imposition of local use tax. For example, consistent with §3.346(e) of this title, all taxable items that are shipped or delivered to a location in this state that is within the boundaries of a local taxing jurisdiction are presumed to have been purchased for use in that local taxing jurisdiction as well as presumed to have been purchased for use in the state.

(1)   General rules.

(A)   When local use taxes are due in addition to local sales taxes as provided by subsection (h) of this section, all applicable use taxes must be collected or accrued in the following order until the two percent cap is reached: city, county, special purpose district, and transit authority. If more than one special purpose district use tax is due, all such taxes are to be collected or accrued before any transit authority use tax is collected or accrued. See subparagraphs (D) and (E) of this paragraph.

(B)   If a local use tax cannot be collected or accrued at its full rate without exceeding the two percent cap, the seller cannot collect it, or any portion of it, and the purchaser is not responsible for accruing it.

(C)   If a seller collects a local sales tax on an item, or a purchaser accrues a local sales tax on an item, a use tax for the same type of jurisdiction is not due on the same item. For example, once a city sales tax has been collected or accrued for an item, no use tax is due to that same or a different city on that item, but use tax may be due to a county, special purpose district, or transit authority. Similarly, if one or more special purpose district sales taxes have been collected or accrued for an item, no special purpose district use tax is due on that item, and if one or more transit authority sales taxes have been collected or accrued for an item, no transit authority use tax is due on that item.

(D) Collection or accrual of use tax for multiple special purpose districts. If more than one special purpose district use tax is in effect at the location where use of an item occurs, the special purpose district taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all special purpose district taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the district with the earliest effective date would exceed the two percent cap, the tax for that district is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (C) of this paragraph, whether use tax is due for the district that next became effective.

*(i)* If the competing special purpose districts became effective on the same date, the special purpose district taxes are due in the order of the earliest date for which the election in which the district residents authorized the imposition of sales and use tax by the district was held.

*(ii)* If the elections to impose the local taxes were held on the same date, the special purpose district taxes are due in the order of the earliest date for which the enabling legislation under which each district was created became effective.

(E) Collection or accrual of use tax for multiple transit authorities. If more than one transit authority use tax is in effect at the location where use of an item occurs, and the two percent cap has not been met, the transit authority taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all transit authority taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the authority with the earliest effective date would exceed the two percent cap, the tax for that authority is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (D) of this paragraph, whether use tax is due for the authority that next became effective.

*(i)* If the competing transit authorities became effective on the same date, the transit authority taxes are due in the order of the earliest date for which the election in which the authority residents authorized the imposition of sales and use tax by the authority was held.

*(ii)* If the elections to impose local taxes were held on the same date, the transit authority use taxes are due in the order of the earliest date for which the enabling legislation under which each authority was created became effective.

(2) General use tax rules applied to specific situations. The following fact patterns explain how local use tax is to be collected or accrued and remitted to the comptroller based on, and subject to, the general rules in paragraph (1) of this subsection.

(A) Sale consummated outside the state, item delivered from outside the state or from a location in Texas that is not operated by the seller - local use tax due. If a sale is consummated outside of this state according to the provisions of subsection (h) of this section, and the item purchased is either shipped or delivered to a location in this state as designated by the purchaser from a location outside of the state, or if the order is drop shipped directly to the purchaser from a third-party supplier, local use tax is owed based upon the location in this state to which the order is shipped or delivered. If the seller is engaged in business in the local taxing jurisdiction into which the order is shipped or delivered, the seller is responsible for collecting the local use tax due on the sale. If the seller does not collect the local use taxes due on the sale, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller according to the provisions in paragraph (1) of this subsection. For example, if an order for a taxable item is received by a seller at a location outside of Texas, and the order is shipped to the purchaser from a location outside of the state, local use tax is due based upon the location to which the order is shipped or delivered.

(B) Sale consummated in Texas outside a local taxing jurisdiction, item delivered into one or more local taxing jurisdictions - local use tax due. If a sale is consummated at a location in Texas that is outside of the boundaries of any local taxing jurisdiction according to the provisions of subsection (h) of this section, and the order is shipped or delivered to the purchaser at a location in this state that is within the boundaries of one or more local taxing jurisdictions, local use tax is due based on the location to which the items are shipped or delivered. If the seller is engaged in business in the local taxing jurisdiction where the items are shipped or delivered, the seller is responsible for collecting the local use taxes due. If the seller fails to collect any local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller. For example, if a seller uses its own delivery vehicle to transport a taxable item from a place of business that is outside the boundaries of a local taxing jurisdiction to a delivery location designated by a purchaser that is inside the boundaries of a local taxing jurisdiction, the seller is responsible for collecting the local use taxes due based on the location to which the items are delivered.

(C) Sale consummated in any local taxing jurisdictions imposing less than 2.0% in total local taxes - local sales taxes, and possibly use taxes, due. If a sale is consummated at a location in Texas where the total local sales tax rate imposed by the taxing jurisdictions in effect at that location does not equal or exceed 2.0% according to the provisions of subsection (h) of this section, and the item is shipped or delivered to the purchaser at a location in this state that is inside the boundaries of a different local taxing jurisdiction, additional local use tax may be due based on the location to which the order is shipped or delivered, subject to the two percent cap. If the seller is engaged in business in the local taxing jurisdiction into which the order is shipped or delivered, the seller is responsible for collecting any additional local use taxes due. See subsection (g) of this section. If the seller fails to collect the additional local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller. For example, if an order is received in person at a place of business of the seller, such that the sale is consummated at the location where the order is received as provided under subsection (h)(3)(A) of this section, and the local sales tax due on the sale does not meet the two percent cap, additional local use taxes may be due based on the location to which the order is shipped or delivered, subject to the provisions in paragraph (1) of this subsection. Or, if a purchaser places an order for a taxable item at a seller's place of business in Texas, and the seller ships or delivers the item from an out-of-state location to a location in this state as designated by the purchaser, local sales tax is due based upon the location of the place of business where the order is received. If the local sales tax due on the item does not meet the two percent cap, use tax, subject to the provisions in paragraph (1) of this subsection, is due based upon the location where the items are shipped or delivered.

(j) Items purchased under a direct payment permit.

(1) When taxable items are purchased under a direct payment permit, local use tax is due based upon the location where the permit holder first stores the taxable items, except that if the taxable items are not stored, then local use tax is due based upon the location where the taxable items are first used or otherwise consumed by the permit holder.

(2) If, in a local taxing jurisdiction, storage facilities contain taxable items purchased under a direct payment exemption certificate and at the time of storage it is not known whether the taxable items will be used in Texas, then the taxpayer may elect to report the use tax either when the taxable items are first stored in Texas or are first re-

moved from inventory for use in Texas, as long as use tax is reported in a consistent manner. See also §3.288(i) of this title (relating to Direct Payment Procedures and Qualifications) and §3.346(g) of this title.

(3) If local use tax is paid on stored items that are subsequently removed from Texas before they are used, the tax may be recovered in accordance with the refund and credit provisions of §3.325 of this title (relating to Refunds and Payments Under Protest) and §3.338 of this title (relating to Multistate Tax Credits and Allowance of Credit for Tax Paid to Suppliers).

(k) Special rules for certain taxable goods and services. Sales of the following taxable goods and services are consummated at, and local tax is due based upon, the location indicated in this subsection.

(1) Amusement services. Local tax is due based upon the location where the performance or event occurs. For more information on amusement services, refer to §3.298 of this title (relating to Amusement Services).

(2) Cable services. When a service provider uses a cable system to provide cable television or bundled cable services to customers, local tax is due as provided for in §3.313 of this title. When a service provider uses a satellite system to provide cable services to customers, no local tax is due on the service in accordance with the Telecommunications Act of 1996, §602.

(3) Florists. Local sales tax is due on all taxable items sold by a florist based upon the location where the order is received, regardless of where or by whom delivery is made. Local use tax is not due on deliveries of taxable items sold by florists. For example, if the place of business of the florist where an order is taken is not within the boundaries of any local taxing jurisdiction, no local sales tax is due on the item and no local use tax is due regardless of the location of delivery. If a Texas florist delivers an order in a local taxing jurisdiction at the instruction of an unrelated florist, and if the unrelated florist did not take the order within the boundaries of a local taxing jurisdiction, local use tax is not due on the delivery. For more information about florists' sales and use tax obligations, refer to §3.307 of this title (relating to Florists).

(4) Landline telecommunications services. Local taxes due on landline telecommunications services are based upon the location of the device from which the call or other transmission originates. If the seller cannot determine where the call or transmission originates, local taxes due are based on the address to which the service is billed. For more information, refer to §3.344 of this title (relating to Telecommunications Services).

(5) Mobile telecommunications services. Local taxes due on mobile telecommunications services are based upon the location of the customer's place of primary use as defined in §3.344(a)(8) of this title, and local taxes are to be collected as indicated in §3.344(h) of this title.

(6) Motor vehicle parking and storage. Local taxes are due based on the location of the space or facility where the vehicle is parked. For more information, refer to §3.315 of this title (relating to Motor Vehicle Parking and Storage).

(7) Natural gas and electricity. Any local city and special purpose taxes due are based upon the location where the natural gas or electricity is delivered to the purchaser. As explained in subsection (l)(1) of this section, residential use of natural gas and electricity is exempt from all county sales and use taxes and all transit authority sales and use taxes, most special purpose district sales and use taxes, and many city sales and use taxes. A list of the cities and special purpose districts that do impose, and those that are eligible to impose, local sales and use tax on residential use of natural gas and electricity is available on the comptroller's website. For more information, also refer to §3.295 of this title (relating to Natural Gas and Electricity).

(8) Nonresidential real property repair and remodeling services. Local taxes are due on services to remodel, repair, or restore nonresidential real property based on the location of the job site where the remodeling, repair, or restoration is performed. See also subsection (f)(2)(B) of this section and §3.357 of this title.

(9) Residential real property repair and remodeling and new construction of a real property improvement performed under a separated contract. When a contractor constructs a new improvement to realty pursuant to a separated contract or improves residential real property pursuant to a separated contract, the sale is consummated at the job site at which the contractor incorporates taxable items into the customer's real property. See also subsection (f)(2)(A) of this section and §3.291 of this title.

(10) Waste collection services. Local taxes are due on garbage or other solid waste collection or removal services based on the location at which the waste is collected or from which the waste is removed. For more information, refer to §3.356 of this title (relating to Real Property Service).

(l) Special exemptions and provisions applicable to individual jurisdictions.

(1) Residential use of natural gas and electricity.

(A) Mandatory exemptions from local sales and use tax. Residential use of natural gas and electricity is exempt from most local sales and use taxes. Counties, transit authorities, and most special purpose districts are not authorized to impose sales and use tax on the residential use of natural gas and electricity. Pursuant to Tax Code, §321.105, any city that adopted a local sales and use tax effective October 1, 1979, or later is prohibited from imposing tax on the residential use of natural gas and electricity. See §3.295 of this title.

(B) Imposition of tax allowed in certain cities. Cities that adopted local sales tax prior to October 1, 1979, may, in accordance with the provisions in Tax Code, §321.105, choose to repeal the exemption for residential use of natural gas and electricity. The comptroller's website provides a list of cities that impose tax on the residential use of natural gas and electricity, as well as a list of those cities that do not currently impose the tax, but are eligible to do so.

(C) Effective January 1, 2010, a fire control, prevention, and emergency medical services district organized under Local Government Code, Chapter 344 that imposes sales tax under Tax Code, §321.106, or a crime control and prevention district organized under Local Government Code, Chapter 363 that imposes sales tax under Tax Code, §321.108, that is located in all or part of a municipality that imposes a tax on the residential use of natural gas and electricity as provided under Tax Code, §321.105 may impose tax on residential use of natural gas and electricity at locations within the district. A list of the special purpose districts that impose tax on residential use of natural gas and electricity and those districts eligible to impose the tax that do not currently do so is available on the comptroller's website.

(2) Telecommunication services. Telecommunications services are exempt from all local sales taxes unless the governing body of a city, county, transit authority, or special purpose district votes to impose sales tax on these services. However, since 1999, under Tax Code, §322.109(d), transit authorities created under Transportation Code, Chapter 451 cannot repeal the exemption unless the repeal is first approved by the governing body of each city that created the local taxing jurisdiction. The local sales tax is limited to telecommunications services occurring between locations within Texas. See §3.344

of this title. The comptroller's website provides a list of local taxing jurisdictions that impose tax on telecommunications services.

(3) Emergency services districts.

(A) Authority to exclude territory from imposition of emergency services district sales and use tax. Pursuant to the provisions of Health and Safety Code, §775.0751(c-1), an emergency services district wishing to enact a sales and use tax may exclude from the election called to authorize the tax any territory in the district where the sales and use tax is then at 2.0%. The tax, if authorized by the voters eligible to vote on the enactment of the tax, then applies only in the portions of the district included in the election. The tax does not apply to sales made in the excluded territories in the district and sellers in the excluded territories should continue to collect local sales and use taxes for the local taxing jurisdictions in effect at the time of the election under which the district sales and use tax was authorized as applicable.

(B) Consolidation of districts resulting in sales tax sub-districts. Pursuant to the provisions of Health and Safety Code, §775.018(f), if the territory of a district proposed under Health and Safety Code, Chapter 775 overlaps with the boundaries of another district created under that chapter, the commissioners court of each county and boards of the counties in which the districts are located may choose to create a consolidated district in the overlapping territory. If two districts that want to consolidate under Health and Safety Code, §775.024 have different sales and use tax rates, the territory of the former districts located within the consolidated area will be designated as sub-districts and the sales tax rate within each sub-district will continue to be imposed at the rate the tax was imposed by the former district that each sub-district was part of prior to the consolidation.

(4) East Aldine Management District.

(A) Special sales and use tax zones within district; separate sales and use tax rate. As set out in Special District Local Laws Code, §3817.154(e) and (f), the East Aldine Management District board may create special sales and use tax zones within the boundaries of the District and, with voter approval, enact a special sales and use tax rate in each zone that is different from the sales and use tax rate imposed in the rest of the district.

(B) Exemptions from special zone sales and use tax. The sale, production, distribution, lease, or rental of; and the use, storage, or other consumption within a special sales and use tax zone of; a taxable item sold, leased, or rented by the entities identified in clauses (i) - (vi) of this subparagraph are exempt from the special zone sales and use tax. State and all other applicable local taxes apply unless otherwise exempted by law. The special zone sales and use tax exemption applies to:

(i) a retail electric provider as defined by Utilities Code, §31.002;

(ii) an electric utility or a power generation company as defined by Utilities Code, §31.002;

(iii) a gas utility as defined by Utilities Code, §101.003 or §121.001, or a person who owns pipelines used for transportation or sale of oil or gas or a product or constituent of oil or gas;

(iv) a person who owns pipelines used for the transportation or sale of carbon dioxide;

(v) a telecommunications provider as defined by Utilities Code, §51.002; or

(vi) a cable service provider or video service provider as defined by Utilities Code, §66.002.

(5) Imposition of city sales tax and transit tax on certain military installations; El Paso and Fort Bliss. Pursuant to Tax Code, §321.1045 (Imposition of Sales and Use Tax in Certain Federal Military Installations), for purposes of the local sales and use tax imposed under Tax Code, Chapter 321, the city of El Paso includes the area within the boundaries of Fort Bliss to the extent it is in the city's extraterritorial jurisdiction. However, the El Paso transit authority does not include Fort Bliss. See Transportation Code, §453.051 concerning the Creation of Transit Departments.

(m) Restrictions on local sales tax rebates and other economic incentives. Pursuant to Local Government Code, §501.161, Section 4A and 4B development corporations may not offer to provide economic incentives, such as local sales tax rebates authorized under Local Government Code, Chapters 380 or 381, to persons whose business consists primarily of purchasing taxable items using resale certificates and then reselling those same items to a related party. A related party means a person or entity which owns at least 80% of the business enterprise to which sales and use taxes would be rebated as part of an economic incentive.

(n) Prior contract exemptions. The provisions of §3.319 of this title (relating to Prior Contracts) concerning definitions and exclusions apply to prior contract exemptions.

(1) Certain contracts and bids exempt. No local taxes are due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of any local tax if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of any local tax if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(2) Annexations. Any annexation of territory into an existing local taxing jurisdiction is also a basis for claiming the exemption provided by this subsection.

(3) Local taxing jurisdiction rate increase; partial exemption for certain contracts and bids. When an existing local taxing jurisdiction raises its sales and use tax rate, the additional amount of tax that would be due as a result of the rate increase is not due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of the tax rate increase if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of the tax rate increase if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(4) Three-year statute of limitations.

(A) The exemption in paragraph (1) of this subsection and the partial exemption in paragraph (3) of this subsection have no effect after three years from the date the adoption or increase of the tax takes effect in the local taxing jurisdiction.

(B) The provisions of §3.319 of this title apply to this subsection to the extent they are consistent.

(C) Leases. Any renewal or exercise of an option to extend the time of a lease or rental contract under the exemptions provided by this subsection shall be deemed to be a new contract and no exemption will apply.

(5) Records. Persons claiming the exemption provided by this subsection must maintain records which can be verified by the comptroller or the exemption will be lost.

(6) Exemption certificate. An identification number is required on the prior contract exemption certificates furnished to sellers. The identification number should be the person's 11-digit Texas taxpayer number or federal employer's identification (FEI) number.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on November 18, 2014.

TRD-201405493
Ashley Harden
General Counsel
Comptroller of Public Accounts
Effective date: January 1, 2015
Proposal publication date: May 30, 2014
For further information, please call: (512) 475-0387



## SUBCHAPTER P. MUNICIPAL SALES AND USE TAX

### 34 TAC §§3.371 - 3.379

The Comptroller of Public Accounts adopts the repeal of Subchapter P, concerning Municipal Sales and Use Tax, without changes to the proposed text as published in the May 30, 2014, issue of the *Texas Register* (39 TexReg 4190). The content of §3.372 (Adopting, Increasing, Decreasing, or Abolishing City Tax) and §3.373 (Change or Alteration of City Boundaries) is being repealed entirely and will not be included in another section of this or another subchapter. The content of §3.374 (Collection and Allocation of the City Sales Tax), §3.379 (Contractors), §3.377 (Divergent Use of a Direct Payment, Resale or Exemption Certificate), §3.371 (Effect of Rules; Permits and Certificates; Exclusion of Certain Sales), §3.378 (Natural Gas and Electricity), §3.376 (Prior Contract Exemptions), and §3.375 (Use Tax) will be included as appropriate and updated in new §3.334 of this title, Local Sales and Use Taxes.

No comments were received regarding adoption of the repeals.

These repeals are adopted under Tax Code, §111.002, which provides the comptroller with the authority to prescribe, adopt, and enforce rules relating to the administration and enforcement of the provisions of Tax Code, Title 2. These repeals implement Tax Code, Chapter 321, Municipal Sales and Use Tax Act.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on November 18, 2014.

TRD-201405491
Ashley Harden
General Counsel
Comptroller of Public Accounts
Effective date: January 1, 2015
Proposal publication date: May 30, 2014
For further information, please call: (512) 475-0387

## SUBCHAPTER R. TRANSIT SALES AND USE TAX

### 34 TAC §§3.421 - 3.429

The Comptroller of Public Accounts adopts the repeal of Subchapter R, concerning Transit Sales and Use Tax, without changes to the proposed text as published in the May 30, 2014, issue of the *Texas Register* (39 TexReg 4191). The content of §3.422 (Adopting, Increasing, Decreasing, or Abolishing Transit (MTA) Tax) and §3.423 (Change or Alteration of Authority Boundaries; Withdrawal from Authority; Notification Required) is being repealed entirely and will not be included in another section of this or another subchapter. The content of §3.424 (Collection and Allocation of Transit Sales Tax), §3.429 (Contractors), §3.427 (Divergent Use of a Direct Payment, Resale, or Exemption Certificate), §3.421 (Effect of Rules; Permits and Certificates; Exclusion of Certain Sales of Qualified Retailers), §3.428 (Natural Gas and Electricity), §3.426 (Prior Contract Exemptions), and §3.425 (Use Tax) will be included as appropriate and updated in new §3.334 of this title, Local Sales and Use Taxes.

No comments were received regarding adoption of the repeals.

These repeals are adopted under Tax Code, §111.002, which provides the comptroller with the authority to prescribe, adopt, and enforce rules relating to the administration and enforcement of the provisions of Tax Code, Title 2. These repeals implement Tax Code, Chapter 322, Sales and Use Tax for Special Purpose Taxing Authorities.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on November 18, 2014.

TRD-201405492
Ashley Harden
General Counsel
Comptroller of Public Accounts
Effective date: January 1, 2015
Proposal publication date: May 30, 2014
For further information, please call: (512) 475-0387



# APPENDIX H

requirement of a delegation agreement or contract between the state and an agency or representative of the federal government to implement a state and federal program; and 4) is not proposed solely under the general powers of the agency, but rather it is also proposed under authority of Texas Water Code §6.104. Therefore, this adopted rule does not fall under any of the applicability criteria in Texas Government Code §2001.0225.

TAKINGS IMPACT ASSESSMENT

The board evaluated this adopted rule and performed an analysis of whether it constitutes a taking under Texas Government Code, Chapter 2007. The specific purpose of this rule is to adopt by rule the MOU between TDA and the TWDB as required by Texas Water Code §6.104.

The board's analysis indicates that Texas Government Code, Chapter 2007 does not apply to this adopted rule because this is an action that is reasonably taken to fulfill an obligation mandated by state law, which is exempt under Texas Government Code §2007.003(b)(4). Nevertheless, the board further evaluated this adopted rule and performed an assessment of whether it constitutes a taking under Texas Government Code, Chapter 2007. Promulgation and enforcement of this adopted rule would be neither a statutory nor a constitutional taking of private real property. Specifically, the subject adopted regulation does not affect a landowner's rights in private real property because this rulemaking does not burden nor restrict or limit the owner's right to property and reduce its value by 25% or more beyond that which would otherwise exist in the absence of the regulation. Therefore, the adopted rule does not constitute a taking under Texas Government Code, Chapter 2007.

PUBLIC COMMENT

No comments were received.

STATUTORY AUTHORITY.

These amendments are adopted under Texas Water Code §6.104, which requires the TWDB to adopt by rule any memorandum of understanding between the TWDB and any other state agency and General Appropriations Act, SB 1, 83rd Leg., R.S., Rider 8, page VI-56 of the TWDB budget.

This adoption affects Texas Water Code §6.104.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on December 15, 2015.

TRD-201505649
Les Trobman
General Counsel
Texas Water Development Board
Effective date: January 4, 2016
Proposal publication date: September 11, 2015
For further information, please call: (512) 463-8061

♦ ♦ ♦

# TITLE 34. PUBLIC FINANCE

# PART 1. COMPTROLLER OF PUBLIC ACCOUNTS

# CHAPTER 3. TAX ADMINISTRATION
## SUBCHAPTER F. MOTOR VEHICLE SALES TAX

### 34 TAC §3.68

The Comptroller of Public Accounts adopts an amendment to §3.68, United States and foreign military personnel stationed in Texas, without changes to the proposed text as published in the November 6, 2015, issue of the *Texas Register* (40 TexReg 7795). The citation to the Transportation Code in subsection (c)(1) is amended to reflect the redesignation of Transportation Code, §520.031 to §501.145 by House Bill 2357, 82nd Legislature, 2011.

No comments were received regarding adoption of the amendment.

This amendment is adopted under Tax Code, §111.002, which provides the comptroller with the authority to prescribe, adopt, and enforce rules relating to the administration and enforcement of the provisions of Tax Code, Title 2.

The amendment implements Transportation Code, §501.145 (Filing by Purchaser; Application for Transfer of Title).

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on December 18, 2015.

TRD-201505833
Lita Gonzalez
General Counsel
Comptroller of Public Accounts
Effective date: January 7, 2016
Proposal publication date: November 6, 2015
For further information, please call: (512) 475-0387

♦ ♦ ♦

## SUBCHAPTER O. STATE AND LOCAL SALES AND USE TAXES

### 34 TAC §3.334

The Comptroller of Public Accounts adopts amendments to §3.334, concerning local sales and use taxes, with changes to the proposed text as published in the June 19, 2015, issue of the *Texas Register* (40 TexReg 3745). This section is amended to make nonsubstantive changes to definitions and to clarify longstanding comptroller practice regarding a seller's tax collection responsibilities when the seller is not engaged in business in a local jurisdiction.

The definition of the term "Comptroller's website" in subsection (a)(4) is amended to update the agency web address which was changed based on the Internet and Email Domain Name Management Policy from the Texas Department of Information Resources.

The definition of "place of business" in subsection (a)(14) is amended to clarify that the term "contractors" within that definition refers to a natural person who is contracted to perform work or services for another. As used in this subsection, the

term does not have the meaning assigned by §3.291 of this title (relating to Contractors). The definition is also amended to change the term "individual persons" to "natural persons" in order to clarify that the term refers to single persons and does not refer to entities recognized as having legal rights as persons.

Subsection (e) is amended to correct the subsection cited in a cross-reference to the term "place of business." The citation is changed from subsection (a)(13) to subsection (a)(14).

The comptroller received written comments from Renn Neilson of Baker Botts LLP. The comments expressed concern that §3.334(e)(4)(D) relating to the Dickinson Management District conflicts with Special District Local Laws Code, §3853.202(d).

The comptroller's position on the Dickinson Management District has not changed. It is the comptroller's view that Special District Local Laws Code, §3853.202(d) violates Article III, Section 56 of the Texas Constitution, concerning Local and Special Laws, because it attempts to relieve the comptroller's office of the duties delegated to it by Tax Code, Chapter 321. Further, the comptroller believes that the general law codified as Tax Code, §321.002(a)(3) and §321.203(m) is a later-amended general provision that applies in place of the preexisting local law. However, the comptroller agrees the agency may not invalidate a statute through the adoption of an administrative rule, and subsection (e)(4)(D) is therefore deleted.

Subsection (g) is amended to clarify a seller's local sales tax collection responsibilities. New paragraph (3) is added to specify that a seller is only required to collect local sales or use taxes imposed by a local taxing jurisdiction in which the seller is engaged in business. Existing paragraphs (3) and (4) are renumbered as paragraphs (4) and (5) respectively and delete repetitive language in subsection (h)(1).

The comptroller received written comments from John Kroll representing HMWK, LLC. These comments expressed concern that the amendment to subsection (g) regarding a seller's tax collection responsibilities are not supported by the plain language of Tax Code, Chapter 321.

Under current policy, a seller's collection responsibilities are limited to those local taxing jurisdictions in which the seller is "engaged in business." In the May 30, 2014, issue of the *Texas Register* (39 TexReg 4175), the comptroller proposed ending the "engaged in business" limitation on sellers' obligation for collecting local tax and instead requiring all sellers with nexus in the state to collect all local taxes that are due. Comments received on this proposal expressed concern that the deletion of the "engaged in business" requirement would violate the due process and commerce clauses of the U.S. Constitution. In response to the comments provided, the comptroller decided not to change sellers' local tax collection obligations when §3.334 was adopted in the December 5, 2014, issue of the *Texas Register* (39 TexReg 9597). The amendment to subsection (g) is a nonsubstantive change that clarifies longstanding comptroller practice. The proposed amendment is adopted without further change.

Subsection (h)(1) is also amended to clarify that a seller must only collect local sales taxes for those local taxing jurisdictions in which the seller is engaged in business. Paragraph (6)(C)(iii) is amended to add the phrase "in person," as orders are placed in person at temporary places of business.

This amendment is adopted under Tax Code, §111.002, which provides the comptroller with the authority to prescribe, adopt,

and enforce rules relating to the administration and enforcement of the provisions of Tax Code, Title 2.

The amendment implements Tax Code, Chapters 321 (Municipal Sales and Use Tax Act), 322 (Sales and Use tax for Special Purpose Taxing Authorities), and 323 (County Sales and Use Tax Act).

*§3.334.    Local Sales and Use Taxes.*

(a)    Definitions.  The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

(1)    Cable system--The system through which a cable service provider delivers cable television or bundled cable service, as those terms are defined in §3.313 of this title (relating to Cable Television Service and Bundled Cable Service).

(2)    City--An incorporated city, municipality, town, or village.

(3)    City sales and use tax--The tax authorized under Tax Code, §321.101(a), including the additional municipal sales and use tax authorized under Tax Code, §321.101(b), the municipal sales and use tax for street maintenance authorized under Tax Code, §327.003, the Type A Development Corporation sales and use tax authorized under Local Government Code, §504.251, the Type B Development Corporation sales and use tax authorized under Local Government Code, §505.251, a sports and community venue project sales and use tax adopted by a city under Local Government Code, §334.081, and a municipal development corporation sales and use tax adopted by a city under Local Government Code, §379A.081.  The term does not include the fire control, prevention, and emergency medical services district sales and use tax authorized under Tax Code, §321.106, or the municipal crime control and prevention district sales and use tax authorized under Tax Code, §321.108.

(4)    Comptroller's website--The agency's website concerning local taxes located at: http://comptroller.texas.gov/taxinfo/local/.

(5)    County sales and use tax--The tax authorized under Tax Code, §323.101, including a sports and community venue project sales and use tax adopted by a county under Local Government Code, §334.081.  The term does not include the county health services sales and use tax authorized under Tax Code, §324.021, the county landfill and criminal detention center sales and use tax authorized under Tax Code, §325.021, or the crime control and prevention district sales and use tax authorized under Tax Code, §323.105.

(6)    Drop shipment--A transaction in which an order is received by a seller at one location, but the item purchased is shipped by the seller from another location, or is shipped by the seller's third-party supplier, directly to a location designated by the purchaser.

(7)    Engaged in business--This term has the meaning given in §3.286 of this title (relating to Seller's and Purchaser's Responsibilities, including Nexus, Permits, Returns and Reporting Periods, and Collection and Exemption Rules).

(8)    Extraterritorial jurisdiction--An unincorporated area that is contiguous to the corporate boundaries of a city as defined in Local Government Code, §42.021

(9)    Fulfill--To complete an order by transferring a taxable item directly to a purchaser at a Texas location, or to ship or deliver a taxable item to a location in Texas designated by the purchaser.

(10)    Itinerant vendor--A person who travels to various locations for the purpose of receiving orders and making sales of taxable items and who does not operate a place of business.  For example, a

person who sells rugs from the back of a truck that the person drives to a different location each day is an itinerant vendor. A person who sells items through vending machines is also an itinerant vendor. A salesperson that operates out of an office, place of business, or other location that provides administrative support to the salesperson is not an itinerant vendor.

　　　(11)　Kiosk--A small stand-alone area or structure:

　　　　　(A)　that is used solely to display merchandise or to submit orders for taxable items from a data entry device, or both;

　　　　　(B)　that is located entirely within a location that is a place of business of another seller, such as a department store or shopping mall; and

　　　　　(C)　at which taxable items are not available for immediate delivery to a purchaser.

　　　(12)　Local taxes--Sales and use taxes imposed by any local taxing jurisdiction.

　　　(13)　Local taxing jurisdiction--Any of the following:

　　　　　(A)　a city that imposes sales and use tax as provided under paragraph (3) of this subsection;

　　　　　(B)　a county that imposes sales and use tax as provided under paragraph (5) of this subsection;

　　　　　(C)　a special purpose district created under the Special District Local Laws Code or other provisions of Texas law that is authorized to impose sales and use tax by the Tax Code or other provisions of Texas law and as governed by the provisions of Tax Code, Chapters 321 or 323 and other provisions of Texas law; or

　　　　　(D)　a transit authority that imposes sales and use tax as authorized by Transportation Code, Chapters, 451, 452, 453, 457, or 460 and governed by the provisions of Tax Code, Chapter, 322.

　　　(14)　Place of business - general definition--An established outlet, office, or location operated by a seller for the purpose of selling taxable items to those other than employees, independent contractors, and natural persons affiliated with the seller. Places of business include, but are not limited to, call centers, showrooms, and clearance centers. The term also includes any location operated by a seller at which the seller receives three or more orders for taxable items during a calendar year. For example, a home office at which three or more items are sold through an online auction website is a place of business. Additional criteria for determining when a location is a place of business are provided in subsection (e) of this section for administrative offices; distribution centers, manufacturing plants, storage yards, warehouses and similar facilities; kiosks; and purchasing offices.

　　　(15)　Purchasing office--An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business.

　　　(16)　Seller--This term has the meaning given in §3.286 of this title and also refers to any agent or employee of the seller.

　　　(17)　Special purpose district--A local governmental entity authorized by the Texas legislature for a specific purpose, such as crime control, a local library, emergency services, county health services, or a county landfill and criminal detention center.

　　　(18)　Storage--This term has the meaning given in §3.346 of this title (relating to Use Tax).

　　　(19)　Temporary place of business--A location operated by a seller for a limited period of time for the purpose of selling and receiving orders for taxable items and where the seller has inventory available for immediate delivery to a purchaser. For example, a person who rents a booth at a weekend craft fair or art show to sell and take orders for jewelry, or a person who maintains a facility at a job site to rent tools and equipment to a contractor during the construction of real property, has established a temporary place of business.

　　　(20)　Transit authority--A metropolitan rapid transit authority (MTA), advanced transportation district (ATD), regional or subregional transportation authority (RTA), city transit department (CTD), county transit authority (CTA), regional mobility authority (RMA) or coordinated county transportation authority created under Transportation Code, Chapters 370, 451, 452, 453, 457, or 460.

　　　(21)　Traveling salesperson--A seller, or an agent or employee of a seller, who visits potential purchasers in person to solicit sales, and who does not carry inventory ready for immediate sale, but who may carry samples or perform demonstrations of items for sale.

　　　(22)　Two percent cap--A reference to the general rule that, except as otherwise provided by Texas law and as explained in this section, a seller cannot collect, and a purchaser is not obligated to pay, more than 2.0% of the sales price of a taxable item in total local sales and use taxes for all local taxing jurisdictions

　　　(23)　Use--This term has the meaning given in §3.346 of this title.

　　　(24)　Use tax--A tax imposed on the storage, use or other consumption of a taxable item in this state.

　　(b)　Effect of other law.

　　　(1)　Tax Code, Title 2, Subtitles A (General Provisions) and B (Enforcement and Collection), Tax Code, Chapter 141 (Multistate Tax Compact) and Tax Code, Chapter 151 (Limited Sales, Excise, and Use Tax) apply to transactions involving local taxes. Related sections of this title and comptroller rulings shall also apply with respect to local taxes. This includes authorities such as court cases and federal law that affect whether an item is taxable or is excluded or exempt from taxation.

　　　(2)　Permits, exemption certificates, and resale certificates required by Tax Code, Chapter 151, shall also satisfy the requirements for collecting and remitting local taxes, unless otherwise indicated by this section or other sections of this title. For example, see subsection (n) of this section concerning prior contract exemptions.

　　　(3)　Any provisions in this section or other sections of this title related to a seller's responsibilities for collecting and remitting local taxes to the comptroller shall also apply to a purchaser if the seller does not collect local taxes that are due. The comptroller may proceed against the seller or purchaser for the local tax owed by either.

　　(c)　Tax rates. Except as otherwise provided by law, no local governmental entity may adopt or increase a sales and use tax if, as a result of the adoption or increase of the tax, the combined rate of all sales and use taxes imposed by local taxing jurisdictions having territory in the local governmental entity would exceed 2.0% at any location within the boundaries of the local governmental entity's jurisdiction. The following are the local tax rates that may be adopted.

　　　(1)　Cities. Cities may impose sales and use tax at a rate of up to 2.0%.

　　　(2)　Counties. Counties may impose sales and use tax at rates ranging from 0.5% to 1.5%.

(3)   Special purpose districts. Special purpose districts may impose sales and use tax at rates ranging from 0.125% to 2.0%.

(4)   Transit authorities.   Transit authorities may impose sales and use tax at rates ranging from 0.25% to 1.0%.

(d)   Jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements.

(1)   Jurisdictional boundaries.

(A)   City boundaries. City taxing jurisdictional boundaries cannot overlap one another and a city cannot impose a sales and use tax in an area that is already within the jurisdiction of another city.

(B)   County boundaries. County tax applies to all locations within that county.

(C)   Special purpose district and transit authority boundaries.   Special purpose districts and transit authorities may cross or share boundaries with other local taxing jurisdictions and may encompass, in whole or in part, other local taxing jurisdictions, including cities and counties. A geographic location or address in this state may lie within the boundaries of more than one special purpose district or more than one transit authority.

(D)   Extraterritorial jurisdictions.  Except as otherwise provided by paragraph (3) of this subsection concerning strategic partnership agreements and subsection (l)(5) of this section concerning the City of El Paso and Fort Bliss, city sales and use tax does not apply to taxable sales that are consummated outside the boundaries of the city, including sales made in a city's extraterritorial jurisdiction. However, an extraterritorial jurisdiction may lie within the boundaries of a special purpose district, transit authority, county, or any combination of the three, and the sales and use taxes for those jurisdictions would apply to those sales.

(2)   Combined areas. A combined area is an area where the boundaries of a city overlap the boundaries of one or more other local taxing jurisdictions as a result of an annexation of additional territory by the city, and where, as the result of the imposition of the city tax in the area in addition to the local taxes imposed by the existing taxing jurisdictions, the combined local tax rate would exceed 2.0%. The comptroller shall make accommodations to maintain a 2.0% rate in any combined area. Sellers engaged in transactions on which local sales or use taxes are due in a combined area, or persons who must self-accrue and remit tax directly to the comptroller, must use the combined area local code when reporting the tax rather than the codes for the individual city, county, special purpose districts, or transit authorities that make up the combined area. The comptroller shall distribute the tax revenue generated in these combined areas to the local taxing jurisdictions located in the combined areas as provided in Tax Code, §321.102 or Health and Safety Code, §775.0754. Combined areas are identified on the comptroller's website.

(3)   City tax imposed through strategic partnership agreements.

(A)   The governing bodies of a district, as defined in Local Government Code, §43.0751, and a city may enter into a limited-purpose annexation agreement known as a strategic partnership agreement. Under this agreement, the city may impose sales and use tax within all or part of the boundaries of a district. Areas within a district that are annexed for this limited purpose are treated as though they are within the boundaries of the city for purposes of city sales and use tax.

(B)   Counties, transit authorities, and special purpose districts may not enter into strategic partnership agreements.   Sales and use taxes imposed by those taxing jurisdictions do not apply in the limited-purpose annexed area as part of a strategic partnership agreement between a city and an authorized district.  However, a county, special purpose district, or transit authority sales and use tax, or any combination of these three types of taxes, may apply at locations included in a strategic partnership agreement between a city and an authorized district if the tax is imposed in that area by the applicable jurisdiction as allowed under its own controlling authorities.

(C)   Prior to September 1, 2011, the term "district" was defined in Local Government Code, §43.0751 as a municipal utility district or a water control and improvement district.  The definition was amended effective September 1, 2011, to mean a conservation and reclamation district operating under Water Code, Chapter 49.

(e)   Place of business - special definitions.  In addition to the general definition of the term "place of business" in subsection (a)(14) of this section, the following rules apply.

(1)   Administrative offices supporting traveling salespersons.  Any outlet, office, or location operated by a seller that serves as a base of operations for a traveling salesperson or that provides administrative support to a traveling salesperson is a place of business.

(2)   Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A)   A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller at which the seller receives three or more orders for taxable items during the calendar year is a place of business.

(B)   If a salesperson who receives three or more orders for taxable items within a calendar year is assigned to work from, or to work at, a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the facility is a place of business.

(C)   If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the entire facility is a place of business of the seller.

(3)   Kiosks. A kiosk is not a place of business for the purpose of determining where a sale is consummated for local tax purposes.  A seller who owns or operates a kiosk in Texas is, however, engaged in business in this state as provided in §3.286 of this title.

(4)   Purchasing offices.

(A)   A purchasing office is not a place of business if the purchasing office exists solely to rebate a portion of the local sales and use tax imposed by Tax Code, Chapter 321 or 323 to a business with which it contracts; or if the purchasing office functions or exists to avoid the tax legally due under Tax Code, Chapter 321 or 323. A purchasing office does not exist solely to rebate a portion of the local sales and use tax or to avoid the tax legally due under Tax Code, Chapter 321 or 323 if the purchasing office provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services.

(B)   When the comptroller determines that a purchasing office is not a place of business, the sale of any taxable item is deemed to be consummated at the place of business of the seller from whom the purchasing office purchased the taxable item for resale and local sales and use taxes are due according to the following rules.

(i)   When taxable items are purchased from a Texas seller, local sales taxes are due based on the location of the seller's place

of business where the sale is deemed to be consummated, as determined in accordance with subsection (h) of this section.

(ii) When the sale of a taxable item is deemed to be consummated at a location outside of this state, local use tax is due based on the location where the items are first stored, used or consumed by the entity that contracted with the purchasing office in accordance with subsection (i) of this section.

(C) In making a determination under subparagraph (A) of this paragraph, as to whether a purchasing office provides significant business services to the contracting business, the comptroller will look to the books and records of the purchasing office to determine whether the total value of the business services provided to the contracting business equals or exceeds the total value of processing invoices. If the total value of the business services provided, including logistics management, purchasing, inventory control, or other vital business services, is less than the total value of the service to process invoices, then the purchasing office will be presumed not to be a place of business of the seller.

(f) Places of business and job sites crossed by local taxing jurisdiction boundaries.

(1) Places of business crossed by local taxing jurisdiction boundaries. If a place of business is crossed by one or more local taxing jurisdiction boundaries so that a portion of the place of business is located within a taxing jurisdiction and the remainder of the place of business lies outside of the taxing jurisdiction, tax is due to the local taxing jurisdictions in which the sales office is located. If there is no sales office, sales tax is due to the local taxing jurisdictions in which any cash registers are located.

(2) Job sites.

(A) Residential repair and remodeling; new construction of an improvement to realty. When a contractor is improving real property under a separated contract, and the job site is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on any separately stated charges for taxable items incorporated into the real property must be allocated to the local taxing jurisdictions based on the total square footage of the real property improvement located within each jurisdiction, including the square footage of any standalone structures that are part of the construction, repair, or remodeling project. For more information about tax due on materials used at residential and new construction job sites, refer to §3.291 of this title (relating to Contractors).

(B) Nonresidential real property repair and improvement. When taxable services are performed to repair, remodel, or restore nonresidential real property, including a pipeline, transmission line, or parking lot, that is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on the taxable services, including materials and any other charges connected to the services performed, must be allocated among the local taxing jurisdictions based upon the total mileage or square footage, as appropriate, of the repair, remodeling, or restoration project located in each jurisdiction. For more information about tax due on materials used at nonresidential real property repair and remodeling job sites, refer to §3.357 of this title (relating to Nonresidential Real Property Repair, Remodeling, and Restoration; Real Property Maintenance).

(g) Sellers' and purchasers' responsibilities for collecting or accruing local taxes.

(1) Sale consummated in Texas; seller responsible for collecting local sales taxes and applicable local use taxes. When a sale of a taxable item is consummated at a location in Texas as provided by subsection (h) of this section, the seller must collect each local sales tax in effect at the location except as provided in paragraph (3) of this subsection. If the total rate of local sales tax due on the sale does not reach the two percent cap, and the seller ships or delivers the item into another local taxing jurisdiction in which the seller is engaged in business, then the seller is required to collect additional local use taxes due, if any, based on the location to which the item is shipped or delivered. For more information regarding local use taxes, refer to subsection (i) of this section.

(2) Out-of-state sale; seller engaged in business in Texas. A seller who is engaged in business in this state is required to collect and remit local use taxes due, if any, on orders of taxable items shipped or delivered at the direction of the purchaser into a local taxing jurisdiction in this state in which the seller is engaged in business.

(3) A seller is only required to collect local sales or use taxes for a local taxing jurisdiction in which the seller is engaged in business.

(4) Purchaser responsible for accruing and remitting local taxes if seller fails to collect.

(A) If a seller does not collect the state sales tax, any applicable local sales taxes, or both on a sale of a taxable item that is consummated in Texas, then the purchaser is responsible for filing a return and paying the tax. The local sales taxes due are based on the location in this state where the sale is consummated as provided in subsection (h) of this section.

(B) A purchaser who buys an item for use in Texas from a seller who does not collect the state use tax, any applicable local use taxes, or both, is responsible for filing a return and paying the tax. The local use taxes due are based on the location where the item is first stored, used, or consumed by the purchaser.

(C) For more information about how to report and pay use tax directly to the comptroller, see §3.286 of this title.

(5) Local tax is due on the sales price of a taxable item, as defined in Tax Code, §151.007, in the report period in which the taxable item is purchased or the period in which the taxable item is first stored, used, or otherwise consumed in a local taxing jurisdiction.

(h) Local sales tax. Determining the local taxing jurisdictions to which sales tax is due; consummation of sale.

(1) General rule. Except for the special rules applicable to direct payment permit purchases and certain taxable items as provided in subsections (j) and (k) of this section, each sale of a taxable item is consummated at the location indicated by the provisions of this subsection. Local sales taxes are due to each local taxing jurisdiction in effect at the location where the sale is consummated. Local use tax may also be due if the total amount of local sales taxes due does not reach the two percent cap, and the item purchased is shipped or delivered to a location in one or more different local taxing jurisdictions, as provided in subsection (i) of this section.

(2) Multiple special purpose district taxes, multiple transit authority sales taxes, or a combination of the two may apply to a single transaction. If the sale of a taxable item is consummated at a location within the boundaries of multiple special purpose districts or transit authorities, local sales tax is owed to each of the jurisdictions in effect at that location. For example, a place of business located in the city of San Antonio is within the boundaries of both the San Antonio Advanced Transportation District and the San Antonio Metropolitan Transit Authority, and the seller is required to collect sales tax for both transit authorities. Similarly, a place of business in Flower Mound is located within the boundaries of two special purpose districts, the Flower Mound Crime Control District and the Flower Mound Fire Control Dis-

trict, and the seller is responsible for collecting sales tax for both special purpose districts.

(3) Consummation of sale. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have a place of business in Texas or multiple places of business in the state.

(A) Order placed in person at a seller's place of business in Texas. When a purchaser places an order for a taxable item in person at a seller's place of business in Texas, the sale of that item is consummated at that place of business, regardless of the location where the order is fulfilled, except in the limited circumstances described in subparagraph (F) of this paragraph, concerning qualifying economic development agreements.

(B) Order received at a place of business in Texas, fulfilled at a location that is not a place of business. When an order that is placed over the telephone, through the Internet, or by any means other than in person is received by the seller at a place of business in Texas, and the seller fulfills the order at a location that is not a place of business of the seller in Texas, such as a warehouse or distribution center, the sale is consummated at the place of business at which the order for the taxable item is received.

(C) Order fulfilled at a place of business in Texas. When an order is placed in person at a location that is not a place of business of the seller in this state, such as a kiosk, or when an order is placed over the telephone, through the Internet, or by any means other than in person, and the seller fulfills the order at a location that is a place of business in Texas, the sale is consummated at the place of business where the order is fulfilled.

(D) Order fulfilled within the state at a location that is not a place of business. When an order is received by a seller at any location other than a place of business of the seller in this state, and the seller fulfills the order at a location in Texas that is not a place of business of the seller, then the sale is consummated at the location in Texas to which the order is shipped or delivered, or the location where it is transferred to the purchaser.

(E) Order received outside of the state, fulfilled outside of the state. When an order is received by a seller at a location outside of Texas, and the order is shipped or delivered into a local taxing jurisdiction from a location outside of the state, the sale is not consummated at a location in Texas. However, local use tax is due based upon the location in this state to which the item is shipped or delivered or at which possession of the item is taken by the purchaser as provided in subsection (i) of this section.

(F) Exception for qualifying economic development agreements entered into before January 1, 2009, pursuant to Tax Code, §321.203(c-4) - (c-5) or §323.203(c-4) - (c-5). This subparagraph is effective until September 1, 2024. If applicable, the local sales tax due on the sale of a taxable item is based on the location of the qualifying warehouse, which is a place of business of the seller, from which the item is shipped or delivered or at which the purchaser takes possession of the item.

(4) Orders received by traveling salespersons. Orders taken by traveling salespersons are received by the seller at the administrative office or other place of business from which the traveling salesperson operates, and such sales are consummated at the location indicated in paragraph (3) of this subsection. For example, if a traveling salesperson who operates out of a place of business of a seller in Texas takes an order for a taxable item, and the order is fulfilled at a location that is not a place of business of the seller in this state, the sale is consummated at the place of business from which

the salesperson operates, in accordance with paragraph (3)(B) of this subsection. Similarly, if a traveling salesperson takes an order for a taxable item, and the order is fulfilled at a place of business of the seller in this state, the sale is consummated at the location of the place of business where the order is fulfilled, in accordance with paragraph (3)(C) of this subsection.

(5) Drop shipments.

(A) When an order for a taxable item is received at a seller's place of business in Texas, or by a traveling salesperson operating out of a place of business in this state, and the item is drop-shipped directly to the purchaser from a third-party supplier, the sale is consummated at, and local sales tax is due based upon, the location of the place of business where the order is received. When an order for a taxable item is received by a seller at one location, but shipped by the seller to the purchaser from a different location, the sale is consummated at, and local sales tax is due based upon, the location designated in paragraph (3) of this subsection. If the local sales taxes due based on the location of the seller's place of business at which the sale is consummated equal less than 2.0%, additional local use tax may be due based upon the location in this state to which the purchased item is shipped or delivered or at which possession of the item is taken by the purchaser as provided in subsection (i) of this section.

(B) When an order for a taxable item is received by the seller at a location outside of Texas, or by a traveling salesperson operating from a location outside of this state, and the item is drop-shipped directly to the purchaser from a third-party supplier, the item is subject to use tax. See subsection (i) of this section concerning use tax.

(6) Itinerant vendors; vending machines; temporary places of business.

(A) Itinerant vendors. Sales made by itinerant vendors are consummated at, and itinerant vendors must collect sales tax based upon, the location where the item is delivered or where the purchaser takes possession of the item. Itinerant vendors do not have any responsibility to collect use tax.

(B) Vending machines. Sales of taxable items made from a vending machine are consummated at the location of the vending machine. See §3.293 of this title (relating to Food; Food Products; Meals; Food Service) for more information about vending machine sales.

(C) Temporary places of business.

(i) Item transferred to purchaser at time of sale. When a seller operates a temporary place of business, and items purchased are transferred to the purchasers at the time of sale, the sales are consummated at, and local sales tax is due based upon, the location of the temporary place of business.

(ii) Order accepted at temporary place of business prior to June 19, 2009. If a seller received an order at a temporary place of business prior to June 19, 2009, and the order was fulfilled at another place of business of the seller in this state, the sale was consummated at, and local sales taxes are due based upon, the location of the place of business where the order was fulfilled and not the temporary location where the order was received.

(iii) Order accepted at temporary place of business on or after June 19, 2009. When a seller receives an order in person at a temporary place of business and the order is fulfilled at another location, the sale is consummated at, and local sales taxes are due based upon, the location of the temporary place of business where the order was received.

(i)   Use tax. The provisions addressing the imposition of state use tax in §3.346 of this title also apply to the imposition of local use tax. For example, consistent with §3.346(e) of this title, all taxable items that are shipped or delivered to a location in this state that is within the boundaries of a local taxing jurisdiction are presumed to have been purchased for use in that local taxing jurisdiction as well as presumed to have been purchased for use in the state.

(1)   General rules.

(A)   When local use taxes are due in addition to local sales taxes as provided by subsection (h) of this section, all applicable use taxes must be collected or accrued in the following order until the two percent cap is reached: city, county, special purpose district, and transit authority. If more than one special purpose district use tax is due, all such taxes are to be collected or accrued before any transit authority use tax is collected or accrued. See subparagraphs (D) and (E) of this paragraph.

(B)   If a local use tax cannot be collected or accrued at its full rate without exceeding the two percent cap, the seller cannot collect it, or any portion of it, and the purchaser is not responsible for accruing it.

(C)   If a seller collects a local sales tax on an item, or a purchaser accrues a local sales tax on an item, a use tax for the same type of jurisdiction is not due on the same item. For example, once a city sales tax has been collected or accrued for an item, no use tax is due to that same or a different city on that item, but use tax may be due to a county, special purpose district, or transit authority. Similarly, if one or more special purpose district sales taxes have been collected or accrued for an item, no special purpose district use tax is due on that item, and if one or more transit authority sales taxes have been collected or accrued for an item, no transit authority use tax is due on that item.

(D)   Collection or accrual of use tax for multiple special purpose districts. If more than one special purpose district use tax is in effect at the location where use of an item occurs, the special purpose district taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all special purpose district taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the district with the earliest effective date would exceed the two percent cap, the tax for that district is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (C) of this paragraph, whether use tax is due for the district that next became effective.

(i)   If the competing special purpose districts became effective on the same date, the special purpose district taxes are due in the order of the earliest date for which the election in which the district residents authorized the imposition of sales and use tax by the district was held.

(ii)   If the elections to impose the local taxes were held on the same date, the special purpose district taxes are due in the order of the earliest date for which the enabling legislation under which each district was created became effective.

(E)   Collection or accrual of use tax for multiple transit authorities. If more than one transit authority use tax is in effect at the location where use of an item occurs, and the two percent cap has not been met, the transit authority taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all transit authority taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the authority with the earliest effective date would exceed the two percent cap, the tax for that authority is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (D) of this paragraph, whether use tax is due for the authority that next became effective.

(i)   If the competing transit authorities became effective on the same date, the transit authority taxes are due in the order of the earliest date for which the election in which the authority residents authorized the imposition of sales and use tax by the authority was held.

(ii)   If the elections to impose local taxes were held on the same date, the transit authority use taxes are due in the order of the earliest date for which the enabling legislation under which each authority was created became effective.

(2)   General use tax rules applied to specific situations. The following fact patterns explain how local use tax is to be collected or accrued and remitted to the comptroller based on, and subject to, the general rules in paragraph (1) of this subsection.

(A)   Sale consummated outside the state, item delivered from outside the state or from a location in Texas that is not operated by the seller - local use tax due. If a sale is consummated outside of this state according to the provisions of subsection (h) of this section, and the item purchased is either shipped or delivered to a location in this state as designated by the purchaser from a location outside of the state, or if the order is drop shipped directly to the purchaser from a third-party supplier, local use tax is owed based upon the location in this state to which the order is shipped or delivered. If the seller is engaged in business in the local taxing jurisdiction into which the order is shipped or delivered, the seller is responsible for collecting the local use tax due on the sale. If the seller does not collect the local use taxes due on the sale, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller according to the provisions in paragraph (1) of this subsection. For example, if an order for a taxable item is received by a seller at a location outside of Texas, and the order is shipped to the purchaser from a location outside of the state, local use tax is due based upon the location to which the order is shipped or delivered.

(B)   Sale consummated in Texas outside a local taxing jurisdiction, item delivered into one or more local taxing jurisdictions - local use tax due. If a sale is consummated at a location in Texas that is outside of the boundaries of any local taxing jurisdiction according to the provisions of subsection (h) of this section, and the order is shipped or delivered to the purchaser at a location in this state that is within the boundaries of one or more local taxing jurisdictions, local use tax is due based on the location to which the items are shipped or delivered. If the seller is engaged in business in the local taxing jurisdiction where the items are shipped or delivered, the seller is responsible for collecting the local use taxes due. If the seller fails to collect any local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller. For example, if a seller uses its own delivery vehicle to transport a taxable item from a place of business that is outside the boundaries of a local taxing jurisdiction to a delivery location designated by a purchaser that is inside the boundaries of a local taxing jurisdiction, the seller is responsible for collecting the local use taxes due based on the location to which the items are delivered.

(C)   Sale consummated in any local taxing jurisdictions imposing less than 2.0% in total local taxes - local sales taxes, and possibly use taxes, due. If a sale is consummated at a location in Texas where the total local sales tax rate imposed by the taxing jurisdictions in effect at that location does not equal or exceed 2.0% according to the provisions of subsection (h) of this section, and the item is shipped or delivered to the purchaser at a location in this state that is inside the boundaries of a different local taxing jurisdiction, additional local use tax may be due based on the location to which the order is shipped or

delivered, subject to the two percent cap. If the seller is engaged in business in the local taxing jurisdiction into which the order is shipped or delivered, the seller is responsible for collecting any additional local use taxes due. See subsection (g) of this section. If the seller fails to collect the additional local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller. For example, if an order is received in person at a place of business of the seller, such that the sale is consummated at the location where the order is received as provided under subsection (h)(3)(A) of this section, and the local sales tax due on the sale does not meet the two percent cap, additional local use taxes may be due based on the location to which the order is shipped or delivered, subject to the provisions in paragraph (1) of this subsection. Or, if a purchaser places an order for a taxable item at a seller's place of business in Texas, and the seller ships or delivers the item from an out-of-state location to a location in this state as designated by the purchaser, local sales tax is due based upon the location of the place of business where the order is received. If the local sales tax due on the item does not meet the two percent cap, use tax, subject to the provisions in paragraph (1) of this subsection, is due based upon the location where the items are shipped or delivered.

(j) Items purchased under a direct payment permit.

(1) When taxable items are purchased under a direct payment permit, local use tax is due based upon the location where the permit holder first stores the taxable items, except that if the taxable items are not stored, then local use tax is due based upon the location where the taxable items are first used or otherwise consumed by the permit holder.

(2) If, in a local taxing jurisdiction, storage facilities contain taxable items purchased under a direct payment exemption certificate and at the time of storage it is not known whether the taxable items will be used in Texas, then the taxpayer may elect to report the use tax either when the taxable items are first stored in Texas or are first removed from inventory for use in Texas, as long as use tax is reported in a consistent manner. See also §3.288(i) of this title (relating to Direct Payment Procedures and Qualifications) and §3.346(g) of this title.

(3) If local use tax is paid on stored items that are subsequently removed from Texas before they are used, the tax may be recovered in accordance with the refund and credit provisions of §3.325 of this title (relating to Refunds and Payments Under Protest) and §3.338 of this title (relating to Multistate Tax Credits and Allowance of Credit for Tax Paid to Suppliers).

(k) Special rules for certain taxable goods and services. Sales of the following taxable goods and services are consummated at, and local tax is due based upon, the location indicated in this subsection.

(1) Amusement services. Local tax is due based upon the location where the performance or event occurs. For more information on amusement services, refer to §3.298 of this title (relating to Amusement Services).

(2) Cable services. When a service provider uses a cable system to provide cable television or bundled cable services to customers, local tax is due as provided for in §3.313 of this title. When a service provider uses a satellite system to provide cable services to customers, no local tax is due on the service in accordance with the Telecommunications Act of 1996, §602.

(3) Florists. Local sales tax is due on all taxable items sold by a florist based upon the location where the order is received, regardless of where or by whom delivery is made. Local use tax is not due on deliveries of taxable items sold by florists. For example, if the place of business of the florist where an order is taken is not within the boundaries of any local taxing jurisdiction, no local sales tax is due on the

item and no local use tax is due regardless of the location of delivery. If a Texas florist delivers an order in a local taxing jurisdiction at the instruction of an unrelated florist, and if the unrelated florist did not take the order within the boundaries of a local taxing jurisdiction, local use tax is not due on the delivery. For more information about florists' sales and use tax obligations, refer to §3.307 of this title (relating to Florists).

(4) Landline telecommunications services. Local taxes due on landline telecommunications services are based upon the location of the device from which the call or other transmission originates. If the seller cannot determine where the call or transmission originates, local taxes due are based on the address to which the service is billed. For more information, refer to §3.344 of this title (relating to Telecommunications Services).

(5) Mobile telecommunications services. Local taxes due on mobile telecommunications services are based upon the location of the customer's place of primary use as defined in §3.344(a)(8) of this title, and local taxes are to be collected as indicated in §3.344(h) of this title.

(6) Motor vehicle parking and storage. Local taxes are due based on the location of the space or facility where the vehicle is parked. For more information, refer to §3.315 of this title (relating to Motor Vehicle Parking and Storage).

(7) Natural gas and electricity. Any local city and special purpose taxes due are based upon the location where the natural gas or electricity is delivered to the purchaser. As explained in subsection (l)(1) of this section, residential use of natural gas and electricity is exempt from all county sales and use taxes and all transit authority sales and use taxes, most special purpose district sales and use taxes, and many city sales and use taxes. A list of the cities and special purpose districts that do impose, and those that are eligible to impose, local sales and use tax on residential use of natural gas and electricity is available on the comptroller's website. For more information, also refer to §3.295 of this title (relating to Natural Gas and Electricity).

(8) Nonresidential real property repair and remodeling services. Local taxes are due on services to remodel, repair, or restore nonresidential real property based on the location of the job site where the remodeling, repair, or restoration is performed. See also subsection (f)(2)(B) of this section and §3.357 of this title.

(9) Residential real property repair and remodeling and new construction of a real property improvement performed under a separated contract. When a contractor constructs a new improvement to realty pursuant to a separated contract or improves residential real property pursuant to a separated contract, the sale is consummated at the job site at which the contractor incorporates taxable items into the customer's real property. See also subsection (f)(2)(A) of this section and §3.291 of this title.

(10) Waste collection services. Local taxes are due on garbage or other solid waste collection or removal services based on the location at which the waste is collected or from which the waste is removed. For more information, refer to §3.356 of this title (relating to Real Property Service).

(l) Special exemptions and provisions applicable to individual jurisdictions.

(1) Residential use of natural gas and electricity.

(A) Mandatory exemptions from local sales and use tax. Residential use of natural gas and electricity is exempt from most local sales and use taxes. Counties, transit authorities, and most special purpose districts are not authorized to impose sales and use tax on the

residential use of natural gas and electricity. Pursuant to Tax Code, §321.105, any city that adopted a local sales and use tax effective October 1, 1979, or later is prohibited from imposing tax on the residential use of natural gas and electricity. See §3.295 of this title.

(B) Imposition of tax allowed in certain cities. Cities that adopted local sales tax prior to October 1, 1979, may, in accordance with the provisions in Tax Code, §321.105, choose to repeal the exemption for residential use of natural gas and electricity. The comptroller's website provides a list of cities that impose tax on the residential use of natural gas and electricity, as well as a list of those cities that do not currently impose the tax, but are eligible to do so.

(C) Effective January 1, 2010, a fire control, prevention, and emergency medical services district organized under Local Government Code, Chapter 344 that imposes sales tax under Tax Code, §321.106, or a crime control and prevention district organized under Local Government Code, Chapter 363 that imposes sales tax under Tax Code, §321.108, that is located in all or part of a municipality that imposes a tax on the residential use of natural gas and electricity as provided under Tax Code, §321.105 may impose tax on residential use of natural gas and electricity at locations within the district. A list of the special purpose districts that impose tax on residential use of natural gas and electricity and those districts eligible to impose the tax that do not currently do so is available on the comptroller's website.

(2) Telecommunication services. Telecommunications services are exempt from all local sales taxes unless the governing body of a city, county, transit authority, or special purpose district votes to impose sales tax on these services. However, since 1999, under Tax Code, §322.109(d), transit authorities created under Transportation Code, Chapter 451 cannot repeal the exemption unless the repeal is first approved by the governing body of each city that created the local taxing jurisdiction. The local sales tax is limited to telecommunications services occurring between locations within Texas. See §3.344 of this title. The comptroller's website provides a list of local taxing jurisdictions that impose tax on telecommunications services.

(3) Emergency services districts.

(A) Authority to exclude territory from imposition of emergency services district sales and use tax. Pursuant to the provisions of Health and Safety Code, §775.0751(c-1), an emergency services district wishing to enact a sales and use tax may exclude from the election called to authorize the tax any territory in the district where the sales and use tax is then at 2.0%. The tax, if authorized by the voters eligible to vote on the enactment of the tax, then applies only in the portions of the district included in the election. The tax does not apply to sales made in the excluded territories in the district and sellers in the excluded territories should continue to collect local sales and use taxes for the local taxing jurisdictions in effect at the time of the election under which the district sales and use tax was authorized as applicable.

(B) Consolidation of districts resulting in sales tax sub-districts. Pursuant to the provisions of Health and Safety Code, §775.018(f), if the territory of a district proposed under Health and Safety Code, Chapter 775 overlaps with the boundaries of another district created under that chapter, the commissioners court of each county and boards of the counties in which the districts are located may choose to create a consolidated district in the overlapping territory. If two districts that want to consolidate under Health and Safety Code, §775.024 have different sales and use tax rates, the territory of the former districts located within the consolidated area will be designated as sub-districts and the sales tax rate within each sub-district will continue to be imposed at the rate the tax was imposed by the former district that each sub-district was part of prior to the consolidation.

(4) East Aldine Management District.

(A) Special sales and use tax zones within district; separate sales and use tax rate. As set out in Special District Local Laws Code, §3817.154(e) and (f), the East Aldine Management District board may create special sales and use tax zones within the boundaries of the District and, with voter approval, enact a special sales and use tax rate in each zone that is different from the sales and use tax rate imposed in the rest of the district.

(B) Exemptions from special zone sales and use tax. The sale, production, distribution, lease, or rental of; and the use, storage, or other consumption within a special sales and use tax zone of; a taxable item sold, leased, or rented by the entities identified in clauses (i) - (vi) of this subparagraph are exempt from the special zone sales and use tax. State and all other applicable local taxes apply unless otherwise exempted by law. The special zone sales and use tax exemption applies to:

(i) a retail electric provider as defined by Utilities Code, §31.002;

(ii) an electric utility or a power generation company as defined by Utilities Code, §31.002;

(iii) a gas utility as defined by Utilities Code, §101.003 or §121.001, or a person who owns pipelines used for transportation or sale of oil or gas or a product or constituent of oil or gas;

(iv) a person who owns pipelines used for the transportation or sale of carbon dioxide;

(v) a telecommunications provider as defined by Utilities Code, §51.002; or

(vi) a cable service provider or video service provider as defined by Utilities Code, §66.002.

(5) Imposition of city sales tax and transit tax on certain military installations; El Paso and Fort Bliss. Pursuant to Tax Code, §321.1045 (Imposition of Sales and Use Tax in Certain Federal Military Installations), for purposes of the local sales and use tax imposed under Tax Code, Chapter 321, the city of El Paso includes the area within the boundaries of Fort Bliss to the extent it is in the city's extraterritorial jurisdiction. However, the El Paso transit authority does not include Fort Bliss. See Transportation Code, §453.051 concerning the Creation of Transit Departments.

(m) Restrictions on local sales tax rebates and other economic incentives. Pursuant to Local Government Code, §501.161, Section 4A and 4B development corporations may not offer to provide economic incentives, such as local sales tax rebates authorized under Local Government Code, Chapters 380 or 381, to persons whose business consists primarily of purchasing taxable items using resale certificates and then reselling those same items to a related party. A related party means a person or entity which owns at least 80% of the business enterprise to which sales and use taxes would be rebated as part of an economic incentive.

(n) Prior contract exemptions. The provisions of §3.319 of this title (relating to Prior Contracts) concerning definitions and exclusions apply to prior contract exemptions.

(1) Certain contracts and bids exempt. No local taxes are due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of any local tax if the contract may not be modified because of the tax; or

(B)    pursuant to the obligation of a bid or bids submitted prior to the effective date of any local tax if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(2)    Annexations. Any annexation of territory into an existing local taxing jurisdiction is also a basis for claiming the exemption provided by this subsection.

(3)    Local taxing jurisdiction rate increase; partial exemption for certain contracts and bids. When an existing local taxing jurisdiction raises its sales and use tax rate, the additional amount of tax that would be due as a result of the rate increase is not due on the sale, use, storage, or other consumption in this state of taxable items used:

(A)    for the performance of a written contract executed prior to the effective date of the tax rate increase if the contract may not be modified because of the tax; or

(B)    pursuant to the obligation of a bid or bids submitted prior to the effective date of the tax rate increase if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(4)    Three-year statute of limitations.

(A)    The exemption in paragraph (1) of this subsection and the partial exemption in paragraph (3) of this subsection have no effect after three years from the date the adoption or increase of the tax takes effect in the local taxing jurisdiction.

(B)    The provisions of §3.319 of this title apply to this subsection to the extent they are consistent.

(C)    Leases. Any renewal or exercise of an option to extend the time of a lease or rental contract under the exemptions provided by this subsection shall be deemed to be a new contract and no exemption will apply.

(5)    Records. Persons claiming the exemption provided by this subsection must maintain records which can be verified by the comptroller or the exemption will be lost.

(6)    Exemption certificate. An identification number is required on the prior contract exemption certificates furnished to sellers. The identification number should be the person's 11-digit Texas taxpayer number or federal employer's identification (FEI) number.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on December 16, 2015.

TRD-201505688
Lita Gonzalez
General Counsel
Comptroller of Public Accounts
Effective date: January 5, 2016
Proposal publication date: June 19, 2015
For further information, please call: (512) 475-0387

♦         ♦         ♦

# CHAPTER 19.   STATE ENERGY CONSERVATION OFFICE

# SUBCHAPTER E.   TEXAS BUILDING ENERGY PERFORMANCE STANDARDS

### 34 TAC §19.52, §19.53

The Comptroller of Public Accounts adopts amendments to §19.52, concerning public comment on building energy efficiency performance standards, without changes to the proposed text as published in the October 2, 2015, issue of the *Texas Register* (40 TexReg 6881) and §19.53, concerning building energy efficiency performance standards, with changes to the proposed text as published in the October 2, 2015, issue of the *Texas Register* (40 TexReg 6881).

The amendment to §19.52 updates the public comment period and process to implement the changes made to Health and Safety Code, §388.003 by House Bill 1736, 84th Legislature, 2015.

The amendment to §19.53 updates the energy codes for residential and commercial construction in accordance with the changes made to Health and Safety Code, §388.003 in House Bill 1736, 84th Legislature, 2015. The energy efficiency chapter of the International Residential Code, as it existed on May 1, 2015, was specifically designated by the legislature in House Bill 1736 as the state energy code for single-family residential construction, effective September 1, 2016. The International Energy Conservation Code, as it existed on May 1, 2015, is adopted as the state energy code for all other residential, commercial, and industrial construction, effective November 1, 2016, based on public comment and stringency findings of the Energy Systems Laboratory, as required by Health and Safety Code, Chapter 388.

Ten comments were received regarding these amendments.

Mr. Ned Muñoz with the Texas Association of Builders requested clarification "be made to the proposed rules to reflect the Energy Rating Index Compliance Alternative (or subsequent alternative compliance path) scores as added to state statutes by §388.003(i) and (j) under HB 1736." The comptroller agrees with this comment. In response, the phrase, "and as supplemented by Health and Safety Code, §388.003(i) and (j)," has been added to §19.53(a) to make the rule more consistent with the provisions of House Bill 1736.

Mr. Cyrus Reed with the Sierra Club, Lone Star Chapter, expressed support for the proposed rules and forwarded a petition signed by 1,011 people who support the adoption of the 2015 energy codes in Texas. He asked that the State Energy Conservation Office (SECO) provide training for builders, inspectors, architects and city officials regarding the proposed rules, and provide guidance on its website about alternative compliance paths and potential local amendments, including solar-ready provisions. In response to Mr. Reed's comment, SECO will provide training on the new standards and guidance to local jurisdictions regarding alternative compliance paths and optional amendments. SECO training will focus first on the long term, durable benefits of energy efficient construction, which can then be supplemented by any on-site power production.

Ms. Deborah Bliss, Mr. Raymond T. Mudehwe, Mr. Richard Howe and Mr. Chadd Jones provided substantially similar comments, requesting the inclusion of the 2015 International Residential Code (IRC) Appendix U Solar Ready Provisions in §19.53. In response to these comments, the comptroller states that, for single family construction, SECO's authority to adopt building energy performance standards, as established in the Health and Safety Code, §388.003, is limited to the energy

# APPENDIX I

(a) The commission adopts by reference 40 Code of Federal Regulations §257.107 (Publicly accessible Internet site requirements) as amended through the April 17, 2015, issue of the *Federal Register* (80 FR 21301), subject to the additions and modifications in this section.

(b) The website required by subsection (a) of this section must be a publicly accessible website.

(c) The owner or operator shall post on the publicly accessible website, upon submittal to or receipt from the executive director or the chief clerk for the active life of the coal combustion residuals unit through the completion of the post-closure care period:

(1) a complete copy of the current issued effective registration;

(2) a complete copy of all applications submitted under this chapter, including any revisions;

(3) a copy of public notice the owner or operator is required to publish under this chapter;

(4) a copy of a draft registration prepared by the executive director;

(5) a copy of the compliance summary prepared by the executive director; and

(6) a copy of any other document regarding and/or summarizing the executive director's review of or initial decision on an application submitted under this chapter.

(d) The owner or operator must notify the United States Environmental Protection Agency and the executive director, in a manner prescribed by each agency, within 14 days of any changes to the URL for the publicly accessible website.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on May 8, 2020.

TRD-202001825
Robert Martinez
Director, Environmental Law Division
Texas Commission on Environmental Quality
Effective date: May 28, 2020
Proposal publication date: December 13, 2019
For further information, please call: (512) 239-6087

♦  ♦  ♦

## SUBCHAPTER L.  APPENDICES

### 30 TAC §352.1421, §352.1431

Statutory Authority

The new rules are adopted under Texas Water Code (TWC), §5.102, which provides the commission the power to perform any acts necessary and convenient to the exercise of its jurisdiction and powers as provided by the TWC and other laws; TWC, §5.103, which provides the commission with the authority to adopt any rules necessary to carry out its powers and duties under the TWC and other laws of this state; TWC, §5.105, which authorizes the commission to establish and approve all general policy of the commission by rule; Texas Health and Safety Code (THSC), Solid Waste Disposal Act, §361.017 and §361.024, which authorize the commission to regulate industrial

solid waste and municipal hazardous waste and to adopt rules consistent with the general intent and purposes of the THSC; and THSC, §361.090, which allows the commission to adopt rules to control the collection, handling, storage, processing, and disposal of industrial solid waste to protect the property of others, public property and rights-of-way, groundwater, and other rights requiring protection.

The adopted new rules implement THSC, §§361.017, 361.024, and 361.090.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on May 8, 2020.

TRD-202001826
Robert Martinez
Director, Environmental Law Division
Texas Commission on Environmental Quality
Effective date: May 28, 2020
Proposal publication date: December 13, 2019
For further information, please call: (512) 239-6087

♦  ♦  ♦

# TITLE 34.  PUBLIC FINANCE

# PART 1.  COMPTROLLER OF PUBLIC ACCOUNTS

## CHAPTER 3.  TAX ADMINISTRATION
## SUBCHAPTER O.  STATE AND LOCAL SALES AND USE TAXES

### 34 TAC §3.334

The Comptroller of Public Accounts adopts amendments to §3.334, concerning local sales and use taxes, with changes to the proposed text as published in the January 3, 2020, issue of the *Texas Register* (45 TexReg 98). The rule will be republished.

In the wake of *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080 (June 21, 2018), the amendments provide that remote sellers that are required to collect Texas use tax under §3.286 of this title (relating to Seller's and Purchaser's Responsibilities) should collect local use tax based on the destination location. The amendments also implement the requirement that a seller located in Texas collects local use tax when the seller ships or delivers a taxable item into a local jurisdiction where those use taxes exceed the local sales tax where the sale is consummated.

The comptroller also implements House Bill 1525 and House Bill 2153, 86th Legislature, 2019. House Bill 1525 establishes local sales and use tax collection responsibilities on marketplace providers. House Bill 2153 establishes a single local use tax rate that remote sellers may elect to use.

The amendments also provide additional guidance on determining whether an order is received at a place of business of the seller, and clarify the rules for determining the consummation of sales.

Throughout the section, the comptroller makes non-substantive changes by adding or amending rule titles and cross-references.

The comptroller also reorganizes this section for clarity and readability.

The comptroller received requests to extend the comment period from the Round Rock Chamber of Commerce; the City of Coppell; the City of San Marcos; the City of Humble; the City of Frisco; the City of Irving; Jennifer May, on behalf of the City of Sugar Land; James Harris, on behalf of members of the Coalition for Appropriate Sales Tax Law Enactment ("CASTLE") (the cities of Coppell, Farmers Branch, Humble, Grand Prairie, Lancaster, San Marcos, Kilgore, and Lewisville); Robert Camareno, on behalf of the City of New Braunfels; Chuck Bailey; Texas State Senators Charles Schwertner, MD, Donna Campbell, MD, Nathan Johnson, Kirk Watson, Larry Taylor, and Brandon Creighton; and Texas State Representatives James Talarico and John H. Bucy, III.

The comptroller extended the 30-day public comment period another 60 days, for a total of 90 days.

The comptroller also received requests to hold a public hearing under Government Code, §2001.029(b)(2) (Public Comment), from Senators Schwertner, MD, Campbell, MD, Johnson, Watson, Taylor, and Creighton; Representatives Talarico and Bucy; and the cities of Sugar Land, San Marcos, Humble, New Braunfels, Round Rock, and Coppell. The comptroller held a public hearing on February 4, 2020. Additionally, the City of Coppell, the City of Round Rock, Ms. May and Mr. Camareno also requested a second public hearing, which the comptroller denied because all parties received additional time until April 3, 2020, to review and provide comments on the amendments.

The cities of Sugar Land and Grand Prairie inquired about additional time to comment because of the COVID-19 pandemic. John Kroll, HMWK, LLC; Stephen Sheets, on behalf of the City of Round Rock; Mr. Harris; and Jeff Moseley commented that the timing of the implementation of the rule will exacerbate the cities' fiscal and budgetary issues due to the current COVID-19 pandemic. The comptroller denied this request because interested parties had notice of these amendments prior to the pandemic, and the comptroller had already granted an extension to provide comments. Interested parties also had additional opportunities to provide comments during the public hearing and an interim hearing before the Texas House of Representatives, Committee on Ways and Means on February 5, 2020 (the Ways and Means hearing).

During the public comment period, the comptroller received comments in writing and orally.

The City of San Marcos commented that it did not have time to conduct a thorough review of the businesses that will be impacted by the proposed changes, and requested the comptroller postpone adopting the changes at least for two years, if not indefinitely. The comptroller denies this request.

The comptroller received support from multiple city mayors, local economic development corporations, and state legislators. Generally, the commenters supported the provisions concerning the sourcing of sales of Internet orders, which will ensure that cities receive their fair share of local sales and use tax revenues. The commenters stated that a large majority of Texas cities and rural communities are losing revenue they need to provide services to their taxpayers that make Internet purchases. Commenters also stated that the proposed rule as a whole reflects the legislature's intent in passing House Bill 1525.

The commenters were: Cathy Bennett, on behalf of the City of Ivanhoe; Steve Presley, on behalf of the City of Palestine; D. Dale Fowler, on behalf of the Victoria Economic Development Corporation; Scott Cain, on behalf of the City of Cleburne; Texas State Representative Travis Clardy; Texas State Representative Oscar Longoria; Texas State Representative Ken King; Polo Narvaez, on behalf of the City of Los Fresnos; Bob F. Brown and Keith Wright, on behalf of the City of Lufkin; Keith Patridge, on behalf of the McAllen Economic Development Corporation; Texas State Representative Keith Bell; Jerry Phillips and Frankie Davis, on behalf of the City of Kermit; Jose G. Solis, Rick Salinas, Tony Chavez, Albert Cavazos, Maggie Quilantan, and Avelardo Mireles, on behalf of the City of Lyford; Jeff Underwood, on behalf of the City of Alton; Steve Peña, on behalf of the City of Alton Development Corporation; Robert Salinas, on behalf of the City of Alamo; Texas State Senator Charles Perry; Texas State Senator Eddie Lucio, Jr.; Texas State Representative Armando "Mando" Martinez; Patrick McNulty, on behalf of the City of South Padre Island; Marie McDermott, on behalf of the Economic Development Corporation of Weslaco; Texas State Representative Sergio Muñoz, Jr.; Brenda Enriquez, on behalf of the Greater Mission Chamber of Commerce; David Suarez, on behalf of the City of Weslaco; Texas State Representative Trent Ashby; Roxanne M. Ray, on behalf of the South Padre Island Chamber of Commerce; Darla Lapeyre, on behalf of the South Padre Island Economic Development Corporation; Texas State Senator Robert L. Nichols; Texas State Senator Peter Flores; Texas State Senator Lois Kolkhorst; Texas State Representative Kyle Kacal; Texas State Senator Juan "Chuy" Hinojosa; Mario Lozoya and Graham Sevier-Shultz, on behalf of the Greater Brownsville Incentives Corporation; Texas State Representative Geanie Morrison; Texas State Representative Ernest J. Bailes, IV; Texas State Senator Dawn Buckingham; Texas State Representative Cody Harris; Richard Newton, on behalf of the City of Colleyville; Texas State Representative Ben Leman; Andrew Smith, on behalf of the City of Hillsboro; Brad Pingel, on behalf of the City of Pampa; Michael Dyson, on behalf of the City of Rollingwood; City Council for the City of Rowlett; Noe Ronnie Larralde, on behalf of the Edinburg Chamber of Commerce; Sergio Contreras, on behalf of the Rio Grande Valley Partnership; Susette McNeel, on behalf of GeoInvoice, Inc.; Eddie Treviño, Jr., on behalf of the Texas Border Coalition; Benjamin Gomez, on behalf of the City of San Benito; Texas State Representative Eddie Lucio, III; Texas State Representative R.D. "Bobby" Guerra; Daniel Silva, on behalf of the Mission Economic Development Corporation; Kenneth Jones, Jr., on behalf of the Lower Rio Grande Valley Development Council; Rose Benavidez, on behalf of the Starr County Industrial Foundation; Dalinda Guillen, on behalf of the Rio Grande City Economic Development Corporation; and Tina O'Jibway, on behalf of Texas State Senator Robert Nichols.

John Kennedy commented on behalf of the Texas Taxpayers and Research Association that the association has some members who support the amendment as proposed; however, it also has members for which the amendment creates additional confusion and compliance costs.

The comptroller amends the definition of "Comptroller's website" in subsection (a)(4) to provide the correct website address.

The comptroller amends the definition of "engaged in business" in subsection (a)(7) to conform the reference to §3.286 of this title.

The comptroller amends subsection (a)(9) to identify activities that are not included in the definition of the term "fulfill." Mr.

Sheets and Cindy Olson Bourland, on behalf of the City of Round Rock, commented that change to the definition is not a clarification because the words "fulfill" and "fulfillment" do not appear in Chapter 321 and that sales are taxed where they are "consummated," not "fulfilled." Mr. Sheets proposed to add a new sentence to the definition stating that "except for sales under section (b)(1)(C), where a sale is consummated does not depend on where a sale is fulfilled."

Ms. May commented that the definition of "fulfill" is clear for tangible personal property, but it is unclear how it applies to intangible items such as access to research on online platforms. She requested further clarification in the section for how services such as information services are fulfilled.

The comptroller declines to make the suggested changes. The definition gives effect to Tax Code, §321.203 (Consummation of Sale) and the comptroller will consider addressing consummation of certain services at a later date.

The proposed rule added a definition for "Internet order" in new subsection (a)(10) to distinguish between an order placed through the Internet as opposed to an order placed in person at a seller's location as contemplated in Tax Code, §321.203(c) and §323.203(c). The comptroller received comments regarding this definition. Commenters stated that the definition of "Internet order" will create confusion and requested that the comptroller's office make revisions to clearly define what constitutes an "Internet order."

During the Ways and Means hearing, Texas State Representative Erin Zwiener requested clarification regarding orders received over cellular phones. Mr. Kennedy made similar comments and requested clarification on the treatment of email orders. Ms. Olson Bourland and Bob Scott requested clarifications on Voice over Internet Protocol (VoIP) and whether that constitutes an Internet order.

Mr. Kennedy also requested that the comptroller define the term "order" to clarify when an order is received. Brian Pannell, on behalf of Dell Technologies, made similar comments and also requested clarification concerning purchase orders.

Mr. Sheets commented that the comptroller should define the word "Internet" as found in Tax Code, §151.00393 (Internet), which provides that the Internet is used to "communicate information." He commented that the concept of an "Internet order" does not appear in Chapter 321 of the Tax Code and that it is nothing more than one of many tools for communicating information, no different than the US Postal Service and telephone land lines. Mr. Kroll and Mr. Harris echoed these comments. Mr. Sheets proposed a revised Internet order definition.

Both, Mr. Camareno and Mr. Kroll, commented that the amendment is unclear whether an Internet order can cease to be an Internet order. Mr. Camareno commented that there are times when an Internet order involves human interaction to fulfill an order, and other times when it is automated. Additionally, Mr. Kroll; Craig Morgan, on behalf of the City of Round Rock; Mr. Camareno; Mr. Kennedy; Kyle Kasner; and Karen Hunt, on behalf of the City of Coppell, requested that the amendment be revised to adequately address business-to-business transactions through the Internet because those orders are fundamentally different from business-to-consumer transactions. Mr. Kroll stated that the definition also causes issues when businesses lease computers from a seller because under the property tax rules, the seller retains ownership of the leased computer.

David Edmonson, on behalf of TechNet, and Mr. Pannell commented that rather than choosing specific points in the sales process and giving them more weight than others (thus creating loopholes for sellers and purchasers to use to their advantage), an alternative approach might be the creation of a composite of selling activities test similar to the one used by the state of Illinois to help identify the local sales tax that is most appropriate.

The comptroller declines to make this revision because the creation of a composite of selling activities test is not within the comptroller's rulemaking authority. A composite of selling activities test would require a legislative change because it is not supported by Tax Code, Chapters 321 and 323.

Additionally, in response to these comments, the comptroller is deleting the proposed definition of "Internet order" and the provisions for consummation of sales for Internet orders.

The comptroller amends the definition of "itinerant vendor" in subsection (a)(10) to clarify that an itinerant vendor is a seller who does not have a place of business in the state as provided in Tax Code, §321.203(e)(1). The comptroller also removes the example of an itinerant vendor concerning a person who sells rugs because it is no longer necessary. The comptroller also clarifies that a salesperson operating out of a place of business is not an itinerant vendor. The comptroller deletes from the definition "office" or "other location that provides administrative support to the salesperson" because those do not meet the definition of a place of business of the seller in Tax Code, §321.002(a)(3)(A) (Definitions).

The comptroller adds a definition for "marketplace provider" in new subsection (a)(14) as defined in §3.286 of this title.

The comptroller adds a definition for "order placed in person" in new subsection (a)(15). Orders placed in person are those orders placed with the seller while the purchaser is physically present at a seller's place of business, regardless of how the seller subsequently enters the order. Subsequent paragraphs are renumbered.

Mr. Kroll proposed defining the term as "an order placed by a purchaser with the seller while physically present at the seller's place of business." The comptroller agrees to make the revision for clarity.

The comptroller amends the definition of "place of business of the seller - general definition" in renumbered subsection (a)(16). Tax Code, §321.002(a)(3)(A) defines "place of business of the retailer" as "an established outlet, office, or location operated by the retailer or the retailer's agent or employee for the purpose of receiving orders for taxable items and includes any location at which three or more orders are received by the retailer during a calendar year." The reference to the retailer's "agent or employee" indicates that sales personnel must be at the site, and this requirement has been added to the definition.

In addition, the amended definition clarifies that the term does not include a computer server, an Internet protocol address, a domain name, a website, or a software application. Many sellers house their computer servers at a co-location facility or rent computer server space at a managed hosting site. But an ordinary person would not consider the physical locations of these computer servers to be places of business of the seller. Similarly, an ordinary person would not perceive an Internet protocol address, a domain name, or a website as an "established outlet, office, or location" so as to constitute a place of business. The comptroller reflects these changes throughout the section.

The comptroller also deletes the reference to call centers, showrooms, and clearance centers because those facilities are places of business of the seller only if sales personnel of the seller receive three or more orders during a calendar year at those facilities. The amendment deletes the former example regarding a home office at which items are sold through an online auction website because the example is addressed by new language regarding orders received through a shopping website. The comptroller also amends the definition to delete repetitive language. The comptroller deletes a reference to "administrative offices" because the comptroller determines that an administrative office does not meet the definition of a place of business of the seller under Tax Code, §321.002(a)(3)(A).

The comptroller also adds to the definition of "place of business of the seller - general definition" that an outlet, office, facility, or any similar location that contracts with a business to process certain orders or invoices is not a place of business of the seller if the comptroller determines that these certain locations are for the sole purpose of avoiding tax due or of rebating tax to the contracting location. This change is made pursuant to the definition of "place of business of the retailer" in Tax Code, §321.002(a)(3)(B).

Paul Voelker, on behalf of the City of Richardson; George Kelemen, on behalf of the Texas Retailers Association; and Mr. Harris expressed concerns with the definition of a place of business. Specifically, Mr. Harris stated that the definition is not consistent with the statute or the decision in *Combs v. City of Webster*, 311 S.W.3d 85 (Tex. App. Austin 2009, pet. denied). He also stated that it contradicts the statutory definition. Mr. Harris and Mr. Kelemen requested that the comptroller revise the definition to restate the statutory language. Mr. Voelker requested that no revisions be made to the current definition. Rudy Durham, on behalf of the City of Lewisville, commented that the place of business definition needs to be updated to keep up with changes in technology. The comptroller declines to make the requested revisions because the amended definition gives effect to the statutory language.

The comptroller adds a definition for "remote seller" in new subsection (a)(18) as defined in §3.286 of this title. Subsequent paragraphs are renumbered.

The comptroller amends the definition of "temporary place of business of the seller" in renumbered subsection (a)(22) to clarify that a temporary place of business of the seller includes a sale outside the walls of a distribution center, manufacturing plant, storage yard, warehouse, or similar facility of the seller in a parking lot or similar space sharing the same physical address as the facility. Sellers may hold sales to the public outside the walls of their facilities on a temporary basis. The comptroller clarifies that these sales constitute temporary places of business of the seller. The comptroller makes these changes throughout the section. Subsequent paragraphs are renumbered.

The comptroller deletes the definition of "traveling salesperson" in subsection (a)(21) because the comptroller will treat traveling salespersons as seller's agents or employees as referenced in Tax Code, §321.002(a)(3)(A). Subsequent paragraphs are renumbered.

The comptroller adds new subsection (b), determining the place of business of a seller. Subsection (b) revises and expands the provisions of former subsection (e) concerning place of business - special definitions.

Former subsection (e)(1) addressed administrative offices supporting traveling salespersons, and former subsection (e)(2) addressed distribution centers, manufacturing plants, and other facilities. In new subsection (b), the comptroller no longer includes administrative offices supporting a traveling salesperson, and distribution centers, manufacturing plants, storage yards, warehouses, or similar facilities operated by a seller at which salespersons are assigned to work in the determination of "place of business of the seller." A seller does not receive orders at administrative offices that solely serve as the base of operations for a salesperson, or that provide administrative support to a salesperson. Moreover, the mere fact that a salesperson is assigned to work from, or work at, a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller does not mean that a seller receives orders at these locations. These locations by themselves do not meet the definition of a place of business of the retailer under Tax Code, §321.002(a)(3)(A). The comptroller amends the section to reflect these changes throughout.

Brady Olsen, Tom Hart, and Andrew Fortune, on behalf of the City of Grand Prairie, and Mr. Voelker commented that their cities anticipate losses of sales tax revenues. Mr. Olsen, Mr. Hart, and Mr. Fortune commented the amendment will negatively impact their city's Local Government Code, Chapter 380 agreements (Chapter 380 agreements) due to removing traveling salesperson from the definition of a place of business.

Mr. Kasner commented that business-to-business warehouses and distribution centers often rely heavily on traveling salespersons who are based at those locations. Mr. Kasner requested that the comptroller define "sales office" and contrast it to an "administrative office" that supports traveling salespersons. Mr. Kroll made a similar request.

The comptroller declines to reinsert the omitted provisions because subsection (b) gives effect to Tax Code, §321.002(a)(3)(A) that requires administrative offices and sales offices to independently meet the statutory definition of a place of business. However, new paragraph (4), discussed below, will allow a transition period for these facilities until September 30, 2021.

In new paragraph (1)(A), the comptroller clarifies that locations must be operated by a seller for the purpose of receiving orders and receive three or more orders in a calendar year from persons other than employees, independent contractors, and natural persons affiliated with the seller to be considered a place of business of the seller in Texas. In new paragraph (3), the comptroller restates the provisions from former subsection (e) relating to purchasing offices with minor changes for ease of readability.

Mr. Kroll commented that the language "other than employees, independent contractors, and natural persons affiliated with the seller" contradicts the language in Senate Bill 1533, 83rd Legislature, 2013, as that statute did not impose a related persons test and that bill does not support the new language regarding purchasing offices in paragraph (3). Ms. May requested clarity related to a traveling salesperson working on a campus (group of business buildings that house sales persons, call centers, fulfillment warehouses, and administrative offices) but not in the same building as a place of business. She recommended changing the word "building" to "campus" to avoid confusion. The comptroller declines to make these suggested changes because the clarification gives effect to the statute's definition of a place of business.

The comptroller adds new paragraph (4) for orders received by sales personnel who are not at a place of business of the seller, and new paragraph (5) for orders not received by sales personnel. The comptroller makes these changes in response to commenters' requests for guidance on how to treat orders received by telephone, including VoIP and cellular phone, facsimile, and email.

In the past, orders were typically received at fixed locations, such as orders received in person at the seller's facility, orders received by mail order to the seller's facility, and orders received through landline telephone calls to the seller's facility. Some orders were received by traveling salespersons, and former paragraph (4) applied Tax Code, §321.203(d)(2) to these orders so that the orders were consummated "at the place of business from which the retailer's agent or employee who took the order operates," even though the order may have been actually received by the traveling salesperson at a different location. With the expansion of modern telecommunication techniques, it has become more commonplace for sales personnel who are not traveling salespersons to receive orders when they are not at the seller's place of business, such as orders received by cellular telephone and by email. Accordingly, new paragraph (4) expands the application of Tax Code, §321.203(d)(2) to these orders so that an order received by a salesperson who is not at a place of business of the seller in Texas will be treated as being received at the location from which the salesperson operates. This treatment will result in a more uniform application of the consummation statutes and will facilitate the ability of taxpayers and auditors to determine the location where an order is received.

Paragraph (4) clarifies that the order will be treated as being received at a place of business only if the location out of which the salesperson operates independently meets the requirement for being a place of business of the seller. In addition, to transition from the former rule to the current rule, the comptroller will temporarily expand the definition of "place of business of the seller" for these orders to include an outlet, office, or location operated by the seller that serves as a base of operations or that provides administrative support to the salesperson, until September 30, 2021.

New paragraph (5) addresses orders not received by sales personnel, such as orders received through a shopping website or shopping software application. The comptroller cannot apply the consummation principals of Tax Code, §321.203(d)(2) to these types of orders because that provision is limited to orders received by an "agent or employee."

Instead, these orders will be treated as being received at locations that are not places of business of the seller. This treatment is consistent with the concept that a "place of business" requires the presence of personnel to receive the order. Computer servers, Internet protocol addresses, and automated telephone ordering systems would not ordinarily be called "places of business" of the seller. The comptroller has concluded that the legislature could not have intended that the receipt of an order by an automated mechanical device would make the device an "established outlet, office or location operated by the retailer."

Also, this treatment of orders not received by sales personnel is required to promote uniformity and ease of administration for taxpayers and auditors. Website orders can be received at multiple physical addresses -- any locations that have Internet access. A website order is sent to an Internet protocol ("IP") address. An IP address is the address of the device receiving the order, such as a computer server. An IP address is not a physical address.

Websites may use dynamic IP addresses that are assigned by the network upon connection and that change over time. The public IP address of a website may simply be routing orders to different, private IP addresses. Load balancers may change the IP addresses that communicate with customers. Conversely, multiple web sites may be hosted at a single IP address.

The computer server receiving an order placed through a shopping website may belong to the seller or it may belong to a third party. The computer server may be situated on the seller's premises, it may be situated at a co-location facility operated by a third party, or it may be situated at a web hosting facility operated by a third party. The computer server may be one of multiple servers that serve the same website from different physical addresses as part of a cloud distribution network. The computer server may route the order to multiple other servers for load balancing purposes. Conversely, a single computer server may serve multiple websites. Also, the seller may or may not know the physical address of the server receiving the order. The best way to treat these orders consistently and coherently is to treat them uniformly as being received at locations that are not places of business of the seller.

Because the former rule did not explicitly address orders not received by sales personnel, the comptroller is applying paragraph (5) prospectively to orders received after September 30, 2021.

The comptroller adds new subsection (c) to incorporate and reorganize many of the provisions of former subsection (h) concerning consummation of a sale. It reorganizes the general consummation rules stated in former paragraph (3) and applies the general consummation rules to specific situations that were previously addressed in other paragraphs of former subsection (h).

Subsection (c), like former paragraph (3) that it replaces, does not differentiate based on the number of places of business of the seller in the state. Subsection (c) states that the consummation principles of the subsection apply to all sellers, regardless of whether they have no place of business, a single place of business, or multiple places of businesses in the state.

Mr. Sheets commented that the rule should include a special provision for sellers with a single place of business in Texas based on Tax Code, §321.203(b). The comment stated that "all taxable sales of the retailer are consummated at the one place of business."

Tax Code, §321.203(b) describes the consummation principles for a seller that has only one place of business in the state. But those principles are consistent with the treatment of other sellers and do not require special treatment in the rule.

Tax Code, §321.203 as a whole establishes a hierarchy among places of business involved in a transaction. If an order is fulfilled from a place of business of the seller in Texas, the sale is consummated at that location even if the order is received at another place of business in Texas (except for orders received in person). Conversely, an order is consummated at the place of business of the seller in Texas where it is received only if the order was not fulfilled from a place of business in Texas (except for orders received in person). Adopted subsection (c) reflects this hierarchy.

The statutory provision in Tax Code, §321.203(b), for a seller with a single place of business in Texas, is a recognition that the hierarchy is not required in that circumstance. The outcome will be the same regardless of whether the order is received, fulfilled, or received and fulfilled from that place of business, and regard-

less of whether the order is placed at that location in person - the sale will be consummated at that place of business.

Tax Code, §321.203(b) cannot be interpreted to mean that all sales are consummated at the seller's single place of business in Texas, even if that place of business did not receive the order, did not fulfill the order, and did not serve as the location where the order was delivered to the customer. To consummate a sale and to impose local sales tax in a jurisdiction that had nothing to do with a transaction would be an absurd and possibly unconstitutional reading of the statute.

Mr. Harris commented that the proposed subsection (c)(1) was inconsistent with Chapter 321 because Chapter 321 explicitly ties consummation of sales to the place of business where orders are "received," not where they are "placed." He commented that to the extent that the amendment relies on placement to determine where a sale is consummated, the section contradicts Chapter 321. He requests that any reference to placement of orders, other than orders placed in person or orders placed with a retailer's supplier, should be deleted.

The comptroller agrees that other than orders placed in person, the consummation of sales is tied to the place of business where the order is received, if not fulfilled by a place of business of the seller in Texas. The comptroller makes revisions to clarify and clear up any confusion by the use of the term "placed."

New paragraph (1) provides the consummation of sale rules for orders received at a place of business of the seller in Texas.

New subparagraph (A) provides the consummation of sale rules for orders placed in person, and includes a reference to orders placed at a temporary place of business of the seller, in lieu of the provision found in former subparagraph (h)(6)(C) regarding temporary places of business. Subparagraph (B) provides the consummation of sale rules for orders not placed in person.

New paragraph (2) provides the consummation of sale rules for orders not received at a place of business of the seller in Texas. New subparagraph (A) provides the consummation rule for an order fulfilled at a place of the seller in Texas. New subparagraph (B) provides the consummation rule for an order not fulfilled from a place of business of the seller in Texas.

In light of the *Wayfair* decision, the comptroller provides in clause (ii) that a remote seller that is required to collect Texas use tax under §3.286(b)(2) must also collect local use tax based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession unless the remote seller elects to collect the single local use tax rate enacted in House Bill 2153. *See* Tax Code, §321.205(c) (Use Tax: Municipality in which Use Occurs) and §323.205(c) (Use Tax: County in which Use Occurs).

New paragraph (3) restates the provision in former subsection (h)(3)(F) concerning an exception for qualifying economic development agreements entered into before January 1, 2009, pursuant to Tax Code, §321.203(c-4) - (c-5) or §323.203(c-4) - (c-5) (Consummation of Sale).

Jeffrey Moore, Brown & Hofmeister L.L.P, commented that paragraph (3) runs afoul of Article I, Section 16 of the Constitution of the State of Texas (Bills of Attainder; Ex Post Facto or Retroactive Laws; Impairing Obligation of Contracts). Mr. Moore suggests that the comptroller revise the effective date of the provision until the end of the existing term of the agreement.

The comptroller declines to make this revision because paragraph (3) merely restates the language in former subsection (h)(3)(F), which was adopted in 2014. This subsection implements Senate Bill 997, 83rd Legislature, 2013 (codified at Tax Code, §321.203(c-4) and (c-5)). Moreover, Tax Code, §321.203(c-5) explicitly provides an expiration date of September 1, 2024.

The comptroller deletes former subsection (h)(4) concerning traveling salespersons. The place of business of a traveling salesperson is determined under subsection (b)(4) - orders received by sales personnel who are not at a place of business of the seller when they receive the order.

The comptroller adds new paragraph (4) and includes the language in former subsection (h)(1) concerning local sales taxes due and local use taxes due without any changes. The comptroller restates the language in former subsection (h)(2) concerning multiple special purpose district taxes and multiple transit authority taxes in paragraph (5) without changes to the language.

The comptroller deletes the language found in former subsection (h)(5) concerning drop shipments because these provisions are redundant and the general consummation rules cover these types of orders.

The comptroller adds new paragraph (6) to add the language found in former subsection (h)(6) concerning itinerant vendors and vending machines without changes to the language.

The proposed rule contained a special provision in subsection (c)(6) for Internet orders. The adopted rule deletes this provision. However, the comments regarding the proposed rule for Internet orders may have some relevance to subsection (b)(5), discussed above, regarding orders not received by sales personnel. Accordingly, the comptroller has considered these comments and summarizes them below.

The comptroller received comments concerning Internet orders from Mr. Camareno; the Board of Directors for the Coppell Chamber of Commerce; Mr. Edmonson; Steven Taplits, on behalf of Bed Bath & Beyond; Mr. Voelker; Mr. Kasner; Mr. Olsen; Mr. Hart; Mr. Morgan; Mr. Sheets; Ms. Olson Bourland; Jerry Stratton; Jenna Armstrong, on behalf of the Lake Houston Area Chamber of Commerce; Jack Roberts; G. Brint Ryan, on behalf of Ryan LLC; Doug Duffie, Doug Duffie, LLC; Adina Christian, on behalf of her client; Mr. Kelemen; Mr. Moseley; Ms. May; Jane Hughson, on behalf of the City of San Marcos; David Howard; Linda Howard; Mr. Moore; Mr. Harris; Mr. Kroll; Mr. Pannell; Dan Butcher, Clark Hill Strasburger; Ms. Hunt; Jason Ball, on behalf of the Round Rock Chamber of Commerce; Michael Rollins, on behalf of the Austin Chamber of Commerce; Chris Hillman, on behalf of the City of Irving; Gary Thomas, on behalf of the Dallas Area Rapid Transit; the Honorable US Representative John Carter, on behalf of Round Rock and many other communities; Mr. Durham; Joshua Selleck, on behalf of the City of Kilgore; Kristi Carlson, on behalf of Best Buy Co., Inc.; John Torigian, on behalf of HD Supply; TJ Gilmore and David Erb, on behalf of the City of Lewisville; Michael Land, on behalf of the City of Coppell; Michael Meek, on behalf of the Greater New Braunfels Chamber of Commerce; Mr. Kennedy; John Christian, on behalf of Ryan LLC; Mr. Harris; Heather Hurlbert, on behalf of the City of San Marcos; Mr. Scott; Jared Werner, on behalf of the City of New Braunfels; Mr. Fortune; and Kenneth Welch.

Mr. Kelemen; Ms. Hunt; Mr. Land; the Board of Directors for the Coppell Chamber of Commerce; Mr. Camareno; Representa-

tive Zwiener; Representative Talarico; Mr. Morgan; Mr. Sheets; Ms. Olson Bourland; Mr. Voelker; Mr. Durham; Mr. Gilmore; Mr. Ball; Mr. Olsen; Mr. Hart; Mr. Fortune; Ms. Hurlbert; Ms. Hughson; Ms. Armstrong; Mr. Hillman; Mr. Ryan; Ms. Christian; Mr. Duffie; Mr. Howard; Ms. Howard; US Representative Carter; Mr. Scott; Ms. Carlson; Mr. Torigian; and Mr. Kasner stated that the proposed provision regarding Internet orders will have a negative impact on city sales and use tax revenues which will force many of the cities to increase property taxes, reduce core services, and curtail economic development. Mr. Sheets, Mr. Fortune, Mr. Olsen, Mr. Hart, Mr. Morgan, Ms. Hunt, Mr. Harris, and Mr. Durham commented that the amendment will cause a downgrade to city bond ratings.

Ms. Hurlbert stated that the proposed provisions related to Internet orders will narrow what qualifies for rebates under Chapter 380 agreements. She is also concerned about the revenue loss from businesses that do not have Chapter 380 agreements that will be grandfathered under the amendment.

At the Ways and Means hearing, Ms. Hunt expressed concern that under the comptroller's definition many businesses in the City of Coppell will no longer be considered places of business under the amended provisions.

Mr. Selleck commented that the City of Kilgore has a large number of business-to-business transactions that are sourced to the city; but will, in the future, automate their ordering systems. He is concerned that the city will lose those revenues.

Mr. Fortune, Mr. Olsen, and Mr. Hart commented that the proposed provisions related to Internet orders will impact business-to-business transactions. Mr. Gilmore commented that the amendment will redistribute sales tax from less prosperous communities to their more prosperous neighbors. Mr. Voelker commented that the City of Richardson is concerned about losing sales tax because companies have sourced all of their sales to the city as it is where their employee base, sales force, and call center staff are located, and it is where their product orders are received and processed.

Representative Talarico, Mr. Morgan, Mr. Sheets, Ms. Hurlbert, Mr. Gilmore, Mr. Durham, Mr. Meek, the Board of Directors for the Coppell Chamber of Commerce, Mr. Ball, Ms. Armstrong, Mr. Rollins, Mr. Moseley, US Representative Carter, Ms. Carlson, Ms. Olson Bourland, Mr. Howard, Ms. Howard, Mr. Taplits, Mr. Torigian, Mr. Harris, Mr. Scott, and Mr. Camareno made comments on the impact that the proposed provisions on Internet orders will have on Chapter 380 agreements.

Commenters believe the proposed grandfather provisions violate the Constitution of the State of Texas because they impair existing contracts. Specifically, Mr. Moore commented that the proposed subparagraph (F) runs afoul of Article I, Section 16 of the Constitution of the State of Texas. Texas State Representative Jim Murphy and Ms. Olson Bourland made similar comments.

Mr. Moore suggests that the comptroller revise the provision to grandfather existing agreements entered into before September 1, 2019, to the end of their existing term. Mr. Roberts, Mr. Bailey, Mr. Taplits, Ms. Carlson, Mr. Durham, Mr. Kelemen, Mr. Butcher, Mr. Torigian and Mr. Rollins made a similar request. Mr. Roberts, Mr. Bailey, Mr. Duffie, Mr. Camareno, Mr. Scott, Mr. Taplits, Mr. Torigian, and Mr. Butcher also support extending the grandfather clause from a range of five to 20 years.

Mr. Kroll, Mr. Scott, Ms. Hurlbert, and Representative Murphy commented that cities without Chapter 380 agreements will have to source sales from Internet orders immediately and feel the impact. However, cities with Chapter 380 agreements will benefit because of the delayed implementation.

Texas State Representative Drew Springer commented that rural Texas is specifically hit hard because the cities are losing local tax revenue, which are hit harder as more cities execute Chapter 380 agreements. He further commented that the definition of a place of business as it relates to three or more orders is too broad, which can cause gamesmanship in the context of 380 agreements. Mr. Presley also does not think it is appropriate that cities need to support businesses in other cities.

Representative Springer also commented that Chapter 380 agreements were established long before the proliferation of Internet sales and the *Wayfair* decision and since these changes, he thinks it necessary to address Internet orders with the amendment.

In response to the comments, the comptroller is delaying the implementation of subsection (b)(5), regarding orders not received by sales personnel until October 1, 2021, giving interested parties an opportunity to seek a legislative change.

Additionally, Representative Springer commented that the lack of a detailed list of all Chapter 380 agreements kept in a central location creates a challenge for obtaining information on the agreements because a lot of agreements are very protected.

Commenters requested data and an analysis to determine the impact the amendment will have on their communities, and information on Chapter 380 agreements. The commenters were: Texas State Representative Sheryl Cole, Representative Zweiner, Mr. Fortune, Mr. Olsen, Mr. Hart, Ms. May, Mr. Land, Ms. Hunt, Mr. Voelker, Mr. Scott, and Mr. Hillman. Mr. Fortune asked that the House Ways and Means committee request additional analysis on the amendment's provisions.

Mr. Voelker and Mr. Scott requested that the comptroller gather information across the state regarding Chapter 380 and Chapter 381 agreements to fully understand how the agreements are being used. Mr. Voelker also requested that the comptroller perform an impact analysis to determine how the changes will affect local sales tax collections and existing businesses. Mr. Scott made similar requests.

Mr. Ryan commented that he does not believe the amendment complies with Texas Government Code, §2001.024 (Content of Notice), which requires specific content in the notice of a proposed rule, relating to the fiscal impact of such amendment. Mr. Ryan believes that a fiscal note detailing the fiscal implication for small business in reprogramming software, the shifting of local tax among jurisdictions, the upending of pre-existing Chapter 380 or 381 agreements, and the economic cost to the public is required. Mr. Christian and Mr. Harris agreed. Mr. Harris, additionally, stated that the comptroller did not give adequate notice when reversing a policy as required under federal case law. Mr. Morgan commented that the fiscal impact statement contradicts the known impact to the City of Round Rock. Mr. Sheets and Ms. Olson Bourland made similar comments. Ms. Hunt made similar comments relating to the City of Coppell.

Mr. Morgan; Ms. Hunt; Mr. Land; Mr. Sheets; Representative Talarico; Representative Zwiener; US Representative Carter; Mr. Voelker; Mr. Morgan; the Board of Directors for the Coppell Chamber of Commerce; Mr. Christian; Mr. Ryan; Ms. Christian;

Mr. Scott; Mr. Camareno; Mr. Gilmore; Mr. Erb; Mr. Meek; the Board of Directors for the Round Rock Chamber of Commerce; Mr. Kasner; Mr. Torigian; Mr. Kroll; Mr. Moore; and Mr. Harris requested that the comptroller solely implement the provisions in House Bills 1525 and 2153 and the *Wayfair* decision. Mr. Kroll and Mr. Harris provided draft amendments to accomplish the objective.

Ms. Hunt requested that the comptroller withdraw the amendment as proposed and republish only the language required to implement House Bill 1525 and House Bill 2153 based on the staggering effects of the COVID-19 pandemic on public health and the economy. Ms. Olson Bourland and the Board of Directors for the Coppell Chamber of Commerce had similar comments.

Mr. Butcher, Mr. Ball, Ms. Armstrong, US Representative Carter, Ms. Christian, Mr. Harris, Mr. Erb, Mr. Kroll, Mr. Camareno, Ms. Olson Bourland, Mr. Durham, Mr. Kelemen, Ms. Carlson, Mr. Harris, Mr. Sheets, and Mr. Pannell stated that the amendment is improper because it goes beyond the scope of the *Wayfair* decision, House Bill 1525, and House Bill 2153, and beyond the comptroller's authority.

Ms. Hunt, Mr. Land, the Board of Directors for the Coppell Chamber of Commerce, Mr. Sheets, Representative Talarico, Mr. Gilmore, Mr. Erb, Representative Zwiener, Representative Murphy, Mr. Meek, Mr. Camareno, Mr. Pannell, Mr. Taplits, Mr. Harris, Mr. Hillman, Mr. Ball, and Mr. Selleck further requested that the comptroller leave the remaining issues for the legislature to decide in future sessions. Ms. Hunt and Mr. Land asked that the Ways and Means Committee request that the comptroller only implement House Bills 1525 and 2153.

Mr. Ryan, Mr. Christian, Mr. Harris, and Mr. Torigian opined that the legislature has accepted the comptroller's long-standing administration of local sales taxes without regard to the technology used by the customer to submit an order and that the comptroller cannot make changes without a statutory change. Mr. Harris commented that in *Combs v. City of Webster*, the Court stated that "whether {a} result involves 'fair' tax policy is a question for the legislature."

Mr. Presley commented that the way the comptroller has proposed changes has given the legislature adequate time to address the issue. Representative Leman commented that it is a part of the comptroller's function to provide clarifications when needed in a timely manner so that we can have a successful economy.

The comptroller declines to make revisions based on these comments. The comptroller has broad rulemaking authority under Tax Code, §§111.002 (Comptroller's Rules; Compliance; Forfeiture); 321.306 (Comptroller's Rules); and 323.306 (Comptroller's Rules). There is ambiguity in the consummation rule as evidenced by the questions that the comptroller received. There are situations in which the same fact pattern results in sourcing by companies in different manners. The comptroller's changes provide clear guidance to address these situations. The comptroller conducted a statewide fiscal impact analysis as required under the Administrative Procedures Act. The comptroller declines to only implement House Bills 1525 and 2153 and the *Wayfair* decision. The comptroller delays the implementation of subsection (b)(5), regarding orders not received by sales personnel, until October 1, 2021, giving interested parties time to seek a legislative change.

Mr. Kelemen, Mr. Morgan, Mr. Sheets, Ms. Olson Bourland, Mr. Ryan, Mr. Christian, Mr. Harris, Mr. Camareno, Mr. Pannell, Ms. Carlson, and Mr. Kroll stated that the amendment conflicts with the statute or is not supported by law. Also, Mr. Morgan, Mr. Sheets, and Ms. Olson Bourland commented that the statute and the legislative intent require origin-based sourcing. Mr. Morgan commented that the legislature has always concluded that origin-based sourcing is the most effective method to allocate resources.

Mr. Ryan, Mr. Christian, Mr. Harris, Mr. Kroll, Mr. Camareno, and Mr. Pannell commented that Chapter 321 makes no distinction based on the technology used by the customer to communicate an order except when made in person.

Mr. Harris commented that concluding that Internet orders are not received anywhere is at odds with the comptroller's long-standing position that Internet orders are received at a location in Texas.

He commented that treating Internet orders for taxable items differently from non-Internet orders violates Tax Code, §321.002(a)(3) and §321.203. He commented that in the *City of Webster*, the comptroller stated that Internet orders can be received at a place of business. He further stated that Chapter 321 already provides the rules for Internet orders. Mr. Sheets and Ms. Olson Bourland made similar remarks.

Ms. Olson Bourland stated numerous reasons that she believes the amendment is contrary to law, including that the amendment is unconstitutional and contradicts comptroller's guidelines and letter rulings. She also commented that the comptroller is judicially estopped from asserting that pertinent portions of the Tax Code are ambiguous.

She commented that the term "fulfillment" does not appear in the statute, but instead contains the term "consummate," which means offer, acceptance, and payment of an item. Mr. Sheets proposed to revise the rule to provide that Internet orders are treated the same as orders submitted and received by other means of communication. He also proposed that when making orders through the Internet or by any other means of communication, the sale is consummated where the order is received, regardless of where the order is fulfilled. Mr. Kelemen made a similar request for revision.

In response to these comments, the comptroller deleted the proposed language regarding Internet orders.

Representative Talarico, Representative Zwiener, Mr. Sheets, Mr. Morgan, Ms. Olson Bourland, Mr. Ryan, and Mr. Ball stated that origin-based sales tax has been applied across the board to all transactions. Ms. Olson Bourland further stated that the amendment completely upends the framework by making Internet orders destination-sourced for purposes of local sales tax.

Mr. Ryan commented that local taxes default to the place of delivery to the customer only when there is no place of business of the seller to which taxes should be allocated.

Mr. Sheets commented that Tax Code, §321.203(b) states that if a retailer has only one place of business, all of a retailer's sales of taxable items are consummated at that place of business, except as provided in subsection (e). Mr. Sheets proposed language to that effect. Mr. Sheets commented that if the comptroller applies the Internet order rule to a seller with a single place of business in the state, the amendment is illegal. Ms. Carlson and Mr. Butcher had similar requests.

Representative Talarico commented that sales tax is based on the business, not on the consumer, and thus, it should apply to purchases over the phone or online. Mr. Stratton commented that he supports an origin-based sales tax system because it is "simpler to calculate, harder to pass the buck on, and more protective of our privacy." However, Mr. Presley commented that all transactions other than the customer showing up at the business should be based on destination.

The comptroller declines to make revisions based on these comments. For the reasons previously stated, the comptroller is deleting the provisions regarding Internet orders, and is adopting provisions regarding orders placed in person, and those not placed in person.

Mr. Kelemen, Mr. Kennedy, Mr. Kroll, Mr. Pannell, Mr. Land, Ms. Hurlbert, Mr. Edmonson, Mr. Ryan, Ms. Christian, Mr. Duffie, Mr. Harris, Ms. Olson Bourland, the Board of Directors for the Coppell Chamber of Commerce, and the Round Rock Chamber of Commerce commented that the proposed provision for Internet orders will place additional administrative compliance burdens on sellers which will force them to update their software within a short timeframe.

Mr. Pannell commented that the amendment will create an undue burden on Texas retailers as they will be required to calculate and collect tax based on the method of communication through which their customers choose to submit orders. Mr. Edmonson, Mr. Kroll, Mr. Land, Mr. Torigian, Mr. Ryan, Ms. Christian, Mr. Duffie, Mr. Harris, and the Board of Directors for the Coppell Chamber of Commerce made similar comments.

The comptroller declines to make revisions based on these comments because taxpayers already must keep records of sales, and such a burden is inherent in the consummation statutes (like the burden of identifying a particular place of business that receives an order when a business has multiple places of business). Taxpayers will also have time to update their systems under the extended implementation date.

Mr. Ryan, Mr. Christian, Ms. Olson Bourland, Mr. Butcher, Mr. Harris, and Mr. Kroll commented that the proposed provisions regarding Internet orders violate the Internet Tax Freedom Act because they discriminate against the Internet.

The provisions do not impose a tax on or discriminate against the Internet, and therefore, do not violate the Internet Tax Freedom Act.

Mr. Ryan commented that sellers are at risk of class action lawsuits for failing to notify their customers that they may pay a higher amount of tax depending on the method the customer uses to place the order. Mr. Ryan adds that sellers are also at risk if they are unable to distinguish between Internet orders and other orders when calculating local taxes.

Mr. Kelemen; Mr. Hillman; Mr. Olsen; Mr. Land; Ms. Hurlbert; Mr. Camareno; Mr. Voelker; Ms. May; Mr. Scott; Mr. Kennedy; Ms. Olson Bourland; Mr. Durham; Mr. Harris; and Teresa Wiley, on behalf of Sysco, Inc., requested that the comptroller delay the implementation date to provide additional time for entities to comply with the provisions on Internet orders and traveling salespersons. In response to these comments, the comptroller has deleted the proposed provision regarding Internet orders, and delayed the implementation of subsections (b)(4) and (b)(5) regarding orders received by sales personnel when they are not at a place of business of the seller and orders not received by sales personnel to October 1, 2021.

The comptroller adds new subsection (d) to include the provisions in former subsection (i), relating to use tax. The comptroller adds new paragraph (1), which includes the language in former subsection (i)(1) concerning general local use tax rules with non-substantive changes for ease of readability.

The comptroller adds new paragraph (2) to include the provisions in former subsection (i)(2) concerning general use tax rules applied to specific situations with changes.

In light of the *Wayfair* decision, the comptroller gives effect to the Tax Code's requirement that sellers engaged in business in the state collect local use tax for sales consummated in Texas and for sales consummated outside Texas based on the local taxing jurisdictions in which a taxable item is first used, stored, or consumed, regardless of the specific local jurisdiction in which a seller is engaged in business. *See* Tax Code, §§321.205, 322.105 (Use Tax: Where Use Occurs), and 323.205.

When a sale is consummated in Texas, a seller is engaged in business in this state through the presence of property or employees in the state. *See* Tax Code, §§151.107 (Retailer Engaged in Business in this State), 321.203, and 323.203. Therefore, the language that a seller be engaged in business in a local jurisdiction for sales consummated in Texas is superfluous. Moreover, an engaged in business standard for local use tax does not give effect to the Tax Code's requirement that a seller collect local use tax that is due and creates an opportunity for sellers to avoid collecting local use tax due. *See* Tax Code §§151.103(Collection by Retailer; Purchaser's Receipt), 321.003 (Other Portions of Tax Applicable), 321.205, 322.108 (Certain Provisions of Municipal Sales and Use Tax Applicable), 323.003(Other Portions of Tax Applicable), and 323.205. Therefore, the comptroller deletes the "engaged in business" requirement for local use tax throughout the section.

In new paragraph (2), the comptroller implements the *Wayfair* decision by clarifying that the seller is responsible for collecting the local use tax due on the sale based upon the location in this state to which the order is shipped or delivered or at which the purchaser of the item takes possession.

In new subparagraphs (B) and (C), the comptroller also explicitly states that the location of the seller in Texas does not affect the determination of whether the seller is required to collect additional local use tax due. In new clauses (i) and (ii), the comptroller provides two examples to illustrate when a seller is required to collect additional local use taxes.

The comptroller adds new subsection (e) to include the provisions in former subsection (b), relating to the effects of other law, with minor non-substantive changes to the provisions as they appeared in former subsection (b).

The comptroller adds new subsection (f), to include the provisions of former subsection (c), relating to tax rates without changing the provisions as they appeared in former subsection (c).

The comptroller adds new subsection (g) to include the provisions of former subsection (d), relating to jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements, with non-substantive changes made to the language on combined areas for ease of readability.

The comptroller adds new subsection (h) to include the provisions in former subsection (f) concerning places of business and job sites crossed by local taxing jurisdiction boundaries with a

change to the title of the subsection to read places of business of the seller. No other changes were made to those provisions.

The comptroller adds new subsection (i). Throughout new subsection (i), the comptroller implements the *Wayfair* decision for local use tax to address sales consummated in Texas and sales consummated outside of Texas, including sales by remote sellers.

In new paragraph (1), the comptroller adds the language found in former subsection (g)(1) with changes. The comptroller explicitly states in paragraph (1) that the location of the seller in Texas does not affect the determination of whether the seller is required to collect additional local use tax due.

In new paragraph (2), the comptroller includes the language in former subsection (g)(2) with changes. The comptroller makes a cross-reference to new subsection (i)(3) of the amendment, which implements House Bill 2153. The comptroller also clarifies that new subsection (i)(2) applies to sales not consummated in Texas. The amendment provides that local use tax is based upon the location in this state to which the item is shipped or delivered or at which the purchaser takes possession.

In new paragraph (3), the amendment addresses local use tax for remote sellers and implements the single local use tax rate for remote sellers enacted in House Bill 2153.

New subparagraph (A)(i) provides that a remote seller is required to collect and remit using the combined rate of all applicable local use taxes based on the location to which the item is shipped or delivered or at which the purchaser takes possession. New subparagraph (A)(ii) provides that at the remote seller's election, the remote seller may elect to use the single local use tax rate published in the *Texas Register.*

New subparagraph (B) addresses the single local use tax rate when a remote seller stores tangible personal property in Texas to be sold on a marketplace. The comptroller recognizes that a remote seller selling tangible personal property on a marketplace may not have control of where their tangible personal property is stored. Therefore, to ease the burden on a remote seller, this provision allows the remote seller to elect the single local use tax rate.

New subparagraph (C) addresses notice requirements a remote seller sends to the comptroller of its election and revocation of election to use the single local use tax rate. New clause (i) provides that a remote seller must notify the comptroller of its election to use the single local use tax rate on a form prescribed by the comptroller or may notify the comptroller of the election on its use tax permit application form before being able to use the single local use tax rate. New clause (i) also requires that a remote seller use the single local use tax rate for all its sales of taxable items until the remote seller revokes the election in writing to the comptroller. New clause (ii) addresses the requirements for a remote seller to revoke its election to collect the single local use tax rate by filing a form prescribed by the comptroller by October 1 of the calendar year.

New subparagraph (D)(i) provides the initial single local use tax rate of 1.75%, which is in effect for the period beginning October 1, 2019, and ending December 31, 2019. Subparagraph (D)(ii) provides the initial single local use tax rate of 1.75%, which is in effect for the period beginning January 1, 2020, and ending December 31, 2020.

New subparagraph (E) provides that before the beginning of a calendar year, the comptroller will publish notice of the single local use tax rate that will be in effect for that calendar year in the *Texas Register.*

New subparagraph (F) provides the calculation for the single local use tax rate.

New subparagraph (G) provides that a purchaser may request a refund based on local use taxes paid in a calendar year. The refund is for the difference between the single local use tax rate paid by the purchaser and the amount the purchaser would have paid based on the combined tax rate for all applicable local use taxes. Non-permitted purchasers may request a refund directly from the comptroller on an annual basis without having to meet the requirements in §3.325(a)(1) of this title (relating to Refunds and Payments Under Protest) and the statute of limitation under Tax Code, §111.104 (Refunds).

New subparagraph (H) addresses marketplace providers and states that a marketplace provider may only use the combined tax rate of all applicable local use taxes when computing the amount of local use tax to collect and remit.

In new paragraph (4), the comptroller restates the language in deleted subsection (g)(4) concerning purchasers responsible for accruing and remitting local taxes if the seller fails to collect without any changes.

In new paragraph (5), the comptroller restates the language in deleted subsection (g)(5) concerning local tax due on the sales price of a taxable item without any changes.

The comptroller adds new paragraph (6) to relieve a purchaser of liability for additional use tax if the purchaser pays local use tax using the single local use tax rate to an eligible remote seller electing to use the single local use tax rate. Paragraph (6) also requires the purchaser to verify on the comptroller's website that a remote seller has elected to use the single local use tax rate. Moreover, paragraph (6) provides that if a remote seller is not listed on the comptroller's website, the purchaser will be liable for additional use tax due.

Mr. Edmonson commented that TechNet believes that paragraph (6) will create an undue burden on the buyer to verify if the remote seller is registered with the comptroller. He commented that the state should pursue the seller, not the buyer. The comptroller declines to make a revision based on this comment.

The comptroller deletes existing subsection (b), relating to the effect of other law, as this information is contained in new subsection (e) with minor, non-substantive changes.

The comptroller deletes existing subsection (c) relating to tax rates, as that information is contained in new subsection (f) without change.

The comptroller deletes existing subsection (d) relating to jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements, as this information is contained in new subsection (g) with non-substantive changes made to the provisions on combined areas for ease of readability.

The comptroller deletes existing subsection (e) relating to place of business - special definitions, as this information is contained in new subsection (b) with changes.

The comptroller deletes existing subsection (f) concerning places of business and job sites crossed by local taxing jurisdiction boundaries, as this information is contained in new

subsection (h) with a change only to the title of the subsection to read places of business of the seller.

The comptroller deletes subsection (g) concerning sellers' and purchasers' responsibilities for collecting or accruing local taxes, as those provisions, except for subsection (g)(3), which was deleted in its entirety, are contained in new subsection (i) with changes.

The comptroller deletes existing subsection (h) concerning local sales tax, as this information is contained in new subsection (c) with changes.

The comptroller deletes existing subsection (i) concerning use tax, as this information is contained in new subsection (d) with changes.

The comptroller adds new subsection (k)(5) to implement House Bill 1525, to address sales of taxable items through marketplace providers. Subsequent paragraphs are renumbered.

Mr. Kroll commented that House Bill 1525 could be interpreted to only source third-party marketplace seller transactions to destination. He commented that the provision should be amended to ensure that all taxable sales made via a marketplace, either by the marketplace provider itself or on behalf of a marketplace seller, should be sourced to destination. He suggested language to that effect. The comptroller declines to make this revision because House Bill 1525 is specific to the sales made by marketplace providers on behalf of marketplace sellers. It does not provide for sourcing on the marketplace provider's own sales. Additionally, amending §3.286 of this title in this section is not appropriate.

The provisions related to remote sellers, the single local use tax rate, and marketplace providers took effect October 1, 2019.

Joe Strong, on behalf of Microsoft, made comments pertaining to marketplace providers and marketplace sellers, registration, good faith, and information requirements, which are addressed in §3.286 of this title and not this amendment. Mr. Howard and Ms. Howard commented that they strongly disagree with the amendment.

Mr. Pannell requested guidance on the information that will be audited by the comptroller and the penalties for incorrect application of local tax. Mr. Kroll commented that the comptroller does not have any training or audit materials for this rule, so it appears businesses will not face compliance scrutiny under audit. The comptroller declines to make revisions based on this comment because this section addresses local sales and use tax administration. The comptroller will provide audit guidelines regarding this section in the appropriate audit materials.

Ms. May urged that the amendment continue to designate purchasing offices as places of business if it is deemed that they do not exist solely to avoid or rebate sales tax. The comptroller did not make any amendments to the definition of purchasing offices.

The comptroller adopts this amendment under Tax Code, §111.002 (Comptroller's Rules; Compliance; Forfeiture), which provides the comptroller with the authority to amend rules to reflect changes in the constitution or laws of the United States and judicial interpretations thereof.

The amendments implement Tax Code, §§151.0595 (Single Local Tax Rate for Remote Sellers), 321.203, and 323.203, and *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080 (June 21, 2018).

§3.334. *Local Sales and Use Taxes.*

(a) Definitions. The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

(1) Cable system--The system through which a cable service provider delivers cable television or bundled cable service, as those terms are defined in §3.313 of this title (relating to Cable Television Service and Bundled Cable Service).

(2) City--An incorporated city, municipality, town, or village.

(3) City sales and use tax--The tax authorized under Tax Code, §321.101(a), including the additional municipal sales and use tax authorized under Tax Code, §321.101(b), the municipal sales and use tax for street maintenance authorized under Tax Code, §327.003, the Type A Development Corporation sales and use tax authorized under Local Government Code, §504.251, the Type B Development Corporation sales and use tax authorized under Local Government Code, §505.251, a sports and community venue project sales and use tax adopted by a city under Local Government Code, §334.081, and a municipal development corporation sales and use tax adopted by a city under Local Government Code, §379A.081. The term does not include the fire control, prevention, and emergency medical services district sales and use tax authorized under Tax Code, §321.106, or the municipal crime control and prevention district sales and use tax authorized under Tax Code, §321.108.

(4) Comptroller's website--The agency's website concerning local taxes located at: https://comptroller.texas.gov/taxes/sales/.

(5) County sales and use tax--The tax authorized under Tax Code, §323.101, including a sports and community venue project sales and use tax adopted by a county under Local Government Code, §334.081. The term does not include the county health services sales and use tax authorized under Tax Code, §324.021, the county landfill and criminal detention center sales and use tax authorized under Tax Code, §325.021, or the crime control and prevention district sales and use tax authorized under Tax Code, §323.105.

(6) Drop shipment--A transaction in which an order is received by a seller at one location, but the item purchased is shipped by the seller from another location, or is shipped by the seller's third-party supplier, directly to a location designated by the purchaser.

(7) Engaged in business--This term has the meaning given in §3.286 of this title (relating to Seller's and Purchaser's Responsibilities).

(8) Extraterritorial jurisdiction--An unincorporated area that is contiguous to the corporate boundaries of a city as defined in Local Government Code, §42.021.

(9) Fulfill--To complete an order by transferring a taxable item directly to a purchaser at a Texas location, or to ship or deliver a taxable item to a location in Texas designated by the purchaser. The term does not include tracking an order, determining shipping costs, managing inventory, or other activities that do not involve the transfer, shipment, or delivery of a taxable item to the purchaser or a location designated by the purchaser.

(10) Itinerant vendor--A seller who travels to various locations for the purpose of receiving orders and making sales of taxable items and who has no place of business in this state. A person who sells items through vending machines is also an itinerant vendor. A salesperson that operates out of a place of business in this state is not an itinerant vendor.

(11) Kiosk--A small stand-alone area or structure:

(A) that is used solely to display merchandise or to submit orders for taxable items from a data entry device, or both;

(B) that is located entirely within a location that is a place of business of another seller, such as a department store or shopping mall; and

(C) at which taxable items are not available for immediate delivery to a purchaser.

(12) Local taxes--Sales and use taxes imposed by any local taxing jurisdiction.

(13) Local taxing jurisdiction--Any of the following:

(A) a city that imposes sales and use tax as provided under paragraph (3) of this subsection;

(B) a county that imposes sales and use tax as provided under paragraph (5) of this subsection;

(C) a special purpose district created under the Special District Local Laws Code or other provisions of Texas law that is authorized to impose sales and use tax by the Tax Code or other provisions of Texas law and as governed by the provisions of Tax Code, Chapters 321 or 323 and other provisions of Texas law; or

(D) a transit authority that imposes sales and use tax as authorized by Transportation Code, Chapters, 451, 452, 453, 457, or 460 and governed by the provisions of Tax Code, Chapter, 322.

(14) Marketplace provider--This term has the meaning given in §3.286 of this title.

(15) Order placed in person--An order placed by a purchaser with the seller while physically present at the seller's place of business regardless of how the seller subsequently enters the order.

(16) Place of business of the seller - general definition--An established outlet, office, or location operated by a seller for the purpose of selling taxable items to those other than employees, independent contractors, and natural persons affiliated with the seller, where sales personnel of the seller receive three or more orders for taxable items during the calendar year. The term does not include a computer server, Internet protocol address, domain name, website, or software application. Additional criteria for determining when a location is a place of business of the seller are provided in subsection (b) of this section for distribution centers, manufacturing plants, storage yards, warehouses and similar facilities; kiosks; and purchasing offices. An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business, is not a place of business of the seller if the comptroller determines that the outlet, office, facility, or location functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or exists solely to rebate a portion of the tax imposed by those chapters to the contracting business. An outlet, office, facility, or location does not exist to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or solely to rebate a portion of the tax imposed by those chapters if the outlet, office, facility, or location provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services.

(17) Purchasing office--An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business.

(18) Remote Seller--As defined in §3.286 of this title, a remote seller is a seller engaged in business in this state whose only activity in the state is:

(A) engaging in regular or systematic solicitation of sales of taxable items in this state by the distribution of catalogs, periodicals, advertising flyers, or other advertising, by means of print, radio, or television media, or by mail, telegraphy, telephone, computer data base, cable, optic, microwave, or other communication system for the purpose of effecting sales of taxable items; or

(B) soliciting orders for taxable items by mail or through other media including the Internet or other media that may be developed in the future.

(19) Seller--This term has the meaning given in §3.286 of this title and also refers to any agent or employee of the seller.

(20) Special purpose district--A local governmental entity authorized by the Texas legislature for a specific purpose, such as crime control, a local library, emergency services, county health services, or a county landfill and criminal detention center.

(21) Storage--This term has the meaning given in §3.346 of this title (relating to Use Tax).

(22) Temporary place of business of the seller--A location operated by a seller for a limited period of time for the purpose of selling and receiving orders for taxable items and where the seller has inventory available for immediate delivery to a purchaser. For example, a person who rents a booth at a weekend craft fair or art show to sell and take orders for jewelry, or a person who maintains a facility at a job site to rent tools and equipment to a contractor during the construction of real property, has established a temporary place of business. A temporary place of business of the seller includes a sale outside of a distribution center, manufacturing plant, storage yard, warehouse, or similar facility of the seller in a parking lot or similar space sharing the same physical address as the facility but not within the walls of the facility.

(23) Transit authority--A metropolitan rapid transit authority (MTA), advanced transportation district (ATD), regional or subregional transportation authority (RTA), city transit department (CTD), county transit authority (CTA), regional mobility authority (RMA) or coordinated county transportation authority created under Transportation Code, Chapters 370, 451, 452, 453, 457, or 460.

(24) Two percent cap--A reference to the general rule that, except as otherwise provided by Texas law and as explained in this section, a seller cannot collect, and a purchaser is not obligated to pay, more than 2.0% of the sales price of a taxable item in total local sales and use taxes for all local taxing jurisdictions.

(25) Use--This term has the meaning given in §3.346 of this title.

(26) Use tax--A tax imposed on the storage, use or other consumption of a taxable item in this state.

(b) Determining the place of business of a seller.

(1) Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller for the purpose of selling taxable items where sales personnel of the seller receive three or more orders for taxable items during the calendar year from persons

other than employees, independent contractors, and natural persons affiliated with the seller is a place of business of the seller.

(B)   If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the entire facility is a place of business of the seller.

(2)   Kiosks. A kiosk is not a place of business of the seller for the purpose of determining where a sale is consummated for local tax purposes. A seller who owns or operates a kiosk in Texas is, however, engaged in business in this state as provided in §3.286 of this title.

(3)   Purchasing offices.

(A)   A purchasing office is not a place of business of the seller if the purchasing office exists solely to rebate a portion of the local sales and use tax imposed by Tax Code, Chapters 321, 322, or 323 to a business with which it contracts; or if the purchasing office functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, or 323. A purchasing office does not exist solely to rebate a portion of the local sales and use tax or to avoid the tax legally due under Tax Code, Chapters 321, 322, or 323 if the purchasing office provides significant business services to the contracting business beyond processing invoices, including logistics management, purchasing, inventory control, or other vital business services.

(B)   In making a determination under subparagraph (A) of this paragraph, as to whether a purchasing office provides significant business services to the contracting business beyond processing invoices, the comptroller will compare the total value of the other business services to the value of processing invoices. If the total value of the other business services, including logistics management, purchasing, inventory control, or other vital business services, is less than the value of the service to process invoices, then the purchasing office will be presumed not to be a place of business of the seller.

(C)   If the comptroller determines that a purchasing office is not a place of business of the seller, the sale of any taxable item is deemed to be consummated at the place of business of the seller from whom the purchasing office purchased the taxable item for resale and local sales and use taxes are due according to the following rules.

(i)   When taxable items are purchased from a Texas seller, local sales taxes are due based on the location of the seller's place of business where the sale is deemed to be consummated, as determined in accordance with subsection (c) of this section.

(ii)   When the sale of a taxable item is deemed to be consummated at a location outside of this state, local use tax is due based on the location where the items are first stored, used or consumed by the entity that contracted with the purchasing office in accordance with subsection (d) of this section.

(4)   Orders received by sales personnel who are not at a place of business of the seller in Texas when they receive the order, including orders received by mail, telephone, including Voice over Internet Protocol and cellular phone calls, facsimile, and email. This type of order is treated as being received at the location from which the salesperson operates, that is, the principal fixed location where the salesperson conducts work-related activities. The location from which a salesperson operates will be a place of business of the seller only if the location meets the definition of a "place of business of a seller" in subsection (a)(16) of this section on its own, without regard to the orders imputed to that location by this paragraph. Orders received prior to October 1, 2021, may also be treated as being received at the outlet, office, or location operated by the seller that serves as a base of operations or that provides administrative support to the salesperson,

and these locations will be treated as places of business of the seller for purposes of subsection (c) of this section.

(5)   Orders not received by sales personnel, including orders received by a shopping website or shopping software application. Effective October 1, 2021, these orders are received at locations that are not places of business of the seller.

(c)   Local sales tax - Consummation of sale - determining the local taxing jurisdictions to which sales tax is due. Except for the special rules applicable to remote sellers in subsection (i)(3) of this section, direct payment permit purchases in subsection (j) of this section, and certain taxable items, including taxable items sold by a marketplace provider, as provided in subsection (k) of this section, each sale of a taxable item is consummated at the location indicated by the provisions of this subsection. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in the state.

(1)   Consummation of sale - order received at a place of business of the seller in Texas.

(A)   Order placed in person.   Except as provided by paragraph (3) of this subsection, when an order for a taxable item is placed in person at a seller's place of business in Texas, including at a temporary place of business of the seller in Texas, the sale of that item is consummated at that place of business of the seller, regardless of the location where the order is fulfilled.

(B)   Order not placed in person.

(i)   Order fulfilled at a place of business of the seller in Texas. When an order is received at a place of business of the seller in Texas and is fulfilled at a place of business of the seller in Texas, the sale is consummated at the place of business where the order is fulfilled.

(ii)   Order not fulfilled at a place of business of the seller in Texas. When an order is received at a place of business of the seller in Texas and is fulfilled at a location that is not a place of business of the seller in Texas, the sale is consummated at the place of business where the order is received.

(2)   Consummation of sale - order not received at a place of business of the seller in Texas.

(A)   Order fulfilled at a place of business of the seller in Texas.   When an order is received at a location that is not a place of business of the seller in Texas or is received outside of Texas, and is fulfilled from a place of business of the seller in Texas, the sale is consummated at the place of business where the order is fulfilled.

(B)   Order not fulfilled from a place of business of the seller in Texas.

(i)   Order fulfilled in Texas.   When an order is received at a location that is not a place of business of the seller in Texas and is fulfilled from a location in Texas that is not a place of business of the seller, the sale is consummated at the location in Texas to which the order is shipped or delivered, or at which the purchaser of the item takes possession.

(ii)   Order not fulfilled in Texas. When an order is received by a seller at a location outside of Texas or by a remote seller, and is fulfilled from a location outside of Texas, the sale is not consummated in Texas. However, local use tax is due based upon the location in this state to which the item is shipped or delivered or at which the purchaser of the item takes possession as provided in subsection (d) of this section. Except as provided in subsection (i)(3) of this section, a

remote seller required to collect state use tax under §3.286(b)(2) of this title must also collect local use tax based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession.

(3) Exception for qualifying economic development agreements entered into before January 1, 2009, pursuant to Tax Code, §321.203(c-4) - (c-5) or §323.203(c-4) - (c-5). This paragraph is effective until September 1, 2024. If applicable, the local sales tax due on the sale of a taxable item is based on the location of the qualifying warehouse, which is a place of business of the seller, from which the item is shipped or delivered or at which the purchaser of the item takes possession.

(4) Local sales taxes are due to each local taxing jurisdiction with sales tax in effect where the sale is consummated. Local use tax may also be due if the total amount of local sales taxes due does not reach the two percent cap, and the item purchased is shipped or delivered to a location in one or more different local taxing jurisdictions, as provided in subsection (d) of this section.

(5) Multiple special purpose district taxes, multiple transit authority sales taxes, or a combination of the two may apply to a single transaction. If the sale of a taxable item is consummated at a location within the boundaries of multiple special purpose districts or transit authorities, local sales tax is owed to each of the jurisdictions in effect at that location. For example, a place of business of the seller located in the city of San Antonio is within the boundaries of both the San Antonio Advanced Transportation District and the San Antonio Metropolitan Transit Authority, and the seller is required to collect sales tax for both transit authorities. Similarly, a place of business of the seller in Flower Mound is located within the boundaries of two special purpose districts, the Flower Mound Crime Control District and the Flower Mound Fire Control District, and the seller is responsible for collecting sales tax for both special purpose districts.

(6) Itinerant vendors; vending machines.

(A) Itinerant vendors. Sales made by itinerant vendors are consummated at, and itinerant vendors must collect sales tax based upon, the location where the item is delivered or at which the purchaser of the item takes possession. Itinerant vendors do not have any responsibility to collect use tax.

(B) Vending machines. Sales of taxable items made from a vending machine are consummated at the location of the vending machine. See §3.293 of this title (relating to Food; Food Products; Meals; Food Service) for more information about vending machine sales.

(d) Local use tax. The provisions addressing the imposition of state use tax in §3.346 of this title also apply to the imposition of local use tax. For example, consistent with §3.346(e) of this title, all taxable items that are shipped or delivered to a location in this state that is within the boundaries of a local taxing jurisdiction are presumed to have been purchased for use in that local taxing jurisdiction as well as presumed to have been purchased for use in the state.

(1) General rules.

(A) When local use taxes are due in addition to local sales taxes as provided by subsection (c) of this section, all applicable use taxes must be collected or accrued in the following order until the two percent cap is reached: city, county, special purpose district, and transit authority. If more than one special purpose district use tax is due, all such taxes are to be collected or accrued before any transit authority use tax is collected or accrued. See subparagraphs (D) and (E) of this paragraph.

(B) If a local use tax cannot be collected or accrued at its full rate without exceeding the two percent cap, the seller cannot collect it, or any portion of it, and the purchaser is not responsible for accruing it.

(C) If a seller collects a local sales tax on an item, or a purchaser accrues a local sales tax on an item, a use tax for the same type of jurisdiction is not due on the same item. For example, after a city sales tax has been collected or accrued for an item, no use tax is due to that same or a different city on that item, but use tax may be due to a county, special purpose district, or transit authority. Similarly, if one or more special purpose district sales taxes have been collected or accrued for an item, no special purpose district use tax is due on that item, and if one or more transit authority sales taxes have been collected or accrued for an item, no transit authority use tax is due on that item.

(D) Collection or accrual of use tax for multiple special purpose districts. If more than one special purpose district use tax is in effect at the location where use of an item occurs, the special purpose district taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all special purpose district taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the district with the earliest effective date would exceed the two percent cap, the tax for that district is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (C) of this paragraph, whether use tax is due for the district that next became effective.

(i) If the competing special purpose district taxes became effective on the same date, the special purpose district taxes are due in the order of the earliest date for which the election in which the district residents authorized the imposition of sales and use tax by the district was held.

(ii) If the elections to impose the local taxes were held on the same date, the special purpose district taxes are due in the order of the earliest date for which the enabling legislation under which each district was created became effective.

(E) Collection or accrual of use tax for multiple transit authorities. If more than one transit authority use tax is in effect at the location where use of an item occurs, and the two percent cap has not been met, the transit authority taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all transit authority taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the authority with the earliest effective date would exceed the two percent cap, the tax for that authority is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (D) of this paragraph, whether use tax is due for the authority that next became effective.

(i) If the competing transit authorities became effective on the same date, the transit authority taxes are due in the order of the earliest date for which the election in which the authority residents authorized the imposition of sales and use tax by the authority was held.

(ii) If the elections to impose local taxes were held on the same date, the transit authority use taxes are due in the order of the earliest date for which the enabling legislation under which each authority was created became effective.

(2) General use tax rules applied to specific situations. The following fact patterns explain how local use tax is to be collected or accrued and remitted to the comptroller based on, and subject to, the general rules in paragraph (1) of this subsection.

(A)    Sale consummated outside the state, item delivered from outside the state or from a location in Texas that is not operated by the seller - local use tax due. Except as provided in subsection (i)(3) of this section, if a sale is consummated outside of this state according to the provisions of subsection (c) of this section, and the item purchased is either shipped or delivered to a location in this state as designated by the purchaser from a location outside of the state, or if the order is drop shipped directly to the purchaser from a third-party supplier, local use tax is owed based upon the location in this state to which the order is shipped or delivered or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use tax due on the sale. If the seller does not collect the local use taxes due on the sale, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller according to the provisions in paragraph (1) of this subsection. For example, if an order for a taxable item is received by a seller at a location outside of Texas, and the order is shipped to the purchaser from a location outside of the state, local use tax is due based upon the location to which the order is shipped or delivered or at which the purchaser of the item takes possession.

(B)    Sale consummated in Texas outside a local taxing jurisdiction, item delivered into one or more local taxing jurisdictions - local use tax due. If a sale is consummated at a location in Texas that is outside of the boundaries of any local taxing jurisdiction according to the provisions of subsection (c) of this section, and the order is shipped or delivered to the purchaser at a location in this state that is within the boundaries of one or more local taxing jurisdictions, local use tax is due based on the location to which the items are shipped or delivered or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use taxes due on the sale, regardless of the location of the seller in Texas. If the seller fails to collect any local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

(C)    Sale consummated in any local taxing jurisdictions imposing less than 2.0% in total local taxes - local sales taxes and use taxes due. If a sale is consummated at a location in Texas where the total local sales tax rate imposed by the taxing jurisdictions in effect at that location does not equal 2.0% according to the provisions of subsection (c) of this section, and the item is shipped or delivered to the purchaser at a location in this state that is inside the boundaries of a different local taxing jurisdiction, additional local use tax may be due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the two percent cap. The seller is responsible for collecting any additional local use taxes due on the sale, regardless of the location of the seller in Texas. See subsection (i) of this section. If the seller fails to collect the additional local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

(i)    Example one - if an order is received in person at a place of business of the seller, such that the sale is consummated at the location where the order is received as provided under subsection (c)(1)(A) of this section, and the local sales tax due on the sale does not meet the two percent cap, additional local use taxes are due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the provisions in paragraph (1) of this subsection.

(ii)    Example two - if a seller receives an order for a taxable item at a seller's place of business in Texas, and the seller ships or delivers the item from an out-of-state location to a location in this state as designated by the purchaser, local sales tax is due based upon the location of the place of business of the seller where the order is received. If the local sales tax due on the item does not meet the two percent cap, use taxes, subject to the provisions in paragraph (1) of this

subsection, are due based upon the location where the items are shipped or delivered or at which the purchaser of the item takes possession.

(e)    Effect of other law.

(1)    Tax Code, Title 2, Subtitles A (General Provisions) and B (Enforcement and Collection), Tax Code, Chapter 141 (Multistate Tax Compact) and Tax Code, Chapter 151 (Limited Sales, Excise, and Use Tax) apply to transactions involving local taxes. Related sections of this title and comptroller rulings shall also apply with respect to local taxes. This includes authorities such as court cases and federal law that affect whether an item is taxable or is excluded or exempt from taxation.

(2)    Permits, exemption certificates, and resale certificates required by Tax Code, Chapter 151, shall also satisfy the requirements for collecting and remitting local taxes, unless otherwise indicated by this section or other sections of this title. For example, see subsection (n) of this section concerning prior contract exemptions.

(3)    Any provisions in this section or other sections of this title related to a seller's responsibilities for collecting and remitting local taxes to the comptroller shall also apply to a purchaser if the seller does not collect local taxes that are due. The comptroller may proceed against the seller or purchaser for the local tax owed by either.

(f)    Tax rates. Except as otherwise provided by law, no local governmental entity may adopt or increase a sales and use tax if, as a result of the adoption or increase of the tax, the combined rate of all sales and use taxes imposed by local taxing jurisdictions having territory in the local governmental entity would exceed 2.0% at any location within the boundaries of the local governmental entity's jurisdiction. The following are the local tax rates that may be adopted.

(1)    Cities. Cities may impose sales and use tax at a rate of up to 2.0%.

(2)    Counties. Counties may impose sales and use tax at rates ranging from 0.5% to 1.5%.

(3)    Special purpose districts. Special purpose districts may impose sales and use tax at rates ranging from 0.125% to 2.0%.

(4)    Transit authorities. Transit authorities may impose sales and use tax at rates ranging from 0.25% to 1.0%.

(g)    Jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements.

(1)    Jurisdictional boundaries.

(A)    City boundaries. City taxing jurisdictional boundaries cannot overlap one another and a city cannot impose a sales and use tax in an area that is already within the jurisdiction of another city.

(B)    County boundaries. County tax applies to all locations within that county.

(C)    Special purpose district and transit authority boundaries. Special purpose districts and transit authorities may cross or share boundaries with other local taxing jurisdictions and may encompass, in whole or in part, other local taxing jurisdictions, including cities and counties. A geographic location or address in this state may lie within the boundaries of more than one special purpose district or more than one transit authority.

(D)    Extraterritorial jurisdictions. Except as otherwise provided by paragraph (3) of this subsection concerning strategic partnership agreements and subsection (l)(5) of this section concerning the City of El Paso and Fort Bliss, city sales and use tax does not apply to taxable sales that are consummated outside the boundaries of the city, including sales made in a city's extraterritorial jurisdiction. However,

an extraterritorial jurisdiction may lie within the boundaries of a special purpose district, transit authority, county, or any combination of the three, and the sales and use taxes for those jurisdictions would apply to those sales.

(2) Combined areas. A combined area is an area where the boundaries of a city overlap the boundaries of one or more other local taxing jurisdictions as a result of an annexation of additional territory by the city, and where, as the result of the imposition of the city tax in the area in addition to the local taxes imposed by the existing taxing jurisdictions, the combined local tax rate would exceed 2.0%. The comptroller shall make accommodations to maintain a 2.0% rate in any combined area by distributing the 2.0% tax revenue generated in these combined areas to the local taxing jurisdictions located in the combined areas as provided in Tax Code, §321.102 or Health and Safety Code, §775.0754. Combined areas are identified on the comptroller's website. Sellers engaged in transactions on which local sales or use taxes are due in a combined area, or persons who must self-accrue and remit tax directly to the comptroller, must use the combined area local code when reporting the tax rather than the codes for the individual city, county, special purpose districts, or transit authorities that make up the combined area.

(3) City tax imposed through strategic partnership agreements.

(A) The governing bodies of a district, as defined in Local Government Code, §43.0751, and a city may enter into a limited-purpose annexation agreement known as a strategic partnership agreement. Under this agreement, the city may impose sales and use tax within all or part of the boundaries of a district. Areas within a district that are annexed for this limited purpose are treated as though they are within the boundaries of the city for purposes of city sales and use tax.

(B) Counties, transit authorities, and special purpose districts may not enter into strategic partnership agreements. Sales and use taxes imposed by those taxing jurisdictions do not apply in the limited-purpose annexed area as part of a strategic partnership agreement between a city and an authorized district. However, a county, special purpose district, or transit authority sales and use tax, or any combination of these three types of taxes, may apply at locations included in a strategic partnership agreement between a city and an authorized district if the tax is imposed in that area by the applicable jurisdiction as allowed under its own controlling authorities.

(C) Prior to September 1, 2011, the term "district" was defined in Local Government Code, §43.0751 as a municipal utility district or a water control and improvement district. The definition was amended effective September 1, 2011, to mean a conservation and reclamation district operating under Water Code, Chapter 49.

(h) Places of business of the seller and job sites crossed by local taxing jurisdiction boundaries.

(1) Places of business of the seller crossed by local taxing jurisdiction boundaries. If a place of business of the seller is crossed by one or more local taxing jurisdiction boundaries so that a portion of the place of business of the seller is located within a taxing jurisdiction and the remainder of the place of business of the seller lies outside of the taxing jurisdiction, tax is due to the local taxing jurisdictions in which the sales office is located. If there is no sales office, sales tax is due to the local taxing jurisdictions in which any cash registers are located.

(2) Job sites.

(A) Residential repair and remodeling; new construction of an improvement to realty. When a contractor is improving real property under a separated contract, and the job site is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on any separately stated charges for taxable items incorporated into the real property must be allocated to the local taxing jurisdictions based on the total square footage of the real property improvement located within each jurisdiction, including the square footage of any standalone structures that are part of the construction, repair, or remodeling project. For more information about tax due on materials used at residential and new construction job sites, refer to §3.291 of this title (relating to Contractors).

(B) Nonresidential real property repair and improvement. When taxable services are performed to repair, remodel, or restore nonresidential real property, including a pipeline, transmission line, or parking lot, that is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on the taxable services, including materials and any other charges connected to the services performed, must be allocated among the local taxing jurisdictions based upon the total mileage or square footage, as appropriate, of the repair, remodeling, or restoration project located in each jurisdiction. For more information about tax due on materials used at nonresidential real property repair and remodeling job sites, refer to §3.357 of this title (relating to Nonresidential Real Property Repair, Remodeling, and Restoration; Real Property Maintenance).

(i) Sellers' and purchasers' responsibilities for collecting or accruing local taxes.

(1) Sale consummated in Texas; seller responsible for collecting local sales taxes and applicable local use taxes. When a sale of a taxable item is consummated at a location in Texas as provided by subsection (c) of this section, the seller must collect each local sales tax in effect at the location. If the total rate of local sales tax due on the sale does not reach the two percent cap, and the seller ships or delivers the item into another local taxing jurisdiction, then the seller is required to collect additional local use taxes due, if any, based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession, regardless of the location of the seller in Texas. For more information regarding local use taxes, refer to subsection (d) of this section.

(2) Out-of-state sale; seller engaged in business in Texas. Except as provided in paragraph (3) of this subsection, when a sale is not consummated in Texas, a seller who is engaged in business in this state is required to collect and remit local use taxes due, if any, on orders of taxable items shipped or delivered at the direction of the purchaser into a local taxing jurisdiction in this state based upon the location in this state to which the item is shipped or delivered or at which the purchaser of the item takes possession as provided in subsection (d) of this section.

(3) Local use tax rate for remote sellers.

(A) A remote seller required to collect and remit one or more local use taxes in connection with a sale of a taxable item must compute the amount using:

(i) the combined tax rate of all applicable local use taxes based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession; or

(ii) at the remote seller's election, the single local use tax rate published in the *Texas Register*.

(B) A remote seller that is storing tangible personal property in Texas to be used for fulfillment at a facility of a marketplace provider that has certified that it will assume the rights and duties of a seller with respect to the tangible personal property, as provided for in §3.286 of this title, may elect the single local use tax rate under subparagraph (A)(ii) of this paragraph.

(C) Notice to the comptroller of election and revocation of election.

(i) Before using the single local use tax rate, a remote seller must notify the comptroller of its election using a form prescribed by the comptroller. A remote seller may also notify the comptroller of the election on its use tax permit application form. The remote seller must use the single local use tax rate for all of its sales of taxable items until the election is revoked as provided in clause (ii) of this subparagraph.

(ii) A remote seller may revoke its election by filing a form prescribed by the comptroller. If the comptroller receives the notice by October 1, the revocation will be effective January 1 of the following year. If the comptroller receives the notice after October 1, the revocation will be effective January 1 of the year after the following year. For example, a remote seller must notify the comptroller by October 1, 2020, for the revocation to be effective January 1, 2021. If the comptroller receives the revocation on November 1, 2020, the revocation will be effective January 1, 2022.

(D) Single local use tax rate.

(i) The single local use tax rate in effect for the period beginning October 1, 2019, and ending December 31, 2019, is 1.75%.

(ii) The single local use tax rate in effect for the period beginning January 1, 2020, and ending December 31, 2020, is 1.75%.

(E) Annual publication of single local use tax rate. Before the beginning of a calendar year, the comptroller will publish notice of the single local use tax rate in the *Texas Register* that will be in effect for that calendar year.

(F) Calculating the single local use tax rate. The single local use tax rate effective in a calendar year is equal to the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year. As soon as practicable after the end of a state fiscal year, the comptroller must determine the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year by:

(i) dividing the total amount of net local sales and use taxes remitted to the comptroller during the state fiscal year by the total amount of net state sales and use tax remitted to the comptroller during the state fiscal year;

(ii) multiplying the amount computed under clause (i) of this subparagraph by the rate provided in Tax Code, §151.051; and

(iii) rounding the amount computed under clause (ii) of this subparagraph to the nearest .0025.

(G) Direct refund. A purchaser may request a refund based on local use taxes paid in a calendar year for the difference between the single local use tax rate paid by the purchaser and the amount the purchaser would have paid based on the combined tax rate for all applicable local use taxes. Notwithstanding the refund requirements under §3.325(a)(1) of this title (relating to Refunds and Payments Under Protest), a non-permitted purchaser may request a refund directly from the comptroller for the tax paid in the previous calendar year, no earlier than January 1 of the following calendar year within the statute of limitation under Tax Code, 111.104 (Refunds).

(H) Marketplace providers. Notwithstanding subparagraph (A) of this paragraph, marketplace providers may not use the single local use tax rate and must compute the amount of local use tax

to collect and remit using the combined tax rate of all applicable local use taxes.

(4) Purchaser responsible for accruing and remitting local taxes if seller fails to collect.

(A) If a seller does not collect the state sales tax, any applicable local sales taxes, or both, on a sale of a taxable item that is consummated in Texas, then the purchaser is responsible for filing a return and paying the tax. The local sales taxes due are based on the location in this state where the sale is consummated as provided in subsection (c) of this section.

(B) A purchaser who buys an item for use in Texas from a seller who does not collect the state use tax, any applicable local use taxes, or both, is responsible for filing a return and paying the tax. The local use taxes due are based on the location where the item is first stored, used, or consumed by the purchaser.

(C) For more information about how to report and pay use tax directly to the comptroller, see §3.286 of this title.

(5) Local tax is due on the sales price of a taxable item, as defined in Tax Code, §151.007, in the report period in which the taxable item is purchased or the period in which the taxable item is first stored, used, or otherwise consumed in a local taxing jurisdiction.

(6) A purchaser is not liable for additional local use tax if the purchaser pays local use tax using the rate elected by an eligible remote seller according to paragraph (3) of this subsection. The remote seller must be identified on the comptroller's website as electing to use the single local use tax rate. A purchaser must verify that the remote seller is listed on the comptroller's website. If the remote seller is not listed on the comptroller's website, the purchaser will be liable for additional use tax due in accordance to paragraph (4) of this subsection.

(j) Items purchased under a direct payment permit.

(1) When taxable items are purchased under a direct payment permit, local use tax is due based upon the location where the permit holder first stores the taxable items, except that if the taxable items are not stored, then local use tax is due based upon the location where the taxable items are first used or otherwise consumed by the permit holder.

(2) If, in a local taxing jurisdiction, storage facilities contain taxable items purchased under a direct payment exemption certificate and at the time of storage it is not known whether the taxable items will be used in Texas, then the taxpayer may elect to report the use tax either when the taxable items are first stored in Texas or are first removed from inventory for use in Texas, as long as use tax is reported in a consistent manner. See also §3.288(i) of this title (relating to Direct Payment Procedures and Qualifications) and §3.346(g) of this title.

(3) If local use tax is paid on stored items that are subsequently removed from Texas before they are used, the tax may be recovered in accordance with the refund and credit provisions of §3.325 of this title and §3.338 of this title (relating to Multistate Tax Credits and Allowance of Credit for Tax Paid to Suppliers).

(k) Special rules for certain taxable goods and services. Sales of the following taxable goods and services are consummated at, and local tax is due based upon, the location indicated in this subsection.

(1) Amusement services. Local tax is due based upon the location where the performance or event occurs. For more information on amusement services, refer to §3.298 of this title (relating to Amusement Services).

(2) Cable services. When a service provider uses a cable system to provide cable television or bundled cable services to cus-

tomers, local tax is due as provided for in §3.313 of this title. When a service provider uses a satellite system to provide cable services to customers, no local tax is due on the service in accordance with the Telecommunications Act of 1996, §602.

(3) Florists. Local sales tax is due on all taxable items sold by a florist based upon the location where the order is received, regardless of where or by whom delivery is made. Local use tax is not due on deliveries of taxable items sold by florists. For example, if the place of business of the florist where an order is taken is not within the boundaries of any local taxing jurisdiction, no local sales tax is due on the item and no local use tax is due regardless of the location of delivery. If a Texas florist delivers an order in a local taxing jurisdiction at the instruction of an unrelated florist, and if the unrelated florist did not take the order within the boundaries of a local taxing jurisdiction, local use tax is not due on the delivery. For more information about florists' sales and use tax obligations, refer to §3.307 of this title (relating to Florists).

(4) Landline telecommunications services. Local taxes due on landline telecommunications services are based upon the location of the device from which the call or other transmission originates. If the seller cannot determine where the call or transmission originates, local taxes due are based on the address to which the service is billed. For more information, refer to §3.344 of this title (relating to Telecommunications Services).

(5) Marketplace provider sales. Local taxes are due on sales of taxable items through a marketplace provider based on the location in this state to which the item is shipped or delivered or at which the purchaser takes possession. For more information, refer to §3.286 of this title.

(6) Mobile telecommunications services. Local taxes due on mobile telecommunications services are based upon the location of the customer's place of primary use as defined in §3.344(a)(8) of this title, and local taxes are to be collected as indicated in §3.344(h) of this title.

(7) Motor vehicle parking and storage. Local taxes are due based on the location of the space or facility where the vehicle is parked. For more information, refer to §3.315 of this title (relating to Motor Vehicle Parking and Storage).

(8) Natural gas and electricity. Any local city and special purpose taxes due are based upon the location where the natural gas or electricity is delivered to the purchaser. As explained in subsection (l)(1) of this section, residential use of natural gas and electricity is exempt from all county sales and use taxes and all transit authority sales and use taxes, most special purpose district sales and use taxes, and many city sales and use taxes. A list of the cities and special purpose districts that do impose, and those that are eligible to impose, local sales and use tax on residential use of natural gas and electricity is available on the comptroller's website. For more information, also refer to §3.295 of this title (relating to Natural Gas and Electricity).

(9) Nonresidential real property repair and remodeling services. Local taxes are due on services to remodel, repair, or restore nonresidential real property based on the location of the job site where the remodeling, repair, or restoration is performed. See also subsection (h)(2)(B) of this section and §3.357 of this title.

(10) Residential real property repair and remodeling and new construction of a real property improvement performed under a separated contract. When a contractor constructs a new improvement to realty pursuant to a separated contract or improves residential real property pursuant to a separated contract, the sale is consummated at the job site at which the contractor incorporates taxable items into the customer's real property. See also subsection (h)(2)(A) of this section and §3.291 of this title.

(11) Waste collection services. Local taxes are due on garbage or other solid waste collection or removal services based on the location at which the waste is collected or from which the waste is removed. For more information, refer to §3.356 of this title (relating to Real Property Service).

(l) Special exemptions and provisions applicable to individual jurisdictions.

(1) Residential use of natural gas and electricity.

(A) Mandatory exemptions from local sales and use tax. Residential use of natural gas and electricity is exempt from most local sales and use taxes. Counties, transit authorities, and most special purpose districts are not authorized to impose sales and use tax on the residential use of natural gas and electricity. Pursuant to Tax Code, §321.105, any city that adopted a local sales and use tax effective October 1, 1979, or later is prohibited from imposing tax on the residential use of natural gas and electricity. See §3.295 of this title.

(B) Imposition of tax allowed in certain cities. Cities that adopted local sales tax prior to October 1, 1979, may, in accordance with the provisions in Tax Code, §321.105, choose to repeal the exemption for residential use of natural gas and electricity. The comptroller's website provides a list of cities that impose tax on the residential use of natural gas and electricity, as well as a list of those cities that do not currently impose the tax, but are eligible to do so.

(C) Effective January 1, 2010, a fire control, prevention, and emergency medical services district organized under Local Government Code, Chapter 344 that imposes sales tax under Tax Code, §321.106, or a crime control and prevention district organized under Local Government Code, Chapter 363 that imposes sales tax under Tax Code, §321.108, that is located in all or part of a municipality that imposes a tax on the residential use of natural gas and electricity as provided under Tax Code, §321.105 may impose tax on residential use of natural gas and electricity at locations within the district. A list of the special purpose districts that impose tax on residential use of natural gas and electricity and those districts eligible to impose the tax that do not currently do so is available on the comptroller's website.

(2) Telecommunication services. Telecommunications services are exempt from all local sales taxes unless the governing body of a city, county, transit authority, or special purpose district votes to impose sales tax on these services. However, since 1999, under Tax Code, §322.109(d), transit authorities created under Transportation Code, Chapter 451 cannot repeal the exemption unless the repeal is first approved by the governing body of each city that created the local taxing jurisdiction. The local sales tax is limited to telecommunications services occurring between locations within Texas. See §3.344 of this title. The comptroller's website provides a list of local taxing jurisdictions that impose tax on telecommunications services.

(3) Emergency services districts.

(A) Authority to exclude territory from imposition of emergency services district sales and use tax. Pursuant to the provisions of Health and Safety Code, §775.0751(c-1), an emergency services district wishing to enact a sales and use tax may exclude from the election called to authorize the tax any territory in the district where the sales and use tax is then at 2.0%. The tax, if authorized by the voters eligible to vote on the enactment of the tax, then applies only in the portions of the district included in the election. The tax does not apply to sales made in the excluded territories in the district and sellers in the excluded territories should continue to collect local sales and use taxes

for the local taxing jurisdictions in effect at the time of the election under which the district sales and use tax was authorized as applicable.

      (B) Consolidation of districts resulting in sales tax sub-districts. Pursuant to the provisions of Health and Safety Code, §775.018(f), if the territory of a district proposed under Health and Safety Code, Chapter 775 overlaps with the boundaries of another district created under that chapter, the commissioners court of each county and boards of the counties in which the districts are located may choose to create a consolidated district in the overlapping territory. If two districts that want to consolidate under Health and Safety Code, §775.024 have different sales and use tax rates, the territory of the former districts located within the consolidated area will be designated as sub-districts and the sales tax rate within each sub-district will continue to be imposed at the rate the tax was imposed by the former district that each sub-district was part of prior to the consolidation.

    (4) East Aldine Management District.

      (A) Special sales and use tax zones within district; separate sales and use tax rate. As set out in Special District Local Laws Code, §3817.154(e) and (f), the East Aldine Management District board may create special sales and use tax zones within the boundaries of the District and, with voter approval, enact a special sales and use tax rate in each zone that is different from the sales and use tax rate imposed in the rest of the district.

      (B) Exemptions from special zone sales and use tax. The sale, production, distribution, lease, or rental of; and the use, storage, or other consumption within a special sales and use tax zone of; a taxable item sold, leased, or rented by the entities identified in clauses (i) - (vi) of this subparagraph are exempt from the special zone sales and use tax. State and all other applicable local taxes apply unless otherwise exempted by law. The special zone sales and use tax exemption applies to:

        *(i)* a retail electric provider as defined by Utilities Code, §31.002;

        *(ii)* an electric utility or a power generation company as defined by Utilities Code, §31.002;

        *(iii)* a gas utility as defined by Utilities Code, §101.003 or §121.001, or a person who owns pipelines used for transportation or sale of oil or gas or a product or constituent of oil or gas;

        *(iv)* a person who owns pipelines used for the transportation or sale of carbon dioxide;

        *(v)* a telecommunications provider as defined by Utilities Code, §51.002; or

        *(vi)* a cable service provider or video service provider as defined by Utilities Code, §66.002.

    (5) Imposition of city sales tax and transit tax on certain military installations; El Paso and Fort Bliss. Pursuant to Tax Code, §321.1045 (Imposition of Sales and Use Tax in Certain Federal Military Installations), for purposes of the local sales and use tax imposed under Tax Code, Chapter 321, the city of El Paso includes the area within the boundaries of Fort Bliss to the extent it is in the city's extraterritorial jurisdiction. However, the El Paso transit authority does not include Fort Bliss. See Transportation Code, §453.051 concerning the Creation of Transit Departments.

   (m) Restrictions on local sales tax rebates and other economic incentives. Pursuant to Local Government Code, §501.161, Section 4A and 4B development corporations may not offer to provide economic incentives, such as local sales tax rebates authorized under Local Government Code, Chapters 380 or 381, to persons whose business consists primarily of purchasing taxable items using resale certificates and then reselling those same items to a related party. A related party means a person or entity which owns at least 80% of the business enterprise to which sales and use taxes would be rebated as part of an economic incentive.

   (n) Prior contract exemptions. The provisions of §3.319 of this title (relating to Prior Contracts) concerning definitions and exclusions apply to prior contract exemptions.

    (1) Certain contracts and bids exempt. No local taxes are due on the sale, use, storage, or other consumption in this state of taxable items used:

      (A) for the performance of a written contract executed prior to the effective date of any local tax if the contract may not be modified because of the tax; or

      (B) pursuant to the obligation of a bid or bids submitted prior to the effective date of any local tax if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

    (2) Annexations. Any annexation of territory into an existing local taxing jurisdiction is also a basis for claiming the exemption provided by this subsection.

    (3) Local taxing jurisdiction rate increase; partial exemption for certain contracts and bids. When an existing local taxing jurisdiction raises its sales and use tax rate, the additional amount of tax that would be due as a result of the rate increase is not due on the sale, use, storage, or other consumption in this state of taxable items used:

      (A) for the performance of a written contract executed prior to the effective date of the tax rate increase if the contract may not be modified because of the tax; or

      (B) pursuant to the obligation of a bid or bids submitted prior to the effective date of the tax rate increase if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

    (4) Three-year statute of limitations.

      (A) The exemption in paragraph (1) of this subsection and the partial exemption in paragraph (3) of this subsection have no effect after three years from the date the adoption or increase of the tax takes effect in the local taxing jurisdiction.

      (B) The provisions of §3.319 of this title apply to this subsection to the extent they are consistent.

      (C) Leases. Any renewal or exercise of an option to extend the time of a lease or rental contract under the exemptions provided by this subsection shall be deemed to be a new contract and no exemption will apply.

    (5) Records. Persons claiming the exemption provided by this subsection must maintain records which can be verified by the comptroller or the exemption will be lost.

    (6) Exemption certificate. An identification number is required on the prior contract exemption certificates furnished to sellers. The identification number should be the person's 11-digit Texas taxpayer number or federal employer's identification (FEI) number.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on May 11, 2020.

TRD-202001858
William Hamner
Special Counsel for Tax Administration
Comptroller of Public Accounts
Effective date: May 31, 2020
Proposal publication date: January 3, 2020
For further information, please call: (512) 475-2220



# CHAPTER 9. PROPERTY TAX ADMINISTRATION

## SUBCHAPTER A. PRACTICE AND PROCEDURE

### 34 TAC §9.103

The Comptroller of Public Accounts adopts the repeal of existing §9.103, concerning audits of school district taxable property values, without changes to the proposed text as published in the February 14, 2020, issue of the *Texas Register* (45 TexReg 998). The rule will not be republished.

The comptroller repeals existing §9.103 in order to adopt new §9.103 with revisions to improve clarity, organization and implementation of the section. The repeal of §9.103 will be effective as of the date the new §9.103 takes effect.

The comptroller did not receive any comments regarding adoption of the repeal.

The repeal is adopted under Government Code, §403.302 (Determination of School District Property Values), which provides the comptroller with the authority to adopt rules governing the conduct of the property value study after consultation with the Comptroller's Property Tax Administration Advisory Board, and under Government Code, §403.303 (Protest), which provides the comptroller with the authority to adopt rules governing the conduct of protest hearings related to the property value study.

The repeal implements Government Code, §403.302 (Determination of School District Property Values) and §403.303 (Protests).

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on May 6, 2020.

TRD-202001798
Victoria North
Chief Counsel Fiscal and Agency Affairs Legal Services Division
Comptroller of Public Accounts
Effective date: May 26, 2020
Proposal publication date: February 14, 2020
For further information, please call: (512) 475-2220



### 34 TAC §9.103

The Comptroller of Public Accounts adopts new §9.103, concerning audit of total taxable value of property in a school district, with changes to the proposed text as published in the February 14, 2020, issue of the *Texas Register* (45 TexReg 998). The rule will be republished.

The comptroller repeals existing §9.103, concerning audits of school district taxable property value, in order to reorganize the rule and update the rule to be consistent with statutes. The comptroller adopts new §9.103 to clarify definitions, identify required submissions, clarify deadlines, update references and remove the requirement to adopt audit forms by rule. The comptroller also adopts this new section to better organize the information in the current section.

The comptroller received written comments from: Ms. Sandra Griffin, with Perdue, Brandon, Fielder, Collins & Mott, LLP; Mr. Steve Bird and Mr. Chris Young of Linebarger, Goggan, Blair & Sampson, LLP; Ms. Robin Willim, with Tarrant Appraisal District; Ms. Missy Pope, of Pope Audit Group, LLC; Mr. Steve Wise, with Dallas Central Appraisal District; Mr. Daniel Combs, with Alvin Independent School District; Mr. Rostam Kavoussi, of Linebarger, Goggan, Blair & Sampson, LLP on behalf of Alamo Heights ISD, East Central ISD, Fredericksburg ISD, Harlandale ISD, Medina Valley ISD, North East ISD, Northside ISD, and Southwest ISD; Mr. John Passero, Sr.; and Mr. Andrew Peters of Caldwell ISD.

Subsection (a) defines relevant terms and phrases, including clarified definitions from the existing §9.103 and new definitions for terms which appear in the existing section but were not defined therein.

Subsection (b) identifies the procedures and required submissions for a request for audit received from a school district. Paragraphs (1)(A) through (E) list the required forms by name and number and paragraph (1)(F) describes the summary or recapitulation of information from the local appraisal roll for the requesting school district.

Ms. Sandra Griffin requested retaining language from current subsection (b) or adding language to new subsection (b) only requiring additional forms for schools that have value loss under Tax Code, §33.06 or §33.065, participate in Tax Increment Financing, or have Chapter 313 Agreements.

The forms required by subsection (b) report statutorily required deductions enumerated to determine taxable value as set forth in Government Code, §403.302(d). Without the forms required under subsection (b), the comptroller cannot distinguish between a complete or incomplete request without seeking additional information upon receipt of a request for school district taxable value audit. The comptroller instead amends new subsection (b) by adding paragraph (2) allowing school districts to submit a signed affirmative statement that the district has zero value to report on the required forms, providing documentation for the determination of the completeness of a request.

Mr. Steve Bird and Mr. Chris Young provided comments on subsection (b) asserting that discretion on the part of the director to exclude some of the six items required by subsection (b) is an apparent acknowledgment of discretion in Government Code, §403.302 to change the scope of an audit.

Mr. Bird and Mr. Young also commented that subsection (b) lacks clarity as to when and how the director's discretion will be utilized and provides no guidelines as to under what conditions the director may or may not grant a request to exclude such information.

The discretion afforded the director in proposed new subsection (b) was discretion for reporting requirements, not discretion in the statutory scope of an audit of the statutorily required determination of total taxable value of all property in each school dis-

# APPENDIX J

(4) been subject to denial of payment under Title XVIII or Title XIX of the Act;

(5) operated under state-appointed or federally appointed temporary management to oversee the operation of the facility under §1819(h) or §1919(h) of the Act;

(6) had its participation agreement terminated under §1819(h)(4) or §1919(h)(1)(B)(i) of the Social Security Act;

(7) pursuant to state action, closed or had its residents transferred under §1919(h)(2); or

(8) refused to permit unannounced visits by HHSC.

(b) HHSC withdraws approval of a NATCEP if the NATCEP does not comply with §556.3 of this chapter (relating to NATCEP [Nurse Aide Training and Competency Evaluation Program (NAT-CEP)] Requirements).

(1) HHSC reviews allegations of noncompliance with this chapter by a NATCEP. If HHSC receives an allegation of noncompliance, HHSC notifies the NATCEP in writing and gives the NATCEP an opportunity to correct the noncompliance or provide documentation showing compliance. The NATCEP must correct the noncompliance or provide evidence of compliance and submit notification of the correction or documentation to show compliance to HHSC, in writing, within 10 days after receipt of the notice of noncompliance.

(2) If the NATCEP fails to correct the noncompliance, provide documentation showing compliance, or respond to the first notification from HHSC, HHSC sends a second notice. The NATCEP must correct the noncompliance or provide documentation showing compliance and submit notification of the correction or documentation to show compliance to HHSC, in writing, within 20 days after receipt of the second notice. Failure to comply will result in withdrawal of approval of the NATCEP.

(c) If HHSC withdraws approval of a NATCEP for failure to comply with §556.3 of this chapter, HHSC does not approve the NATCEP for at least two years after the date the approval was withdrawn.

(d) If HHSC proposes to withdraw approval of a NATCEP based on subsection (a) of this section, HHSC notifies the NATCEP [by certified mail] of the facts or conduct alleged to warrant the withdrawal. HHSC sends [mails] the notice to the facility's last known email address as shown in HHSC records.

(e) A dually certified nursing facility that offers a NATCEP may request a hearing to challenge the findings of noncompliance that led to the withdrawal of approval of the NATCEP, but not the withdrawal of approval of the NATCEP itself, in accordance with 42 CFR [Code of Federal Regulations (CFR)], Part 498.

(f) A nursing facility that offers a NATCEP and that participates only in Medicaid may request a hearing to challenge the findings of noncompliance that led to the withdrawal of approval of the NATCEP, but not the withdrawal of approval of the NATCEP itself. A hearing is governed by 1 Texas Administrative Code (TAC) Chapter 357, Subchapter I (relating to Hearings Under the Administrative Procedure Act), and 40 TAC Chapter 91 (relating to Hearings Under the Administrative Procedure Act), except the nursing facility must request the hearing within 60 days after receipt of the notice described in subsection (d) of this section, as allowed by 42 CFR §431.153.

(g) A nursing facility may request a hearing under subsection (e) or (f) of this section, but not both.

(h) If the finding of noncompliance that led to the denial of approval of the NATCEP by HHSC is overturned, HHSC rescinds the denial of approval of the NATCEP.

(i) If HHSC proposes to withdraw approval of a NATCEP based on §556.3 of this chapter or §556.7 of this chapter (relating to Review and Reapproval of a Nurse Aide Training and Competency Evaluation Program (NATCEP)), the NATCEP may request a hearing to challenge the withdrawal. A hearing is governed by 1 TAC Chapter 357, Subchapter I (relating to Hearings Under the Administrative Procedures Act), and 40 TAC Chapter 91 (relating to Hearings Under the Administrative Procedures Act). 1 TAC §357.484 (relating to Request for a Hearing) requires a hearing to be requested in writing within 15 days after the date the notice is received by the applicant. If a NATCEP does not make a timely request for a hearing, the applicant has waived the opportunity for a hearing and HHSC may withdraw the approval.

(j) A trainee who started a NATCEP before HHSC sent notice that it was withdrawing approval of the NATCEP may complete the NATCEP.

The agency certifies that legal counsel has reviewed the proposal and found it to be within the state agency's legal authority to adopt.

Filed with the Office of the Secretary of State on October 12, 2023.

TRD-202303793
Karen Ray
Chief Counsel
Health and Human Services Commission
Earliest possible date of adoption: November 26, 2023
For further information, please call: (512) 438-3161

♦ ♦ ♦

# TITLE 34. PUBLIC FINANCE

# PART 1. COMPTROLLER OF PUBLIC ACCOUNTS

## CHAPTER 3. TAX ADMINISTRATION
## SUBCHAPTER O. STATE AND LOCAL SALES AND USE TAXES

### 34 TAC §3.334

The Comptroller of Public Accounts proposes amendment to §3.334, concerning local sales and use taxes.

The comptroller proposes to add subsection (c)(7) regarding the location where an order is received:

"The location where the order is received by or on behalf of the seller means the physical location of a seller or third party such as an established outlet, office location, or automated order receipt system operated by or on behalf of the seller where an order is initially received by or on behalf of the seller and not where the order may be subsequently accepted, completed or fulfilled. An order is received when all of the information from the purchaser necessary to the determination whether the order can be accepted has been received by or on behalf of the seller. The location from which a product is shipped shall not be used in determining the location where the order is received by the seller."

The text is taken from Section 3.10.1C5 of the Streamlined Sales and Use Tax Agreement. *See* https://www.streamlinedsalestax.org/docs/default-source/agreement/ssuta/ssuta-

as-amended-through-05-24-23-with-hyperlinks-and-compiler-notes-at-end.pdf.

In its 2014 rulemaking, the comptroller proposed a definition of "receive," but deleted the proposed definition in response to concerns stated in oral and written comments. *See* (39 TexReg 4179) (May 30, 2014) (proposed rule amendment) and (39 TexReg 9598) (December 5, 2014) (adopted rule amendment).

In its January 2023 rulemaking, the comptroller again declined to adopt a definition of "receive" and instead, addressed the two circumstances that were most prominently debated - automated website orders and fulfillment warehouses. Subsection (b) of the adopted rule articulated the comptroller's interpretation that an automated website "receives" the order and that a fulfillment warehouse does not "receive" the order when it is forwarded from the website to the warehouse. *See* (48 TexReg 400) (January 27, 2023).

Since then, it has become apparent that other circumstances also require a clear articulation of the comptroller's interpretation of the term "received." Thus, the comptroller is proposing a general standard that is applicable to all situations, as well as to automated website orders and fulfillment warehouses.

The proposed standard comports with the ordinary usage of the terms, as evidenced by the fact that the standard has been approved by twenty-four states under the Streamlined Sales Tax Agreement. The proposed standard will also promote uniformity with those states that have elected or will elect origin-based sourcing.

The comptroller is currently in litigation with cities claiming that the location where an order is received should be the location where the vendor forwards the order for fulfillment, rather than the location where the order is received from the customer. *See City of Coppell, Texas; the City of Humble, Texas; the City of DeSoto, Texas; the City of Carrollton, Texas; the City of Farmers Branch, Texas; and the City of Round Rock, Texas v. Glenn Hegar,* Cause No. D-1-GN-21-003198 in Travis County, Texas District Court. However, as explained more fully in the January 2023 rulemaking, the legislative history indicates that the legislature did not intend a fulfillment warehouse to be the location where the order was received unless the fulfillment warehouse received the order directly from the customer. *See* (48 TexReg 398) (January 27, 2023).

In addition, as explained more fully in the January 2023 rulemaking (48 TexReg 396), the comptroller's current interpretation goes as far back as Comptroller's Decision No. 15,654 (1985), which stated:

"But it seems to the administrative law judge that the legislature was amending the law if not entirely in reaction to the then-pending case of *Bullock v. Dunigan Tool & Supply Co.,* 588 S.W.2d 633 (Tex. Civ. App.-Texarkana, writ ref'd n.r.e.), at least partly in reaction to that case. And if that be so, then the legislature did not want warehousing and storage facilities (many of which are outside city limits) to be the places where sales were consummated for local sales tax purposes unless orders were actually received there by personnel working there, but wanted the office location out of which the salesman operated to be the place where the sales were consummated."

The comptroller expects this issue to be fully litigated. But in the interim, the comptroller must still apply the local tax consummation statutes to pending controversies, and taxpayers are entitled to understand the basis for the comptroller's rulings. Adoption of a definitive standard may also facilitate a more definitive decision from the courts.

Brad Reynolds, Chief Revenue Estimator, has determined that during the first five years that the proposed amended rule is in effect, the rule: will not create or eliminate a government program; will not require the creation or elimination of employee positions; will not require an increase or decrease in future legislative appropriations to the agency; will not require an increase or decrease in fees paid to the agency; will not increase or decrease the number of individuals subject to the rule's applicability; and will not positively or adversely affect this state's economy.

Mr. Reynolds also has determined that the proposed amended rule would benefit the public by updating the rule to reflect or clarify the current policy. This rule is proposed under Tax Code, Title 2, and does not require a statement of fiscal implications for small businesses or rural communities. The proposed amended rule would have no significant fiscal impact on the state government, units of local government, or individuals. There would be no significant anticipated economic cost to the public.

The comptroller will hold a hearing to take public comments, on November 8, 2023 in Room 2.034 of the Barbara Jordan Building, 1601 Congress Ave., Austin, Texas 78701. Interested persons may sign up to testify beginning at 8:30 a.m. and testimony will be heard on a first come first serve basis. All persons will have 10 minutes to present their testimony and shall also provide their testimony in writing prior to their oral testimony.

You may submit comments on the proposal to Jenny Burleson, Director, Tax Policy Division, P.O. Box 13528 Austin, Texas 78711 or to the email address: tp.rule.comments@cpa.texas.gov. The comptroller must receive your comments no later than 30 days from the date of publication of the proposal in the *Texas Register.*

The comptroller proposes the amendment under Tax Code, §§111.002 (Comptroller's Rule; Compliance; Forfeiture); 321.306 (Comptroller's Rules); 322.203 (Comptroller's Rules); 323.306 (Comptroller's Rules), which authorize the comptroller to adopt rules to implement the tax statutes.

The amendment to this section implements Tax Code, §151.0595 (Single Local Tax Rate for Remote Sellers); Tax Code, Chapter 321, Subchapters A, B, C, D, and F; Tax Code, Chapter 322; Tax Code, Chapter 323.

*§3.334. Local Sales and Use Taxes.*

    (a) Definitions. The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

        (1) Cable system--The system through which a cable service provider delivers cable television or bundled cable service, as those terms are defined in §3.313 of this title (relating to Cable Television Service and Bundled Cable Service).

        (2) City--An incorporated city, municipality, town, or village.

        (3) City sales and use tax--The tax authorized under Tax Code, §321.101(a), including the additional municipal sales and use tax authorized under Tax Code, §321.101(b), the municipal sales and use tax for street maintenance authorized under Tax Code, §327.003, the Type A Development Corporation sales and use tax authorized under Local Government Code, §504.251, the Type B Development Corporation sales and use tax authorized under Local Government Code, §505.251, a sports and community venue project sales and use tax

adopted by a city under Local Government Code, §334.081, and a municipal development corporation sales and use tax adopted by a city under Local Government Code, §379A.081. The term does not include the fire control, prevention, and emergency medical services district sales and use tax authorized under Tax Code, §321.106, or the municipal crime control and prevention district sales and use tax authorized under Tax Code, §321.108.

(4) Comptroller's website--The comptroller's website concerning local taxes located at: https://comptroller.texas.gov/taxes/sales/.

(5) County sales and use tax--The tax authorized under Tax Code, §323.101, including a sports and community venue project sales and use tax adopted by a county under Local Government Code, §334.081. The term does not include the county health services sales and use tax authorized under Tax Code, §324.021, the county landfill and criminal detention center sales and use tax authorized under Tax Code, §325.021, or the crime control and prevention district sales and use tax authorized under Tax Code, §323.105.

(6) Drop shipment--A transaction in which an order is received by a seller at one location, but the item purchased is shipped by the seller from another location, or is shipped by the seller's third-party supplier, directly to a location designated by the purchaser.

(7) Engaged in business--This term has the meaning given in §3.286 of this title (relating to Seller's and Purchaser's Responsibilities).

(8) Extraterritorial jurisdiction-An unincorporated area that is contiguous to the corporate boundaries of a city as defined in Local Government Code, §42.021.

(9) Fulfill--To complete an order by transferring possession of a taxable item to a purchaser, or to ship or deliver a taxable item to a location designated by the purchaser. The term does not include receiving or tracking an order, determining shipping costs, managing inventory, or other activities that do not involve the transfer, shipment, or delivery of a taxable item to the purchaser or a location designated by the purchaser.

(10) Itinerant vendor--A seller who travels to various locations for the purpose of receiving orders and making sales of taxable items and who has no place of business in this state. A person who sells items through vending machines is also an itinerant vendor. A salesperson that operates out of a place of business in this state is not an itinerant vendor.

(11) Kiosk--A small stand-alone area or structure:

(A) that is used solely to display merchandise or to submit orders for taxable items from a data entry device, or both;

(B) that is located entirely within a location that is a place of business of another seller, such as a department store or shopping mall; and

(C) at which taxable items are not available for immediate delivery to a purchaser.

(12) Local taxes--Sales and use taxes imposed by any local taxing jurisdiction.

(13) Local taxing jurisdiction--Any of the following:

(A) a city that imposes sales and use tax as provided under paragraph (3) of this subsection;

(B) a county that imposes sales and use tax as provided under paragraph (5) of this subsection;

(C) a special purpose district created under the Special District Local Laws Code or other provisions of Texas law that is authorized to impose sales and use tax by the Tax Code or other provisions of Texas law and as governed by the provisions of Tax Code, Chapters 321 or 323 and other provisions of Texas law; or

(D) a transit authority that imposes sales and use tax as authorized by Transportation Code, Chapters, 451, 452, 453, 457, or 460 and governed by the provisions of Tax Code, Chapter, 322.

(14) Marketplace provider--This term has the meaning given in §3.286 of this title.

(15) Order placed in person--An order placed by a purchaser with the seller while physically present at the seller's place of business regardless of how the seller subsequently enters the order.

(16) Place of business of the seller - general definition--A place of business of the seller must be an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items from persons other than employees, independent contractors, and natural persons affiliated with the seller. An "established outlet, office, or location" usually requires staffing by one or more sales personnel. The term does not include a computer server, Internet protocol address, domain name, website, or software application. The "purpose" element of the definition may be established by proof that the sales personnel of the seller receive three or more orders for taxable items at the facility during the calendar year. Additional criteria for determining when a location is a place of business of the seller are provided in subsection (b) of this section for distribution centers, manufacturing plants, storage yards, warehouses and similar facilities; kiosks; and purchasing offices. An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business, is not a place of business of the seller if the comptroller determines that the outlet, office, facility, or location functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or exists solely to rebate a portion of the tax imposed by those chapters to the contracting business. An outlet, office, facility, or location does not exist to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or solely to rebate a portion of the tax imposed by those chapters if the outlet, office, facility, or location provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services.

(17) Purchasing office--An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business.

(18) Remote Seller--As defined in §3.286 of this title, a remote seller is a seller engaged in business in this state whose only activity in the state is:

(A) engaging in regular or systematic solicitation of sales of taxable items in this state by the distribution of catalogs, periodicals, advertising flyers, or other advertising, by means of print, radio, or television media, or by mail, telegraphy, telephone, computer data base, cable, optic, microwave, or other communication system for the purpose of effecting sales of taxable items; or

(B) soliciting orders for taxable items by mail or through other media including the Internet or other media that may be developed in the future.

(19) Seller--This term has the meaning given in §3.286 of this title and also refers to any agent or employee of the seller.

(20) Special purpose district--A local governmental entity authorized by the Texas legislature for a specific purpose, such as crime control, a local library, emergency services, county health services, or a county landfill and criminal detention center.

(21) Storage--This term has the meaning given in §3.346 of this title (relating to Use Tax).

(22) Temporary place of business of the seller--A location operated by a seller for a limited period of time for the purpose of selling and receiving orders for taxable items and where the seller has inventory available for immediate delivery to a purchaser. For example, a person who rents a booth at a weekend craft fair or art show to sell and take orders for jewelry, or a person who maintains a facility at a job site to rent tools and equipment to a contractor during the construction of real property, has established a temporary place of business. A temporary place of business of the seller includes a sale outside of a distribution center, manufacturing plant, storage yard, warehouse, or similar facility of the seller in a parking lot or similar space sharing the same physical address as the facility but not within the walls of the facility.

(23) Transit authority--A metropolitan rapid transit authority (MTA), advanced transportation district (ATD), regional or subregional transportation authority (RTA), city transit department (CTD), county transit authority (CTA), regional mobility authority (RMA) or coordinated county transportation authority created under Transportation Code, Chapters 370, 451, 452, 453, 457, or 460.

(24) Two percent cap--A reference to the general rule that, except as otherwise provided by Texas law and as explained in this section, a seller cannot collect, and a purchaser is not obligated to pay, more than 2.0% of the sales price of a taxable item in total local sales and use taxes for all local taxing jurisdictions.

(25) Use--This term has the meaning given in §3.346 of this title.

(26) Use tax--A tax imposed on the storage, use or other consumption of a taxable item in this state.

(b) Determining the place of business of a seller.

(1) Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller for the purpose of selling taxable items where sales personnel of the seller receive three or more orders for taxable items during the calendar year from persons other than employees, independent contractors, and natural persons affiliated with the seller is a place of business of the seller. Forwarding previously received orders to the facility for fulfilment does not make the facility a place of business.

(B) If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the entire facility is a place of business of the seller.

(2) Kiosks. A kiosk is not a place of business of the seller for the purpose of determining where a sale is consummated for local tax purposes. A seller who owns or operates a kiosk in Texas is, however, engaged in business in this state as provided in §3.286 of this title.

(3) Purchasing offices.

(A) A purchasing office is not a place of business of the seller if the purchasing office exists solely to rebate a portion of the local sales and use tax imposed by Tax Code, Chapters 321, 322, or 323 to a business with which it contracts; or if the purchasing office functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, or 323. A purchasing office does not exist solely to rebate a portion of the local sales and use tax or to avoid the tax legally due under Tax Code, Chapters 321, 322, or 323 if the purchasing office provides significant business services to the contracting business beyond processing invoices, including logistics management, purchasing, inventory control, or other vital business services.

(B) In making a determination under subparagraph (A) of this paragraph, as to whether a purchasing office provides significant business services to the contracting business beyond processing invoices, the comptroller will compare the total value of the other business services to the value of processing invoices. If the total value of the other business services, including logistics management, purchasing, inventory control, or other vital business services, is less than the value of the service to process invoices, then the purchasing office will be presumed not to be a place of business of the seller.

(C) If the comptroller determines that a purchasing office is not a place of business of the seller, the sale of any taxable item is deemed to be consummated at the place of business of the seller from whom the purchasing office purchased the taxable item for resale and local sales and use taxes are due according to the following rules.

(i) When taxable items are purchased from a Texas seller, local sales taxes are due based on the location of the seller's place of business where the sale is deemed to be consummated, as determined in accordance with subsection (c) of this section.

(ii) When the sale of a taxable item is deemed to be consummated at a location outside of this state, local use tax is due based on the location where the items are first stored, used or consumed by the entity that contracted with the purchasing office in accordance with subsection (d) of this section.

(4) An order that is received by a salesperson who is not at a place of business of the seller when the salesperson receives the order is treated as being received at the location from which the salesperson operates. Examples include orders that a salesperson receives by mail, telephone, including Voice over Internet Protocol and cellular phone calls, facsimile, and email while traveling. The location from which the salesperson operates is the principal fixed location where the salesperson conducts work-related activities. The location from which a salesperson operates will be a place of business of the seller only if the location meets the definition of a "place of business of a seller" in subsection (a)(16) of this section on its own, without regard to the orders imputed to that location by this paragraph.

(5) A facility without sales personnel is usually not a "place of business of the seller." A vending machine is not "an established outlet, office, or location," and does not constitute a "place of business of the seller." Instead, a vending machine sale is treated as a sale by an itinerant vendor. See subsections (a)(10) and (c)(6) of this section. However, a walk-in retail outlet with a stock of goods available for immediate purchase through a cashier-less point of sale terminal at the outlet would be "an established outlet, office, or location" so as to constitute a "place of business of the seller" even though sales personnel are not required for every sale. A computer that operates an automated shopping cart software program is not an established outlet, office, or

location," and does not constitute a "place of business of the seller." A computer that operates an automated telephone ordering system is not "an established outlet, office, or location," and does not constitute a "place of business of the seller."

(c) Local sales tax - Consummation of sale - determining the local taxing jurisdictions to which sales tax is due. Except for the special rules applicable to remote sellers in subsection (i)(3) of this section, direct payment permit purchases in subsection (j) of this section, and certain taxable items, including taxable items sold by a marketplace provider, as provided in subsection (k) of this section, each sale of a taxable item is consummated at the location indicated by the provisions of this subsection. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in Texas, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in Texas.

(1) Consummation of sale - order received at a place of business of the seller in Texas.

(A) Order placed in person. Except as provided by paragraph (3) of this subsection, when an order for a taxable item is placed in person at a seller's place of business in Texas, including at a temporary place of business of the seller in Texas, the sale of that item is consummated at that place of business of the seller, regardless of the location where the order is fulfilled.

(B) Order not placed in person.

(i) Order fulfilled at a place of business of the seller in Texas. When an order is received at a place of business of the seller in Texas and is fulfilled at a place of business of the seller in Texas, the sale is consummated at the place of business where the order is fulfilled.

(ii) Order not fulfilled at a place of business of the seller in Texas. When an order is received at a place of business of the seller in Texas and is fulfilled at a location that is not a place of business of the seller in Texas, the sale is consummated at the place of business where the order is received.

(2) Consummation of sale - order not received at a place of business of the seller in Texas.

(A) Order fulfilled at a place of business of the seller in Texas. When an order is received at a location that is not a place of business of the seller in Texas or is received outside of Texas, and is fulfilled from a place of business of the seller in Texas, the sale is consummated at the place of business where the order is fulfilled.

(B) Order not fulfilled from a place of business of the seller in Texas.

(i) Order fulfilled in Texas. When an order is received at a location that is not a place of business of the seller in Texas and is fulfilled from a location in Texas that is not a place of business of the seller, the sale is consummated at the location in Texas to which the order is shipped or delivered, or at which the purchaser of the item takes possession.

(ii) Order not fulfilled in Texas. When an order is received by a seller at a location that is not a place of business of the seller in Texas, and is fulfilled from a location outside of Texas, the sale is not consummated in Texas. However, a use is consummated at the first point in Texas where the item is stored, used, or consumed after the interstate transit has ceased. A taxable item delivered to a point in Texas is presumed to be for storage, use, or consumption at that point until the contrary is established. Local use tax should be collected as provided in subsection (d) of this section. Except as provided in subsection (i)(3) of this section, a remote seller required to collect state use tax under §3.286(b)(2) of this title must also collect local use tax.

(3) Exception for qualifying economic development agreements entered into before January 1, 2009, pursuant to Tax Code, §321.203(c-4) - (c-5) or §323.203(c-4) - (c-5). This paragraph is effective until September 1, 2024. If applicable, the local sales tax due on the sale of a taxable item is based on the location of the qualifying warehouse, which is a place of business of the seller, from which the item is shipped or delivered or at which the purchaser of the item takes possession.

(4) Local sales taxes are due to each local taxing jurisdiction with sales tax in effect where the sale is consummated. Local use tax may also be due if the total amount of local sales taxes due does not reach the two percent cap, and the item purchased is shipped or delivered to a location in one or more different local taxing jurisdictions, as provided in subsection (d) of this section.

(5) Multiple special purpose district taxes, multiple transit authority sales taxes, or a combination of the two may apply to a single transaction. If the sale of a taxable item is consummated at a location within the boundaries of multiple special purpose districts or transit authorities, local sales tax is owed to each of the jurisdictions in effect at that location. For example, a place of business of the seller located in the city of San Antonio is within the boundaries of both the San Antonio Advanced Transportation District and the San Antonio Metropolitan Transit Authority, and the seller is required to collect sales tax for both transit authorities. Similarly, a place of business of the seller in Flower Mound is located within the boundaries of two special purpose districts, the Flower Mound Crime Control District and the Flower Mound Fire Control District, and the seller is responsible for collecting sales tax for both special purpose districts.

(6) Itinerant vendors; vending machines.

(A) Itinerant vendors. Sales made by itinerant vendors are consummated at, and itinerant vendors must collect sales tax based upon, the location where the item is delivered or at which the purchaser of the item takes possession. Itinerant vendors do not have any responsibility to collect use tax.

(B) Vending machines. Sales of taxable items made from a vending machine are consummated at the location of the vending machine. See §3.293 of this title (relating to Food; Food Products; Meals; Food Service) for more information about vending machine sales.

(7) The location where the order is received by or on behalf of the seller means the physical location of a seller or third party such as an established outlet, office location, or automated order receipt system operated by or on behalf of the seller where an order is initially received by or on behalf of the seller and not where the order may be subsequently accepted, completed or fulfilled. An order is received when all of the information from the purchaser necessary to the determination whether the order can be accepted has been received by or on behalf of the seller. The location from which a product is shipped shall not be used in determining the location where the order is received by the seller.

(d) Local use tax. The provisions addressing the imposition of state use tax in §3.346 of this title also apply to the imposition of local use tax. For example, consistent with §3.346(e) of this title, all taxable items that are shipped or delivered to a location in this state that is within the boundaries of a local taxing jurisdiction are presumed to have been purchased for use in that local taxing jurisdiction as well as presumed to have been purchased for use in the state.

(1) General rules.

(A) When local use taxes are due in addition to local sales taxes as provided by subsection (c) of this section, all applicable

use taxes must be collected or accrued in the following order until the two percent cap is reached: city, county, special purpose district, and transit authority. If more than one special purpose district use tax is due, all such taxes are to be collected or accrued before any transit authority use tax is collected or accrued. See subparagraphs (D) and (E) of this paragraph.

(B) If a local use tax cannot be collected or accrued at its full rate without exceeding the two percent cap, the seller cannot collect it, or any portion of it, and the purchaser is not responsible for accruing it.

(C) If a seller collects a local sales tax on an item, or a purchaser accrues a local sales tax on an item, a use tax for the same type of jurisdiction is not due on the same item. For example, after a city sales tax has been collected or accrued for an item, no use tax is due to that same or a different city on that item, but use tax may be due to a county, special purpose district, or transit authority. Similarly, if one or more special purpose district sales taxes have been collected or accrued for an item, no special purpose district use tax is due on that item, and if one or more transit authority sales taxes have been collected or accrued for an item, no transit authority use tax is due on that item.

(D) Collection or accrual of use tax for multiple special purpose districts. If more than one special purpose district use tax is in effect at the location where use of an item occurs, the special purpose district taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all special purpose district taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the district with the earliest effective date would exceed the two percent cap, the tax for that district is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (C) of this paragraph, whether use tax is due for the district that next became effective.

(i) If the competing special purpose district taxes became effective on the same date, the special purpose district taxes are due in the order of the earliest date for which the election in which the district residents authorized the imposition of sales and use tax by the district was held.

(ii) If the elections to impose the local taxes were held on the same date, the special purpose district taxes are due in the order of the earliest date for which the enabling legislation under which each district was created became effective.

(E) Collection or accrual of use tax for multiple transit authorities. If more than one transit authority use tax is in effect at the location where use of an item occurs, and the two percent cap has not been met, the transit authority taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all transit authority taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the authority with the earliest effective date would exceed the two percent cap, the tax for that authority is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (D) of this paragraph, whether use tax is due for the authority that next became effective.

(i) If the competing transit authorities became effective on the same date, the transit authority taxes are due in the order of the earliest date for which the election in which the authority residents authorized the imposition of sales and use tax by the authority was held.

(ii) If the elections to impose local taxes were held on the same date, the transit authority use taxes are due in the order of

the earliest date for which the enabling legislation under which each authority was created became effective.

(2) General use tax rules applied to specific situations. The following fact patterns explain how local use tax is to be collected or accrued and remitted to the comptroller based on, and subject to, the general rules in paragraph (1) of this subsection.

(A) Sale consummated outside the state, item delivered from outside the state or from a location in Texas that is not operated by the seller - local use tax due. Except as provided in subsection (i)(3) of this section, if a sale is consummated outside of this state according to the provisions of subsection (c) of this section, and the item purchased is either shipped or delivered to a location in this state as designated by the purchaser from a location outside of the state, or if the order is drop shipped directly to the purchaser from a third-party supplier, local use tax is owed based upon the location in this state to which the order is shipped or delivered or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use tax due on the sale. If the seller does not collect the local use taxes due on the sale, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller according to the provisions in paragraph (1) of this subsection. For example, if an order for a taxable item is received by a seller at a location outside of Texas, and the order is shipped to the purchaser from a location outside of the state, local use tax is due based upon the location to which the order is shipped or delivered or at which the purchaser of the item takes possession.

(B) Sale consummated in Texas outside a local taxing jurisdiction, item delivered into one or more local taxing jurisdictions - local use tax due. If a sale is consummated at a location in Texas that is outside of the boundaries of any local taxing jurisdiction according to the provisions of subsection (c) of this section, and the order is shipped or delivered to the purchaser at a location in this state that is within the boundaries of one or more local taxing jurisdictions, local use tax is due based on the location to which the items are shipped or delivered or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use taxes due on the sale, regardless of the location of the seller in Texas. If the seller fails to collect any local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

(C) Sale consummated in any local taxing jurisdictions imposing less than 2.0% in total local taxes - local sales taxes and use taxes due. If a sale is consummated in Texas where the total local sales tax rate imposed by the taxing jurisdictions in effect at that location does not equal 2.0% according to the provisions of subsection (c) of this section, and the item is shipped or delivered to the purchaser at a location in this state that is inside the boundaries of a different local taxing jurisdiction, additional local use tax may be due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the two percent cap. The seller is responsible for collecting any additional local use taxes due on the sale, regardless of the location of the seller in Texas. See subsection (i) of this section. If the seller fails to collect the additional local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

(i) Example one - if an order is received in person at a place of business of the seller, such that the sale is consummated at the location where the order is received as provided under subsection (c)(1)(A) of this section, and the local sales tax due on the sale does not meet the two percent cap, additional local use taxes are due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the provisions in paragraph (1) of this subsection.

*(ii)* Example two - if a seller receives an order for a taxable item at a seller's place of business in Texas, and the seller ships or delivers the item from an out-of-state location to a location in this state as designated by the purchaser, local sales tax is due based upon the location of the place of business of the seller where the order is received. If the local sales tax due on the item does not meet the two percent cap, use taxes, subject to the provisions in paragraph (1) of this subsection, are due based upon the location where the items are shipped or delivered or at which the purchaser of the item takes possession.

(e) Effect of other law.

(1) Tax Code, Title 2, Subtitles A (General Provisions) and B (Enforcement and Collection), Tax Code, Chapter 141 (Multistate Tax Compact) and Tax Code, Chapter 151 (Limited Sales, Excise, and Use Tax) apply to transactions involving local taxes. Related sections of this title and comptroller rulings shall also apply with respect to local taxes. This includes authorities such as court cases and federal law that affect whether an item is taxable or is excluded or exempt from taxation.

(2) Permits, exemption certificates, and resale certificates required by Tax Code, Chapter 151, shall also satisfy the requirements for collecting and remitting local taxes, unless otherwise indicated by this section or other sections of this title. For example, see subsection (n) of this section concerning prior contract exemptions.

(3) Any provisions in this section or other sections of this title related to a seller's responsibilities for collecting and remitting local taxes to the comptroller shall also apply to a purchaser if the seller does not collect local taxes that are due. The comptroller may proceed against the seller or purchaser for the local tax owed by either.

(f) Tax rates. Except as otherwise provided by law, no local governmental entity may adopt or increase a sales and use tax if, as a result of the adoption or increase of the tax, the combined rate of all sales and use taxes imposed by local taxing jurisdictions having territory in the local governmental entity would exceed 2.0% at any location within the boundaries of the local governmental entity's jurisdiction. The following are the local tax rates that may be adopted.

(1) Cities. Cities may impose sales and use tax at a rate of up to 2.0%.

(2) Counties. Counties may impose sales and use tax at rates ranging from 0.5% to 1.5%.

(3) Special purpose districts. Special purpose districts may impose sales and use tax at rates ranging from 0.125% to 2.0%.

(4) Transit authorities. Transit authorities may impose sales and use tax at rates ranging from 0.25% to 1.0%.

(g) Jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements.

(1) Jurisdictional boundaries.

(A) City boundaries. City taxing jurisdictional boundaries cannot overlap one another and a city cannot impose a sales and use tax in an area that is already within the jurisdiction of another city.

(B) County boundaries. County tax applies to all locations within that county.

(C) Special purpose district and transit authority boundaries. Special purpose districts and transit authorities may cross or share boundaries with other local taxing jurisdictions and may encompass, in whole or in part, other local taxing jurisdictions, including cities and counties. A geographic location or address in this state may lie within the boundaries of more than one special purpose district or more than one transit authority.

(D) Extraterritorial jurisdictions. Except as otherwise provided by paragraph (3) of this subsection concerning strategic partnership agreements and subsection (l)(5) of this section concerning the City of El Paso and Fort Bliss, city sales and use tax does not apply to taxable sales that are consummated outside the boundaries of the city, including sales made in a city's extraterritorial jurisdiction. However, an extraterritorial jurisdiction may lie within the boundaries of a special purpose district, transit authority, county, or any combination of the three, and the sales and use taxes for those jurisdictions would apply to those sales.

(2) Combined areas. A combined area is an area where the boundaries of a city overlap the boundaries of one or more other local taxing jurisdictions as a result of an annexation of additional territory by the city, and where, as the result of the imposition of the city tax in the area in addition to the local taxes imposed by the existing taxing jurisdictions, the combined local tax rate would exceed 2.0%. The comptroller shall make accommodations to maintain a 2.0% rate in any combined area by distributing the 2.0% tax revenue generated in these combined areas to the local taxing jurisdictions located in the combined areas as provided in Tax Code, §321.102 or Health and Safety Code, §775.0754. Combined areas are identified on the comptroller's website. Sellers engaged in transactions on which local sales or use taxes are due in a combined area, or persons who must self-accrue and remit tax directly to the comptroller, must use the combined area local code when reporting the tax rather than the codes for the individual city, county, special purpose districts, or transit authorities that make up the combined area.

(3) City tax imposed through strategic partnership agreements.

(A) The governing bodies of a district, as defined in Local Government Code, §43.0751, and a city may enter into a limited-purpose annexation agreement known as a strategic partnership agreement. Under this agreement, the city may impose sales and use tax within all or part of the boundaries of a district. Areas within a district that are annexed for this limited purpose are treated as though they are within the boundaries of the city for purposes of city sales and use tax.

(B) Counties, transit authorities, and special purpose districts may not enter into strategic partnership agreements. Sales and use taxes imposed by those taxing jurisdictions do not apply in the limited-purpose annexed area as part of a strategic partnership agreement between a city and an authorized district. However, a county, special purpose district, or transit authority sales and use tax, or any combination of these three types of taxes, may apply at locations included in a strategic partnership agreement between a city and an authorized district if the tax is imposed in that area by the applicable jurisdiction as allowed under its own controlling authorities.

(C) Prior to September 1, 2011, the term "district" was defined in Local Government Code, §43.0751 as a municipal utility district or a water control and improvement district. The definition was amended effective September 1, 2011, to mean a conservation and reclamation district operating under Water Code, Chapter 49.

(h) Places of business of the seller and job sites crossed by local taxing jurisdiction boundaries.

(1) Places of business of the seller crossed by local taxing jurisdiction boundaries. If a place of business of the seller is crossed by one or more local taxing jurisdiction boundaries so that a portion of the place of business of the seller is located within a taxing jurisdiction and

the remainder of the place of business of the seller lies outside of the taxing jurisdiction, tax is due to the local taxing jurisdictions in which the sales office is located. If there is no sales office, sales tax is due to the local taxing jurisdictions in which any cash registers are located.

  (2) Job sites.

    (A) Residential repair and remodeling; new construction of an improvement to realty. When a contractor is improving real property under a separated contract, and the job site is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on any separately stated charges for taxable items incorporated into the real property must be allocated to the local taxing jurisdictions based on the total square footage of the real property improvement located within each jurisdiction, including the square footage of any standalone structures that are part of the construction, repair, or remodeling project. For more information about tax due on materials used at residential and new construction job sites, refer to §3.291 of this title (relating to Contractors).

    (B) Nonresidential real property repair and improvement. When taxable services are performed to repair, remodel, or restore nonresidential real property, including a pipeline, transmission line, or parking lot, that is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on the taxable services, including materials and any other charges connected to the services performed, must be allocated among the local taxing jurisdictions based upon the total mileage or square footage, as appropriate, of the repair, remodeling, or restoration project located in each jurisdiction. For more information about tax due on materials used at nonresidential real property repair and remodeling job sites, refer to §3.357 of this title (relating to Nonresidential Real Property Repair, Remodeling, and Restoration; Real Property Maintenance).

  (i) Sellers' and purchasers' responsibilities for collecting or accruing local taxes.

  (1) Sale consummated in Texas; seller responsible for collecting local sales taxes and applicable local use taxes. When a sale of a taxable item is consummated at a location in Texas as provided by subsection (c) of this section, the seller must collect each local sales tax in effect at the location. If the total rate of local sales tax due on the sale does not reach the two percent cap, and the seller ships or delivers the item into another local taxing jurisdiction, then the seller is required to collect additional local use taxes due, if any, based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession, regardless of the location of the seller in Texas. For more information regarding local use taxes, refer to subsection (d) of this section.

  (2) Out-of-state sale; seller engaged in business in Texas. Except as provided in paragraph (3) of this subsection, when a sale is not consummated in Texas, a seller who is engaged in business in this state is required to collect and remit local use taxes due, if any, on orders of taxable items shipped or delivered at the direction of the purchaser into a local taxing jurisdiction in this state based upon the location in this state to which the item is shipped or delivered or at which the purchaser of the item takes possession as provided in subsection (d) of this section.

  (3) Local use tax rate for remote sellers.

    (A) A remote seller required to collect and remit one or more local use taxes in connection with a sale of a taxable item must compute the amount using:

      (i) the combined tax rate of all applicable local use taxes based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession; or

      (ii) at the remote seller's election, the single local use tax rate published in the *Texas Register*.

    (B) A remote seller that is storing tangible personal property in Texas to be used for fulfillment at a facility of a marketplace provider that has certified that it will assume the rights and duties of a seller with respect to the tangible personal property, as provided for in §3.286 of this title, may elect the single local use tax rate under subparagraph (A)(ii) of this paragraph.

    (C) Notice to the comptroller of election and revocation of election.

      (i) Before using the single local use tax rate, a remote seller must notify the comptroller of its election using a form prescribed by the comptroller. A remote seller may also notify the comptroller of the election on its use tax permit application form. The remote seller must use the single local use tax rate for all of its sales of taxable items until the election is revoked as provided in clause (ii) of this subparagraph.

      (ii) A remote seller may revoke its election by filing a form prescribed by the comptroller. If the comptroller receives the notice by October 1, the revocation will be effective January 1 of the following year. If the comptroller receives the notice after October 1, the revocation will be effective January 1 of the year after the following year. For example, a remote seller must notify the comptroller by October 1, 2020, for the revocation to be effective January 1, 2021. If the comptroller receives the revocation on November 1, 2020, the revocation will be effective January 1, 2022.

    (D) Single local use tax rate.

      (i) The single local use tax rate in effect for the period beginning October 1, 2019, and ending December 31, 2019, is 1.75%.

      (ii) The single local use tax rate in effect for the period beginning January 1, 2020, and ending December 31, 2020, is 1.75%.

    (E) Annual publication of single local use tax rate. Before the beginning of a calendar year, the comptroller will publish notice of the single local use tax rate in the *Texas Register* that will be in effect for that calendar year.

    (F) Calculating the single local use tax rate. The single local use tax rate effective in a calendar year is equal to the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year. As soon as practicable after the end of a state fiscal year, the comptroller must determine the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year by:

      (i) dividing the total amount of net local sales and use taxes remitted to the comptroller during the state fiscal year by the total amount of net state sales and use tax remitted to the comptroller during the state fiscal year;

      (ii) multiplying the amount computed under clause (i) of this subparagraph by the rate provided in Tax Code, §151.051; and

      (iii) rounding the amount computed under clause (ii) of this subparagraph to the nearest .0025.

    (G) Direct refund. A purchaser may request a refund based on local use taxes paid in a calendar year for the difference between the single local use tax rate paid by the purchaser and the amount the purchaser would have paid based on the combined tax rate for all applicable local use taxes. Notwithstanding the refund requirements

under §3.325(a)(1) of this title (relating to Refunds and Payments Under Protest), a non-permitted purchaser may request a refund directly from the comptroller for the tax paid in the previous calendar year, no earlier than January 1 of the following calendar year within the statute of limitation under Tax Code, 111.104 (Refunds).

(H) Marketplace providers. Notwithstanding subparagraph (A) of this paragraph, marketplace providers may not use the single local use tax rate and must compute the amount of local use tax to collect and remit using the combined tax rate of all applicable local use taxes.

(4) Purchaser responsible for accruing and remitting local taxes if seller fails to collect.

(A) If a seller does not collect the state sales tax, any applicable local sales taxes, or both, on a sale of a taxable item that is consummated in Texas, then the purchaser is responsible for filing a return and paying the tax. The local sales taxes due are based on the location in this state where the sale is consummated as provided in subsection (c) of this section.

(B) A purchaser who buys an item for use in Texas from a seller who does not collect the state use tax, any applicable local use taxes, or both, is responsible for filing a return and paying the tax. The local use taxes due are based on the location where the item is first stored, used, or consumed by the purchaser.

(C) For more information about how to report and pay use tax directly to the comptroller, see §3.286 of this title.

(5) Local tax is due on the sales price of a taxable item, as defined in Tax Code, §151.007, in the report period in which the taxable item is purchased or the period in which the taxable item is first stored, used, or otherwise consumed in a local taxing jurisdiction.

(6) A purchaser is not liable for additional local use tax if the purchaser pays local use tax using the rate elected by an eligible remote seller according to paragraph (3) of this subsection. The remote seller must be identified on the comptroller's website as electing to use the single local use tax rate. A purchaser must verify that the remote seller is listed on the comptroller's website. If the remote seller is not listed on the comptroller's website, the purchaser will be liable for additional use tax due in accordance to paragraph (4) of this subsection.

(j) Items purchased under a direct payment permit.

(1) When taxable items are purchased under a direct payment permit, local use tax is due based upon the location where the permit holder first stores the taxable items, except that if the taxable items are not stored, then local use tax is due based upon the location where the taxable items are first used or otherwise consumed by the permit holder.

(2) If, in a local taxing jurisdiction, storage facilities contain taxable items purchased under a direct payment exemption certificate and at the time of storage it is not known whether the taxable items will be used in Texas, then the taxpayer may elect to report the use tax either when the taxable items are first stored in Texas or are first removed from inventory for use in Texas, as long as use tax is reported in a consistent manner. See also §3.288(i) of this title (relating to Direct Payment Procedures and Qualifications) and §3.346(g) of this title.

(3) If local use tax is paid on stored items that are subsequently removed from Texas before they are used, the tax may be recovered in accordance with the refund and credit provisions of §3.325 of this title and §3.338 of this title (relating to Multistate Tax Credits and Allowance of Credit for Tax Paid to Suppliers).

(k) Special rules for certain taxable goods and services. Sales of the following taxable goods and services are consummated at, and local tax is due based upon, the location indicated in this subsection.

(1) Amusement services. Local tax is due based upon the location where the performance or event occurs. For more information on amusement services, refer to §3.298 of this title (relating to Amusement Services).

(2) Cable services. When a service provider uses a cable system to provide cable television or bundled cable services to customers, local tax is due as provided for in §3.313 of this title. When a service provider uses a satellite system to provide cable services to customers, no local tax is due on the service in accordance with the Telecommunications Act of 1996, §602.

(3) Florists. Local sales tax is due on all taxable items sold by a florist based upon the location where the order is received, regardless of where or by whom delivery is made. Local use tax is not due on deliveries of taxable items sold by florists. For example, if the place of business of the florist where an order is taken is not within the boundaries of any local taxing jurisdiction, no local sales tax is due on the item and no local use tax is due regardless of the location of delivery. If a Texas florist delivers an order in a local taxing jurisdiction at the instruction of an unrelated florist, and if the unrelated florist did not take the order within the boundaries of a local taxing jurisdiction, local use tax is not due on the delivery. For more information about florists' sales and use tax obligations, refer to §3.307 of this title (relating to Florists).

(4) Landline telecommunications services. Local taxes due on landline telecommunications services are based upon the location of the device from which the call or other transmission originates. If the seller cannot determine where the call or transmission originates, local taxes due are based on the address to which the service is billed. For more information, refer to §3.344 of this title (relating to Telecommunications Services).

(5) Marketplace provider sales. Local taxes are due on sales of taxable items through a marketplace provider based on the location in this state to which the item is shipped or delivered or at which the purchaser takes possession. For more information, refer to §3.286 of this title.

(6) Mobile telecommunications services. Local taxes due on mobile telecommunications services are based upon the location of the customer's place of primary use as defined in §3.344(a)(8) of this title, and local taxes are to be collected as indicated in §3.344(h) of this title.

(7) Motor vehicle parking and storage. Local taxes are due based on the location of the space or facility where the vehicle is parked. For more information, refer to §3.315 of this title (relating to Motor Vehicle Parking and Storage).

(8) Natural gas and electricity. Any local city and special purpose taxes due are based upon the location where the natural gas or electricity is delivered to the purchaser. As explained in subsection (l)(1) of this section, residential use of natural gas and electricity is exempt from all county sales and use taxes and all transit authority sales and use taxes, most special purpose district sales and use taxes, and many city sales and use taxes. A list of the cities and special purpose districts that do impose, and those that are eligible to impose, local sales and use tax on residential use of natural gas and electricity is available on the comptroller's website. For more information, also refer to §3.295 of this title (relating to Natural Gas and Electricity).

(9) Nonresidential real property repair and remodeling services. Local taxes are due on services to remodel, repair, or restore

nonresidential real property based on the location of the job site where the remodeling, repair, or restoration is performed. See also subsection (h)(2)(B) of this section and §3.357 of this title.

(10) Residential real property repair and remodeling and new construction of a real property improvement performed under a separated contract. When a contractor constructs a new improvement to realty pursuant to a separated contract or improves residential real property pursuant to a separated contract, the sale is consummated at the job site at which the contractor incorporates taxable items into the customer's real property. See also subsection (h)(2)(A) of this section and §3.291 of this title.

(11) Waste collection services. Local taxes are due on garbage or other solid waste collection or removal services based on the location at which the waste is collected or from which the waste is removed. For more information, refer to §3.356 of this title (relating to Real Property Service).

(l) Special exemptions and provisions applicable to individual jurisdictions.

(1) Residential use of natural gas and electricity.

(A) Mandatory exemptions from local sales and use tax. Residential use of natural gas and electricity is exempt from most local sales and use taxes. Counties, transit authorities, and most special purpose districts are not authorized to impose sales and use tax on the residential use of natural gas and electricity. Pursuant to Tax Code, §321.105, any city that adopted a local sales and use tax effective October 1, 1979, or later is prohibited from imposing tax on the residential use of natural gas and electricity. See §3.295 of this title.

(B) Imposition of tax allowed in certain cities. Cities that adopted local sales tax prior to October 1, 1979, may, in accordance with the provisions in Tax Code, §321.105, choose to repeal the exemption for residential use of natural gas and electricity. The comptroller's website provides a list of cities that impose tax on the residential use of natural gas and electricity, as well as a list of those cities that do not currently impose the tax, but are eligible to do so.

(C) Effective January 1, 2010, a fire control, prevention, and emergency medical services district organized under Local Government Code, Chapter 344 that imposes sales tax under Tax Code, §321.106, or a crime control and prevention district organized under Local Government Code, Chapter 363 that imposes sales tax under Tax Code, §321.108, that is located in all or part of a municipality that imposes a tax on the residential use of natural gas and electricity as provided under Tax Code, §321.105 may impose tax on residential use of natural gas and electricity at locations within the district. A list of the special purpose districts that impose tax on residential use of natural gas and electricity and those districts eligible to impose the tax that do not currently do so is available on the comptroller's website.

(2) Telecommunication services. Telecommunications services are exempt from all local sales taxes unless the governing body of a city, county, transit authority, or special purpose district votes to impose sales tax on these services. However, since 1999, under Tax Code, §322.109(d), transit authorities created under Transportation Code, Chapter 451 cannot repeal the exemption unless the repeal is first approved by the governing body of each city that created the local taxing jurisdiction. The local sales tax is limited to telecommunications services occurring between locations within Texas. See §3.344 of this title. The comptroller's website provides a list of local taxing jurisdictions that impose tax on telecommunications services.

(3) Emergency services districts.

(A) Authority to exclude territory from imposition of emergency services district sales and use tax. Pursuant to the provisions of Health and Safety Code, §775.0751(c-1), an emergency services district wishing to enact a sales and use tax may exclude from the election called to authorize the tax any territory in the district where the sales and use tax is then at 2.0%. The tax, if authorized by the voters eligible to vote on the enactment of the tax, then applies only in the portions of the district included in the election. The tax does not apply to sales made in the excluded territories in the district and sellers in the excluded territories should continue to collect local sales and use taxes for the local taxing jurisdictions in effect at the time of the election under which the district sales and use tax was authorized as applicable.

(B) Consolidation of districts resulting in sales tax sub-districts. Pursuant to the provisions of Health and Safety Code, §775.018(f), if the territory of a district proposed under Health and Safety Code, Chapter 775 overlaps with the boundaries of another district created under that chapter, the commissioners court of each county and boards of the counties in which the districts are located may choose to create a consolidated district in the overlapping territory. If two districts that want to consolidate under Health and Safety Code, §775.024 have different sales and use tax rates, the territory of the former districts located within the consolidated area will be designated as sub-districts and the sales tax rate within each sub-district will continue to be imposed at the rate the tax was imposed by the former district that each sub-district was part of prior to the consolidation.

(4) East Aldine Management District.

(A) Special sales and use tax zones within district; separate sales and use tax rate. As set out in Special District Local Laws Code, §3817.154(e) and (f), the East Aldine Management District board may create special sales and use tax zones within the boundaries of the District and, with voter approval, enact a special sales and use tax rate in each zone that is different from the sales and use tax rate imposed in the rest of the district.

(B) Exemptions from special zone sales and use tax. The sale, production, distribution, lease, or rental of; and the use, storage, or other consumption within a special sales and use tax zone of; a taxable item sold, leased, or rented by the entities identified in clauses (i) - (vi) of this subparagraph are exempt from the special zone sales and use tax. State and all other applicable local taxes apply unless otherwise exempted by law. The special zone sales and use tax exemption applies to:

(i) a retail electric provider as defined by Utilities Code, §31.002;

(ii) an electric utility or a power generation company as defined by Utilities Code, §31.002;

(iii) a gas utility as defined by Utilities Code, §101.003 or §121.001, or a person who owns pipelines used for transportation or sale of oil or gas or a product or constituent of oil or gas;

(iv) a person who owns pipelines used for the transportation or sale of carbon dioxide;

(v) a telecommunications provider as defined by Utilities Code, §51.002; or

(vi) a cable service provider or video service provider as defined by Utilities Code, §66.002.

(5) Imposition of city sales tax and transit tax on certain military installations; El Paso and Fort Bliss. Pursuant to Tax Code, §321.1045 (Imposition of Sales and Use Tax in Certain Federal Military Installations), for purposes of the local sales and use tax imposed under

Tax Code, Chapter 321, the city of El Paso includes the area within the boundaries of Fort Bliss to the extent it is in the city's extraterritorial jurisdiction. However, the El Paso transit authority does not include Fort Bliss. See Transportation Code, §453.051 concerning the Creation of Transit Departments.

(m) Restrictions on local sales tax rebates and other economic incentives. Pursuant to Local Government Code, §501.161, Section 4A and 4B development corporations may not offer to provide economic incentives, such as local sales tax rebates authorized under Local Government Code, Chapters 380 or 381, to persons whose business consists primarily of purchasing taxable items using resale certificates and then reselling those same items to a related party. A related party means a person or entity which owns at least 80% of the business enterprise to which sales and use taxes would be rebated as part of an economic incentive.

(n) Prior contract exemptions. The provisions of §3.319 of this title (relating to Prior Contracts) concerning definitions and exclusions apply to prior contract exemptions.

(1) Certain contracts and bids exempt. No local taxes are due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of any local tax if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of any local tax if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(2) Annexations. Any annexation of territory into an existing local taxing jurisdiction is also a basis for claiming the exemption provided by this subsection.

(3) Local taxing jurisdiction rate increase; partial exemption for certain contracts and bids. When an existing local taxing jurisdiction raises its sales and use tax rate, the additional amount of tax that would be due as a result of the rate increase is not due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of the tax rate increase if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of the tax rate increase if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(4) Three-year statute of limitations.

(A) The exemption in paragraph (1) of this subsection and the partial exemption in paragraph (3) of this subsection have no effect after three years from the date the adoption or increase of the tax takes effect in the local taxing jurisdiction.

(B) The provisions of §3.319 of this title apply to this subsection to the extent they are consistent.

(C) Leases. Any renewal or exercise of an option to extend the time of a lease or rental contract under the exemptions provided by this subsection shall be deemed to be a new contract and no exemption will apply.

(5) Records. Persons claiming the exemption provided by this subsection must maintain records which can be verified by the comptroller or the exemption will be lost.

(6) Exemption certificate. An identification number is required on the prior contract exemption certificates furnished to sellers. The identification number should be the person's 11-digit Texas taxpayer number or federal employer's identification (FEI) number.

The agency certifies that legal counsel has reviewed the proposal and found it to be within the state agency's legal authority to adopt.

Filed with the Office of the Secretary of State on October 16, 2023.

TRD-202303841
Jenny Burleson
Director, Tax Policy Division
Comptroller of Public Accounts
Earliest possible date of adoption: November 26, 2023
For further information, please call: (512) 475-2220

♦      ♦      ♦

# PART 3. TEACHER RETIREMENT SYSTEM OF TEXAS

## CHAPTER 31. EMPLOYMENT AFTER RETIREMENT
## SUBCHAPTER A. GENERAL PROVISIONS AND PROCEDURES

**34 TAC §31.5, §31.6**

The Teacher Retirement System of Texas (TRS) proposes to amend §31.5 (relating to Notice and Forfeiture Requirements for Certain Service Retirees) and §31.6 (relating to Second EAR Warning Payments) under Subchapter A (relating to General Provisions and Procedures) of Chapter 31 in Part 3 of Title 34 of the Texas Administrative Code.

BACKGROUND AND PURPOSE

In 2021, the Texas Legislature passed House Bill 1585 which added, among other provisions, an employment after retirement ("EAR") notice procedure (also called a "three strikes" procedure) that ensured TRS would issue at least two warnings to a TRS service retiree before that retiree would forfeit his or her entire annuity for a month because the retiree exceeded the limits on employment after retirement during that month.

Importantly, this notice procedure, which is under Government Code §824.601(b-3), requires that a TRS service retiree cannot be subject to a second warning (and the possible dollar-for-dollar partial forfeiture associated with a second warning) until the month after the month TRS issues a first warning to a TRS retiree for exceeding the limits on EAR. Further, a TRS retiree cannot be subject to mandatory full forfeiture of his or her annuity until the month after the month TRS issues the second warning letter. These requirements are clear in the statute.

However, §31.5 and §31.6 currently provide, at least in part, that a TRS service retiree is not subject to a second warning until the retiree receives, rather than TRS issues, a first warning. Further, the rules provide that a TRS retiree is not subject to a mandatory forfeiture until the retiree receives, rather than TRS issues, both required notices.

# APPENDIX K

**ENROLLED**

H.B. No. 207

# AN ACT

authorizing incorporated cities, towns, and villages, by majority vote of the qualified voters of any such city, town, or village, voting at an election held for that purpose, to impose a local sales and use tax of one percent (1%) on the sale or use of certain tangible personal property in such cities, towns, and villages; providing for the abolition of the local sales and use tax authorized herein by majority vote of the qualified voters of any such city, town, or village; providing for the administration and collection and enforcement of such tax by the State of Texas; authorizing the Comptroller of Public Accounts of the State of Texas to prescribe rules, regulations, and forms for the administration of this Act; providing that the Comptroller of Public Accounts of the State of Texas may promulgate a bracket system formula for the joint collection of the taxes authorized by this Act and the taxes authorized by the Limited Sales, Excise and Use Tax Act of the State of Texas, and prescribing the standards to be followed by the Comptroller in promulgating such bracket system formula; providing for the allocation of revenues from taxes collected under this Act; providing for surety bonds for the Comptroller of Public Accounts and his staff and for payment of premiums on such bonds; prohibiting any city from pledging anticipated revenue from money collected under this Act to secure payment of bonds or other indebtedness; prescribing procedure in contests of election for elections held under this

Act; providing that this Act shall be cumulative of all existing
powers of taxation of any city; providing for penalty; repealing
all laws or parts of laws inconsistent or in conflict herewith;
providing for severability; and declaring an emergency.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

Section 1. This Act is known and may be cited as the
"Local Sales and Use Tax Act," and the following words shall have
the following meanings unless a different meaning clearly appears
from the context:

A. Comptroller. "Comptroller" shall mean the Comptroller
of Public Accounts of the State of Texas.

B. City. "City" shall mean any incorporated city, town, or
village in the State of Texas.

C. Title 122A. "Title 122A" shall mean Title 122A,
Taxation - General of the Revised Civil Statutes of Texas, 1925,
and as heretofore or hereafter amended.

Sec. 2. A. Any city may, by a majority vote of the
qualified voters of said city voting at an election held for that
purpose, adopt a local sales and use tax for the benefit of such
city in accordance with the provisions of this Act.

B. The sales tax portion of any local sales and use tax
adopted under this Section is hereby imposed at the rate of one
percent (1%) on the receipts from the sale at retail of all
tangible personal property within any city adopting such tax
which property is subject to taxation by the State of Texas under
the provisions of the Limited Sales, Excise and Use Tax Act, as
enacted, and as heretofore or hereafter amended.

C. The governing body of any city may, by a majority vote of its members qualified and serving, or shall, upon petition of qualified voters of said city equal in number to at least twenty percent (20%) of the total number of votes cast in the last preceding regular city election, provide by ordinance for the calling and holding of an election on such question.

D. If such election is initiated by petition of qualified voters, the governing body of the city shall have thirty (30) days after receipt of such petition to determine the sufficiency thereof and, if such petition is sufficient, shall within sixty (60) days after receipt of such petition pass the ordinance calling such election.

E. The ordinance calling such election shall provide for the submission of such question at an election to be held not less than thirty (30) days nor more than ninety (90) days after the passage of said ordinance. If the next regular city election is to be held during such period, the submission of such question shall be at such election, otherwise, a special election shall be called for the purpose.

F. Notice of said election shall be given by causing a substantial copy of the ordinance calling the election to be published on the same day of two successive weeks in a newspaper of general circulation published within said city, the date of the first publication to be at least twenty-one (21) days prior to the date set for such election. If there be no newspaper published within the city, such ordinance may be published in some

-3-

newspaper having general circulation within the city. The provisions of this Section shall prevail over any city charter provision to the contrary.

G. The ballot at such election shall have printed on it the following:

"FOR adoption of a one percent (1%) local sales and use tax within the city."

"AGAINST adoption of a one percent (1%) local sales and use tax within the city."

The election shall be conducted in the manner provided by law for other municipal elections unless otherwise specified herein. If a majority of the votes cast at such an election be in favor of the adoption of a local sales and use tax, the same shall be effective in such city as follows: In order to allow time for the Comptroller's administrative duties under this Act, there shall elapse one whole calendar quarter after the Comptroller receives notice of adoption of such tax provided for in this Act, after which such local sales and use tax shall be effective in such city beginning on the first day of the calendar quarter next succeeding such elapsed quarter.

H. In any city in which a local sales and use tax has been imposed in the manner provided for herein, in the same manner and by the same procedure such city may by majority vote of the qualified voters of said city voting at an election held for that purpose abolish such tax. The ballot for any such election shall have printed on it the following:

"FOR abolition of the local sales and use tax within the city."

"AGAINST abolition of the local sales and use tax within the city."

If a majority of the votes cast at any such election be in favor of the abolition of such tax, such local sales and use tax shall be thereby abolished effective in such city as follows: There shall elapse one whole calendar quarter after the Comptroller receives the notice of abolition of such tax, after which such local sales and use tax shall be abolished in such city beginning on the first day of the calendar quarter next succeeding such elapsed quarter.

I. Within ten (10) days after any election held under the provisions of this Section at which a majority of the qualified voters voting at such election in any city shall vote in favor of the adoption or the abolition of a local sales and use tax within such city, the governing body of such city shall canvass the returns of such election and by ordinance or resolution entered in the minutes declare the results of such election. Thereafter, the City Secretary shall forward to the Comptroller by United States Registered Mail or Certified Mail a certified copy of the ordinance or resolution of the governing body canvassing the returns and declaring the result of such election. Such ordinance or resolution shall reflect the date of the election in such city, the proposition voted on, the total number of votes cast for and against the proposition, and the number of votes by which the proposition was approved, and shall be accompanied by a map of the

city clearly showing the boundaries thereof. If a majority of votes be found to be against any proposition, so that the tax status of such city under this Act is not changed, no notice of the results of the election shall be filed with the Comptroller.

J. If any city in which a local sales and use tax has been imposed in the manner provided for herein shall thereafter change or alter its boundaries, the City Secretary of such city shall forward to the Comptroller by United States Registered Mail or Certified Mail a certified copy of the ordinance adding or detaching territory from such city. Such ordinance shall reflect the effective date thereof, and shall be accompanied by a map of the city clearly showing the territory added thereto or detached therefrom. Upon receipt of such ordinance and map, the tax imposed by this Act shall be effective in such added territory or abolished in such detached territory on the first day of the next succeeding quarter; provided that if the Comptroller shall notify the City Secretary in writing within ten (10) days after receipt of such ordinance and map that he requires more time, the Comptroller shall be entitled to the elapsed calendar quarter referred to in Subsection G of this Section before such tax shall be imposed in such added territory or abolished in such detached territory.

K. (1) In each city in which a local sales and use tax has been imposed in the manner provided by this Act, every retailer shall add the tax imposed by the Limited Sales, Excise and Use Tax Act of the State of Texas and the tax imposed by this Act to his sale price, and when added, the combined tax shall constitute a part

-6-

of the price, shall be a debt of the purchaser to the retailer until paid, and shall be recoverable at law in the same manner as the purchase price. When the sale price in such city shall involve a fraction of a dollar, the two combined taxes shall be added to the sale price upon the schedule and bracket system formula set forth in Paragraphs (2) and (3) of this subsection.

(2) When such Limited Sales, Excise and Use Tax imposed by the State of Texas shall be at the rate of two percent (2%) on the receipts from the sale at retail of all tangible personal property within this State which is subject to such tax, and the Local Sales and Use Tax imposed in any city under authority of this Act shall be at the rate of one percent (1%) on the receipts from the sale of all tangible personal property within such city which is subject to such tax, the total gross rate of such combined taxes in such city shall be at the rate of three percent (3%) on the receipts from the sale of all tangible personal property within such city which is subject to such taxes. When the sale price shall involve a fraction of a dollar, the taxes shall be added to the sale price upon the following schedule:

| Amount of Sale | Tax |
|---|---|
| $ .01 to $ .16 | No Tax |
| .17 to .49 | $ .01 |
| .50 to .83 | .02 |
| .84 to 1.16 | .03 |
| 1.17 to 1.49 | .04 |
| 1.50 to 1.83 | .05 |

Provided, that for successive brackets for this schedule in this paragraph, the tax shall be computed by multiplying three per-cent (3%) times the amount of the sale. Any fraction of one cent ($ .01) which is less than one half of one cent ($ .005) of tax shall not be collected. Any fraction of one cent ($ .01) of tax equal to one half of one cent ($ .005) or more shall be col-lected as a whole cent ($ .01) of tax.

(3)  In the event the Legislature shall either increase or decrease the rate of such State Limited Sales, Excise and Use Tax, the combined rate of the State Limited Sales, Excise and Use Tax and the Local Sales and Use Tax shall be the sum of the two rates, in which event the schedule for collection of such combined taxes shall be calculated by multiplying the combined tax rate times the amount of the sale. Any fraction of one cent ($ .01) which is less than one half of one cent ($ .005) of tax shall not be collected. Any fraction of one cent ($ .01) of tax equal to one half of one cent ($ .005) or more shall be collected by the retailer as a whole cent ($ .01) of tax. The Comptroller may publish a schedule based on the above formula for use in those cities which have imposed a Local Sales and Use Tax under the authority of this Act, and which cities have a need for such schedule under the provisions of this paragraph.

Sec. 3.  No election upon a proposition to adopt a local sales and use tax in any city or to abolish such tax in such city shall be held within two (2) years from the date of the last pre-ceding election in such city on any of such propositions.

Sec. 4.  A.  In every city where the local sales and use tax has been adopted pursuant to the provisions of this Act, there is hereby imposed an excise tax on the storage, use, or other consumption within such city of tangible personal property purchased, leased, or rented from any retailer on or after the effective date for collection of the sales tax portion of the local sales and use tax for storage, use or other consumption in such city at the rate of one percent (1%) of the sales price of the property or, in the case of leases or rentals, of said lease or rental price; provided, that if no excise tax on the storage, use or other consumption of any article or item of tangible personal property is owed to or collected by the State of Texas under the State Limited Sales, Excise and Use Tax Act, then the tax imposed by this Section shall not be owed to and shall not be collected by, for or in behalf of such city for storage or other consumption of such article or item of tangible personal property within such city.

B.  In each city where the local sales and use tax has been imposed as provided in Section 2 of this Act, the excise tax imposed under the State Limited Sales, Excise and Use Tax Act on the storage, use, or other consumption of tangible personal property and the excise tax imposed by this Section of this Act shall be added together to form a combined rate of excise tax which is equal to the sum of the two taxes. The tax imposed by this Section of this Act shall be collected by the Comptroller on behalf of and for the benefit of such city.  The bracket system formula prescribed in Subsection K of Section 2 of this Act shall be applicable to the collection of the excise tax imposed under this Section.

C. The provisions of Subdivisions (A), (B), (C), (D), (E), (F), (G), (H), (I), (J), (K), and (L) of Article 20.03, Chapter 20, Title 122A, as enacted and as heretofore or hereafter amended, shall be applicable to the collection of the tax imposed by this Section, provided that the name of the city where the local sales and use tax has been adopted shall be substituted for that of the State where the words "this State" are used to designate the taxing authority or to delimit the tax imposed; and provided further that the effective date for commencing the collection of the sales tax portion of the tax imposed by this Act in any city shall be substituted for the phrase "the effective date of this Chapter."

Sec. 5. On and after the effective date of any tax imposed under the provisions of this Act, the Comptroller shall perform all functions incident to the administration, collection, enforcement, and operation of the tax, and the Comptroller shall collect, in addition to the Limited Sales, Excise and Use Tax for the State of Texas, an additional tax under the authority of this Act of one percent (1%) on the receipts from the sale at retail or on the sale price or lease or rental price on the storage, use, or other consumption of all tangible personal property within such city which property is subject to the State Limited Sales, Excise and Use Tax Act. The tax imposed hereunder and the tax imposed under the Limited Sales, Excise and Use Tax Act shall be collected together and reported upon such forms and under such administrative rules and regulations as may be prescribed by the Comptroller. On and

-10-

after the effective date of any proposition to abolish such local sales and use tax in any city, the Comptroller shall comply therewith as provided in this Act.

Sec. 6. The following provisions shall govern the collection by the Comptroller of the tax imposed by this Act:

A. All applicable provisions contained in Chapter 20 of Title 122A shall apply to the collection of the tax imposed by this Act, except as modified in this Act.

B. (1) For the purposes of the local sales tax imposed by this Act, all retail sales, leases and rentals, except sales of natural gas or electricity, are consummated at the place of business of the retailer unless the tangible personal property sold, leased, or rented is delivered by the retailer or his agent to an out-of-state destination or to a common carrier for delivery to an out-of-state destination. In the event the retailer has no permanent place of business in the State, the place or places at which the retail sales, leases, or rentals are consummated for the purposes of the tax imposed by this Act shall be determined under rules and regulations prescribed by the Comptroller. If the retailer has more than one place of business in the State, the place or places at which retail sales, leases, and rentals are consummated shall be the retailer's place or places where the purchaser or lessee takes possession and removes from the retailer's premises the articles of tangible personal property, or if the retailer delivers the tangible personal property to a point designated by the purchaser or lessee, then the sales, leases, or rentals are consummated at the retailer's place or places of business from which tangible personal property

-11-

is delivered to the purchaser or lessee. The sale of natural gas or electricity is consummated at the point of delivery to the consumer.

(2) For the purpose of the excise tax imposed by this Act on any retailer holding tangible personal property purchased on a Resale Certificate, and which property becomes subject to such excise tax by reason of use or other consumption of such property, such use or other consumption of such property is consummated at the place of business of the retailer, unless the tangible personal property is delivered by the retailer or his agent to an out-of-state destination or to a common carrier for delivery to an out-of-state destination. If the retailer has more than one place of business in this State, the place at which such use or consumption is consummated shall be the last place of business of such retailer where such property is stored or kept at the time of or just prior to its use or consumption.

(3) For the purpose of the taxes imposed by this Act, any tangible personal property owned by a consumer to whom a direct payment permit has been issued by the Comptroller under the provisions of Paragraph (K) of Article 20.05, Chapter 20, Title 122A, which property becomes subject to the taxes imposed by this Act by reason of use or consumption of such property in this State, such use or other consumption of such property is consummated at the last place of business in this State where such property is used or where such

-12-

property is stored or kept at the time of or just prior to its use or consumption in this State.

C. All exemptions granted to agencies of government, organizations, persons, and to the sale, storage, use, and other consumption of certain articles and items of tangible personal property under the provisions of Article 20.04, Chapter 20, Title 122A, are hereby made applicable to the imposition and collection of the tax imposed by this Act; except that in applying Paragraph (H) of said Article 20.04 to the collection of the tax imposed by this Act, the following words and phrases in said Paragraph (H) shall have the following meaning in this Act: the phrase "this Chapter" shall mean the Local Sales and Use Tax Act; the phrase "September 1, 1961" or the phrase "August 16, 1961" shall mean the date on which the Local Sales and Use Tax becomes effective in any city; and the phrase "August 31, 1964" shall mean the date on which three (3) years shall have elapsed since the date on which the tax imposed by this Act became effective in any city.

D. The same sales tax permit, exemption certificate, and resale certificate required by Chapter 20 of Title 122A for the administration and collection of the State Limited Sales, Excise and Use Tax shall satisfy the requirements of this Act, and no additional permit or exemption certificate or resale certificate shall be required; except that the Comptroller may prescribe a form of exemption certificate for an exemption from the tax imposed by this Act as a result of a prior contract under Subsection C of this Section.

E.  All discounts allowed the retailer under the provisions of the Limited Sales, Excise and Use Tax Act for the collection of and for prepayment of taxes under that Act are hereby allowed and made applicable to any taxes collected under the provisions of this Act.

F.  The penalties provided in Chapter 20 of Title 122A (Limited Sales, Excise and Use Tax Act) for violations of that Act are hereby made applicable to violations of this Act.

Sec. 7.  A.  Any local sales and use tax collected by the Comptroller under this Act on behalf of any city shall be deposited with the State Treasurer in trust and shall be kept in a separate suspense account for each such city.

B.  The Comptroller, and any of his deputies, assistants, and employees, who shall have any duties or responsibilities in connection with the collection, deposit, transfer, transmittal, disbursement, safekeeping, accounting, or recording of funds which come into the hands of the Comptroller under the provisions of this Act shall enter into a surety bond or bonds payable to any and all cities in whose behalf such funds have been collected under this Act in the amount of $100,000; provided that the Comptroller may enter into a blanket bond or bonds covering himself and all such deputies, assistants, and employees.  The cost of the premium or premiums for such surety bond or bonds shall be paid by the Comptroller from out of the share of such collections retained by the Comptroller for the benefit of the State.  At any time when any premium or premiums on such bond or bonds are due and payable,

the Comptroller shall pay the cost of same out of the State's share of such collection in his hands, and deposit the balance of the State's share as provided in Section 8 of this Act.

Sec. 8. Each city's share of all local sales and use tax collected under this Act by the Comptroller shall be transmitted to the Treasurer or the officer performing the functions of such office of such city by the Comptroller payable to the city periodically as promptly as feasible. Transmittals required under this Act shall be made at least twice in each State fiscal year. The funds so transmitted may be used by the city for any purpose for which the general funds of the city may be used. Before transmitting such funds, the Comptroller shall deduct two percent (2%) of the sum collected from each such city during such period as a charge by the State of Texas for its services specified in this Act, and the amounts so deducted, subject to the provisions of Section 7B of this Act, shall be deposited by the Comptroller in the State Treasury to the credit of the General Revenue Fund of the State. The Comptroller is authorized to retain in the suspense account of any city a portion of the city's share of the tax collected under this Act. Such balance so retained in the suspense account shall not exceed five percent (5%) of the amount remitted to the city. The Comptroller is authorized to make refunds from the suspense account of any city for overpayments made to such accounts, and to redeem dishonored checks and drafts deposited to the credit of the suspense accounts of such cities. When any city

shall adopt the Local Sales and Use Tax, and shall thereafter abolish such tax, the Comptroller may retain in the suspense account of such city for a period of one year five percent (5%) of the final remittance to each such city at the time of termination of collection of such tax in such city to cover possible refunds for overpayment of the tax and to redeem dishonored checks and drafts deposited to the credit of such accounts. After one year has elapsed after the effective date of abolition of such tax in such city, the Comptroller shall remit the balance in such account to the city and close the account.

Sec. 9. Money collected under this Act is for the use and benefit of the cities of the state; but no city may pledge anticipated revenue from this source to secure the payment of bonds or other indebtedness.

Sec. 10. Nothing in this Act shall be construed to abolish or limit existing powers of taxation of any city.

Sec. 11. The Comptroller may promulgate reasonable rules and regulations, not inconsistent with the provisions of this Act, to implement the enforcement, administration, and collection of the taxes authorized herein.

Sec. 12. A. In any city where the Local Sales and Use Tax has been imposed, if any person is delinquent in the payment of the amount required to be paid by him under this Act or in the event a determination has been made against him for taxes and penalty under this Act, the limitation for bringing suit for the collection of such delinquent tax and penalty shall be the same as that provided

-16-

in Article 20.09, Chapter 20, Title 122A. Where the Comptroller has determined that suit must be filed against any person for the collection of delinquent taxes due the State under the Limited Sales, Excise and Use Tax Act, and where such person is also delinquent in payment of taxes under this Act, the Comptroller shall notify the Tax Collector of the city to which delinquent taxes are due under this Act by United States Registered Mail or Certified Mail at least ten (10) days before turning the case over to the Attorney General. The city, acting through its attorney, may join in such suit as a party plaintiff to seek a judgment for the delinquent taxes and penalty due such city.

B. Where property is seized by the Comptroller under the provisions of any law authorizing seizure of the property of a tax-payer who is delinquent in payment of the tax imposed by the State Limited Sales, Excise and Use Tax Act, and where such taxpayer is also delinquent in payment of any tax imposed by this Act, the Comptroller shall sell sufficient property to pay the delinquent taxes and penalty due any city under this Act in addition to that required to pay any amount due the State under the Limited Sales, Excise and Use Tax Act. The proceeds from such sale shall first be applied to all sums due the State, and the remainder, if any, shall be applied to all sums due such city.

Sec. 13. A. If the validity of any election held under authority of this Act or the result of such election based on the returns thereof shall be contested, such election contest shall be filed and tried as provided in the Election Code of the State of

Texas; provided that the contestant shall notify the Comptroller by United States Registered Mail or Certified Mail within ten (10) days after filing such contest by mailing a copy of such Notice of Contest to the Comptroller showing the style of the contest, the date filed, the case number, and the Court in which the same is pending; and provided further that no such contest shall be heard unless the Comptroller is timely notified as provided herein.

B. Upon receipt of a Notice of Contest, the date upon which such tax shall become effective in any city, or abolished in any city, as a result of such election shall be suspended. When a final judgment shall be entered in such election contest, the City Secretary shall notify the Comptroller by United States Registered Mail or Certified Mail, and shall enclose a certified copy of such final judgment. If the judgment sustains the validity of such election or the result of such election so that the tax status under this Act of such city is changed, the Comptroller shall place in effect such tax, or abolish the same, as the case may be, in such city, substituting the notice of final judgment and the date on which it is received for the notice of the result of such election elsewhere provided for in this Act.

Sec. 14. All laws and parts of laws inconsistent or in conflict with the provisions of this Act are hereby repealed to the extent of such inconsistency or conflict only.

Sec. 15. If any section, subsection, paragraph, sentence, clause, phrase, words, or word of this Act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the

Act which can be given effect without the invalid provision or applications, and to this end the provisions of this Act are declared to be severable.

Sec. 16. The fact that more than eighty percent (80%) of the citizens of the State of Texas live within cities of this State, and that the rapid rise in urban population has created an urgent need for expanded municipal services, and that the existing taxing authority of cities is extremely limited, resulting in a very heavy tax burden on the homeowners in our cities, and that the cherished ideal of local self-government demands that local problems be met and solved by local action create an emergency and an imperative public necessity that the Constitutional Rule requiring that bills be read on three (3) several days in each House be suspended, and this Rule is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted.

_____          _____
Lieutenant Governor                       Speaker of the House
President of the Senate

I hereby certify that H.B. No. 207 was passed by the House on March 1, 1967 by the following vote: Yeas 85, Nays 63.

                                          _____
                                          Chief Clerk of the House

H.B. No. 207

I hereby certify that H.B. No. 207 was passed by the Senate on March 22, 1967 by the following vote: Yeas 20, Nays 11.

_____
Secretary of the Senate

APPROVED: _____4-5-67_____

*John Connally*
Date

_____
Governor

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
........11:05am........O'CLOCK

APR 5 1967

*John L. Hill*
Secretary of State



# APPENDIX L


Enrolled May 24, 1979

Enrolling Clerk

S.B. No. 582

AN ACT

relating to the imposition, levy, and collection of certain local sales, excise, and use taxes; clarifying the imposition and allocation of local use tax; defining "place of business of the retailer" for local sales, excise, and use tax purposes; amending Subsection A of and adding Subsections E and F to Section 4 and amending Subsections A and B of Section 6, Local Sales and Use Tax Act, as amended (Article 1066c, Vernon's Texas Civil Statutes); amending Chapter 141, Acts of the 63rd Legislature, Regular Session, 1973 (Article 1118x, Vernon's Texas Civil Statutes), by amending Subparagraph (1) of and adding Subparagraphs (4) and (5) to Paragraph (c), Subsection (B), Section 11B; providing for expiration and effective dates.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

ARTICLE 1

SECTION 1. Subsection A, Section 4, Local Sales and Use Tax Act, as amended (Article 1066c, Vernon's Texas Civil Statutes), is amended to read as follows:

"A. Except as provided in Subsection D of this Section, in every city where the local sales and use tax has been adopted pursuant to the provisions of this Act, there is hereby imposed an excise tax on the storage, use, or other consumption within such city of tangible personal property purchased, leased, or rented from any retailer on or after the effective date for collection of the sales tax portion of the local sales and use tax for storage,

1

use or other consumption in such city at the rate of one percent (1%) of the sales price of the property or, in the case of leases or rentals, of said lease or rental price. Except as provided in Subsection E of this Section, the local use tax is not owed to and may not be collected by, for, or in behalf of a city if no excise tax on the storage, use, or other consumption of an item of tangible personal property is owed to or collected by the State under the Limited Sales, Excise and Use Tax Act, Chapter 20, Title 122A, Taxation--General, Revised Civil Statutes of Texas, 1925, as amended or if the tangible personal property is first stored, used, or consumed within a city or area that has not adopted the local sales or use tax[,-provided,-that-if-no-excise-tax-on-the--storage,- use--or--other--consumption--of--any--article--or--item-of-tangible personal-property-is-owed-to-or-collected-by--the--State--of--Texas under-the-State-Limited-Sales,-Excise-and-Use-Tax-Act,-then-the-tax imposed--by--this--Section--shall--not--be-owed-to-and-shall-not-be collected-by,-for-or-in-behalf-of-such-city-for--storage--or--other consumption--of--such-article-or-item-of-tangible-personal-property within-such-city]."

SECTION 2. Section 4, Local Sales and Use Tax Act, as amended (Article 1066c, Vernon's Texas Civil Statutes), is amended by adding Subsections E and F to read as follows:

"E. If a sale of tangible personal property is consummated within the State but not within a city that has adopted the taxes imposed by this Act and the tangible personal property is shipped directly into or brought by the purchaser or lessee directly into a

2

city that has adopted the taxes imposed by this Act, the tangible personal property is subject to the local use tax imposed by the city under Subsection A of this Section. The use is considered consummated at the location where the item is first stored, used, or otherwise consumed after the intrastate transit has ceased.

"F. If the tangible personal property is shipped from outside this State to a customer within this State, the tangible personal property is subject to the use tax imposed by Subsection A of this Section and not the sales tax imposed by Subsection B, Section 2 of this Act. The use is consummated at the first point in this State where the property is stored, used, or otherwise consumed after interstate transit has ceased. Tangible personal property delivered to a point in this State is presumed to be for storage, use, or other consumption at that point until the contrary is established."

SECTION 3. Subsections A and B, Section 6, Local Sales and Use Tax Act, as amended (Article 1066c, Vernon's Texas Civil Statutes), are amended to read as follows:

"A. All applicable provisions contained in Chapters 1 and [Chapter] 20 of Title 122A shall apply to the collection of the tax imposed by this Act, except as modified in this Act.

"B. (1) For the purposes of the local sales and use tax, 'place of business of the retailer' means an established outlet, office, or location operated by the retailer, his agent, or employee for the purpose of receiving orders for taxable items. The term 'place of business of the retailer' includes any location

3

at which three or more orders are received by the retailer in a calendar year. A warehouse, storage yard, or manufacturing plant may not be considered a 'place of business of the retailer' unless three or more orders are received by the retailer in a calendar year at such warehouse, storage yard, or manufacturing plant. Each 'place of business of the retailer' must have a permit issued by the Comptroller in accordance with Article 20.021, Title 122A, Taxation--General, Revised Civil Statutes of Texas, 1925, as amended. For the purpose of determining the proper local sales tax imposed by this Act, a retail sale, lease, or rental is consummated as provided in Paragraphs (a), (b), (c), and (d) of this subdivision, regardless of where transfer of title or possession or segregation in contemplation of transfer of title or possession of the taxable item occurs unless the tangible personal property sold, leased, or rented is delivered by the retailer or his agent to an out-of-state destination or to a common carrier for delivery to an out-of-state destination.

"(a) If a retailer has only one place of business within this State, all retail sales, leases, and rentals of the retailer are consummated at that place of business, except as provided in Subdivision (d) of this Subsection.

"(b) If a retailer has more than one place of business in this State, the retailer's place of business where the purchaser or lessee takes possession of and removes an item of tangible personal property is the place of business where the sale, lease, or rental of that item is consummated. If, however, the retailer ships or

delivers the tangible personal property to a point designated by the purchaser or lessee, then the retailer's place of business from which the tangible personal property is shipped or delivered to the purchaser or lessee is the place of business where the sale, lease, or rental is consummated.

"(c) If neither possession of tangible personal property is taken at nor shipment or delivery of the tangible personal property is made from the retailer's place of business within this State, the sale, lease, or rental is consummated at the retailer's place of business within the State where the order is received or if the order is not received at a place of business of the retailer, at the place of business from which the retailer's salesman who took the order operates.

"(d) When transfer of possession of tangible personal property occurs at or shipment or delivery originates from a location within the State other than a place of business of the retailer, the sale, lease, or rental is consummated at the location within this State to which the tangible personal property is shipped or delivered or at which possession is taken by the customer when:

"(i) the retailer is an itinerant vendor and has no place of business, or

"(ii) the retailer's place of business where the purchase order is initially received or from which the retailer's salesman who took the order operates is outside the State, or

"(iii) the purchaser places the order directly with the

retailer's supplier and the property is shipped or delivered directly to the purchaser by the supplier.

"(e) The sale of natural gas or electricity is consummated at the point of delivery to the consumer.

"(2) For the purpose of the excise tax imposed by this Act on any retailer holding tangible personal property purchased on a resale certificate and which property becomes subject to the excise tax by reason of use or other consumption of the property, the use or other consumption of the property is consummated at the place where the property is stored or kept at the time of or just prior to its use or consumption, unless the tangible personal property is delivered by the retailer or his agent to an out-of-state destination or to a common carrier for delivery to an out-of-state destination.

"(3) For the purpose of determining the proper local use tax imposed by this Act, a holder of a direct payment permit issued by the Comptroller under Section (K) of Article 20.05, Title 122A, Taxation--General, Revised Civil Statutes of Texas, 1925, as amended, who becomes liable for local use tax by reason of storage, use, or other consumption of taxable items purchased in this State under a direct payment exemption certificate, shall allocate the tax to the city in which the taxable item was first removed from the permit holder's storage, or if not stored, the place at which the items are first used or consumed by the permit holder after transportation. As used in this paragraph, storage, use, or other consumption may not include a temporary delay or interruption

necessary and incident to the transportation or further fabrication, processing, or assembling of taxable items within this State for delivery to the permit holder. A charge for processing, fabrication, or further assembly in a city that has adopted the local use tax shall be subject to the local use tax. If a taxable item is first stored, used, or consumed within a city that has not adopted the tax imposed by this Act or outside of a city, no local use tax is due.

"[(1)--For--the--purposes--of--the-local-sales-tax-imposed-by this-Act,-all-retail-sales,-leases-and--rentals,--except--sales--of natural--gas--or--electricity,--are--consummated--at--the--place-of business-of-the-retailer--unless--the--tangible--personal--property sold,--leased,--or-rented-is-delivered-by-the-retailer-or-his-agent to-an-out-of-state-destination-or-to-a-common-carrier-for--delivery to--an--out-of-state--destination--or--the-taxable-service-is-to-be performed-at-an-out-of-state-location.--In-the-event--the--retailer has--no--permanent--place--of--business--in-the-State,-the-place-or places--at--which--the--retail--sales,--leases,--or---rentals---are consummated--for--the-purposes-of-the-tax-imposed-by-this-Act-shall be--determined--under--rules--and--regulations--prescribed--by--the Comptroller.----If--the--retailer-has-more-than-one-place-of-business in-the-State,-the-place-or-places-at-which--retail--sales,--leases, and-rentals-are-consummated-shall-be-the-retailer's-place-or-places where-the-purchaser-or-lessee-takes-possession-and-removes-from-the retailer's--premises-the-articles-of-tangible-personal-property,-or if-the-retailer-delivers-the-tangible-personal-property-to-a--point

designated--by--the--purchaser--or--lessee,--then--the--sales,--leases,--or rentals-are-consummated--at--the--retailer's--place--or--places--of business--from--which-tangible-personal-property-is-delivered-to-the purchaser-or-lessee.---The-sale-of-natural--gas--or--electricity--is consummated-at-the-point-of-delivery-to-the-consumer.

"[(2)--For--the-purpose-of-the-excise-tax-imposed-by-this-Act on-any-retailer-holding-tangible-personal-property-purchased--on--a Resale--Certificate,--and--which--property--becomes-subject-to-such excise-tax-by-reason-of-use-or-other-consumption-of-such--property, such--use--or--other-consumption-of-such-property-is-consummated-at the-place-of-business-of-the-retailer,-unless-the-tangible-personal property--is--delivered--by--the--retailer--or--his--agent--to---an out-of-state--destination-or-to-a-common-carrier-for-delivery-to-an out-of-state-destination.---If-the-retailer-has-more-than-one--place of--business--in--this--State,--the--place--at--which--such--use-or consumption-is-consummated-shall-be-the-last-place-of--business--of such--retailer-where-such-property-is-stored-or-kept-at-the-time-of or-just-prior-to-its-use-or-consumption.

"[(3)--For-the-purpose-of-the-taxes-imposed-by-this-Act,--any tangible--personal--property--owned--by-a-consumer-to-whom-a-direct payment-permit--has--been--issued--by--the--Comptroller--under--the provisions--of--Paragraph--(K)--of-Article-20.05,-Chapter-20,-Title 122A,-which-property-becomes-subject-to-the-taxes-imposed--by--this Act-by-reason-of-use-or-consumption-of-such-property-in-this-State, such--use--or--other-consumption-of-such-property-is-consummated-at the-last-place-of-business-in-this-State--where--such--property--is

8

used--or--where--such--property-is-stored-or-kept-at-the-time-of-or just-prior-to-its-use-or-consumption-in-this-State.]"

SECTION 4. Subparagraph (1), Paragraph (c), Subsection (B), Section 11B, Chapter 141, Acts of the 63rd Legislature, Regular Session, 1973, as added (Article 1118x, Vernon's Texas Civil Statutes), is amended to read as follows:

"(1) In every authority area where the tax authorized by this Act has been adopted pursuant to the provisions of this Act, there is hereby imposed an excise tax on the storage, use or other consumption within such authority area of taxable items purchased, leased, or rented from any retailer on or after the effective date for collection of the sales tax portion of the sales and use tax for storage, use or other consumption in such authority area at the same rate as the sales tax levied under this Act of the sales price of the taxable item or, in the case of leases or rentals, of said lease or rental price. Except as provided in Subparagraph (4) of this paragraph, the use tax imposed by this section is not owed to and may not be collected by, for, or in behalf of an authority if no excise tax on the storage, use, or other consumption of an item of tangible personal property is owed to or collected by the state under the Limited Sales, Excise and Use Tax Act, Chapter 20, Title 122A, Taxation--General, Revised Civil Statutes of Texas, 1925, as amended, or if the tangible personal property is first stored, used, or consumed within an authority or area that has not adopted the sales and use tax imposed by this section[,-provided,-that-if no-excise-tax-on-the-storage,--use--or--other--consumption--of--any

taxable-item-is-owed-to-or-collected-by-the-state-under-the-Limited Sales,-Excise-and-Use-Tax-Act,-then-the-tax-imposed-by-this-section shall--not--be--owed--to--and--shall-not-be-collected-by,-for-or-in behalf-of-such-authority-for-storage-or-other-consumption--of--such taxable-item-within-such-authority-area]."

SECTION 5. Paragraph (c), Subsection (B), Section 11B, Chapter 141, Acts of the 63rd Legislature, Regular Session, 1973 (Article 1118x, Vernon's Texas Civil Statutes), is amended by adding Subparagraphs (4) and (5) to read as follows:

"(4) If a sale of tangible personal property is consummated within the state but not within an authority that has adopted the taxes imposed by this section and the tangible personal property is shipped directly into or brought by the purchaser or lessee directly into an authority that has adopted the taxes imposed by this section, the tangible personal property is subject to the use tax imposed by the authority under Subparagraph (1) of this paragraph. The use is considered consummated at the location where the item is first stored, used, or otherwise consumed after the intrastate transit has ceased.

"(5) If the tangible personal property is shipped from outside this state to a customer within this state, the tangible personal property is subject to the use tax imposed by Subparagraph (1) of this paragraph and not the sales tax imposed by Subsection (A) of this section. The use is consummated at the first point in this state where the property is stored, used, or otherwise consumed after interstate transit has ceased. Tangible personal

property delivered to a point in this state is presumed to be for storage, use, or other consumption at that point until the contrary is established."

SECTION 6. Paragraph (1), Subsection B, Section 6, Local Sales and Use Tax Act, as amended (Article 1066c, Vernon's Texas Civil Statutes), as amended by this article, expires August 31, 1981.

ARTICLE 2

SECTION 1. Paragraph (1), Subsection B, Section 6, Local Sales and Use Tax Act, as amended (Article 1066c, Vernon's Texas Civil Statutes), is amended to read as follows:

"(1) For the purposes of the local sales tax imposed by this Act, all retail sales, leases, and rentals, except sales of natural gas or electricity, are consummated at the place of business of the retailer unless the tangible personal property sold, leased, or rented is delivered by the retailer or his agent to an out-of-state destination or to a common carrier for delivery to an out-of-state destination or the taxable service is to be performed at an out-of-state location. In the event the retailer has no permanent place of business in the state, the place or places at which the retail sales, leases, or rentals are consummated for the purposes of the tax imposed by this Act shall be determined under rules and regulations prescribed by the comptroller. If the retailer has more than one place of business in the state, the place or places at which retail sales, leases, and rentals are consummated shall be the retailer's place or places where the purchaser or lessee takes

possession and removes from the retailer's premises the articles of tangible personal property, or if the retailer delivers the tangible personal property to a point designated by the purchaser or lessee, then the sales, leases, or rentals are consummated at the retailer's place or places of business from which tangible personal property is delivered to the purchaser or lessee. The sale of natural gas or electricity is consummated at the point of delivery to the consumer [and-use-tax,--¹place-of-business-of-the retailer¹-means-an-established-outlet,-office,-or-location-operated by-the--retailer,--his--agent,---or--employee--for--the--purpose--of receiving-orders-for-taxable-items.---The-term-¹place-of-business-of the--retailer¹--includes-any-location-at-which-three-or-more-orders are-received-by-the-retailer-in--a--calendar--year.----A--warehouse, storage-yard,-or-manufacturing-plant-may-not-be-considered-a-¹place of--business--of--the--retailer¹--unless--three--or-more-orders-are received-by-the-retailer-in-a--calendar--year--at--such--warehouse, storage--yard,--or-manufacturing-plant.---Each-¹place-of-business-of the-retailer¹-must-have-a--permit--issued--by--the--Comptroller--in accordance--with--Article--20.021,---Title--122A,-Taxation--General, Revised-Civil-Statutes-of-Texas,-1925,-as-amended.---For-the-purpose of-determining-the-proper-local-sales-tax-imposed-by--this--Act,--a retail--sale,--lease,--or--rental--is--consummated--as--provided-in Paragraphs-(a),-(b),-(c),-and-(d)-of-this--subdivision,--regardless of--where--transfer--of--title--or--possession--or--segregation--in contemplation-of-transfer-of-title-or--possession--of--the--taxable item--occurs-unless-the-tangible-personal-property-sold,-leased,-or

rented-is-delivered-by-the-retailer-or-his-agent-to-an-out-of-state destination-or-to-a-common-carrier-for-delivery-to-an--out-of-state destination]."

SECTION 2.  This article takes effect September 1, 1981.

ARTICLE 3

SECTION 1.  The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, except as provided by Article 2, Section 2, and it is so enacted.

# APPENDIX M

AN ACT
relating to the administration and collection of sales and use
taxes applicable to sales involving marketplace providers.
       BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:
       SECTION 1.  Section 151.008(b), Tax Code, is amended to read
as follows:
       (b)  "Seller" and "retailer" include:
             (1)  a person in the business of making sales at auction
of tangible personal property owned by the person or by another;
             (2)  a person who makes more than two sales of taxable
items during a 12-month period, including sales made in the
capacity of an assignee for the benefit of creditors or receiver or
trustee in bankruptcy;
             (3)  a person regarded by the comptroller as a seller or
retailer under Section 151.024;
             (4)  a hotel, motel, or owner or lessor of an office or
residential building or development that contracts and pays for
telecommunications services for resale to guests or tenants;
             (5)  a person who engages in regular or systematic
solicitation of sales of taxable items in this state by the
distribution of catalogs, periodicals, advertising flyers, or
other advertising, by means of print, radio, or television media,
or by mail, telegraphy, telephone, computer data base, cable,
optic, microwave, or other communication system for the purpose of
effecting sales of taxable items; [and]
             (6)  a person who, under an agreement with another
person, is:
                   (A)  entrusted with possession of tangible
personal property with respect to which the other person has title
or another ownership interest; and
                   (B)  authorized to sell, lease, or rent the
property without additional action by the person having title to or
another ownership interest in the property; and
             (7)  a person who is a marketplace provider under
Section 151.0242.
       SECTION 2.  Subchapter B, Chapter 151, Tax Code, is amended
by adding Section 151.0242 to read as follows:
       Sec. 151.0242.  MARKETPLACE PROVIDERS AND MARKETPLACE
SELLERS. (a)  In this section:
             (1)  "Marketplace" means a physical or electronic
medium through which persons other than the owner or operator of the
medium make sales of taxable items.  The term includes a store,
Internet website, software application, or catalog.
             (2)  "Marketplace provider" means a person who owns or
operates a marketplace and directly or indirectly processes sales
or payments for marketplace sellers.
             (3)  "Marketplace seller" means a seller, other than
the marketplace provider, who makes a sale of a taxable item through
a marketplace.
       (b)  Except as otherwise provided by this section, a
marketplace provider has the rights and duties of a seller or
retailer under this chapter with respect to sales made through the
marketplace.
       (c)  A marketplace provider shall:
             (1)  certify to each marketplace seller that the
marketplace provider assumes the rights and duties of a seller or
retailer under this chapter with respect to sales made by the
marketplace seller through the marketplace;

(2) collect in the manner provided by Subchapters C and D the taxes imposed by this chapter on sales of taxable items made through the marketplace; and

(3) report and remit under Subchapter I the taxes imposed by this chapter on all sales made through the marketplace.

(d) A marketplace seller who in good faith accepts a marketplace provider's certification under Subsection (c)(1) shall exclude sales made through the marketplace from the marketplace seller's report under Subchapter I, notwithstanding Section 151.406.

(e) A marketplace seller shall retain records for all marketplace sales as required by Section 151.025.

(f) A marketplace seller shall furnish to the marketplace provider information that is required to correctly collect and remit taxes imposed by this chapter. The information may include a certification of taxability that an item being sold is a taxable item, is not a taxable item, or is exempt from taxation.

(g) Except as provided by Subsection (h), a marketplace provider is not liable for failure to collect and remit the correct amount of taxes imposed by this chapter if the marketplace provider demonstrates that the failure resulted from the marketplace provider's good faith reliance on incorrect or insufficient information provided by the marketplace seller. The marketplace seller is liable for a deficiency resulting from incorrect or insufficient information provided by the marketplace seller.

(h) A marketplace provider and marketplace seller that are affiliates or associates, as defined by Section 1.002, Business Organizations Code, are jointly and severally liable for a deficiency resulting from a sale made by the marketplace seller through the marketplace.

(i) This section does not affect the tax liability of a purchaser under Section 151.052 or 151.102.

(j) A court may not certify an action brought against a marketplace provider concerning this section as a class action.

(k) The comptroller may adopt rules and forms to implement this section and by rule except certain marketplace providers from some or all of the requirements of this section.

SECTION 3. Section 321.203, Tax Code, is amended by adding Subsection (e-1) to read as follows:

(e-1) Notwithstanding any other provision of this section, a sale of a taxable item made by a marketplace seller through a marketplace as provided by Section 151.0242 is consummated at the location in this state to which the item is shipped or delivered or at which possession is taken by the purchaser.

SECTION 4. Section 323.203, Tax Code, is amended by adding Subsection (e-1) to read as follows:

(e-1) Notwithstanding any other provision of this section, a sale of a taxable item made by a marketplace seller through a marketplace as provided by Section 151.0242 is consummated at the location in this state to which the item is shipped or delivered or at which possession is taken by the purchaser.

SECTION 5. The changes in law made by this Act do not affect tax liability accruing before the effective date of this Act. That liability continues in effect as if this Act had not been enacted, and the former law is continued in effect for the collection of taxes due and for civil and criminal enforcement of the liability for those taxes.

SECTION 6. This Act takes effect October 1, 2019.

_____      _____
President of the Senate                  Speaker of the House

I certify that H.B. No. 1525 was passed by the House on April

11, 2019, by the following vote:  Yeas 145, Nays 1, 2 present, not voting; and that the House concurred in Senate amendments to H.B. No. 1525 on May 10, 2019, by the following vote:  Yeas 103, Nays 3, 1 present, not voting.

_____
Chief Clerk of the House

       I certify that H.B. No. 1525 was passed by the Senate, with amendments, on May 3, 2019, by the following vote:  Yeas 31, Nays 0.

_____
Secretary of the Senate

APPROVED: _____
                Date

_____
          Governor

# APPENDIX N

Sec. 12.  Section 46.104, Parks and Wildlife Code, is amended [95] to read as follows:

"Sec. 46.104.  License: Period of Validity and Fee

"(a)  A Lake Texoma fishing license is valid until December 31 following its date of issuance.

"(b)  The fee for the license is $5.  Fifteen cents of the fee may be retained by the issuing officer."

Sec. 13.  The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted.

Passed the Senate on May 14, 1979, by a viva-voce vote; Senate concurred in House amendments on May 26, 1979, by a viva-voce vote; passed the House, with amendments, on May 25, 1979, by a non-record vote.

Approved June 13, 1979.

Effective Aug. 27, 1979, 90 days after date of adjournment.

---

# LOCAL SALES, EXCISE, AND USE TAX—IMPOSITION AND COLLECTION

## CHAPTER 624

### S. B. No. 582

An Act relating to the imposition, levy, and collection of certain local sales, excise, and use taxes; clarifying the imposition and allocation of local use tax; defining "place of business of the retailer" for local sales, excise, and use tax purposes; amending Subsection A of and adding Subsections E and F to Section 4 and amending Subsections A and B of Section 6, Local Sales and Use Tax Act, as amended (Article 1066c, Vernon's Texas Civil Statutes); amending Chapter 141, Acts of the 63rd Legislature, Regular Session, 1973 (Article 1118x, Vernon's Texas Civil Statutes), by amending Subparagraph (1) of and adding Subparagraphs (4) and (5) to Paragraph (c), Subsection (B), Section 11B; providing for expiration and effective dates.

*Be it enacted by the Legislature of the State of Texas:*

## ARTICLE 1

Section 1.  Subsection A, Section 4, Local Sales and Use Tax Act, as amended (Article 1066c, Vernon's Texas Civil Statutes), is amended [96] to read as follows:

"A.  Except as provided in Subsection D of this Section, in every city where the local sales and use tax has been adopted pursuant to the provisions of this Act, there is hereby imposed an excise tax on the storage, use, or other consumption within such city of tangible personal property

95.  V.T.C.A. Parks & Wildlife Code, § 46.-    96.  Vernon's Ann.Civ.St. art. 1066c, § 4, 104.    subsec. A.

purchased, leased, or rented from any retailer on or after the effective date for collection of the sales tax portion of the local sales and use tax for storage, use or other consumption in such city at the rate of one percent (1%) of the sales price of the property or, in the case of leases or rentals, of said lease or rental price. Except as provided in Subsection E of this Section, the local use tax is not owed to and may not be collected by, for, or in behalf of a city if no excise tax on the storage, use, or other consumption of an item of tangible personal property is owed to or collected by the State under the Limited Sales, Excise and Use Tax Act, Chapter 20, Title 122A, Taxation—General, Revised Civil Statutes of Texas, 1925, as amended or if the tangible personal property is first stored, used, or consumed within a city or area that has not adopted the local sales or use tax."

Sec. 2. Section 4, Local Sales and Use Tax Act, as amended (Article 1066c, Vernon's Texas Civil Statutes), is amended by adding [97] Subsections E and F to read as follows:

"E. If a sale of tangible personal property is consummated within the State but not within a city that has adopted the taxes imposed by this Act and the tangible personal property is shipped directly into or brought by the purchaser or lessee directly into a city that has adopted the taxes imposed by this Act, the tangible personal property is subject to the local use tax imposed by the city under Subsection A of this Section. The use is considered consummated at the location where the item is first stored, used, or otherwise consumed after the intrastate transit has ceased.

"F. If the tangible personal property is shipped from outside this State to a customer within this State, the tangible personal property is subject to the use tax imposed by Subsection A of this Section and not the sales tax imposed by Subsection B, Section 2 of this Act. The use is consummated at the first point in this State where the property is stored, used, or otherwise consumed after interstate transit has ceased. Tangible personal property delivered to a point in this State is presumed to be for storage, use, or other consumption at that point until the contrary is established."

Sec. 3. Subsections A and B, Section 6, Local Sales and Use Tax Act, as amended (Article 1066c, Vernon's Texas Civil Statutes), are amended [98] to read as follows:

"A. All applicable provisions contained in Chapters 1 and 20 of Title 122A shall apply to the collection of the tax imposed by this Act, except as modified in this Act.

"B. (1) For the purposes of the local sales and use tax, 'place of business of the retailer' means an established outlet, office, or location operated by the retailer, his agent, or employee for the purpose of receiving orders for taxable items. The term 'place of business of the retailer' includes any location at which three or more orders are received by the retailer in a calendar year. A warehouse, storage yard, or manufacturing plant may not be considered a 'place of business of the retailer' unless three or more orders are received by the retailer in a calendar year at such warehouse, storage yard, or manufacturing plant. Each 'place of business of the retailer' must have a permit issued by the Comptroller in accordance with Article 20.021, Title 122A, Taxation—General, Revised Civil Statutes of Texas, 1925, as amended. For the purpose of determining the proper local sales tax imposed by this Act, a retail sale, lease, or rental is

97. Vernon's Ann.Civ.St. art. 1066c. § 4.     98. Vernon's Ann.Civ.St. art. 1066c. § 6, subsecs. E, F.     subsecs. A, B.

consummated as provided in Paragraphs (a), (b), (c), and (d) of this subdivision, regardless of where transfer of title or possession or segregation in contemplation of transfer of title or possession of the taxable item occurs unless the tangible personal property sold, leased, or rented is delivered by the retailer or his agent to an out-of-state destination or to a common carrier for delivery to an out-of-state destination.

"(a) If a retailer has only one place of business within this State, all retail sales, leases, and rentals of the retailer are consummated at that place of business, except as provided in Subdivisio. (d) of this Subsection.

"(b) If a retailer has more than one place of business in this State, the retailer's place of business where the purchaser or lessee takes possession of and removes an item of tangible personal property is the place of business where the sale, lease, or rental of that item is consummated. If, however, the retailer ships or delivers the tangible personal property to a point designated by the purchaser or lessee, then the retailer's place of business from which the tangible personal property is shipped or delivered to the purchaser or lessee is the place of business where the sale, lease, or rental is consummated.

"(c) If neither possession of tangible personal property is taken at nor shipment or delivery of the tangible personal property is made from the retailer's place of business within this State, the sale, lease, or rental is consummated at the retailer's place of business within the State where the order is received or if the order is not received at a place of business of the retailer, at the place of business from which the retailer's salesman who took the order operates.

"(d) When transfer of possession of tangible personal property occurs at or shipment or delivery originates from a location within the State other than a place of business of the retailer, the sale, lease, or rental is consummated at the location within this State to which the tangible personal property is shipped or delivered or at which possession is taken by the customer when:

"(i) the retailer is an itinerant vendor and has no place of business, or

"(ii) the retailer's place of business where the purchase order is initially received or from which the retailer's salesman who took the order operates is outside the State, cr

"(iii) the purchaser places the order directly with the retailer's supplier and the property is shipped or delivered directly to the purchaser by the supplier.

"(e) The sale of natural gas or electricity is consummated at the point of delivery to the consumer.

"(2) For the purpose of the excise tax imposed by this Act on any retailer holding tangible personal property purchased on a resale certificate and which property becomes subject to the excise tax by reason of use or other consumption of the property, the use or other consumption of the property is consummated at the place where the property is stored or kept at the time of or just prior to its use or consumption, unless the tangible personal property is delivered by the retailer or his agent to an out-of-state destination or to a common carrier for delivery to an out-of-state destination.

"(3) For the purpose of determining the proper local use tax imposed by this Act, a holder of a direct payment permit issued by the Comptroller under Section (K) of Article 20.05, Title 122A, Taxation—General, Revised Civil Statutes of Texas, 1925, as amended, who becomes liable for

local use tax by reason of storage, use, or other consumption of taxable items purchased in this State under a direct payment exemption certificate, shall allocate the tax to the city in which the taxable item was first removed from the permit holder's storage, or if not stored, the place at which the items are first used or consumed by the permit holder after transportation. As used in this paragraph, storage, use, or other consumption may not include a temporary delay or interruption necessary and incident to the transportation or further fabrication, processing, or assembling of taxable items within this State for delivery to the permit holder. A charge for processing, fabrication, or further assembly in a city that has adopted the local use tax shall be subject to the local use tax. If a taxable item is first stored, used, or consumed within a city that has not adopted the tax imposed by this Act or outside of a city, no local use tax is due.

Sec. 4. Subparagraph (1), Paragraph (c), Subsection (B), Section 11B, Chapter 141, Acts of the 63rd Legislature, Regular Session, 1973, as added (Article 1118x, Vernon's Texas Civil Statutes), is amended [99] to read as follows:

"(1) In every authority area where the tax authorized by this Act has been adopted pursuant to the provisions of this Act, there is hereby imposed an excise tax on the storage, use or other consumption within such authority area of taxable items purchased, leased, or rented from any retailer on or after the effective date for collection of the sales tax portion of the sales and use tax for storage, use or other consumption in such authority area at the same rate as the sales tax levied under this Act of the sales price of the taxable item or, in the case of leases or rentals, of said lease or rental price. Except as provided in Subparagraph (4) of this paragraph, the use tax imposed by this section is not owed to and may not be collected by, for, or in behalf of an authority if no excise tax on the storage, use, or other consumption of an item of tangible personal property is owed to or collected by the state under the Limited Sales, Excise and Use Tax Act, Chapter 20, Title 122A, Taxation—General, Revised Civil Statutes of Texas, 1925, as amended, or if the tangible personal property is first stored, used, or consumed within an authority or area that has not adopted the sales and use tax imposed by this section."

Sec. 5. Paragraph (c), Subsection (B), Section 11B, Chapter 141, Acts of the 63rd Legislature, Regular Session, 1973 (Article 1118x, Vernon's Texas Civil Statutes), is amended by adding [1] Subparagraphs (4) and (5) to read as follows:

"(4) If a sale of tangible personal property is consummated within the state but not within an authority that has adopted the taxes imposed by this section and the tangible personal property is shipped directly into or brought by the purchaser or lessee directly into an authority that has adopted the taxes imposed by this section, the tangible personal property is subject to the use tax imposed by the authority under Subparagraph (1) of this paragraph. The use is considered consummated at the location where the item is first stored, used, or otherwise consumed after the intrastate transit has ceased.

"(5) If the tangible personal property is shipped from outside this state to a customer within this state, the tangible personal property is subject to the use tax imposed by Subparagraph (1) of this paragraph and not the sales tax imposed by Subsection (A) of this section. The use is consummated at the first point in this state where the property is stored, used,

99. Vernon's Ann.Civ.St. art. 1118x, § 11B, subsec. (B), par. (c), subpar. (1).     1. Vernon's Ann.Civ.St. art. 1118x, § 11B, subsec. (B), par. (c), subpars. (4), (5).

or otherwise consumed after interstate transit has ceased. Tangible personal property delivered to a point in this state is presumed to be for storage, use, or other consumption at that point until the contrary is established."

Sec. 6.[2]  Paragraph (1), Subsection B, Section 6, Local Sales and Use Tax Act, as amended (Article 1066c, Vernon's Texas Civil Statutes), as amended by this article, expires August 31, 1981.

## ARTICLE 2

Section 1.  Paragraph (1), Subsection B, Section 6, Local Sales and Use Tax Act, as amended (Article 1066c, Vernon's Texas Civil Statutes), is amended[3] to read as follows:

"(1)  For the purposes of the local sales tax imposed by this Act, all retail sales, leases, and rentals, except sales of natural gas or electricity, are consummated at the place of business of the retailer unless the tangible personal property sold, leased, or rented is delivered by the retailer or his agent to an out-of-state destination or to a common carrier for delivery to an out-of-state destination or the taxable service is to be performed at an out-of-state location.  In the event the retailer has no permanent place of business in the state, the place or places at which the retail sales, leases, or rentals are consummated for the purposes of the tax imposed by this Act shall be determined under rules and regulations prescribed by the comptroller.  If the retailer has more than one place of business in the state, the place or places at which retail sales, leases, and rentals are consummated shall be the retailer's place or places where the purchaser or lessee takes possession and removes from the retailer's premises the articles of tangible personal property, or if the retailer delivers the tangible personal property to a point designated by the purchaser or lessee, then the sales, leases, or rentals are consummated at the retailer's place or places of business from which tangible personal property is delivered to the purchaser or lessee.  The sale of natural gas or electricity is consummated at the point of delivery to the consumer."

Sec. 2.  This article takes effect September 1, 1981.

## ARTICLE 3

Section 1.  The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, except as provided by Article 2, Section 2, and it is so enacted.

Passed the Senate on March 21, 1979:  Yeas 31, Nays 0;  Senate concurred in House amendment on May 24:  Yeas 31, Nays 0;  passed the House, with amendment, on May 18, 1979:  Yeas 104, Nays 21, one present not voting.

Approved June 13, 1979.

Effective June 13, 1979, except art. 2 effective Sept. 1, 1981.

2.  Vernon's Ann.Civ.St. art. 1066c note.     3.  Vernon's Ann.Civ.St. art. 1066c, § 6, subsec. B, par. (1).

# APPENDIX O

Vernon's Texas Statutes and Codes Annotated
  Tax Code (Refs & Annos)
    Title 3. Local Taxation
      Subtitle C. Local Sales and Use Taxes
        Chapter 321. Municipal Sales and Use Tax Act (Refs & Annos)
          Subchapter C. Computation of Taxes

This section has been updated. Click here for the updated version.

V.T.C.A., Tax Code § 321.203

§ 321.203. Consummation of Sale

(a) A sale of a taxable item occurs within the municipality in which the sale is consummated. A sale is consummated as provided by this section regardless of the place where transfer of title or possession occurs.

(b) If a retailer has only one place of business in this state, all of the retailer's retail sales of taxable items are consummated at that place of business except as provided by Subsection (e).

(c) If a retailer has more than one place of business in this state, each sale of each taxable item by the retailer is consummated at the place of business of the retailer in this state where the retailer first receives the order, provided that the order is placed in person by the purchaser or lessee of the taxable item at the place of business of the retailer in this state where the retailer first receives the order.

(c-1) If the retailer has more than one place of business in this state and Subsection (c) does not apply, the sale is consummated at the place of business of the retailer in this state:

(1) from which the retailer ships or delivers the item, if the retailer ships or delivers the item to a point designated by the purchaser or lessee; or

(2) where the purchaser or lessee takes possession of and removes the item, if the purchaser or lessee takes possession of and removes the item from a place of business of the retailer.

(c-2) Subsection (c) does not apply if:

(1) the taxable item is shipped or delivered from a warehouse:

(A) that is a place of business of the retailer;

(B) in relation to which the retailer has an economic development agreement with:

(i) the municipality in which the warehouse is located that was entered into under Chapter 380, 504, or 505, Local Government Code, or a predecessor statute, before January 1, 2009; or

(ii) the county in which the warehouse is located that was entered into under Chapter 381, Local Government Code, before January 1, 2009; and

(C) in relation to which the municipality provides information relating to the economic development agreement as required by Subsection (c-3) by the deadline prescribed by that subsection, or, if appropriate, the county complies with Section 323.203(c-3) by the deadline prescribed by that section; and

(2) the place of business of the retailer at which the retailer first receives the order in the manner described by Subsection (c) is a retail outlet identified in the information required by Subsection (c-3) or Section 323.203(c-3) as being served by the warehouse on January 1, 2009.

(c-3) Not later than September 1, 2009, a municipality that has entered into an economic development agreement described by Subsection (c-2) shall send to the comptroller information prescribed by the comptroller relating to the agreement that identifies each warehouse subject to the agreement and each retail outlet that, on January 1, 2009, was served by that warehouse. The comptroller shall prescribe the manner in which the information must be provided. The provision of information to the comptroller under this subsection does not affect whether information described by this subsection is confidential or excepted from required public disclosure. This subsection and Subsection (c-2) expire September 1, 2014.

(d) If the retailer has more than one place of business in this state and Subsections (c) and (c-1) do not apply, the sale is consummated at:

(1) the place of business of the retailer in this state where the order is received; or

(2) if the order is not received at a place of business of the retailer, the place of business from which the retailer's agent or employee who took the order operates.

(e) A sale of a taxable item is consummated at the location in this state to which the item is shipped or delivered or at which possession is taken by the customer if transfer of possession of the item occurs at, or shipment or delivery of the item originates from, a location in this state other than a place of business of the retailer and if:

(1) the retailer is an itinerant vendor who has no place of business in this state;

(2) the retailer's place of business where the purchase order is initially received or from which the retailer's agent or employee who took the order operates is outside this state; or

(3) the purchaser places the order directly with the retailer's supplier and the item is shipped or delivered directly to the purchaser by the supplier.

(f) The sale of natural gas and electricity is consummated at the point of delivery to the consumer.

(g) The sale of mobile telecommunications services is consummated in accordance with Section 151.061.

(g-1) The sale of telecommunications services sold based on a price that is measured by individual calls is consummated at the location where the call originates and terminates or the location where the call either originates or terminates and at which the service address is also located.

(g-2) Except as provided by Subsection (g-3), the sale of telecommunications services sold on a basis other than on a call-by-call basis is consummated at the location of the customer's place of primary use.

(g-3) A sale of post-paid calling services is consummated at the location of the origination point of the telecommunications signal as first identified by the seller's telecommunications system or by information received by the seller from the seller's service provider if the system used to transport the signal is not that of the seller.

(h) The sale of an amusement service is consummated in the municipality in which the performance or other delivery of the service takes place.

(i) If a purchaser who has given a resale certificate makes any use of a taxable item that subjects the taxable item to the sales tax under the provisions of Section 151.154, the use or other consumption of the taxable item that subjected the taxable item to the tax is consummated at the place where the taxable item is stored or kept at the time of or just before the use or consumption.

(j) The sale of services delivered through a cable system is consummated at the point of delivery to the consumer.

(k) The sale of garbage or other solid waste collection or removal service is consummated at the location at which the garbage or other solid waste is located when its collection or removal begins.

(l) Repealed by Acts 2007, 80th Leg., ch. 1266, § 15(4).

(m) If there is no place of business of the retailer because the comptroller determines that an outlet, office, facility, or location contracts with a retail or commercial business to process for that business invoices or bills of lading and that the outlet, office, facility, or location functions or exists to avoid the tax imposed by this chapter or to rebate a portion of the tax imposed by this chapter to the contracting business, a sale is consummated at the place of business of the retailer from whom the outlet, office, facility, or location purchased the taxable item for resale to the contracting business.

(n) A sale of a service described by Section 151.0047 to remodel, repair, or restore nonresidential real property is consummated at the location of the job site.

**Credits**

Added by Acts 1987, 70th Leg., ch. 191, § 1, eff. Sept. 1, 1987. Amended by Acts 1989, 71st Leg., ch. 2, § 14.22(a), eff. Aug. 28, 1989; Acts 1989, 71st Leg., ch. 810, § 1, eff. Oct. 1, 1989; Acts 1991, 72nd Leg., ch. 705, § 26, eff. Sept. 1, 1991; Acts 2001, 77th Leg., ch. 370, § 2, eff. Aug. 1, 2002; Acts 2003, 78th Leg., ch. 209, § 55, eff. Oct. 1, 2003; Acts 2003, 78th Leg., ch. 1155, §§ 2, 3, eff. Sept. 1, 2003; Acts 2003, 78th Leg., ch. 1310, § 115, eff. July 1, 2004; Acts 2005, 79th Leg., ch. 728, § 23.001(83), eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 1266, §§ 11, 15(4), eff. Sept. 1, 2007; Acts 2009, 81st Leg., ch. 1360, § 5, eff. June 19, 2009.

V. T. C. A., Tax Code § 321.203, TX TAX § 321.203
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX P

8501H0714A01 [Tax Type: Sales] [Document Type: Hearing] [Status: Superseded with Summary]

The Comptroller of Public Accounts maintains the STAR system as a public service. STAR provides access to a variety of document types that may be useful in researching Texas tax law and tax policy. Documents which provide the Comptroller's interpretation of the tax laws are accurate for the time periods and facts presented in the documents. Letters on STAR can be the basis of a detrimental reliance claim only for the taxpayer to whom the letter was directly issued. Documents on STAR that no longer represent current policy may be completely or partially superseded, but there is no assurance that a document on STAR represents current policy even if it has not been marked as superseded.

Tax laws are complex and subject to change. Interpretations of the laws may be affected by administrative hearings, court opinions, attorney general opinions and similar authorities. STAR is a research tool, not a substitute for legal advice. If there is a conflict between the law and the information found on STAR, any decisions will be based on the law.

Texas Comptroller of Public Accounts STAR System

## 8501H0714A01

*ALERT: Section 151.0101(a)(5) relating to the taxation of repair, remodeling, maintenance, and restoration of tangible personal property, was added to the Tax Code effective 10/2/1984. HB 122, 68 [th] Leg. Session, 2 [nd] C.S.*

*ALERT: Local tax collection is now governed by Rule 3.334, effective 5/31/2020.*

HEARING NO. 15,654

IN RE: ************

TAXPAYER NO.: ************
FIELD OFFICE: ************
AUDIT PERIOD: JUNE 1, 1979
THROUGH APRIL 30, 1983

SALES TAX

BEFORE THE COMPTROLLER
OF PUBLIC ACCOUNTS
OF THE STATE OF TEXAS

FRED CONDER
Administrative Law Judge

ROBERT FREDERICK
Representing Tax Division

************
Representing Petitioner

COMPTROLLER'S DECISION

INTRODUCTION:

Petitioner seeks "redetermination" of its city sales tax assessment, amid waiver of penalty and interest on the entire assessment. Petitioner paid the

tax assessed following the audit, but withheld the penalty and interest amounts because it planned to seek redetermination with respect to them. Subsequently, petitioner decided it should be refunded amounts paid as local tax. Petitioner advances one primary contention and two alternative contentions in support of its claim for total or partial refund of local tax, but facts relevant to the issue will be set out before stating and addressing petitioner's contentions. The penalty and interest issue is addressed as petitioner's fourth contention.

FINDINGS OF FACT:

1. Petitioner is a domestic corporation which manufactures and installs replacement Teflon-based plastic bearings for pumping units in use on oil wells. Petitioner's headquarters office, manufacturing plant and warehouse is outside the city limits of CITY A, in ************ County, Texas. Manufacture of the bearings is done at the CITY A plant where petitioner's products are usually warehoused until they are shipped to the field for use. The CITY A office also handles all billing.

2. Petitioner has nine regional offices located within the state, six of which are within local sales tax jurisdictions and three of which are not. It maintains a small parts inventory at each of those offices. The primary function of these regional offices is to facilitate services to the surrounding oil fields, while creating visibility and enhancing goodwill.

3. The CITY A facility, plant-office-warehouse, had a sales tax permit as did the other nine offices.

4. Approximately two-thirds of petitioner's customers are businesses with which it maintains contracts for the services it performs. Upon a customer's request (or at regular intervals for some customers), an employee of petitioner inspects pumps for defective bearings. If petitioner's employee thinks bearings need to be replaced he so advises the customer's employee in charge at the well-site, and only if the customer agrees does he order and install new bearings on the pumping unit. Installation takes place at the well-site. All of these sites are located outside any local taxing jurisdiction. Almost all bearings were shipped from the CITY A facility to the well site; some went from a regional office to the well-site.

5. Each of the employees who inspected pumps, took orders for bearings and installed bearings at the well-sites, periodically checked in at one of the nine regional offices and were sometimes dispatched to a well-site by personnel at a regional office. None of these employees regularly stopped by the CITY A facility. Some, if not all, of the orders for bearings taken at the well-site were processed through a regional office by petitioner's employees. By processed is meant that some additional handling or paperwork was performed.

6. When petitioner installs new bearings on pumping units, it separately bills the customers for the labor and the bearings or material charges.

7. Petitioner was the subject of a sales tax audit for the 47-month period June 1, 1979 to April 30, 1983. The audit resulted in a deficiency assessment for both state and local taxes. Petitioner has conceded liability on the state tax portion of the assessment. At issue is the local tax assessed and paid, and the penalty and interest assessed.

8. Petitioner and the Tax Division have stipulated that city sales tax was erroneously assessed for CITY B and CITY C, Texas, where petitioner maintains offices outside the city limits. The tax should be deleted from the audit for those two cities. Deletion of the tax automatically reduces the penalty and interest assessment. The CITY D office was also outside the city limits of CITY D, but city sales tax was collected with respect to certain sales from this location. Note: Apparently the amount in dispute insofar as CITY D is concerned is only $************; this amount could be refunded to petitioner if

petitioner convinces the Comptroller that it has refunded the money to those from whom it was originally collected. Otherwise, it must remain with the State, for "Any person who receives or collects tax or any money represented to be a tax from another person is liable to the State for the full amount of the taxes plus any accrued penalty and interest on the taxes." TEX. TAX CODE ANN. Section 111.016 (Vernon 1982).

PETITIONER'S PRIMARY CONTENTION:

Petitioner contends that it should be considered a separately-billing contractor rather than a repairman, thereby fixing the job site (well-site) as the location for assessment of sales tax.

DISCUSSION AND CONCLUSIONS OF LAW:

A one-percent tax is imposed on receipts from the sale at retail of all taxable items within any Texas city adopting a local sales and use tax. TEX. REV. CIV. STAT. ANN. art. 1066c, Section 2.B. (Vernon 1982). Questions regarding the taxability of particular items are governed by the Limited Sales, Excise, and Use Tax Act of the State of Texas. TEX. TAX CODE ANN. Section 151.001 et. seq. The Comptroller is authorized to promulgate rules for the administration and enforcement of both acts so long as they do not conflict with the acts or with the Constitutions. TEX. REV. CIV. STAT. ANN. art. 1066c, Section 11; TEX. TAX CODE ANN. Section 111.002.

A contractor or repairman owes tax on any tangible personal property furnished by him and incorporated into the property of his customer if the customer is charged a lump-sum price covering both services performed (labor) and the material furnished; in such a situation the contractor or repairman is viewed as the consumer of the property, and it is the cost of the property to him which is the measure of the tax. However, a contractor or repairman must collect tax from his customer on any tangible personal property he incorporates into the property of the customer if the customer is charged separate amounts for services performed (labor) and for materials used. In this situation the contractor or repairman is viewed as a seller of the tangible personal property furnished by him and incorporated into property of the customer, and it is the cost specified to the customer, or the amount paid by the contractor or repairman, whichever is greater, that is the measure of the tax.

The Legislature has said:

(d)...."contractor" or "repairman" means a person who performs a repair service on tangible personal property or makes an improvement on real estate and who, as a necessary or incidental part of the service, incorporates tangible personal property into the property repaired or improved.

TEX. TAX CODE ANN. Section 151.056 (Vernon 1982).

The Comptroller, by duly promulgated rules, has somewhat better defined and distinguished these terms.

(a) Definitions

(2) Contractor - Any person who improves real estate and who, in making such improvement, incorporates tangible personal property into property being improved. The term includes subcontractors but does not include materialmen and suppliers.

Comptroller's Rule 3.291.

(a) Definitions

(7) Repairman

(A) Any person operating under either separated or lump-sum contracts, who restores, to good working order an item belonging to the customer which was broken, damaged, malfunctioning, worn, or defective....

Comptroller's Rule 3.292.

These rules have existed since sometime prior to December 31, 1975, at which time they were filed with the Secretary of State as existing rules, and the definitions have remained in substantially the same form. At no time has the Legislature seen fit to amend or alter the statute which these rules interpret and implement, and, in fact, the Legislature recodified the law as the Texas Tax Code effective January 1, 1982, without substantive change. It is well established that where a statute is reenacted without change that it essentially signals the adoption by the Legislature of the construction given over a period of time by that agency charged with the enforcement of the statute, especially where the agency has published rules announcing its interpretation.

The Comptroller has also defined the phrase "improvement to realty".

Rule 3.347 Improvements to Realty

(a) "Contract for the improvement to realty" includes a contract with the intended purpose to:

(1) Erect, construct, alter, or repair any building or other structure, project, development, or other permanent improvement on, under the surface of, or to real property whether fee or leasehold; or

(2) Furnish and install property becoming a part of any building or other structure, project, development or other permanent improvement on or to such real property including tangible personal property, which after installation becomes real property by virtue of being embedded in or permanently affixed to the land or to a structure constituting realty and which property after installation is necessary to the intended usefulness of the building or other structure; or

(3) Alter the land surface of real property by such means as creating roads, earthen dams, and stock tanks. However, mining or timber operations do not, in and of themselves, constitute improvements to realty.

(b) "Contract for the improvement to realty" does not include:

(1) A contract for the sale and installation of tangible personal property, this includes a contract to furnish and install machinery, equipment, or other tangible property not essential to the building or structure, nor adapted or intended to become a part of the realty, but which incidentally may, on account of its nature, be temporarily attached to the realty without losing its identity as a particular piece of machinery, equipment, or property and, if attached, is readily removable without substantial damage to the unit or to the realty or without destroying the intended usefulness of the realty;

Comptroller's Rule 3.379(b)(3) provides that when a contractor performs under a separated contract (as does petitioner), "The job site is [his] place of business for the purpose of determining where city tax is due." If petitioner is a contractor, it would have no city sales tax liability since all the well-sites at which it serviced customer's pumps (the job sites) were outside any city limits.

Petitioner's argument then is as follows:

(1) it incorporates the bearings which it manufactures into pumping units affixed to oil wells which are a part of the realty;

(2) the pumping units are affixed to the realty in a stationary manner and form an integral part of the well;

(3) accordingly, the pumping units are a part of the realty;

(4) thus, petitioner's services are an improvement realty, within the terms of the statute; and,

(5) its "place of business" is the job site (the well-site), and since the wells it serviced were outside any local taxing jurisdiction, city sales tax was erroneously assessed.

In making this argument petitioner cites and relies upon Wisconsin-Texas Oil Company v. Clutter, 258 S.W. 265 (Tex. App.-San Antonio 1924 , revd. on other grounds) 268 S.W. 921 (Tex. Comm'n. App. 1925, holding approved); and Woodsun Oil Company v. Pruett, 298 S.W.2d 856 (Tex. Civ. App.-San Antonio 1957, writ ref'd. n.r.e.). Petitioner's reasoning, though logically compelling, is not supported by the authorities. It is well-settled that oil field equipment placed on land by a lessee for the purpose of extracting oil and gas is personal property, removable at any time during the existence of the lease or within a reasonable time after its termination." See Summers, OIL AND GAS, 2d Ed. Section 526, and annotations therein. Courts have recognized exceptions to a lessee's right of removal in certain cases. In Texas, exception is made when removal would destroy a producing well. Both cases on which petitioner relies for support of its contention that pumping units are a part of the realty actually state this exception to the general rule. In Woodson Oil Co. v. Pruett, supra, the court made it clear that cessation of the right to removal is temporary and not indicative of a change in status of the equipment from personalty to realty.

... Woodson, under the lease, owns and has the right to remove the property and fixtures, but postpones that right in order to avoid the destruction or a producing well and the waste of resources. Id., at 858. (Emphasis added).

The Administrative Law Judge believes that the case of Meers v. Frick-Reid Supply Corporation, 127 S.W.2d 493, 496 (Tex. Civ. App.- Amarillo 1939, writ dism'd. judgmt. cor.), correctly states the Texas law governing the property status of oil field equipment used on a lease site, when it says:

It has long been the law in Texas that property affixed to the land of another under a license from the owner is personal property. The party who annexes the same has the right to remove it within a reasonable time after the expiration of the license and it does not become a part of the soil. Moore v. Carey Bros. Oil Co., Tex. Com. App. , 269 S.W. 75, 39 A.L.R. 1247; Wright v. Macdonell, 98 Tex. 140, 30 S.W. 907.

Thus, the Administrative Law Judge concludes that petitioner is not a "contractor" within the meaning of the statute or administrative rules, but is instead a "repairman". When petitioner "incorporates tangible personal property into the property repaired or improved," to wit, incorporates bearings into pumping units, petitioner is not involved in making "an improvement on real estate" but in performing "a repair service on tangible personal property."

Having rejected petitioner's primary contention it becomes necessary to dispose of petitioner's alternative contentions relating to local tax.

Local sales and use tax is determined to be due (or not due) from a substantive standpoint by reference to Texas' Limited Sales, Excise and Use Tax Act. City and MTA taxes simply "piggy-back" the State tax. If sales and use tax is due the state on a particular transaction, then local tax is also substantively (or technically) due, but now certain allocation or "geographic considerations enter the picture. We must decide which local jurisdictions, if any, are

entitled to the tax. Before stating and treating the contentions, the legal backdrop should be laid:

STATUTORY AND ADMINISTRATIVE PROVISIONS RELEVANT TO PETITIONER'S SECOND AND THIRD CONTENTIONS:

The statute, with underscoring added, reads:

B. (1) For the purposes of the local sales and use tax act, place of business of the retailer" means an established outlet, office, or location operated by the retailer, his agent or employee for the purpose of receiving orders for taxable items. The term "place of business" includes any location at which three or more orders are received by the retailer in a calendar year. A warehouse, storage yard, or manufacturing plant may not be considered a "place of business of the retailer" unless three or more orders are received by the retailer in a calendar year at such warehouse, storage yard or manufacturing plant. Each "place of business of the retailer must have a permit issued by the Comptroller . . . For the purpose of determining the proper local sales tax imposed by this Act, it retail sale, lease or rental is consummated as provided in Paragraphs (a), (b), (c), and (d) of this subdivision, regardless of where transfer of title or possession of the taxable item occurs unless the tangible personal property sold, leased, or rented is delivered by the retailer or his agent to an out-of-state destination or to a common carrier for delivery to an out-of-state destination.

(a) If a retailer has only one place of business within this State, all retail sales, leases and rentals of the retailer are consummated at that place of business, except as provided in Subdivision (d) of this Subsection.

(b) If a retailer has more than one place of business in this State, the retailer's place of business where the purchaser or lessee takes possession of and removes an item of tangible personal property is the place of business where the sale, lease, or rental of that item is consummated. If, however, the retailer ships or delivers the tangible personal property to a point designated by the purchaser or lessee, then the retailer's place of business from which the tangible personal property is shipped or delivered to the purchaser or lessee is the place of business where the sale, lease, or rental is consummated.

(c) If neither possession of tangible personal property is taken at or shipment or delivery of the tangible personal property is made from the retailer's place of business within this State, the sale, lease, or rental is consummated at the retailer's place of business within the state where the order is received or if the order is not received at a place of business of the retailer, at the place of business from which the retailer's salesman who took the order operates.

(d) When transfer of possession of tangible personal property occurs at or shipment or delivery originates from a location within the State other than a place of business of the retailer the sale, lease, or rental is consummated at the location within this State to which the tangible personal property is shipped or delivered or at which possession is taken by the customer when:

(i) the retailer is an itinerant vendor and has no place of business, or

(ii) the retailer's place of business where the purchase order is initially received or from which the retailer's salesman who took the order operates is outside the State, or

(iii) the purchaser places the order directly with the retailer's supplier and the property is shipped or delivered directly to the purchaser by the supplier.

(e) The sale of natural gas, or electricity is consummated at the point of delivery to the consumer.

TEX. REV. CIV. STAT. ANN. art. 1066c, Section 6, (Vernon Supp. 1984).

The administrative rule is of no additional help in defining place of business, simply reiterating the statute, but defines "itinerant vendor" as "a retailer who does not operate any 'place of business'," and contains the following pertinent provisions:

(c) Determining City Tax

(2) Delivery or shipment from a location within Texas other than the retailer's place of business.

(A) Order placed with a Texas retailer.

(i) If an order is received at the place of business of a Texas retailer, but delivery or shipment is made from a location within the State other than that place of business, city sales tax is due based upon the location of the place of business where the order was received.

(ii) If an order is received by a traveling salesperson, and delivery or shipment is made from a location within the State which is not a place of business of that Texas retailer, city sales tax is due based on the retailer's place of business from which the salesperson operates.

(4) Itinerant Vendors. If the retailer is an itinerant vendor, city sales tax is due based upon the city where delivery is made or possession is taken by the purchaser.

Title 34, Texas Administrative Code Section 3.374 (Comptroller's Rule 3.374).

Having set out the relevant statutory and rule provisions, petitioner's alternative contentions will be stated in its words, likewise the rebuttal contentions of the tax division will be stated in its words, but as should be apparent, the obtuseness of the pertinent "law" makes even the conceptualization of one's contention difficult.

PETITIONER'S SECOND CONTENTION [denominated by it as CONTENTION III]:

"...The location where the order is initiated is controlling, no city sales taxes would be due as the location is out of any city limits. Orders are either taken at the PETITIONER Headquarters in CITY A [outside city limits or OCL] or at the job site."

The rejoinder by the tax division was, "The Division contends that the petitioner's business location from which its repairmen are dispatched is the controlling site for imposition of local sales tax." [Six of the nine regional offices are inside city limits, or ICL).

Sidenote: Petitioner is incorrect in contending that any physical "location" where an order is initiated controls the issue of city sales or use tax; the key term is "place of business." Petitioner is, in effect, contending that under these facts the order is placed either at the job site or at the CITY A facility; if at the job site, petitioner contends that none of its locations (offices) meet the "place of business" definition and that Paragraph (d) is controlling and tax is allocated based on destination (location to which shipped or delivered); and if at the CITY A facility, petitioner contends that it then becomes a "place of business" (a location operated for the purpose of receiving orders, or a location at which three or more orders are received) and that whether it then be viewed as having only the "one place of business," per Paragraph (a) or as having "more than one place of business" per Paragraph (b), that tax is going to be allocated to its CITY A" place of business" which is outside city limits (0CL). And what the tax division is contending, is that the nine regional offices are places of business" (six ICL, three OCL) while the

CITY A office is not, and that the reason they are "places of business" is because the repairmen-salesmen who do their repairing and selling at the 0CL well-sites are dispatched to such sites by persons in the regional offices; this then makes it a "more-than-one-place-of-business," Paragraph (b), situation and since the property is shipped from CITY A (OCL) which is not a "place of business" then Paragraph (c) comes into play and each sale "is consummated at the retailer's place of business within the State where the order [was] received or if the order (was) not received at a place of business of the retailer, at the place of business from which the retailer's salesman who took the order operates," i.e., from which he was dispatched.

PETITIONER'S THIRD CONTENTION [denominated by it as CONTENTION IV]:

"In the event it is determined that. . . 'the order is initiated' at a point other than the CITY A office or in the field as contended above, the city sales tax is still inappropriate by virtue of Article 1066c, Sec. 6(B)(1)(b) .... which provides, with respect to a retailer who has more than one 'place of business' in Texas .... as follows: ...If, however, the retailer ships or delivers the tangible personal property to a point designated by the purchaser or lessee, then the retailer's place of business from which the tangible personal property is shipped or delivered to the purchaser or lessee is the place of business where the sale, lease, or rental is consummated."

This time the rejoinder by the tax division was, "The Division contends that the place of business from which each salesman works controls under the instant fact situation."

Sidenote: Here, petitioner's contention assumes that the CITY A office is a place of business; it will be correct if that is so. And the tax division's contention assumes that the CITY A office is not a place of business and at the same time assumes that the regional offices are places of business; and it will be correct if both of these assumptions are so.

DISCUSSION AND CONCLUSIONS OF LAW:

This case could be disposed of very simply and efficiently if petitioner could show first, that during the audit period its CITY A plant-office-warehouse was a "place of business" pursuant to Section 6B. (1) of Article 1066c, set out above, and second, that all orders for bearings were shipped from the warehouse. But petitioner acknowledged that not all bearings were shipped from the warehouse; thus even if petitioner could show its CITY A facility to be a place of business within the meaning of the act, unless it could also show that its regional offices were not places of business, it would still bear the burden of proving its tax liability, i.e., satisfying the trier of fact of the dollar amount of bearings shipped from inside and outside city limits, although obviously the vast majority are shipped from the CITY A (OCL) facility.

INDIVIDUAL XYZ, who testified for petitioner, said that bearings kept at the regional offices were occasionally used to fill orders; however, there was no indication as to how frequently this happened. And, as found, some local offices were inside city limits at cities having adopted the local tax and some were not. Furthermore, there is a question as to whether or not these offices are "places of business" within the meaning of the act.

The tax division had little way to contest petitioner's assertion that virtually all bearings used by its employees to repair pumping units were shipped from the CITY A warehouse, and did not do so. The division chose only to dispute petitioner's contention that its CITY A plant-office-warehouse was a "place of business". Finally, though impliedly, the tax division asserted that the regional offices were "places of business." For otherwise we would have a "no place of business" situation and local tax would be allocated based on

where the purchaser took possession or on where the property was shipped or delivered.

Petitioner supported its CITY A "place of business" contention indirectly by characterizing the contracts it maintained with a large proportion of its customers, and which were executed at its CITY A office, as "orders". As petitioner wrote:

As a result of these Contracts or "orders", PETITIONER personnel may make regular calls on the respective customers' field Foreman or Supervisor and inspect pumping units at each well location. After the inspection, such personnel will advise the field Supervisor of the customers' company if new bearings should be incorporated into the unit. Only after the customers' field Supervisor concurs with the personnel of PETITIONER is a bearing ordered from the CITY A warehouse to the field location where it is incorporated into the pumping unit.

Petitioner's Reply to Position Letter, p.5.

The administrative law judge does not accept petitioner's equation of its standard work contract with an "order". Though the term "order" has not been statutorily or administratively defined, common sense dictates that its meaning is not as broad as petitioner would have it be. The work agreement submitted into evidence by petitioner does not constitute a request for any particular item of equipment. Instead, it provides certain terms by which the parties agree to abide in their business relationship.

Petitioner does not contend that its customers ordered equipment directly from its CITY A office, plant or warehouse. And the record indicates that they did not. Personnel employed by petitioner visited well sites, performed inspection of the equipment, and took orders for bearings from customers while at the lease sites where the repairs were to be made. The CITY A facility was operated as a manufacturing plant, headquarters office and warehouse, and it does not appear to have been operated "for the purpose of receiving orders of taxable items," and since there was no showing that "three or more orders [were] received... in a calendar year [there] " the administrative law judge must conclude that petitioner's CITY A plant-office-warehouse was not a "place of business" within the meaning of the statute.

Simply determining that orders were not taken or received at the CITY A facility and that it was not a place of business does not dispose of this case.

The orders for bearings were taken by petitioner's inspecting employees at the well-sites. In other words, the orders were received outside any city limits. That being the case, petitioner argues that the transactions should relate to those sites. In effect, petitioner is arguing that the regional offices are not established for the purpose of receiving orders of taxable items, and do not receive three or more orders, and therefore they, just like the CITY A office, are not places of business. Thus, petitioner has "no place of business" and Paragraph (d) is applicable so as to fix the sale at the well-site, being "the location within this State to which the tangible personal property is shipped or delivered or at which possession is taken by the customer..."

The tax division, on the other hand, argues that this fact situation requires that the location of sale for tax purposes be viewed as that regional office of petitioner out of which the employee receiving the order was dispatched, or if not dispatched, to which the employee reported in. Then, instead of saying that such offices also were not places of business and looking to (d) for allocation, the tax division says (without giving reasons) that they were places of business and therefore Paragraph (b), the "more than one place of business" paragraph, applies; however, since the customer-purchaser doesn't take possession of the bearings at a place of business but has the

petitioner-seller ship or deliver the bearings to the well-site where they're to be used, and since that location of the seller from which the bearings are shipped is not a place of business, then Paragraph (c) applies.

Paragraph (c) states, "If neither possession of tangible personal property [was] taken at nor shipment or delivery of the tangible personal property [was] made from the retailer's place of business, the sale, lease or rental [was] consummated at the retailer's place of business within the State where the order [was]-received or if the order [was] not received at a place of business of the retailer, at the place of business from which the retailer's salesman who took the order operates. (underscoring added). Note: The legislature used the term of art "place of business" in the concluding phrase; the question is, did it mean to use the generic term "outlet, office or location operated by the retailer. " The tax division has read the statute in this latter manner, but made no rule making effort to explain or clarify this language.

In sum, petitioner takes the position that its regional offices were not "places of business" as defined by Article 1066c Section 6 B(l), supra, because the regional offices were not established for the purpose of receiving orders for taxable items and did not receive three or more on-site orders, and therefore the provisions of Article 1066c B. (1) (c) and Comptroller's Rule 3.374 (c) (2) (A)(i) and (ii), supra, are inapplicable since its salesmen did not relate to any "place of business" but merely to facilities maintained to provide a presence in the field. Petitioner is in effect urging that Article 1066c B(1)(d) and Rule 3.374(c)(4), supra, are applicable because petitioner had no "place of business" in the state. Since the CITY A plant-office-warehouse was not a "place of business," neither were the regional offices "places of business," and the sales it made should be considered consummated for local tax purposes at the location to which the property was shipped or delivered or at which the customer took possession. This argument is not without some merit, and not without some appeal.

The tax division on the other hand takes the position (I suppose) that the only way a business can make sales but have no "place of business" is to have no stationary location, i.e., to be truly itinerant--although the tax division's definition of "itinerant vendor" is inconsistent with that. (As noted earlier, it has defined itinerant vendor as, "A retailer who does not operate any 'place of business'."--And "places of business" is defined by statute as, "An outlet, office or location operated by the retailer for the purpose of receiving orders for taxable items" or "any location at which three or more orders [for taxable items] are received. . .in a calendar year.")

This legislation is somewhat confusing; likewise, legislative intent may not be clearly discerned. But it seems to the administrative law judge that the Legislature was amending the law if not entirely in reaction to the then-pending case of Bullock v. Dunigan Tool & Supply Co., 588 S.W.2d 633 (Tex. Civ. App.-Texarkana, writ ref'd n.r.e.), at least partly in reaction to that case. And if that be so, then the Legislature did not want warehousing and storage facilities (many of which are outside city limits) to be the places where sales were consummated for local sales tax purposes unless orders were actually received there by personnel working there, but wanted the office location out of which the salesman operated to be the place where the sales were consummated. It also seems fairly clear that the Legislature did not want "destination" sales, but some "origination" of sales approach. This, of course, would tend to maximize city revenues while not affecting state revenues.

The administrative law judge concludes that it is reasonable to examine the facts relevant to how any particular employee goes about his assigned duties and responsibilities, and on the basis of such examination to determine which of the employer's various established outlets, offices or locations such employee should be regarded as "operating out of," as that term is commonly understood. The administrative law judge concludes that none of the employees

who visited the well-site and ordered and installed bearings, worked out of Midland, but that each such employee logically worked out of one of the nine field offices.

The administrative law judge further concludes that the regional offices out of which petitioner's employees operated in the field were its "places of business" for local sales tax purposes for any sales made by such employees. This conclusion is reached because the administrative law judge is of the opinion that the Legislature did not intend for a business with one or more stationary offices or locations operated by the business within this state to be an itinerant vendor, and did intend to maximize local revenue for the state's cities. Under the reasoning set out, the orders taken (or sales made) at the well-site by various employees of petitioner relate back to the "outlets, offices or locations operated by petitioner" out of which they operate.

Though customers may never have physically entered the regional offices and ordered bearings for pumping units, the offices did serve as bases of operation for petitioner's employees who performed inspections, ordering and installation functions, and it is reasonable to infer that the regional offices were established, at least in part, for the purpose of having employees operate out of them in receiving orders for taxable items. Orders received by petitioner's employees while at customers' lease-sites relate to those offices out of which they operate and cause them to be "places of business." Hence, the audited tax should be for local taxes assessed against the CITY B and CITY C offices and except for any local taxes assessed for the CITY D office which were not actually collected by petitioner.

PETITIONER'S FOURTH CONTENTION:

Petitioner contends that penalty and interest should be abated.

FINDINGS OF FACT (continued):

8. Petitioner was the subject of a prior sales tax audit for the payment period March 1, 1974 through September 30, 1976. The present audit contains errors similar in nature to those discovered in the prior audit with respect to the state sales and use tax. The oldest of the nine regional offices opened outside the city limits of CITY C in July of 1976; petitioner did open a regional office in CITY E, Oklahoma on August 15, 1975; but no other Texas regional office opened prior to the end of the earlier audit period. The deficiency assessed as a result of the prior audit made no mention of local sales tax.

9. During the payment period in question in the present audit, petitioner was late in filing 16 of its 47 monthly returns.

DISCUSSION AND CONCLUSIONS OF LAW:

The Comptroller has the discretionary power to waive penalty or interest if he finds that the taxpayer has exercised reasonable diligence in complying with the tax laws. TEX. TAX CODE ANN. Section 111.103 (Vernon 1982).

Petitioner exhibited it habit of filing late returns during the audit period, filing 16 of 47 late. Mistakes in the petitioner's collection and remittance of state tax were the same as errors made and discovered during a prior audit period. The prior audit made no mention of local tax and set up no local tax deficiency; but, of course, petitioner had opened only one regional office in Texas and that office was 0CL.

In exercising his discretion in this area, the Comptroller is concerned with such things as: the size and sophistication of the taxpayer, whether or not there have been prior audits and their results, and the clarity of the law pertaining to those tax questions in issue. In this case the administrative law

judge is inclined to believe that petitioner has not demonstrated reasonable diligence with respect to the deficiency for state taxes, but has with respect to the deficiency for local tax. He recommends waiver of penalty with respect to those taxes; however since petitioner filed 16 returns late, and hence even if petitioner had correctly charged and remitted local tax it would have owed a penalty for those months, the administrative law judge concludes that the penalty amount attaching to local tax should be waived for the 31 months when petitioner timely remitted tax.

DISPOSITION:

For the reasons contained in this decision and based upon the findings of fact and conclusions of law, the administrative law judge recommends that the audit-determined liability be redetermined by deleting local taxes assessed for the CITY B and CITY C offices and any local taxes assessed for the CITY D office that were not actually collected (or that have been refunded), that penalty be waived for any local tax deficiency occurring during the 31 months for which petitioner timely remitted, but not as to the other 16 months, and that interest be computed only through the date petitioner paid.

SIGNED this the 16th day of October, 1984.

FRED CONDER
Administrative Law Judge

ORDER OF THE COMPTROLLER

The above decision of the administrative law judge, resulting in Petitioner's liability being as set out in Attachment "A" which is incorporated by reference, is approved and adopted in all respects. This decision becomes final on the 29th day of January, 1985, and the total sum of the tax, penalty and interest amounts is due and payable within 20 days thereafter. If such sum is not paid within such time, an additional penalty of ten per cent of the taxes due will accrue, interest will continue to accrue at ten per cent per annum, and the bonding or security provisions c)f the TEX. TAX CODE ANN. Sections 151.251-151.262 (Vernon 1982) will apply.

If a rehearing is desired, a Motion for Rehearing must be filed with the clerk of the administrative law judges on or before the date this decision becomes final, and must state the grounds upon which the motion is based. (See Rule 1.29, Rules of Practice and Procedure, or 34 TAC Section 1.29).

This is issued in accordance with the provisions of the Limited Sales, Excise, and Use Tax statutes, TEX. TAX CODE ANN. ch. 151 (Vernon 1982). RENDERED and ISSUED on this the 14th day of January, 1985.

BOB BULLOCK
Comptroller of Public Accounts
of the State of Texas

---

ACCESSION NUMBER: 8501H0714A01
SUPERSEDED: Y
DOCUMENT TYPE: H
DATE: 1985-01-14
TAX TYPE: SALES

# APPENDIX Q

200510723L [Tax Type: Sales] [Document Type: Letter/Memo] [Status: Partially Superseded with Summary]

The Comptroller of Public Accounts maintains the STAR system as a public service. STAR provides access to a variety of document types that may be useful in researching Texas tax law and tax policy. Documents which provide the Comptroller's interpretation of the tax laws are accurate for the time periods and facts presented in the documents. Letters on STAR can be the basis of a detrimental reliance claim only for the taxpayer to whom the letter was directly issued. Documents on STAR that no longer represent current policy may be completely or partially superseded, but there is no assurance that a document on STAR represents current policy even if it has not been marked as superseded.

Tax laws are complex and subject to change. Interpretations of the laws may be affected by administrative hearings, court opinions, attorney general opinions and similar authorities. STAR is a research tool, not a substitute for legal advice. If there is a conflict between the law and the information found on STAR, any decisions will be based on the law.

Texas Comptroller of Public Accounts STAR System

## 200510723L

**STAR Superseded Information**
**Supersede type:** PARTIAL
**Document superseded on:** 12/22/2021
**Issue(s) that caused the document to be superseded** : definition of "place of business"
**Reason(s):** Rule 3.334 was amended in 2014 to clarify that a place of business' sales must be made to persons other than employees, independent contractors, and natural persons affiliated with the seller, and to provide that if a sales office and a warehouse are in the same building, the entire facility is a place of business.

**STAR Superseded Information**
**Supersede type:** partial
**Document superseded on:** 12/21 / 2021
**Issue(s) that caused the document to be superseded:** Seller's requirement to collect local sales tax based upon place of business
**Reason(s):** Texas sellers are now required to collect any additional local use tax if they ship or deliver items to an address in another local taxing jurisdiction that has a higher local sales and use tax rate regardless of whether the seller has physical presence (people or property) in that locality. See Rule 3.334, effective 05/31/2020.

**STAR Superseded Information**
**Supersede type:** partial
**Document superseded on** :  01/31/2023
**Issue(s) that caused the document to be superseded** : Equating the terms "received" with "accessed and accepted" where internet orders are involved
**Reason(s):** See preamble to Rule 3.334 (adopted 01/10/2023, effective 01/30/2023) concerning local sales and use taxes as it relates to the meaning of "receive" in subsection (b) of the Rule amendment.

October 6, 2005

*************
*************
*************

Dear **************:

Thank you for your follow-up request concerning local tax collection.

You asked that I address whether the following facts create a "place of business" for purposes of local sales and use tax collection:

**Clearance center showroom**
A taxpayer has clearance merchandise for sale in the same building as a warehouse. In this situation, the merchandise may be in a different room or located in the center of the warehouse. Unless the taxpayer has taken steps to separate the clearance center from the warehouse (e.g. separate buildings, separate entrances without connecting doors), the clearance center showroom and the warehouse are one place of business and city and county sales and use tax should be collected based on the location of that place of business on all merchandise delivered to Texas customers from the warehouse.

**Sales person assigned to warehouse whether wholesale or retail**
A sales person assigned to a warehouse will make the warehouse a place of business even when the sales person sells exclusively to wholesale clients.

**Internet computer system receiving orders**
Orders are considered "received" where the Internet orders are accessed and accepted by the taxpayer. The location of the server does not create a "place of business" for purposes of local tax collection. If a taxpayer has a warehouse where the taxpayer's employees receive orders for merchandise, then the warehouse will be considered a place of business for local sales tax collection purposes.

Please let me know if I can be of further assistance. My number is 512.463.4614.

Sincerely,

Adina Christian
Area Manager
Tax Policy Division

---

ACCESSION NUMBER: 200510723L
SUPERSEDED: P
DOCUMENT TYPE: L
DATE: 2005-10-06
TAX TYPE: SALES

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Mary Lou Swanson on behalf of Kyle Counce
Bar No. 24082862
marylou.swanson@oag.texas.gov
Envelope ID: 108512713
Filing Code Description: Response
Filing Description: 20251126 Appellee Cross-Appellants Response Brief
Status as of 11/26/2025 3:49 PM CST

Associated Case Party: City of Coppell, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Richard Phillips | 24032833 | Rich.Phillips@hklaw.com | 11/26/2025 3:39:21 PM | SENT |
| Reed Randel | 24075780 | Reed.Randel@hklaw.com | 11/26/2025 3:39:21 PM | SENT |
| Stephen Fink | 7013500 | Stephen.Fink@hklaw.com | 11/26/2025 3:39:21 PM | SENT |
| James Harris | 9065400 | jim.harris@hklaw.com | 11/26/2025 3:39:21 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Bryan Dotson | 24072769 | bryan.dotson@chamberlainlaw.com | 11/26/2025 3:39:21 PM | SENT |
| Cynthia Bourland | 790343 | bourland@bourlandlaw.com | 11/26/2025 3:39:21 PM | SENT |
| Brandon L.King | | brandon.king@hklaw.com | 11/26/2025 3:39:21 PM | SENT |

Associated Case Party: Glenn Hegar, in his official capacity as Texas Comptroller of Public Accounts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Ray Langenberg | 11911200 | ray.langenberg@cpa.texas.gov | 11/26/2025 3:39:21 PM | SENT |
| Kyle Counce | 24082862 | Kyle.Counce@oag.texas.gov | 11/26/2025 3:39:21 PM | SENT |